1  SCHIFF HARDIN LLP
   Robert B. Mullen (CSB 136346)
2  One Market, Spear Street Tower
   Thirty-Second Floor
3  San Francisco, CA 94105
   Telephone:    (415) 901-8700
4  Facsimile:    (415) 901-8701
   rmullen@schiffhardin.com
5

**ORIGINAL FILED**

JUL 24 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6  Attorneys for Defendant
   DAVID MORRIS INTERNATIONAL LTD.
7

**EMC**

8              UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10        **CV 08          3550**

11 S. H. SILVER COMPANY, INC.,          Case No.

12              Plaintiff,          **NOTICE OF REMOVAL OF ACTION**
                                     **UNDER 28 U.S.C. § 1441(b) (DIVERSITY)**
13 v.

14 DAVID MORRIS INTERNATIONAL
   LTD.,
15
                Defendant.
16

17

18       TO THE CLERK OF THE ABOVE-ENTITLED COURT:

19       PLEASE TAKE NOTICE that Defendant David Morris International Ltd. ("David

20 Morris") hereby removes to this Court the state court action described below.

21       1.       On June 17, 2008 an action was commenced in the Superior Court of the State of

22 California in and for the County of San Mateo, entitled S. H. Silver Company, Inc., Plaintiff, v.

23 David Morris International Ltd., Defendant, as Case No. CIV 473796.  Copies of the complaint,

24 civil cover sheet, notice of case management conference and related papers are attached hereto

25 collectively as Exhibit A.

26       2.       The first date upon which Defendant David Morris received a copy of the said

27 Complaint was July 3, 2008, when Defendant was served with a copy of the said complaint and a

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    summons from the said state court.  Copies of the summons and Plaintiff's proof of service are
2    attached hereto collectively as Exhibit B.

3        3.    On July 3, 2008, together with the summons and complaint, Plaintiff also served
4    Defendant with the following papers, attached hereto collectively as Exhibit C:  Notice of
5    Application and Hearing for Right to Attach Order and Order for Issuance of Writ of Attachment;
6    Application for Right to Attach Order and Order for Issuance of Writ of Attachment; proposed
7    Right to Attach Order and Order for Issuance of Writ of Attachment After Hearing;
8    Memorandum of Points and Authorities in Support of S. H. Silver Company, Inc.'s Application
9    for Right to Attach Order and Writ of Attachment; and Declaration of Steven H. Silver in Support
10    of S. H. Silver Company, Inc.'s Application for a Right to Attach Order and Writ of Attachment.

11        4.    Jurisdiction.  This action is a civil action of which this Court has original
12    jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by
13    Defendant pursuant to the provisions of 28 U.S.C. § 1441(b) in that it is a civil action between a
14    citizen of this state and a citizen or subject of a foreign state, and the matter in controversy
15    exceeds the sum or value of $75,000, exclusive of interest and costs.  In Plaintiff's Application
16    for Right to Attach Order and Order for Issuance of Writ of Attachment, Plaintiff seeks to attach
17    the sum of $550,060.62 based on an alleged breach of contract to purchase sapphires.  *See, e.g.*,
18    Declaration of Stephen H. Silver, ¶ 19.  In its Complaint, Plaintiff also seeks recovery of an
19    additional unspecified sum based on alleged fraud in the sale of a blue diamond.  Complete
20    diversity of citizenship exists in that the Plaintiff S. H. Silver is a California corporation with its
21    principal place of business in Menlo Park, California; and Defendant David Morris is a citizen or
22    subject of the foreign state of Great Britain, with its principal place of business in London,
23    England.  28 U.S.C. § 1332(a)(2).  Defendant David Morris is a family-owned private company,
24    registered in the United Kingdom at present and when the state court action was filed.  All of its
25    owners and directors are citizens of the United Kingdom, at present and when the state court
26    action was filed.  None of its owners or members was a citizen of the State of California when the
27    state court action was filed, or is a California citizen at this time.

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. SECTION 1441(b)
(DIVERSITY)

1    Dated: July 24, 2008           SCHIFF HARDIN LLP

2

3                                 By: _Robert B. Mullen_

4                                   Robert B. Mullen
                                     Attorneys for Defendant

5                                   DAVID MORRIS INTERNATIONAL
                                  LTD.

6

7    SF\9188926.1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 3 -

NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C. SECTION 1441(b)
(DIVERSITY)

1  Scott D. Baker (SBN 84923)
   Email: sbaker@reedsmith.com
2  Jonah D. Mitchell (SBN 203511)
   Email: jmitchell@reedsmith.com
3  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
4  San Francisco, CA 94111-3922

5  **Mailing Address:**
   P.O. Box 7936
6  San Francisco, CA 94120-7936

7  Telephone:    +1 415 543 8700
   Facsimile:    +1 415 391 8269
8
   Attorneys for Plaintiff
9  S.H. Silver Company, Inc.

10

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA

12              FOR THE COUNTY OF SAN MATEO

13

14  S.H. SILVER COMPANY, INC.            No.:  **CIV 4 7 3 7 9 6**

15          Plaintiff,                   **COMPLAINT FOR DAMAGES**

16      vs.

17  DAVID MORRIS INTERNATIONAL LTD.,

18          Defendant.

19

20

21

22

23

24

25

26

27

28

FILED
SAN MATEO COUNTY

JUN 1 7 2008

Clerk of the Superior Court
By
DEPUTY CLERK

CHRM
JDM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.:                                    DOCSSFO-12511350.5-JMITCHELL

COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Plaintiff S.H. Silver Company, Inc. ("S.H. Silver"), for its Complaint, alleges as follows:

2

3    **GENERAL ALLEGATIONS**

4

5    1.    S.H. Silver is a California corporation with its principal place of business in Menlo

6    Park, California.

7

8    2.    S.H. Silver is informed and believes and thereon alleges that Defendant David Morris

9    International, Ltd. ("David Morris") is a foreign business with its principal place of business in

10   London.

11

12   3.    The true names and capacities of the Defendants named herein as Does 1 through 10,

13   and each of them, are unknown to S.H. Silver, which therefore sues these Defendants by such

14   fictitious names.  S.H. Silver is informed and believes and thereon alleges that such fictitiously

15   named Doe Defendants, and each of them, are in some manner responsible and liable for the acts,

16   omissions, and/or damages alleged in this Complaint.  S.H. Silver will seek leave to amend this

17   Complaint to allege the Doe Defendants' true names and capacities when they have been ascertained.

18

19   4.    S.H. Silver is informed and believes and thereon alleges that at all times herein

20   mentioned, each of the Defendants was the agent and employee of each of the remaining

21   Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of

22   such agency and employment.  S.H. Silver is further informed and believes and thereon alleges that

23   each of the Defendants acted in concert with the others and gave consent to, ratified or authorized

24   the acts of other Defendants and their employees.

25

26   5.    Venue is proper in the Superior Court of California, County of San Mateo, as the

27   agreement which David Morris breached was to be performed in San Mateo County.  In addition, the

28   jewelry which was the subject of the agreement was originally provided to David Morris pursuant to

DOCSSFO-12511350.5-JMITCHELL

1   a consignment agreement which contained a provision providing exclusive venue in San Mateo

2   County.  Further, David Morris' fraudulent and wrongful conduct also concerned other jewelry that

3   was identified in the consignment agreement providing for exclusive venue in San Mateo County

4   and subsequently purchased by David Morris.

5

6                                   **BACKGROUND**

7

8          6.      Founded in 1980, S.H. Silver is a premier jewelry house, offering vintage and modern

9   jewelry.  S.H. Silver enjoys a reputation as one of the industry's most trusted names in acquiring and

10  placing some of the finest estate jewelry in the world.

11

12         7.      This lawsuit concerns two transactions between S.H. Silver and David Morris, a

13  jewelry retailer with shops in London and Palm Beach, Florida, among other locations.  One of the

14  transactions concerned a blue diamond and the other a pair of Cartier Sapphire earrings.

15

16         8.      On or around June 8, 2007, via an e-mail, S.H. Silver was introduced to David Morris

17  and its principal Jeremy Morris and Sales Director William Holbech.  Following the introduction,

18  S.H. Silver's Chairman and CEO Stephen H. Silver made arrangements with Mr. Morris for the

19  consignment of several jewelry pieces to David Morris and a trip to London to deliver the jewelry.

20  The terms of the consignment agreement were documented in a consignment faxed to David Morris

21  (the "Consignment Agreement").  Among other jewelry pieces, the Consignment Agreement

22  identified a blue diamond, bearing SKU #10367 (the "Blue Diamond"), and a pair of Loose

23  Cabochon Sugarloaf Sapphires (the "Sapphires"), bearing SKU # 13087, and the accompanying

24  Cartier Platinum and Diamond Ear Clip semi mounts for the Sapphires, bearing SKU #12646

25  (collectively, the "Earrings").  Pursuant to industry custom and practice for sales on consignment in

26  the jewelry trade, under the Consignment Agreement, David Morris would add on any profit David

27  Morris wished to make above the consignment price which S.H. Silver set, and, make a sale to its

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.:                            – 2 –                            DOCSSFO-12511350.5-JMITCHELL
                             COMPLAINT

1  client accordingly.  From that sale, David Morris would owe S.H. Silver the consignment price and

2  would keep the amounts above the consignment price as its profit.

3

4      9.      S.H. Silver delivered the jewelry to David Morris, including the Blue Diamond and

5  the Earrings, near the end of June 2007 per the Consignment Agreement.  Along with the Earrings,

6  S.H. Silver also provided a copy of the certification from the SSEF Gemological Laboratory that

7  S.H. Silver held for the Sapphires.

8

9      10.     On June 28, 2007, Mr. Morris telephoned Mr. Silver to discuss the Blue Diamond.

10  Specifically, Mr. Morris told Mr. Silver that he had a client present at the store that had made an

11  offer at a set price for the Blue Diamond.  Mr. Morris indicated that David Morris wanted to proceed

12  with the sale to the client, but wanted to make a 10% commission against its client's offering, as

13  opposed to the consignment arrangement with S. H. Silver.  On behalf of S.H. Silver, Mr. Silver

14  agreed and a new agreement was reached with David Morris, whereby David Morris paid S.H. Silver

15  an amount equal to the price Mr. Morris indicated the client had offered less a 10% commission

16  against that price (as opposed to the higher consignment price S.H. Silver had set under the

17  Consignment Agreement).

18

19      11.     S.H. Silver is informed and believes and thereon alleges that Mr. Morris

20  misrepresented that he was present in the David Morris store with a client when he called Mr. Silver.

21  S.H. Silver is further informed and believes and thereon alleges that Mr. Morris failed to disclose

22  and instead concealed and suppressed (1) that Mr. Morris was not present with the client in the

23  David Morris store when he called Mr. Silver, (2) that Mr. Morris, or his agent, had taken the Blue

24  Diamond out of the David Morris store in London and brought it with him outside the United

25  Kingdom a few days prior to June 28, 2007, (3) that David Morris sold the Blue Diamond as just one

26  piece of multiple pieces of jewelry sold to a single buyer at the same time and (4) the allocation of

27  price of the Blue Diamond amongst the multiple pieces of jewelry that David Morris had sold as part

28  of the single transaction.  Had S.H. Silver known these facts, it would not have agreed to change the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  terms of the sale of the Blue Diamond and instead would have insisted on the original Consignment

2  Agreement and payment of the consignment price it had designated.

3

4      12.      Meanwhile, on or about July 3, 2007, Mr. Morris telephoned Mr. Silver and

5  expressed an interest in purchasing the Earrings directly for David Morris, as opposed to selling

6  them on consignment.  In turn, Mr. Silver came to the David Morris store, where he met Mr. Morris

7  and, negotiated a price to be paid immediately by wire to S.H. Silver's bank account in Redwood

8  City, California (the "Earring Agreement").  As a practical matter, David Morris already held the

9  Earrings per the Consignment Agreement, but title/possession was transferred contemporaneously

10 with the Earring Agreement, on or about July 3, 2007.

11

12     13.      Shortly after the sale pursuant to the Earring Agreement was completed, Mr. Morris

13 telephoned Mr. Silver and asked to adjust the payment terms of the Earring Agreement.  As a

14 courtesy and accommodation to David Morris, S.H. Silver agreed that David Morris could pay 50%

15 of the purchase price immediately and the balance in 45 days, or by August 16, 2007.  These terms

16 were documented in an invoice dated July 2, 2007 and bearing Invoice No. 9644.  A true and correct

17 copy of Invoice No. 9644 that was delivered to David Morris (with monetary values redacted) is

18 attached hereto as Exhibit A.

19

20     14.      David Morris did not make the first payment immediately, as it was required to do

21 under the Earring Agreement.  Instead, over two weeks passed, forcing S.H. Silver to contact David

22 Morris to request that the delinquent payment be made.  Mr. Silver spoke with Mr. Holbech, David

23 Morris' Sales Director and asked him to make arrangements to send payment or return the Earrings.

24 Thereafter, Mr. Holbech contacted Mr. Silver and indicated he had spoken with Mr. Morris and on

25 behalf of David Morris offered payment in full as a means to compensate for David Morris'

26 delinquency on the first payment.  Mr. Silver told Mr. Holbech it was not necessary to send the full

27 payment and asked David Morris to simply honor its original agreement and settle the invoice in full

28

DOCSSFO-12511350.5-JMITCHELL

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  on August 16, 2007.  On July 19, 2007, David Morris finally wired the first payment due under the

2  Earring Agreement to S.H. Silver's bank account in Menlo Park, California.

3

4      15.    The remaining balance was due on August 16, 2007.  In breach of the Earring

5  Agreement, David Morris did not make payment by August 16, 2007, and has not made any

6  payment since that time despite repeated inquiries.

7

8  ## FIRST CAUSE OF ACTION

9  (Breach of Contract – Earring Agreement)

10

11      16.    S.H. Silver repeats and realleges each and every allegation in the foregoing

12  paragraphs as though fully set forth herein.

13

14      17.    S.H. Silver has performed all conditions, covenants and promises required to be

15  performed by it in accordance with the terms and conditions of the Earring Agreement, except as to

16  those conditions which have been excused.

17

18      18.    David Morris has breached the Earring Agreement by failing to pay amounts owed to

19  S.H. Silver under the Earring Agreement.

20

21      19.    As a direct and proximate result of David Morris breach of the Earring Agreement,

22  S.H. Silver has incurred damages in an amount in excess of the jurisdictional minimum.

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

WHEREFORE, S.H. Silver prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### (Account Stated)

20.    S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

21.    Within the last four years, an account was stated between S.H. Silver and David Morris, wherein it was stated that David Morris was indebted to S.H. Silver for goods sold and delivered for a fixed sum (plus interest), the amount of which will be provided upon entry of an appropriate protective order.

22.    David Morris has failed to pay S.H. Silver sums due.

23.    There is now due, owing and unpaid a fixed sum (plus interest) to be provided upon entry of an appropriate protective order.

WHEREFORE, S.H. Silver prays for relief as set forth below.

## THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty)

24.    S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

25.    Pursuant to the Consignment Agreement, David Morris acted as S.H. Silver's agent for the purpose of selling certain jewelry pieces, including the Blue Diamond, and owed a fiduciary duty to S.H. Silver.

26.    David Morris breached its fiduciary duties to S.H. Silver by, among other things, concealing material facts, failing to disclose all information that a reasonable person would consider relevant, failing to deal fairly, honestly and in good faith with S.H. Silver and engaging in other wrongful acts and omissions set forth herein.

27.    As a direct and proximate result of David Morris' breach of its fiduciary duties, S.H. Silver has incurred damages in an amount to be proven at the time of trial.

28.    S.H. Silver is informed and believes and thereon alleges that David Morris perpetrated the above acts in a knowing, oppressive, willful, malicious and fraudulent manner, with the intent and purpose of advancing its own gain at the expense of S.H. Silver's rights and interests. As a result, S.H. Silver is entitled to punitive and exemplary damages.

WHEREFORE, S.H. Silver prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
### (Constructive Fraud)

29.    S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

30.    Pursuant to the Consignment Agreement, David Morris acted as S.H. Silver's agent for the purpose of selling certain jewelry pieces, including the Blue Diamond, and owed a fiduciary duty to S.H. Silver.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

31.    Despite having voluntarily accepted the trust and confidence S.H. Silver reposed in it, David Morris breached its fiduciary duties to S.H. Silver by, among other things, concealing material facts, failing to disclose all information that a reasonable person would consider relevant, failing to deal fairly, honestly and in good faith with S.H. Silver and engaging in other wrongful acts and omissions set forth herein.  In particular, after the Consignment Agreement was entered between David Morris and S.H. Silver, on June 28, 2007, Mr. Morris telephoned Mr. Silver and represented that he was at the David Morris store with a client interested in purchasing the Blue Diamond for a specific price.  Mr. Morris indicated that he wanted to proceed with the sale at the client's offering price and make a 10% commission on the sale, as opposed to the consignment arrangement under the Consignment Agreement.

32.    S.H. Silver is informed and believes and thereon alleges that Mr. Morris misrepresented that he was present in the David Morris store with a client when he called Mr. Silver. S.H. Silver is further informed and believes and thereon alleges that Mr. Morris failed to disclose and instead concealed and suppressed (1) that Mr. Morris was not present in the David Morris store with a client when he called Mr. Silver, (2) that Mr. Morris, or his agent, had taken the Blue Diamond out of the David Morris store in London and brought it with him outside the United Kingdom a few days prior to June 28, 2007, (3) that David Morris sold the Blue Diamond as just one piece of multiple of pieces of jewelry sold to a single buyer at the same time and (4) the allocation of price of the Blue Diamond amongst the multiple pieces of jewelry that David Morris had sold as part of the single transaction.

33.    S.H. Silver is informed and believes and thereon alleges that David Morris engaged in the acts and omissions described herein with the intent to deceive and defraud S.H. Silver into terminating the Consignment Agreement for the Blue Diamond and to enter a new agreement for a commission sale.  David Morris engaged in the acts and omissions described herein with the intent to induce reliance by S.H. Silver in the continuing fidelity of David Morris as an agent entrusted with the sale of S.H. Silver's jewelry pursuant to a consignment.

34.    S.H. Silver reasonably relied upon David Morris in view of its fiduciary role as an agent for S.H. Silver.  Had S.H. Silver known the true facts, it would not have agreed to pay a 10% commission on the sale of the Blue Diamond and instead would have insisted on the original consignment arrangement.

35.    As a direct and proximate result of David Morris' fraudulent conduct, S.H. Silver has incurred damages in an amount to be proven at the time of trial.

36.    S.H. Silver is informed and believes and thereon alleges that David Morris perpetrated the above acts in a knowing, oppressive, willful, malicious and fraudulent manner, with the intent and purpose of advancing their own gain at the expense of S.H. Silver's rights and interests.  As a result, S.H. Silver is entitled to punitive and exemplary damages.

WHEREFORE, S.H. Silver prays for relief as set forth below.

## FIFTH CAUSE OF ACTION

(Fraud -- Suppression of Fact)

37.    S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

38.    After the Consignment Agreement was entered between David Morris and S.H. Silver, on June 28, 2007, Mr. Morris telephoned Mr. Silver and represented that he was at the David Morris store with a client who had made an offer to purchase the Blue Diamond for specific price. Mr. Morris indicated that he wanted to proceed with the sale, but instead of proceeding with the sale under the terms of the Consignment Agreement, he wanted a 10% commission against his client's offer.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

39.    S.H. Silver is informed and believes and thereon alleges that Mr. Morris failed to disclose and instead concealed and suppressed (1) that Mr. Morris was not present in the David Morris store with a client when he called Mr. Silver, (2) that Mr. Morris, or his agent, had taken the Blue Diamond out of the David Morris store in London and brought it with him outside the United Kingdom a few days prior to June 28, 2007, (3) that David Morris sold the Blue Diamond as just one piece of multiple pieces of jewelry sold to a single buyer at the same time and (4) the allocation of price of the Blue Diamond amongst the multiple pieces of jewelry that David Morris had sold as part of the single transaction.

40.    S.H. Silver is informed and believes and thereon alleges that David Morris engaged in the acts and omissions described herein with the intent to deceive and defraud S.H. Silver into terminating the Consignment Agreement for the Blue Diamond and to enter a new agreement for a commission sale.

41.    S.H. Silver, at the time of these failures to disclose and suppressions of fact, and at the time S.H. Silver took the actions herein alleged, was ignorant of the existence of the facts that David Morris failed to disclose. Had S.H. Silver known the true facts, it would not have agreed to pay a 10% commission on the sale of the Blue Diamond and instead would have insisted on the original consignment arrangement. S.H. Silver's reliance on David Morris' representations was justified because it could not, in the exercise of reasonable diligence, have discovered David Morris' suppressions of fact.

42.    As a direct and proximate result of David Morris' fraudulent conduct, S.H. Silver has incurred damages in an amount to be proven at the time of trial.

43.    As a proximate result of David Morris' fraudulent conduct, as alleged herein, and S.H. Silver's acts in reliance on or because of such fraudulent conduct, S.H. Silver has been damaged in an amount to be proven at the time of trial.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

44.     S.H. Silver is informed and believes and thereon alleges that David Morris perpetrated the above acts in a knowing, oppressive, willful, malicious and fraudulent manner, with the intent and purpose of advancing their own gain at the expense of S.H. Silver's rights and interests.  As a result, S.H. Silver is entitled to punitive and exemplary damages.

WHEREFORE, S.H. Silver prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

(Unjust Enrichment)

45.     S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

46.     As a result of David Morris' actions, David Morris has been unjustly enriched in an amount to be determined at trial.  David Morris' unjust enrichment comes at the expense and to the detriment of S.H. Silver.

47.     It is unconscionable and unjust for David Morris to retain the money and profits it will receive at the expense and to the detriment of S.H. Silver.

48.     Accordingly, S.H. Silver is entitled to recover the amount by which David Morris was unjustly enriched at S.H. Silver's expense.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSSFO-12511350.5-JMITCHELL

WHEREFORE, S.H. Silver prays for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, S.H. Silver prays for relief as follows:

1.    That judgment be entered in favor of S.H. Silver and against David Morris on all causes of action;

2.    For compensatory damages in an amount to be determined at trial;

3.    For all ill-gotten profits received by David Morris as a result of its breach of its fiduciary duties;

4.    For the amounts by which David Morris has been unjustly enriched;

5.    For exemplary and punitive damages;

6.    For S.H. Silver's reasonable attorneys' fees and costs;

DOCSSFO-12511350.5-JMITCHELL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

7.    For pre-judgment interest according to proof; and

8.    For such other relief as the Court deems just and proper.

DATED: June 17, 2008.

REED SMITH LLP

By _____
Scott D. Baker
Jonah D. Mitchell
Attorneys for Plaintiff
S.H. Silver Company

DOCSSFO-12511350.5-JMITCHELL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware



**S.H. SILVER COMPANY, INC,**
800 EL CAMINO REAL, SUITE 230, MENLO PARK, CA 94025
TEL: 650-325-9500 • FAX: 650-325-9518
E-MAIL: info@shsilver.com

**INVOICE**

9644

SHIPPED TO

David Morris
180 New Bond Street
London W1S4RL

| INVOICE DATE | DATE SHIPPED | OUR ORDER NO. | YOUR ORDER NO. | TERMS | F.O.B. | SALESPERSON | SHIPPED VIA |
|---|---|---|---|---|---|---|---|
| 7/2/07 | | | | | | | |

13087  Plat, diamond & Kashmir Sapp  TOTAL

earings  Tax  P/S

(12646 Plat & diamond earring semis)

TOTAL

Terms:      net cash

15 days

**REDACTED**

Due on receipt. A service charge of 1 1/2% per month will be charged on past due accounts.

**THANK YOU**

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* | **FOR COURT USE ONLY** |

Jonah D. Mitchell (SBN 203511)

REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922
TELEPHONE NO.: (415) 543-8700   FAX NO.: (415) 391-8269
ATTORNEY FOR *(Name):* S.H. SILVER COMPANY, INC.

**RECEIVED**

**JUN 17 2008**

CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
  STREET ADDRESS: 400 County Center, Second Floor
  MAILING ADDRESS:
  CITY AND ZIP CODE: Redwood City, CA 94063
  BRANCH NAME:

CASE NAME: S.H. Silver Company, Inc. v. David Morris
International Ltd.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CV 473796 |
|---|---|---|---|---|
| X Unlimited (Amount demanded exceeds $25,000) | Limited (Amount demanded is $25,000 or less) | Counter   Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403) |
|---|---|---|
| Auto (22) | [X] Breach of contract/warranty (06) | Antitrust/Trade regulation (03) |
| Uninsured motorist (46) | Rule 3.740 collections (09) | Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | Other collections (09) | Mass tort (40) |
| Asbestos (04) | Insurance coverage (18) | Securities litigation (28) |
| Product liability (24) | Other contract (37) | Environmental/Toxic tort (30) |
| Medical malpractice (45) | **Real Property** | Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| Other PI/PD/WD (23) | Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | Wrongful eviction (33) | **Enforcement of Judgment** |
| Business tort/unfair business practice (07) | Other real property (26) | Enforcement of judgment (20) |
| Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| Defamation (13) | Commercial (31) | RICO (27) |
| Fraud (16) | Residential (32) | Other complaint *(not specified above)* (42) |
| Intellectual property (19) | Drugs (38) | **Miscellaneous Civil Petition** |
| Professional negligence (25) | **Judicial Review** | Partnership and corporate governance (21) |
| Other non-PI/PD/WD tort (35) | Asset forfeiture (05) | Other petition *(not specified above)* (43) |
| **Employment** | Petition re: arbitration award (11) | |
| Wrongful termination (36) | Writ of mandate (02) | |
| Other employment (15) | Other judicial review (39) | |

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: June 17, 2008

Jonah D. Mitchell (SBN 203511)
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** Legal Solutions Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

# NOTICE OF CASE MANAGEMENT CONFERENCE

S H Silver

Case No. **CV 473796**

vs.

**ENDORSED FILED**
**SAN MATEO COUNTY**

Date: OCT 3 1 2008

Time: 9:00 a.m.

Mau. J Matt. J

JUN 1 7 2008

Clerk of the Superior Court
By G. Jackson
DEPUTY CLERK

Dept. 3 – on Tuesday & Thursday
Dept. 28 – on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of Court and Local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

   a. Serve all named defendants and file proofs of service on those defendants with the court within 60 days of filing the complaint (CRC 201.7).
   b. Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.
   c. File and serve a completed Case Management Statement at least 15 days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.
   d. Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30 days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Continuances of case management conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation To ADR and Proposed Order (see attached form). If plaintiff files a Stipulation To ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a **completed stipulation** to another ADR process (e.g., mediation) **10 days** prior to the first scheduled case management conference, the case management conference will be continued for 90 days to allow parties time to complete their ADR session. The court will notify parties of their new case management conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off the Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management judge will issue orders at the conclusion of the conference that may include:

   a. Referring parties to voluntary ADR and setting an ADR completion date;
   b. Dismissing or severing claims or parties;
   c. Setting a trial date.

8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org.

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference (see attached CourtCall information).

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

CM-110

FOR COURT USE ONLY

TELEPHONE NO:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:    Superior Court of California
MAILING ADDRESS:   County of San Mateo
CITY AND ZIP CODE: 400 County Center
BRANCH NAME:       Redwood City, CA 94063-1655

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one): ☐ UNLIMITED CASE (Amount demanded exceeds $25,000) ☐ LIMITED CASE (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date:                    Time:              Dept.:           Div.:              Room:
Address of court (if different from the address above):

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

CASE MANAGEMENT STATEMENT

Page 1 of 4
Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
   The party or parties request ☐ a jury trial ☐ a nonjury trial   *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a.  ☐  The trial has been set for *(date):*
   b.  ☐  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one):*
   a.  ☐  days *(specify number):*
   b.  ☐  hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
   a.  Attorney:
   b.  Firm:
   c.  Address:
   d.  Telephone number:
   e.  Fax number:
   f.  E-mail address:
   g.  Party represented:
   ☐  Additional representation is described in Attachment 8.

9. **Preference**
   ☐  This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
    a.  Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b.  ☐  All parties have agreed to a form of ADR. ADR will be completed by *(date):*
    c.  ☐  The case has gone to an ADR process *(indicate status):*

| PLAINTIFF/PETITIONER: | CASE NUMBER: | CM-110 |
|---|---|---|
| DEFENDANT/RESPONDENT: | | |

10. d.  The party or parties are willing to participate in (check all that apply):
- (1) ☐ Mediation
- (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
- (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
- (4) ☐ Binding judicial arbitration
- (5) ☐ Binding private arbitration
- (6) ☐ Neutral case evaluation
- (7) ☐ Other (specify):

e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court (specify exemption):

**11. Settlement conference**

☐ The party or parties are willing to participate in an early settlement conference (specify when):

**12. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement (name):

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case (explain):

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy ☐ Other (specify):

Status:.

**14. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.
- (1) Name of case:
- (2) Name of court:
- (3) Case number:
- (4) Status:

☐ Additional cases are described in Attachment 14a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by (name party):

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action (specify moving party, type of motion, and reasons):

**16. Other motions**

☐ The party or parties expect to file the following motions before trial (specify moving party, type of motion, and issues):

| | | | **CM-110** |
|---|---|---|---|
| PLAINTIFF/PETITIONER: | | CASE NUMBER: | |
| DEFENDANT/RESPONDENT: | | | |

**Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues are anticipated *(specify)*:

**Economic Litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**Case management orders**

Previous case management orders in this case are *(check one)*: ☐ none ☐ attached as Attachment 21.

Total number of pages attached *(if any)*: _____

...n completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues ...ed by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management ...nference, including the written authority of the party where required.

...te:

| | | |
|---|---|---|
| _____ | ▶ | _____ |
| (TYPE OR PRINT NAME) | | (SIGNATURE OF PARTY OR ATTORNEY) |
| _____ | ▶ | _____ |
| (TYPE OR PRINT NAME) | | (SIGNATURE OF PARTY OR ATTORNEY) |
| | | ☐ Additional signatures are attached |

Superior Court of California - County of San Mateo

## ADR Stipulation and Evaluation Instructions

In accordance with *Local Rule 2.3(i)(3)*, all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court. The Office of the Clerk is located at:

Clerk of the Superior Court, Civil Division
Attention: Case Management Conference Clerk
Superior Court of California, County of San Mateo
400 County Center
Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

☐ Original signatures for all attorneys (and/or parties in pro per);
☐ The name of the neutral;
☐ Date of the ADR session; and
☐ Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral. If parties would like a copy of the San Mateo County Superior Court's ADR Panelist List and information sheets on individual panelists, they may go to the court's website (see below) or contact the ADR Coordinator at (650) 363-1962 or (650) 599-1070.

### If Filing the Stipulation Prior to an Initial Case Management Conference

To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference. The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

### If Filing Stipulation Following a Case Management Conference

When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [*Local Rule 2.3(i)(3)*].

### Post-ADR Session Evaluations

*Local Rule 2.3(i)(5)* requires submission of post-ADR session evaluations within 10 days of completion of the ADR process. Evaluations are to be filled out by both attorneys and clients. A copy of the Evaluation By Attorneys and Client Evaluation are attached to the ADR Panelist List or can be found on the court's web site.

### Non-Binding Judicial Arbitration

Names and dates are not needed for stipulations to judicial arbitration. The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted. The Judicial Arbitration Administrator can be contacted at (650) 363-4896. For further information regarding San Mateo Superior Court's ADR program, contact the ADR offices at (650) 599-1070 or the court's ADR web site at http://www.co.sanmateo.ca.us.sanmateocourts/adr.htm.

ADR-CV-1 [Rev. 9/04]

# Appropriate Dispute Resolution (ADR) Information Sheet
## Superior Court of California, San Mateo County

*Appropriate Dispute Resolution (ADR) is a way of solving legal problems without going to trial. All types of disputes can be resolved through ADR. The Court encourages you to use some form of ADR before you proceed to trial. The most popular form of ADR is mediation. The Multi-Option ADR Project can help you choose the option that is best for your case and refer you to an experienced ADR provider.*

## What are the Advantages of Using ADR?

- *Faster* – Traditional litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control & flexibility* – Parties choose the ADR process most appropriate for their case.

- *Cooperative & less stressful* – In mediation, parties cooperate to find a mutually agreeable solution to their dispute.

## What are the Disadvantages of Using ADR?

- *You may go to Court anyway* – If you can't resolve your case using ADR, you may still have to spend time and money on your lawsuit.

- *Not free* – The neutrals charge fees (except in judicial arbitration), but you may qualify for financial aid.

## Are There Different Kinds of ADR?

- **Mediation** - A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options and agree on a solution that is acceptable to all sides.

- **Judicial Arbitration** – Is an informal hearing where a neutral person (arbitrator) reviews the evidence, hears arguments and makes a decision on your case. In non-binding judicial arbitration, parties have the right to reject the arbitrator's decision and proceed to trial. For more information regarding judicial arbitration, please see the attached sheet or call (650) 363-4896.

- **Binding Arbitration** - The parties agree ahead of time to accept the arbitrator's decision as final. Parties who choose binding arbitration give up their right to go to Court and their right to appeal the arbitrator's decision.

- **Neutral Evaluation** - A neutral person (evaluator) listens to the parties, asks them questions about their case, reviews evidence and may hear witness testimony. The evaluator helps the parties identify the most important legal issues in their case and gives them an analysis of the strengths and weaknesses of each side's case. Special neutral evaluation guidelines are available on the Court's website at www.sanmateocourt.org/adr.

- **Settlement Conference** – Although similar to mediation, the neutral (a judge) may take more control in encouraging parties to settle. Settlement conferences take place at the courthouse. All cases have a mandatory settlement conference approximately 2-3 weeks before the trial date. For questions regarding settlement conferences, call (650) 599-1076.

Form adopted for Mandatory Use
Local Court Form ADR-CV-8 [New September, 2007]

[CA Rule of Court §3.221]
www.sanmateocourt.org

### How Does Voluntary Mediation/Neutral Evaluation Work in San Mateo County?

- ❑  The person who files the lawsuit (the plaintiff) must include this ADR Information Sheet with the complaint when serving the defendants in the case.

- ❑  All the parties in your case will meet with a judge at your first Case Management Conference (CMC), which is scheduled within 120 days of the filing of the complaint. The judge will speak to you about your voluntary ADR options, encourage you to participate in ADR and ask you to meet with Court ADR staff.

- ❑  If you and the parties decide to use ADR, Local Rule 2.3(i)(3) states that you must file a *Stipulation and Order to ADR* with the Court Clerk's Office. This form lets the Court know both whom you have selected as your ADR neutral and the date of the ADR session.

- ❑  You and the other parties can find your own ADR neutral for the case or use a neutral who is on the Court's ADR Panel.
  - ○  For a list of Court ADR neutrals and their resumes, visit the Court's website at www.sanmateocourt.org/adr. (Go to "Civil ADR Program," "Civil ADR Program Panelist List" and click on any provider's name.)

- ❑  If you decide to do ADR and file a *Stipulation and Order to ADR* at least 10 days before your first CMC, the Court will postpone (continue) your first CMC for 90 days to allow the parties time to resolve the case using ADR. The Clerk's Office will send you a notice with your new CMC date.

- ❑  Within 10 days of completing ADR, you and your lawyer (if you have one) must fill out either an Evaluation By Attorneys or Client Evaluation and mail or fax it to the ADR offices at: 400 County Center, Courtroom 2F, Redwood City, CA 94063; (650) 599-1754 (fax).

### Do I Have to Pay to Use ADR?

- ❑  Yes. You and the other parties will pay the ADR neutral directly. However, you do not have to pay the Court for either judicial arbitration or for the mandatory settlement conference that is scheduled before your trial.

- ❑  If you expect to have difficulty paying the ADR provider's fee, ask the ADR Coordinator for a financial aid application. You will need to fill out this application to determine whether or not you qualify for financial assistance.

---

In San Mateo County, parties also can take their case to the community mediation organization, the Peninsula Conflict Resolution Center ("PCRC"), and have their case mediated by PCRC's panel of trained and experienced volunteer mediators. To learn more about programs and fees, contact PCRC's Manager of Mediation Programs at (650) 513-0330.

---

**For more information, visit the court website at www.sanmateocourt.org/adr or contact the Multi-Option ADR Project: 400 County Center, Courtroom 2F, Redwood City, CA 94063. (650) 599-1070, (650) 599-1073/fax: (650) 599-1754**

Appropriate Dispute Resolution Information Sheet

Form adopted for Mandatory Use
Local Court Form ADR-CV-8 (New September, 2007)

[CA Rule of Court §3.221]
www.sanmateocourt.org

*Judicial Arbitration, one of the available Appropriate Dispute Resolution (ADR) options, differs from other options in that it is usually court-ordered, unless the parties agree to it.*

## What are the Advantages of Using Judicial Arbitration?

- *Free* - Parties do not have to pay for the arbitrator's fee.

- *Fast* - Parties are usually given 120 days from the date of the Case Management Conference (CMC) to have their case heard by the appointed arbitrator.

- *Informal* - The hearing is conducted by an arbitrator who issues an award. (Arbitrators are usually attorneys who practice or have practiced in San Mateo County.)

## What are the Disadvantages of Using Judicial Arbitration?

- The award issued by the arbitrator is not always binding (unless the parties stipulated otherwise). If any party requests a trial within 30 days of the award, the award becomes void and the case continues on to trial.

## How Does Judicial Arbitration Work in San Mateo County?

- During your first CMC hearing, the judge may decide to order you to judicial arbitration. You will receive instructions and a proposed list of arbitrators in the mail.

- Parties also may agree to judicial arbitration by filing a *Stipulation and Order to ADR* form at least 10 days before the first CMC. The CMC clerk will then vacate your CMC hearing and send the case to arbitration. The parties will receive instructions and a proposed list of arbitrators in the mail.

- Parties can stipulate (agree) to an arbitrator on the Court's Judicial Arbitration Panel list. Otherwise, proposed names of arbitrators will be sent to the parties.

  - For a list of arbitrators, their resumes, and other information, visit the Court's website at www.sanmateocourt.org/adr. (Go to "Judicial Arbitration Program," "Judicial Arbitration Panelist List" and click on the arbitrator's name. To view the arbitrators by subject matter, click on "Judicial Arbitration Panelists by Subject Matter.")

- After the arbitration hearing is held and the arbitrator issues an award, the parties have 30 days to turn down/reject the award by filing a Trial de Novo (unless they have stipulated that the award would be binding).

- If the parties reject the award and request a Trial de Novo, the Court will send out notices to the parties of the Mandatory Settlement Conference date and the trial date.

- Following your arbitration hearing, you will also receive an evaluation form to be filled out and returned to the Arbitration Administrator.

**For more information, visit the court website at www.sanmateocourt.org/adr or contact Judicial Arbitration: 400 County Center, First Floor, Redwood City, CA 94063. Phone: (650) 363-4896 and Fax: (650) 365-4897**

Form adopted for Mandatory Use
Local Court Form ADR-CV-8 (New September, 2007)

[CA Rule of Court §3.221]
www.sanmateocourt.org

| Attorney or Party without Attorney<br>(Name, Address, Telephone, Fax, State Bar membership number): | Court Use Only |
|---|---|
| Superior Court of California, County of San Mateo<br>Hall of Justice and Records<br>400 County Center<br>Redwood City, CA 94063-1655   (650) 363-4711 | |
| Plaintiff(s): | Case Number: |
| Defendant(s): | Current CMC Date: |

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Plaintiff will file this stipulation with the Clerk's Office 10 days prior to or 3 weeks following the first Case Management Conference unless directed otherwise by the Court and ADR Director [*Local Rule 2.3(i)(3)*]. Please attach a Service List.

The parties hereby stipulate that all claims in this action shall be submitted to (select one):

☐ Voluntary Mediation  
☐ Neutral Evaluation  
☐ **Non-Binding Judicial Arbitration CCP 1141.12**  
☐ Other: _____

☐ Binding Arbitration (private)  
☐ Settlement Conference (private)  
☐ Summary Jury Trial

Case Type: _____

Neutral's name and telephone number: _____

Date of session: _____

(Required for continuance of CMC except for non-binding judicial arbitration)

Identify by name the parties to attend ADR session: _____

### ORIGINAL SIGNATURES

Type or print name of ☐ Party without attorney

☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

☐ Attorney for (Signature)

Attorney or Party without attorney

Type or print name of ☐ Party without attorney

☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

☐ Attorney for (Signature)

Attorney or Party without attorney

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Type or print name of ☐Party without attorney

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant

☐Attorney for (Signature)

Attorney or Party without attorney

Type or print name of ☐Party without attorney

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant

☐Attorney for (Signature)

Attorney or Party without attorney

IT IS SO ORDERED:

DATE:

JUDGE OF THE SUPERIOR COURT OF SAN MATEO COUNTY

Superior Court of California, County of San Mateo

# DIVISION II
## COURT MANAGEMENT - SUPERIOR COURT

### CHAPTER 1. FORM AND SERVICE OF PAPERS

Rule 2.0  Transfer of Court-Related Functions of the County Clerk to the Superior Court

Pursuant to the authority contained in Government Code section 69898, the court hereby transfers from the County Clerk to the Superior Court Executive Officer, under the direction of the Presiding Judge, all of the powers, duties, and responsibilities required or permitted to be executed or performed by the County Clerk in connection with judicial actions proceedings, and records.

(Adopted, effective July 1, 1996.)

Rule 2.1  Form of Papers Presented for Filing

Reference, CRC, rule 2.100, et seq.

(Adopted, effective July 1, 1996) (Amended effective January 1, 2000) (Amended, effective January 1, 2007)

Rule 2.1.1 Citations to Non-California Authorities.

(Adopted, effective July 1, 1996)(Repealed, effective January 1, 1999)

Rule 2.1.2  Requests for Judicial Notice

(Adopted, effective July 1, 1996)(Repealed, effective January 1, 1999)

Rule 2.1.3 California Environmental Quality Act (CEQA)

If a petition for writ of mandate includes claims under CEQA (Public Resources Code section 21000 et. seq.), the case will be assigned to a judge designated to hear CEQA actions pursuant to Public Resources Code section 21167.1.  Plaintiff shall identify the petition as being filed pursuant to "CEQA" on the face of the petition.

(Adopted, effective January 1, 1999)(renumbered from 2.1.4 effective January 1,2000)

Rule 2.1.4 Documents Produced Through a Nonparty

If a party proposes to obtain documents in the custody of a nonparty, as by a subpoena duces tecum, and such documents may be produced by certification or otherwise in lieu of personal appearance by a witness custodian, the request for such documents should specify that they be delivered not later than the first day for which the trial is calendared.

(Adopted, effective January 1, 2000)

Superior Court of California, County of San Mateo

## CHAPTER 2. CIVIL TRIAL COURT MANAGEMENT RULES
### PART 1. MANAGEMENT DUTIES

Rule 2.2  Trial Court Management

Reference CRC, rules 3.700, 3.710-3.713, 10.900, 10.901

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2007)

### PART 2. CASEFLOW MANAGEMENT

Rule 2.3  New Case Management

This rule applies to all civil cases with the exception of the following: (1) juvenile court matters; (2) probate matters; (3) family law matters; and (4) civil cases which, based on subject matter, have been assigned to a judge, or to more than one judge, for all purposes. For rules applicable to these exceptions, see CRC 2.20, 2.30, 2.570-2.573, 2.585, 2.810-2.819, 2.830-2.834, 3.650, 3.700-3.735, 3.920-3.927, 3.1370, 3.1380-3.1385, 3.1590-3.1591, 3.1806, 5.590, 10.900-10.901, 10.910, 10.950-10.953,.

(a)    Purposes and Goals

The purposes and goals of the San Mateo Superior Court Civil Case Management System effective January 1, 1992 are:

(1)    To manage fairly and efficiently, from commencement to disposition, the processing of civil litigation.

(2)    To prepare the bench and bar for full implementation of the Trial Court Delay Reduction Act (A.B. 3820) on July 1, 1992; and

(3)    To encourage parties to agree to informal discovery early in the life of the case, to use standard form interrogatories and to promote alternative dispute resolution. Nothing in these rules is intended to prevent the parties from stipulating to an earlier intervention by the court by way of a case management conference, settlement conference or any other intervention that seems appropriate.

(4)    In accordance with Sections 3.710-3.715, 10.900, 10.901 of the California Rules of Court, Local Rule 2.3 is adopted to advance the goals of Section 68603 of the Government Code and Section 2.1 of the Standards of Judicial Administration recommended by the Judicial Council.

(b)    Team concept

Beginning January 1, 1994 civil litigation will be managed primarily by a team of two program judges.

The clerk will assign the case to a program judge at the time the complaint is filed. The case shall be managed by the assigned program judge until disposition or until the case is assigned to a trial department.

Superior Court of California, County of San Mateo

(c)    Cases filed after July 1, 1992

Upon the filing of a complaint after July 1, 1992, the case shall be subject to all of the civil case management system rules set forth below. Cases filed <u>before</u> July 1, 1992 shall also be subject to these rules except for subsection (d) (Filing and service of pleadings; exceptions).

(d)    Filing and service of pleadings; exceptions.

(1)    Complaint: Except as provided in paragraph 5 below, plaintiff shall within 60 days after filing of the complaint serve the complaint on each defendant along with:

(A)    A blank copy of the Judicial Council Case Management Statement;

(B)    A copy of Local Rule 2.3;

(C)    The Notice of Case Management Conference.

If a matter has been submitted to arbitration pursuant to uninsured motorist insurance, the plaintiff shall file a notice to that effect with the court at the time of filing the complaint, or at the time the matter is submitted. The notice shall include the name, address and telephone number of the insurance company, along with the claim number or other designation under which the matter is being processed.

(2)    Cross-complaint: Except as provided in paragraph 5 below, each defendant shall within 30 days after answering the complaint file any cross-complaint (within 50 days if compliance with a governmental claims statute is a prerequisite to the cross-complaint) not already served with the answer under Code of Civil Procedure section 428.50 and serve with that cross-complaint:

(A)    A blank copy of the Judicial Council Case Management Statement;

(B)    A copy of Local Rule 2.3;

(C)    The Notice of Case Management Conference.

(3)    Responsive pleadings: Except as provided in paragraph 5 below, each party served with a complaint or cross-complaint shall file and serve a response within 30 days after service. The parties may by written agreement stipulate to one 15-day extension to respond to a complaint or cross-complaint.

If the responsive pleading is a demurrer, motion to strike, motion to quash service of process, motion for a change of venue or a motion to stay or dismiss the case on forum non conveniens grounds, and the demurrer is overruled or the motion denied, a further responsive pleading shall be filed within 10 days following notice of the ruling unless otherwise ordered. If a demurrer is sustained or a motion to strike is granted with leave to amend, an amended complaint shall be filed within 10 days following notice of the ruling unless otherwise ordered. The court may fix a time for filing pleadings responsive to such amended complaint.

(4)    Proofs of service: Proofs of service must be filed at least 10 calendar days before the case management conference.

(5)    Exceptions for longer periods of time to serve or respond:

Superior Court of California, County of San Mateo

(A)     Time to serve may be extended for good cause: Upon ex parte application to the court, *in compliance with California Rule of Court 379(g)*, within 60 days of the date the complaint was filed, plaintiff may obtain an extension of time to serve to a date on or before the case management conference, if good cause is shown by declaration of counsel (or plaintiff filing in propria persona). An additional extension of the time to serve (an initial extension if the application is by a cross-complainant) may be obtained upon written application to the court upon good cause shown before the prior extension has expired. The filing of a timely application for an extension will automatically extend the time to serve by five days, whether or not the application is granted.

Good cause will be found if the declaration shows that the action is filed against a defendant who is an uninsured motorist, and the plaintiff's claim is subject to an arbitration provision in plaintiff's contract of insurance. In determining good cause in other cases, the court will give due consideration to any standards, procedures and policies which have been developed in consultation with the bar of the county through the bench-bar trial court delay committee.

(B)     Additional extension of time if uninsured motorist arbitration is pending. In addition to any extension of time obtained pursuant to subsection (5)(A) above, if an uninsured motorist arbitration is still pending between plaintiff and plaintiff's insurance carrier 30 days prior to the expiration of the extension, plaintiff may obtain an additional extension of time by an ex parte application supported by a declaration showing the scheduled or anticipated date of the arbitration hearing and the diligence of plaintiff in pursuing arbitration.

(C)     Time to respond may be extended for good cause: Before the time to respond has expired, any party served with a complaint or cross-complaint may, with notice to all other parties in the action, make ex parte application to the court upon good cause shown for an extension of time to respond. The filing of a timely application for an extension will automatically extend the time to respond by five days, whether or not the application is granted.

(e)     Case management conference

(1)     Date of conference: Unless the parties stipulate in writing and the court orders that the case be earlier referred to arbitration, a case management conference will be set by the clerk at the time the complaint is filed. (Government Code 68616)

(2)     Attendance at the case management conference is mandatory for all parties or their attorneys of record.

(3)     Plaintiff must serve the Notice of Case Management on all parties no later than 30 calendar days before the conference, unless otherwise ordered by the Court.

(4)     The Court will deem the case to be at-issue at the time of the conference (Reference: CRC 3.714(a)) absent a showing of extraordinary circumstances.

(5)     The conference may be set at an earlier date by order of the Court or by written stipulation of the parties.

(6)     Designation of trial counsel: Trial counsel and, except for good cause shown, back-up trial counsel, must be specified at the case management conference. If such counsel is not

Superior Court of California, County of San Mateo

specified, relief from the scheduled trial date may not be obtained based upon the ground that counsel is engaged elsewhere.

(7)    Conference orders:  At the initial conference, the program judge will make appropriate pre-trial orders that may include the following:

(A)    An order referring the case to arbitration, mediation or other dispute resolution process;

(B)    An order transferring the case to the limited jurisdiction of the superior court;

(C)    An order assigning a trial date;

(D)    An order identifying the case as one which may be protracted and determining what special administrative and judicial attention may be appropriate, including special assignment;

(E)    An order identifying the case as one which may be amenable to early settlement or other alternative disposition technique;

(F)    An order of discovery; including but not limited to establishing a discovery schedule, assignment to a discovery referee, and/or establishing a discovery cut-off date;

(G)    An order scheduling the exchange of expert witness information;

(H)    An order assigning a mandatory settlement conference date pursuant to Local Rule 2.3(k) and 2.4; and

(J)    Other orders to achieve the interests of justice and the timely disposition of the case.

(8)    CourtCall Telephonic Appearances

(A)    Reference CRC, Rule 3.670

(B)    Procedure. Telephonic appearances through the use of CourtCall, an independent vendor, are permitted at case management conference hearings.  A party wishing to make a telephone appearance must serve and file a Request for Telephone Appearance Form with CourtCall not less than five court days prior to the case management conference hearing.   Copies of the Request for CourtCall Appearance form and accompanying information sheet are available in the Clerk's office.  There is a fee to parties for each CourtCall appearance and fees are paid directly to CourtCall.   CourtCall will fax confirmation of the request to parties.

(C)    On the day of the case management conference hearing, counsel and parties appearing by CourtCall must check-in five minutes prior to the hearing.  Check-in is accomplished by dialing the courtroom's dedicated toll-free teleconference number and access code that will be provided by CourtCall in the confirmation. Any attorney or party calling after the check-in period shall be considered late for the hearing and shall be treated in the same manner as if the person had personally appeared late for the hearing.

Superior Court of California, County of San Mateo

> (D)    At a case management conference, parties may be referred to an appropriate dispute resolution ("ADR") process (e.g., mediation, binding arbitration or neutral evaluation). If parties are referred ADR, they must redial the dedicated toll-free teleconference number immediately following their case management conference appearance and use a second CourtCall access code to telephonically appear at the ADR referral meeting with ADR staff. If a case has been referred to ADR, a party's case management conference appearance is not complete until they have also telephonically appeared at the mandatory ADR referral. If parties are referred to judicial arbitration, they do not have to appear at the ADR referral.

(f)    Case Management Statement

At least 15 calendar days before the scheduled case management conference, each party shall file with the court and serve on all other parties a completed Judicial Council Case Management Statement. If the case is set for further case management conference hearing(s), all parties must file updated Case Management Statements 15 (fifteen) calendar days prior to the scheduled hearings(s).

(g)    Appropriate Dispute Resolution, ADR, Policy Statement

The Court finds it is in the best interests of parties to litigation to participate in appropriate dispute resolution procedures, including but not limited to mediation, neutral evaluation, private or judicial arbitration, voluntary settlement conferences, and the use of special masters and referees. Therefore, all parties shall stipulate to, or be referred to, an appropriate form of dispute resolution before being set for trial, unless there is good cause to dispense with this requirement. Parties are encouraged to stipulate to judicial arbitration or ADR prior to the case management conference.

(h)    Stipulations to Arbitration

(1)    If the case is at issue, and all counsel and each party appearing in propia persona stipulate in writing to judicial arbitration prior to the case management conference, discovery will remain open following judicial arbitration. A written stipulation to judicial arbitration must be filed with the clerk and a copy immediately sent to the Master Calendar Coordinator at least 10 calendar days before the case management conference in order to avoid the need to appear at that conference. A written stipulation to arbitrate will be deemed to be without a limit as to the amount of the award unless it expressly states otherwise.

(2)    It is the policy of this court to make every effort to process cases in a timely manner. Parties who elect or are ordered b the court to judicial arbitration must complete the arbitration hearing within the time frame specified by the court.

Parties who wish to continue the arbitration hearing after the jurisdictional time frame must submit a court provided form entitled "*Ex Parte Motion and Stipulation for continuance of Judicial arbitration Hearing.*" Parties can obtain a copy of the form by contacting the court's judicial arbitration administrator [See Local Rule 10.1(d)(1). Continuances without adequate grounds will not be considered. A case management judge will either grant or deny the request for continuance. If the request is denied, the case may be assigned a trial date. If the request is granted, the judge will impose a new deadline by which the arbitration must be completed.

(3)    Parties who wish to change their election from judicial arbitration to another form of ADR must file a "Stipulation and [Proposed] Order to [Mediation, Neutral Evaluation, etc.] in Lieu of [Court-Ordered] Judicial Arbitration" with the Clerk of the Court. The Stipulation must

Superior Court of California, County of San Mateo

state that parties have: (i) notified both the judicial arbitration and ADR coordinators; (ii) cancelled the judicial arbitration hearing: (iii) scheduled the ADR session within five months of the previously scheduled judicial arbitration hearing; and (iv) stipulated to a trial date, which is not more than six months from the previously scheduled judicial arbitration hearing.

(i)    Stipulations to Private ADR

(1)    If a case is at issue and all counsel and each party appearing in propria persona stipulate in writing to ADR and file a completed Stipulation and Order to ADR with the clerk of the court at least ten (10) calendar days before the first scheduled case management conference, that conference shall be continued 90 days.  The court shall notify all parties of the continued case management conference.

(2)    If counsel and each party appearing in propria persona are unable to agree upon an appropriate ADR process, they shall appear at the case management conference.

(3)    Following an appearance at a case management conference hearing, parties shall, within 21 calendar days , file a completed Stipulation to ADR and Proposed Order identifying the name of the ADR provider, date of ADR session and the names of those who will be in attendance at the ADR session.  The completed Stipulation to ADR and Proposed Order shall be filed with the court by plaintiff's counsel.  The parties, through counsel, if represented, shall confer with the court's Multi-Option ADR Project (M.A.P.) staff if they cannot agree on a provider.  Plaintiff's counsel, shall additionally, send a copy of the completed Stipulation to the court's M.A.P. offices within the same 21-day period.

(4)    All parties and counsel shall participate in the ADR process in good faith.

(5)    To maintain the quality of ADR services the court requires cooperation from all parties, counsel and ADR providers in completing ADR evaluation forms, and returning these forms to the M.A.P. offices within 10 calendar days of the completion of the ADR process.

(6)    In accordance with the Code of Civil Procedure, section 1033.5(c)(4), the court, in its discretion, may allow the prevailing party at trial the fees and expenses of the ADR provider, unless there is a contrary agreement by the parties.

(j)    Setting Short Cause Matters

If the parties agree that the time estimated for trial is 5 hours or less prior to the conference, a written stipulation shall be filed at least 10 calendar days before the case management conference in order to avoid the need to appear at that conference and a copy immediately sent to the Master Calendar Coordinator.  In the absence of a stipulation, either party may file a motion to have the matter designated a "short cause" and set the case accordingly.  All such matters shall be presumed short cause unless the contrary is established at the hearing on the motion.

(k)    Law and Motion

All law and motion matters shall be heard by the regularly assigned Law and Motion judge.

(l)    Settlement Conferences

All cases not assigned to arbitration or some other dispute resolution mechanism will be assigned two settlement conference dates, the first of which will be at the earliest practicable date under the circumstances presented by the case, and the second within approximately two

Superior Court of California, County of San Mateo

weeks prior to the assigned trial date.

Cases assigned to arbitration or other form of ADR may be subjected to a settlement conference prior to the arbitration or ADR process, but will be assigned to a pre-trial settlement conference only if the arbitration/ADR procedure fails to resolve the case.

All cases which fail to resolve by the trial date will be subject to an additional settlement conference on the trial date.

*All* settlement conferences shall be subject to the requirements specified in Local Rule 2.4.

(m)    Sanctions

Sanctions pursuant to CRC 2.30 shall be imposed for any violation of the civil case management system rules. The minimum sanction imposed shall be $150.00 payable to the court; sanctions payable to the court may be larger where appropriate and will be in addition to appropriate attorney fees and calendar changes, including any appropriate change in calendar status of the action.

Sanctions mandated hereby may be waived by the judge conducting the conference only upon an application showing good cause why sanctions should not be imposed.

(Adopted, effective July 1, 1996)(Amended, effective January 1,2000) (Amended, effective January 1, 2003) (Amended effective July 1, 2003) (Amended, effective January 1, 2005)(Amended, effective January 1, 2006) (Amended, effective January 1, 2007)

Rule 2.3.1 Orders to Show Cause re: Dismissals

(a)    A hearing on an order to show cause why the case should not be dismissed for failure to prosecute the matter shall be set at the two year anniversary of the filing of the complaint and/or cross-complaint.

(b)    An order to show cause hearing shall be set 45 days after court's receipt of notice of settlement.

(c)    An order to show cause hearing regarding dismissals may be set by the court to achieve the interests of justice and the timely disposition of the case.

(d)    An order to show cause hearing re: failure to complete judicial arbitration within the court-ordered time frame may be heard during the case management calendar. Sanctions may be imposed and a trial date may be assigned.

(Adopted, effective January 1,2000) (Amended, effective January 1, 2003)(Amended, effective January 1,2006)

Rule 2.4  Settlement Conference

Reference: California Rule of Court, rule 222.

(a)    At all settlement conferences, notwithstanding any other Rule:

(1)    The attorney who will try the case or an informed associate with full authority to negotiate a settlement of the case shall personally attend.

Superior Court of California, County of San Mateo

(2)    Any persons whose consent is required to authorize settlement shall personally attend; those parties that are corporations shall have in attendance an officer or other employee with authority to bind the corporation.  Powers of attorney, oral or written, granting counsel settlement authority are unacceptable as a substitute for personal attendance at this conference.  Defendant and cross-defendant shall personally attend if there is no insurance coverage, if there is an unsatisfied deductible, or if the insurance carrier is demanding that the insured contribute to settlement.

(3)    With respect to any insured party, a representative of the insurance carrier with authority to settle which is meaningful considering the exposure to loss presented shall personally attend. If the claims representative in personal attendance has any limitation on his or her settlement authority, a representative of the carrier who has no such limitations shall be available to the court by telephone and shall remain available until released by the judge conducting the conference, regardless of the time of day at the location of that representative.

(4)    Upon arrival at the department to which the conference has been assigned, counsel shall check in with the clerk and shall verify the attendance of those persons whose presence is required.

(5)    Notwithstanding the provisions of CRC 3.1380(c), no later than five(5) court days before the date set for the settlement conference each party shall lodge with the office of the court administrator and serve on all other parties a written statement setting forth the following:

(A)    A statement of facts.

(B)    The contentions of each party to the action regarding liability and damages.

(C)    An itemized list of special damages.

(D)    In any case in which personal injury is claimed:

(i)    A description of the nature and extent of any injury claimed, including residuals.

(ii)    A description of the basis for and method of calculation of any claimed wage loss.

(E)    The most recent demand and offer or a description of any other proposed settlement between or among the parties.

(6)    All parties shall be prepared to make a bona fide offer of settlement.

(b)    The personal attendance of any person who is required by these rules to be present may be excused only by the presiding judge upon application made prior to the day on which the conference is scheduled.  Any such person whose attendance is excused must remain available by telephone until he or she has been excused by the judge conducting the conference regardless of the time of day at the location of that person.

(c)    No conference may be continued without the consent of the presiding judge or, if known, the judge to whom the case has been assigned for conference.

Superior Court of California, County of San Mateo

(d)     At all such conferences, the judge of the department to which the conference has been assigned shall first attempt to settle the case. If settlement discussions are inconclusive, the judge may adjourn the conference to a later date for further settlement discussions.

(e)     Sanctions pursuant to CRC 2..30 shall be imposed for any violation of this rule. The minimum sanction imposed shall be $150.00 payable to the court; sanctions payable to the court may be larger where appropriate and will be in addition to appropriate attorney fees and calendar changes.

Sanctions mandated hereby may be waived by the judge conducting the conference only upon an application showing good cause why sanctions should not be imposed.

(Adopted, effective July 1, 1996) (Amended, effective January 1, 2003)(Amended, effective July 1, 2005) (Amended, effective January 1, 2007)

## PART 3. CALENDAR MANAGEMENT

Rule 2.5  Trial Date Settlement Conference

A further settlement conference shall be held on the date the case is called for trial in accordance with the procedures outlined in and with the attendance of those persons designated in Local Rule 2.4.

(Adopted, effective July 1, 1996)

Rule 2.6  Refund of Jury Fees:  Duty to Notify Court

(Adopted, effective July 1, 1996) (REPEALED and Renumbered as Rule 2.7.6)

## CHAPTER 3.  [RESERVED]

Superior Court of California, County of San Mateo

# CHAPTER 4.  JURY RULES

## Rule 2.7 Length of Jury Service

In compliance with CRC 2.1002, a person has fulfilled his or her jury service obligation when he or she has:

(a)    Served on one trial until discharged.

(b)    Been assigned on one day for jury selection until excused by the jury commissioner.

(c)    Attended court but was not assigned to a trial department for selection of a jury before the end of that day.

(d)    Been assigned to a trial department for selection of a jury and has been excused by the trial judge.

(e)    Served one day on call.

(f)    Served no more than 5 court days on telephone standby.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2007)

## Rule 2.7.1  Proposed Jury Instructions

(a)    Reference California Rules of Court, Rules 2.1055 and 2.1050.

(b)    The Trial Department shall determine in its discretion the timing of submission of proposed jury instructions.

(Amended, effective January 1, 2002) (Amended, effective January 1, 2006) (Amended, effective January 1, 2007)

## Rule 2.7.2 Duty Of Counsel with Respect to Jury Instructions

Before delivery of proposed jury instructions to the trial judge and opposing counsel, counsel shall fill in all blanks, make all strikeouts, insertions and modifications therein which are appropriate to the case. Submission of a form, which requires additions or modifications to constitute a complete and intelligible instruction, shall not be deemed a request for such instruction.

In addition to a hard copy of the proposed jury instructions, counsel shall provide the modified instructions on a computer diskette, and a clean copy of the instructions to be given to the jury.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2006)

## Rule 2.7.3  Form of Proposed Jury Instructions (CCP §§ 607a, 609.)

All proposed jury instructions shall conform to the requirements of California Rules of Court, Rule 2.1055. Any jury instructions requested after the conclusion of taking evidence shall be in writing. The court, in its discretion, may permit instructions to be sent into the jury room in "Booklet Form". In

Superior Court of California, County of San Mateo

"Booklet Format" the text of the instruction is printed continuously on the page and may result in several instructions to the page. Such instructions may be accompanied by a table of contents.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2006) (Amended, effective January 1, 2007)

Rule 2.7.4  Changing Jury Instructions

If, after the jury instruction conference and at any time before giving the instructions and verdict and findings forms to the jurors, the trial judge determines to make any substantive change therein, all parties should be so advised on the record outside the hearing of jurors.

(Adopted, effective January 1, 2000)

Rule 2.7.5  Jury Instruction Conference

Before final argument and after submission to the trial judge of all proposed jury instructions, verdict and findings forms, a conference outside the presence of jurors will be held. Ordinarily, a reporter or recorder is not required at the commencement of such conference.

In the event the trial judge intends to give any instructions or use any form of verdict or findings on the court's own motion, such instructions, verdicts or findings should be delivered to counsel.

The trial judge will then discuss with counsel:

(1)     Whether any requested proposed instructions, verdicts or findings are patently inappropriate and will be voluntarily withdrawn;

(2)     Whether there is any patent omission of instructions, verdicts or findings which are appropriate and that may be given without objection;

(3)     Whether there is any other modification, namely those to which the parties will stipulate.

Counsel shall meet prior to this conference to discuss each other's jury instructions and classify them into (1), (2) and (3) above.

The foregoing unreported conference will generally result in clarification of the matters, and creation of three categories of instructions, verdicts or findings that may be withdrawn, given or modified.

Thereafter, the conference should be reported and the trial judge should confirm for the record the matters agreed upon. The trial judge should also specify those instructions, verdicts and findings forms the court proposes to give, refuse or modify, whether at the request of a party or on the court's own motion. The court will hear any objections to the foregoing and rule thereon.

The trial judge should sign each requested instruction and indicate the disposition thereof, all of which shall be thereafter filed by the clerk. If a requested instruction is withdrawn, counsel shall so indicate by writing "withdrawn" and signing or initialing such instruction.

(Adopted, effective January 1, 2000)

Superior Court of California, County of San Mateo

Rule 2.7.6  Refund of Jury Fees:  Duty to Notify Court

Jury fees shall be refunded pursuant to CCP Section 631.3 only if the party depositing the fees has given the master calendar coordinator written notice, at least two court days before the trial date, that the case settled, dropped or that the party's motion for continuance has been granted.

(Adopted, effective July 1, 2004 [former Rule 2.6])

## CHAPTER 5.  GENERAL RULES

Rule 2.8  Family Law Rules

The local rules of San Mateo Superior Court relating to Family Law are contained in Division V of these rules, infra.

(Adopted, effective July 1, 1996)

Rule 2.9  Required Action

Action shall be taken on all calendared cases and a future date for action shall always be set.  No case shall go "off calendar" without a future action being set.

(Adopted, effective July 1, 1996.)

Rule 2.10  Interpreters and Translators

a)       Notice.  When a party desires an interpreter, it shall be the responsibility of that party to give notice to the Court and all other parties of record.  That party shall make arrangements for the presence and the payment of the interpreter.

b)       Qualifications.  Unless the interpreter is an official court interpreter, the interpreter's name and qualifications shall be provided to the court and opposing counsel five (5) court days prior to the date of the interpreter's appearance .  If the interpreter is an official court interpreter, no prior disclosure is required.

c)       Relations or friends.  Without the consent of all parties, a relation or a friend may not be used as an interpreter or translator in a contested proceeding.

(Adopted, effective January 1, 2000)

Rules 2.11 thru 2.19 (Reserved)

## CHAPTER 6.  CIVIL TRIAL RULES

Rule 2.20   Trial Motions, Briefs, Statements, and Witness Lists

Upon assignment to a trial department for trial by a jury, each party shall file with that department the following:
(1)     Any in limine motions and response thereto;
(2)     Any trial briefs;

Superior Court of California, County of San Mateo

    (3)   A concise non-argumentative statement of the case to be read to the jury; and

    (4)   A list of possible witness who may testify in the trial to be read to the jury panel by the court.

    (Adopted, effective January 1, 2002)

## Rule 2.21   In Limine Motions

Any in limine motions shall be served upon opposing counsel not less than five (5) days prior to trial. Any response shall be served upon the proponent of the motion not later than the first appearance in the Department of the Presiding Judge for trial assignment.

    (Adopted, effective January 1, 2002)

## Rule 2.22   Production of Exhibits

Any party intending to offer any exhibit at the time of trial shall be prepared, by the time of assignment to a trial department, with an original and sufficient copies of each such exhibit for all other parties and the court. The court may make, in it discretion, any orders it deems appropriate regarding the exchange and presentations of exhibits.

    (Adopted, effective January 1, 2002)

**RULE NUMBERS 2.23 TO 2.29 ARE RESERVED**

## CHAPTER 7.  COMPLEX CASES

### Rule 2.30   Determination of Complex Case Designation.

**A.   Decision of Complex Case to be Made by Presiding Judge**

The Presiding Judge shall decide whether an action is a complex case within the meaning of California Rules of Court, Rule 3.400, subdivision (a), and whether it should be assigned to a single judge for all purposes. All status conferences or other hearings regarding whether an action should be designated as complex and receive a singly assigned judge shall be set in the Presiding Judge's department.

**B.   Provisional Designation.**

An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions; or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6).

The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunity to decide whether the action meets the definition in California Rules of Court, Rule 3.400, subdivision (a).

Superior Court of California, County of San Mateo

**C.  Application to Designate or Counter-Designate an Action as a Complex Case.**

Any party who files either a Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401) or a counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)), designating an action as a complex case in Items 1, 2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court.  The certificate must include supporting information showing a reasonable basis for the complex case designation being sought.  Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action:

(1)  Management of a large number of separately represented parties;
(2)  Complexity of anticipated factual and/or legal issues;
(3)  Numerous pretrial motions that will be time-consuming to resolve;
(4)  Management of a large number of witnesses or a substantial amount of documentary evidence;
(5)  Coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court;
(6)  Whether or not certification of a putative class action will in fact be pursued; and
(7)  Substantial post-judgment judicial supervision.

A copy of the Certificate Re: Complex Case Designation must be served on all opposing parties. Any certificate filed by a plaintiff shall be served along with the initial service of copies of the Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401), summons, and complaint in the action. Any certificate filed by a defendant shall be served together with the service of copies of the counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)) and the initial first appearance pleading(s).

**D.  Noncomplex Counter-Designation.**

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation has been filed and served and the Court has not previously declared the action to be a complex case, a defendant may file and serve no later than its first appearance a counter Civil Case Cover Sheet designating the action as not a complex case.  Any defendant who files such a noncomplex counter-designation must also file and serve an accompanying Certificate Re: Complex Case Designation in the form prescribed by this Court and setting forth supporting information showing a reasonable basis for the noncomplex counter-designation being sought.

Once the Court has declared the action to be a complex case, any party seeking the Presiding Judge's decision that the action is not a complex case must file a noticed motion pursuant to Section H below.

**E.  Decision by Presiding Judge on Complex Case Designation; Early Status Conference.**

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation have been filed and served, the Presiding Judge shall decide as soon as reasonably practicable, with or without a hearing, whether the action is a complex case and should be assigned to a single judge for all purposes.

Upon the filing of a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation, the Clerk of the Court shall set a status conference at which the Presiding Judge shall decide whether or not the action is a complex case.  This status conference shall be held no later than (a) 60 days after the filing of a Civil Case Cover Sheet by a plaintiff (pursuant to California Rules of Court, Rule 3.401) or (b) 30 days after the filing of a counter

*j*

Civil Case Cover Sheet by a defendant (pursuant to California Rules of Court, Rule 3.402, subdivision (a) or (b)), whichever date is earlier.

Alternatively, in his or her sole discretion, the Presiding Judge may make the decision on complex case designation and single assignment, without a status conference, based upon the filed Civil Case Cover Sheet and accompanying Certificate Re: Complex Case Designation alone.

F.   **Notice.**
The party who seeks a complex case designation or a noncomplex counter-designation must give reasonable notice of the status conference to the opposing party or parties in the action even if they have not yet made a first appearance in the action. Such notice of the status conference shall be given in the same manner as is required for ex parte applications pursuant to California Rule of Court, Rule 379.

G.   **Representations to the Court.**

By presenting to the Court a Certificate Re: Complex Case Designation, an attorney or unrepresented party is certifying to the best of that person's knowledge, information, and belief, formed after reasonable inquiry under the circumstances:

   (1)   That the complex case designation or noncomplex counter-designation is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

   (2)   That the claims, defenses, or other legal contentions referenced therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

   (3)   That the statement of supporting information relevant to the complex case designation or noncomplex counter-designation have evidentiary support or are believed, in good faith, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

   (4)   That there is a reasonable basis for that party's complex case designation or noncomplex counter-designation.

If, after notice and a reasonable opportunity to be heard, the Court determines that this subpart has been violated, the Court may impose an appropriate sanction upon the attorneys, law firms, or self-represented parties that have violated this subpart.

H.   **The Presiding Judge's Continuing Power.**
With or without a hearing, the Presiding Judge may decide, on his or her own motion or on a noticed motion by any party, that a civil action is a complex case or that an action previously declared to be a complex case is not a complex case.

I.   **Pilot Program; Sunset Provision. (Repealed, effective 1/1/2007).**

(Adopted, effective July 1, 2004)(Amended, effective July 1, 2005) (Amended, effective January 1, 2006)(Amended, effective January 1, 2007)

**RULE NUMBERS 2.31 TO 2.35 ARE RESERVED**

# SAN MATEO SUPERIOR COURT

## COURTCALL TELEPHONIC APPEARANCES

### JANUARY, 2004

Until further notice, voluntary telephonic appearances ("CourtCall Appearances") may continue to be made for Case Management Conferences in Departments 6 (Judge Kopp) and 21 (Judge Foiles), and for Civil Law and Motion matters in Department 1 (Judge Mittlesteadt) from 1/1/04 to 6/30/04 or Department 3 (Judge Freeman) from 7/1/04 to 12/31/04.

Counsel may make a CourtCall Appearance as follows:

1.  NOT LESS THAN FIVE (5) COURT DAYS BEFORE THE HEARING DATE IN DEPARTMENTS 6 AND 21 AND NOT LATER THAN 4:30 P.M. ON THE COURT DAY PRIOR TO HEARING IN DEPARTMENT 1 (1/1-6/30) or DEPARTMENT 3 (7/1-12/31) serve and file with CourtCall (not the Court!) a Request for CourtCall Telephonic Appearance (included in this package);

2.  Pay a fee of $55.00 to CourtCall, LLC.

Required filing and payment procedures are detailed within the instruction sheet "How to Use CourtCall," (see reverse). A confirmation from CourtCall, LLC, will be faxed to your office upon the filing and payment outlined above.

A CourtCall Appearance is made as part of a participating Department's usual calendar. Unless notified to the contrary, all counsel who have timely filed their Request and have paid the fee may appear by dialing the toll-free teleconference number provided by CourtCall, LLC. A pre-hearing check-in will occur five minutes before the scheduled hearing time. CourtCall Appearances will generally be afforded a calendar preference.

A CourtCall Appearance is voluntary and may be made without consent of the other party or advance consent of the Court. The Court, however, reserves the discretion to require personal appearance. In matters where only one party elects to make a CourtCall Appearance, the matter will be heard on the Court's speakerphone.

See reverse side for "How to Use CourtCall"

## COURTCALL, LLC

*Telephonic Court Appearances*

6365 ARIZONA CIRCLE

LOS ANGELES, CALIFORNIA 90045

(TEL) (310) 342-0888 (888) 88-COURT

(FAX) (310) 743-1850 (888) 88-FAXIN

### How To Use CourtCall! - SAN MATEO

#### Filling Out The Form

**1. Serve:** Not less than 5 Court Days before the hearing (or 4:30 PM the Court day prior to hearing for Dept. 1 through 6/30/04 or Dept. 3 from 7/1/04 through 12/31/04) COMPLETELY fill out the original of the Request for CourtCall Appearance (the "Request Form"). Retain the original Request Form in your file. DO NOT FILE IT WITH THE COURT. Check the box indicating the method of payment of the fee. INCOMPLETE REQUEST FORMS MAY RESULT IN A DELAY IN PROCESSING!!

**2. Fax to CourtCall:** Fax a copy of the Form to CourtCall not less than 5 Court days prior to the hearing (or 4:30 pm the Court day prior to hearing for Dept. 1 or Dept. 3 as noted above). Do not fail to do so, as the CourtCall Calendar is set through these faxes!! LATE FILINGS, IF ACCEPTED, ARE SUBJECT TO A LATE FEE!!

**3. Payment by Credit Card:** Fill out credit card information *only* on the copy faxed to CourtCall and have that copy SIGNED by the PERSON WHOSE NAME IS ON THE CREDIT CARD.

**4. Payment by Check:** Fax a copy of check - write case # on check-payable to Telephonic Hearing Account to CourtCall with your Form and mail your check and a copy of your Form to CourtCall.

**5. Proof of Payment/CalendarConfirmation:** Under normal circumstances you should receive a Confirmation from CourtCall, by fax, within 24 hours of submission of a completed Request Form. The Confirmation will contain your teleconference number and access code (if any**).

IF YOU DO NOT RECEIVE YOUR FAXED CONFIRMATION FROM COURTCALL WITHIN 24 HOURS OF SUBMISSION, CALL COURTCALL IMMEDIATELY TO VERIFY YOUR STATUS - WITHOUT A WRITTEN CONFIRMATION YOU ARE NOT ON THE COURTCALL CALENDAR!

FOR INFORMATION AND QUESTIONS ABOUT A COURTCALL APPEARANCE, CALL COURTCALL, NOT THE CLERK/COURT!

#### When You Make The Call

* YOU MUST CALL THE TOLL-FREE NUMBER ON YOUR CONFIRMATION 5 MINUTES BEFORE YOUR SCHEDULED HEARING TIME. NEVER USE A CELLULAR OR PAY PHONE. If prompted, dial your Access Code.** You will be advised whether you are joining the call in progress or if you are the first to call or you may be placed on "music-on-hold."

* If Court has commenced, DO NOT INTERRUPT! You will have an opportunity to speak. If the call is in progress and you hear voices, wait until an opportunity to speak arises without interrupting others. The Clerk may be performing a check-in and will get to you.**

* After check-in wait until your case is called. Use your speakerphone while waiting if you are able to mute the microphone to eliminate ambient noise. When your case is called you MUST USE THE HANDSET. Identify yourself each time you speak and use common courtesy.

* If you are the first person on the call be patient, even if you experience silence or are placed on "music-on-hold," as the Clerk will join the call in due course. As others join you will hear a mild beep-beep" indicating others are on the line. Until your case is called do not speak other than with the Clerk. ** If the Clerk does not join the call within 15 minutes after your scheduled hearing time, have a staff member call CourtCall on our toll free Help Line - (888) 882-6878 and we will be happy to assist you. DO NOT LEAVE THE LINE!

**If the Confirmation from CourtCall does not list an access code with your assigned teleconference number, your matter will be heard privately, not in open court. The 5 minute check-in period will be conducted by a Teleconference Specialist who will conduct the conference in accordance with the Court's instructions. You will be placed on "music-on-hold" while you wait for the Judge to call your matter. The rules regarding cell phones and use of handsets apply. IF YOUR HEARING IS CONTINUED YOU MUST NOTIFY COURTCALL OF THE CONTINUANCE , IN WRITING, PRIOR TO YOUR COURTCALL APPEARANCE TO HAVE YOUR FEE APPLY TO THE CONTINUED HEARING. MATTERS CONTINUED AT THE TIME OF THE HEARING REQUIRE A NEW FORM AND A NEW FEE FOR THE CONTINUED DATE.

| ATTORNEY OF RECORD (Name /Address/Phone/Fax): | DO NOT FILE WITH COURT |
|---|---|
| State Bar No._____<br><br>ATTORNEY FOR (Name):<br><br>San Mateo Superior Court | COMPLETELY FILL OUT/CORRECT FORM BEFORE SUBMITTING TO COURTCALL!! |
| | CASE NUMBER:<br><br>JUDGE/DEPARTMENT:<br><br>DATE AND TIME:<br><br>NATURE OF HEARING: |
| **REQUEST FOR COURTCALL TELEPHONIC APPEARANCE** | |

1. _____ (Name of specific attorney appearing telephonically) requests a CourtCall telephonic calendar appearance at the above referenced proceeding and agrees to provisions of the Rule/Order/Procedure Re: CourtCall Telephonic Appearances. I UNDERSTAND THAT *I DIAL* INTO THE CALL FIVE MINUTES BEFORE ITS SCHEDULED START TIME.

2. Not less than five Court days prior to hearing (or 4:40 pm the Court day prior for Dept. 28), a copy of this document was served on all other parties and faxed to CourtCall, Telephonic Appearance Program Administrator at (310) 572-4679 OR (888) 88-FAXIN.

3. The non-refundable CourtCall Appearance Fee in the sum of $55.00 (plus additional fee of $35.00 if late filing is accepted) is paid as follows:

   ☐ Check (copy faxed-write case.# on check) payable to CourtCall. *DO NOT MAIL ORIGINAL*. Signature below authorizes an ACH (electronic) debit in the amount and from the account listed on the check.

   ☐ Charged to CourtCall Debit Account No.: _____

   ☐ Charged to VISA, MasterCard or American Express:

   | TO BE COMPLETED ONLY ON THE COPY SUBMITTED TO CourtCall, LLC: |
   |---|
   | Credit Card:    O VISA    O MasterCard    O American Express |
   | Credit Card Number: _____    Expiration Date: _____ |
   | To pay by credit card, the copy of this form submitted to CourtCall, LLC, must be signed by the person whose card is to be charged and must be faxed to CourtCall at (310) 572-4679 or (888) 88-FAXIN with the above credit card information completed. The signature below constitutes authorization to charge the above referenced credit card. |
   | Date: _____  Name on Card: _____ |
   | _____    _____<br>Type Name                        Signature |

4. Request Forms are processed within 24 hours. Call CourtCall if you do not receive a faxed Confirmation from CourtCall within 24 hours. WITHOUT A WRITTEN CONFIRMATION YOU ARE NOT ON THE COURTCALL CALENDAR AND MAY BE PRECLUDED FROM APPEARING TELEPHONICALLY! COURTCALL'S LIABILITY CONCERNING THIS TELEPHONIC APPEARANCE IS LIMITED TO THE FEE PAID TO COURTCALL.

Dated:_____

_____
Signature

4.25.02          **REQUEST FOR COURTCALL TELEPHONIC APPEARANCE**

## AFFIDAVIT OF PERSONAL DELIVERY

*H S Silver*

**FILED**
**SAN MATEO COUNTY**

JUN 1 7 2008

Clerk of the Superior Court

By _____
DEPUTY CLERK

vs

*David Maris*

CASE #

**CIV 4 7 3 7 9 6**

## DOCUMENTS

Endorsed filed copies of the Complaint, Summons, Notice of Case Management
Conference and ADR Packet information.

I declare under penalty of perjury that I delivered back to the customer, a true copy of the
foregoing documents. Executed on the above filed date at the Hall of Justice & Records
in Redwood City, CA 94063.

By :   G. JACKSON
        Deputy Court Clerk

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DAVID MORRIS INTERNATIONAL LTD.

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

# FILED
### SAN MATEO COUNTY

JUN 1 7 2008

Clerk of the Superior Court

By _____
DEPUTY CLERK

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
S.H. SILVER COMPANY, INC.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SAN MATEO COUNTY SUPERIOR COURT
400 County Center, Second Floor

Redwood City, CA 94063

CASE NUMBER:
*(Número del Caso):* **CV 473796**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Scott D. Baker (SBN 84923)          (415) 543-8700  (415) 391-8269
Jonah D. Mitchell (SBN 203511)
REED SMITH LLP
San Francisco, CA 94111-3922

DATE: **JUN 1 7 2008**    **JOHN C. FITTON**    Clerk, by _____, Deputy
*(Fecha)*              *(Secretario)*        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* DAVID MORRIS INTERNATIONAL LTD.

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

1  Scott D. Baker (SBN 84923)
   Email: sbaker@reedsmith.com
2  Jonah D. Mitchell (SBN 203511)
   Email: jmitchell@reedsmith.com
3  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
4  San Francisco, CA 94111-3922

5  Mailing Address:
   P.O. Box 7936
6  San Francisco, CA 94120-7936

7  Telephone:  +1 415 543 8700
   Facsimile:  +1 415 391 8269
8
   Attorneys for Plaintiff
9  S.H. Silver Company, Inc.

10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                    FOR THE COUNTY OF SAN MATEO

13

14  S.H. SILVER COMPANY, INC.,              No.: CIV 473796

15              Plaintiff,                   PROOF OF SERVICE

16       vs.

17  DAVID MORRIS INTERNATIONAL LTD.,

18              Defendant.

19

20

21

22

23

24

25

26

27

28

**ENDORSED FILED**
SAN MATEO COUNTY
JUL 1 5 2008
Clerk of the Superior Court
By _____ DANIEL SHEA
DEPUTY CLERK

**FILE BY FAX**

No.:

PROOF OF SERVICE

DOCSSFO-12521206-1

**REED SMITH LLP**
**Two Embarcadero Centre**
**Suite 2000**
**San Francisco, CA 94111-3922**
**Attorneys for Plaintiff**
**S.H. Silver Company, Inc.,**

SUPERIOR COURT OF THE STATE OF
CALIFORNIA
FOR THE COUNTY OF SAN MATEO

**S.H. SILVER COMPANY, INC.,**                         No: CIV 473796

     Plaintiff.

vs.

**DAVID MORRIS INTERNATIONAL LTD.,**

     Defendant.

PROOF OF SERVICE OF SUMMONS

Winston Hayles Deposes and States as follows:-

1.    That deponent is aged over eighteen years of age, is not a party to this action, is designated Process Server and for the purpose of this service resides at 4, Marylebone High Street, London W1U 4NQ, England and is authorised to effect service of Judicial Process according to the Laws of England and Wales.

2.    On Thursday the 3rd day of July 2008 at 4.10pm Deponent personally delivered to the registered office of David Morris International Limited at 180 New Bond Street, London W1S 4RL, England, the Civil Case Cover Sheet dated the 17th day of June 2008, Notice of Case Management Conference dated the 17th day of June 2008, Complaint for Damages dated the 17th day of June 2008, Summons dated the 17th day of June 2008, Declaration of Stephen H. Silver, Application for Right to Attach Order, Temporary Protective Order, etc. (Attachment) dated the 26th day of June 2008, Memorandum of Points and Authorities in Support of Application for Right to Attach Order and Writ of Attachment dated the 26th day of June 2008, Notice of Application and Hearing for Right to Attach Order and Writ of Attachment (Attachment) dated the 26th day of June and Right to Attach Order after Hearing and Order for Insurance of Writ of Attachment dated the 26th day of June 2008, by serving the same upon William Henry Holbech, a Director of David Morris International Limited and a person at least eighteen years of age, apparently in charge of the office or usual place of business of the Defendant Company. I informed William Henry Holbech of the general nature of the papers so served.

1

3.    Service as described herein is consistent with the provisions for service upon a Limited Company in respect of actions proceeding in the Jurisdiction of The High Court of Justice of England and Wales.

4.    That copies of the proceedings so served as aforesaid are exhibited hereto and marked "A".

5.    Statement of Truth:  I believe the facts stated in this Witness Statement are true.

SIGNED..........................................................

DATED .......7 July 2008...........

2

REED SMITH LLP
Two Embarcadero Centre
Suite 2000
San Francisco, CA 94111-3922
Attorneys for Plaintiff
S.H. Silver Company, Inc

SUPERIOR COURT OF THE STATE OF
CALIFORNIA
FOR THE COUNTY OF SAN MATEO

S.H. SILVER COMPANY, INC.,                    No: CIV 473796

     Plaintiff.

vs.

DAVID MORRIS INTERNATIONAL LTD.,

     Defendant.


This is the exhibit marked "A"

referred to in the Witness Statement

of Winston Hayles


Signed...........................................

Dated this 7 day of July 2008

3

**COPY**

**AT-115**

| | FOR COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*:<br>Scott D. Baker (SBN 84923) ; Jonah D. Mitchell (SBN 203511)<br>REED SMITH LLP<br>Two Embarcadero Center, Suite 2000<br>San Francisco, CA 94111-3922<br>TELEPHONE NO.: (415) 543-8700    FAX NO.: (415) 391-8269<br>ATTORNEY FOR *(Name)*: S.H. SILVER COMPANY, INC. | **ENDORSED FILED**<br>**SAN MATEO COUNTY**<br>JUN 2 6 2008<br>Clerk of the Superior Court<br>By _E. MORALES_<br>DEPUTY CLERK |
| NAME OF COURT: SAN MATEO COUNTY SUPERIOR COURT<br>STREET ADDRESS: 400 County Center, Second Floor<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Redwood City, CA 94063<br>BRANCH NAME: | |

PLAINTIFF: S.H. SILVER COMPANY, INC.

DEFENDANT: DAVID MORRIS INTERNATIONAL LTD.

| NOTICE OF APPLICATION AND HEARING FOR | CASE NUMBER: |
|---|---|
| ☑ RIGHT TO ATTACH ORDER<br>☑ ORDER FOR ISSUANCE OF<br>    ☑ WRIT OF ATTACHMENT<br>    ☐ ADDITIONAL WRIT OF ATTACHMENT | CIV 473796 |

1. Notice to defendant *(name, address, and telephone number, if known)*:
   DAVID MORRIS INTERNATIONAL LTD., 180 New Bond St., London, W1SR4L, England; Telephone No 020-7499-2200

2. Plaintiff has filed an application for
   a. ☑ a right to attach order and writ of attachment. *(Check items 6a, 6b, and 6d(1).)*
   b. ☑ a writ of attachment. *(Check item 6d(2).)*
   c. ☐ an additional writ of attachment. *(Check item 6d(2).)*

3. A hearing on plaintiff's application will be held in this court as follows:

   | Date: August 1, 2008 | Time: 9:00 a.m. | ☑ Dept.: 2 | ☐ Div.: | ☑ Rm.: 8C |
   |---|---|---|---|---|

4. The request of plaintiff for an order is based upon the application and affidavit or declaration filed and served with this notice.

5. Your attention is directed to the following sections of the Code of Civil Procedure that set forth when attachment may or may not be issued, the method of calculating the amount to be secured by the attachment, the court's discretion to include costs and attorney's fees, and special limitations on the amount to be secured by attachment in unlawful detainer proceedings. (Code Civ. Proc., §§ 482.110, 483.010, 483.015, 483.020.)

6. You are notified that
   a. ☑ A right to attach order will be issued if the court finds at the hearing that plaintiff's claim is probably valid and the other requirements for issuing the order are established. This hearing may include both written and oral presentations, but is not for the purpose of determining whether the claim is actually valid. Determination of the actual validity of the claim will be made in subsequent proceedings in the action and will not be affected by the decision at the hearing on the application for the order.
   b. ☑ If you desire to oppose the issuance of a right to attach order or object to the amount to be secured by the attachment as provided in Code of Civil Procedure section 483.015 (or Code of Civil Procedure section 483.020 in unlawful detainer actions), you must file with this court and serve on plaintiff (no later than five court days prior to the date set for hearing in item 3) a notice of opposition and supporting declaration or affidavit as required by Code of Civil Procedure section 484.060.
   c. If a right to attach order is or has been issued, a writ of attachment will be issued to attach your property described in plaintiff's application unless the court determines that the property is exempt from attachment or that its value clearly exceeds the amount necessary to satisfy the amount to be secured by the attachment. However, since the right to attach order will not necessarily be limited to your property described in plaintiff's application, a writ of attachment may later be issued to attach other nonexempt property of yours.

*(Continued on reverse)*

Page one of three

| Form Approved for Optional Use<br>Judicial Council of California<br>AT-115 [Rev. January 1, 2000] | NOTICE OF APPLICATION AND HEARING FOR RIGHT TO<br>ATTACH ORDER AND WRIT OF ATTACHMENT (Attachment) | Code of Civil Procedure,<br>§§ 482.030, 484.010 et seq.<br><br>American-LegalNet, Inc.<br>www.USCourtForms.com |
|---|---|---|



| SHORT TITLE: | CASE NUMBER: |
|---|---|
| S.H. Silver Company, Inc. v. David Morris International Ltd. | CIV 473796 |

6. d. If you claim that all or some portion of the property described in plaintiff's application is exempt from attachment, you must no later than five court days prior to this hearing

    (1) ☑ Include your claim of exemption in your notice of opposition filed and served pursuant to Code of Civil Procedure section 484.060 or file and serve a separate claim of exemption with respect to the property as provided in Code of Civil Procedure section 484.070.

    (2) ☑ file with the court and serve on plaintiff a claim of exemption with respect to the property as provided in Code of Civil Procedure section 484.350.

If you fail to make a claim of exemption with respect to personal property, or make a claim of exemption with respect to real or personal property, but fail to prove that the property is exempt, any further claim of exemption with respect to the property will be barred unless you show a change in circumstances occurring after expiration of the time for claiming exemptions.

  e. Claims of exemption resulting from a change of circumstances, whether after denial of a previous claim or expiration of the time for claiming exemptions, may be asserted as provided in Code of Civil Procedure section 482.100.

  f. You may obtain a determination at the hearing whether property not described in the application is exempt from attachment. Your failure to claim that property not described in the application is exempt from attachment will not preclude you from making a claim of exemption with respect to the property at a later time.

  g. You may also obtain a determination at the hearing whether the amount sought to be secured by the attachment shall be reduced by
    (1) the amount of any money judgment in your favor and against plaintiff that remains unsatisfied and enforceable,
    (2) the amount of any indebtedness of the plaintiff that you have claimed in a cross-complaint filed in the action if your claim is one upon which an attachment could be issued,
    (3) the amount of any claim asserted by you as a defense in the answer pursuant to Code of Civil Procedure section 431.70 if the claim is one upon which an attachment could be issued had an action been brought on the claim when it was not barred by the statute of limitations, or
    (4) the value of any security interest in your property held by plaintiff to secure the indebtedness claimed by plaintiff, together with the amount by which the value of the security interest has decreased due to the act of the plaintiff or a prior holder of the security interest.

  h. The amount to be secured by an attachment is determined pursuant to the following statutes:
    (1) Code of Civil Procedure section 482.110. A writ of attachment may include an estimate of the costs and allowable attorney fees.
    (2) Code of Civil Procedure section 483.010. An attachment may issue on a claim for $500 or more based on a contract, express or implied, exclusive of attorney fees, costs, and interests. If the claim was originally secured by an interest in real property (e.g., a mortgage or trust deed), an attachment may issue only if the security has become valueless or decreased in value to less than the amount owing on the claim, through no fault of plaintiff or the security holder (if different from plaintiff).
    (3) Code of Civil Procedure section 483.015. The amount to be attached includes the amount of the indebtedness claimed by plaintiff, plus estimated costs and allowable attorney fees, reduced by the sum of the following:
      (a) the amount of any unsatisfied money judgment held by defendant against plaintiff;
      (b) the amount of any indebtedness of plaintiff claimed by defendant in a cross-complaint filed in the action (if a writ of attachment could issue on the claim);
      (c) the amount of any cross-demand for money owed by plaintiff to defendant that is barred by the statute of limitations (but assertable as a Code of Civil Procedure section 431.70 defense) if the debt was one upon which a writ of attachment could have been issued before the statute of limitations ran; and
      (d) the amount of any security interest held by plaintiff in defendant's property, together with any decrease in the value of the underlying security caused by plaintiff or a prior security holder.

(Continued on page three)



| SHORT TITLE: S.H. Silver Company, Inc. v. David Morris International Ltd. | CASE NUMBER: CIV 473796 |

**(4) Code of Civil Procedure section 483.020.** An attachment ordered in an unlawful detainer proceeding may include:

(a) the amount of rent past due when the complaint is filed;

(b) an additional amount for the estimated rent due from the date the complaint was filed until the estimated date of judgment or delivery of possession to plaintiff; plus

(c) estimated costs and attorney fees.

Any prepaid rent or lease deposits held by plaintiff are disregarded in calculating the amount of attachment. However, the amount of attachment will be reduced by the amounts described in Code of Civil Procedure section 483.015 (above).

i. Either you or your attorney or both of you may be present at the hearing.

j. YOU MAY SEEK THE ADVICE OF AN ATTORNEY AS TO ANY MATTER CONNECTED WITH PLAINTIFF'S APPLICATION. THE ATTORNEY SHOULD BE CONSULTED PROMPTLY SO THAT THE ATTORNEY MAY ASSIST YOU BEFORE THE TIMES FOR FILING YOUR OPPOSITION AND CLAIMS OF EXEMPTION, AND FOR THE HEARING.

Date: June 26, 2008

Jonah D. Mitchell
(TYPE OR PRINT NAME OF PLAINTIFF OR PLAINTIFF'S ATTORNEY)

▶ _____
(SIGNATURE OF PLAINTIFF OR PLAINTIFF'S ATTORNEY)

AT-105

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Scott D. Baker (SBN 84923) ; Jonah D. Mitchell (SBN 203511)<br>REED SMITH LLP<br>Two Embarcadero Center, Suite 2000<br>San Francisco, CA 94111-3922<br>TELEPHONE NO.: (415) 543-8700  FAX NO.: (415) 391-8269<br>ATTORNEY FOR *(Name)*: S.H. SILVER COMPANY, INC. | |

NAME OF COURT: SAN MATEO COUNTY SUPERIOR COURT
STREET ADDRESS: 400 County Center, Second Floor
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

PLAINTIFF: S.H. SILVER COMPANY, INC.

DEFENDANT: DAVID MORRIS INTERNATIONAL LTD.

**ENDORSED FILED**
SAN MATEO COUNTY

JUN 2 6 2008

Clerk of the Superior Court
By  F. MORNEAU
DEPUTY CLERK

CASE NUMBER:

CIV 473796

**APPLICATION FOR**
- [✓] RIGHT TO ATTACH ORDER
- [ ] TEMPORARY PROTECTIVE ORDER
- [✓] ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT
- [ ] ORDER FOR ISSUANCE OF ADDITIONAL WRIT OF ATTACHMENT
- [✓] After Hearing  [ ] Ex Parte
- [✓] Against Property of Nonresident

1. Plaintiff *(name)*: S.H. SILVER COMPANY, INC.
   applies  [✓] after hearing  [ ] ex parte  for
   a. [✓] a right to attach order and writ of attachment
   b. [ ] an additional writ of attachment.
   c. [ ] a temporary protective order.
   d. [ ] an order directing the defendant to transfer to the levying officer possession of
      (1) [ ] property in defendant's possession.
      (2) [ ] documentary evidence in defendant's possession of title to property.
      (3) [ ] documentary evidence in defendant's possession of debt owed to defendant.

2. Defendant *(name)*: DAVID MORRIS INTERNATIONAL LTD.
   a. [ ] is a natural person who
      (1) [ ] resides in California.
      (2) [ ] does not reside in California.
   b. [ ] is a corporation
      (1) [ ] qualified to do business in California.
      (2) [ ] not qualified to do business in California.
   c. [ ] is a California partnership or other unincorporated association.
   d. [ ] is a foreign partnership that
      (1) [ ] has filed a designation under Corporations Code section 15800.
      (2) [ ] has not filed a designation under Corporations Code section 15800.
   e. [✓] is other *(specify)*:
      Foreign business based in London, England

3. Attachment is sought to secure recovery on a claim upon which attachment may issue under Code of Civil Procedure section 483.010.

4. Attachment is not sought for a purpose other than the recovery on a claim upon which the attachment is based.

5. Plaintiff has no information or belief that the claim is discharged or the prosecution of the action is stayed in a proceeding under Title 11 of the United States Code (Bankruptcy).

*(Continued on reverse)*

Page one of three

Form Approved for Optional Use
Judicial Council of California
AT-105 [Rev. January 1, 2000]

**APPLICATION FOR RIGHT TO ATTACH ORDER, TEMPORARY PROTECTIVE ORDER, ETC. (Attachment)**

Code of Civil Procedure,
§§ 482.030, 484.010 et seq.

American LegalNet, Inc.
www.USCourtForms.com

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| S.H. Silver Company, Inc. v. David Morris International Ltd. | CIV 473796 |

6. ☐ Plaintiff's claim or claims arise out of conduct by the defendant who is a natural person of a trade, business, or profession. The claim or claims are not based on the sale or lease of property, a license to use property, the furnishing of services, or the loan of money where any of the foregoing was used by the defendant primarily for personal, family, or household purposes.

7. The facts showing plaintiff is entitled to a judgment on the claim on which the attachment is based are set forth with particularity in the
   a. ☐ verified complaint.
   b. ☑ attached affidavit or declaration.
   c. ☐ following facts (specify):
       See declaration of Stephen Silver filed herewith.

8. The amount to be secured by the attachment is: $ 550,060.62
   a. ☐ which includes estimated costs of: $
   b. ☐ which includes estimated allowable attorney fees of: $

9. Plaintiff is informed and believes that the following property sought to be attached for which a method of levy is provided is subject to attachment:
   a. ☑ Any property of a defendant who is not a natural person.
   b. ☑ Any property of a nonresident defendant.
   c. ☐ Property of a defendant who is a natural person that is subject to attachment under Code of Civil Procedure section 487.010 described as follows (specify):

   d. ☐ Property covered by a bulk sales notice with respect to a bulk transfer by defendant on the proceeds of the sale of such property (describe):

   e. ☐ Plaintiff's pro rata share of proceeds from an escrow in which defendant's liquor license is sold (specify license number):

10. Plaintiff is informed and believes that the property sought to be attached is not exempt from attachment.

11. ☐ The court issued a Right to Attach Order on (date):
   {Attach a copy.}

12. ☐ Nonresident defendant has not filed a general appearance.

(Continued on page three)

AT-105 [Rev. January 1, 2000]       **APPLICATION FOR RIGHT TO ATTACH ORDER, TEMPORARY**       Page two of three
**PROTECTIVE ORDER, ETC. (Attachment)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| S.H. Silver Company, Inc. v. David Morris International Ltd. | CIV 473796 |

13.    a.   Plaintiff   ☐   alleges on ex parte application for order for writ of attachment

            ☐   is informed and believes on application for temporary protective order

     that plaintiff will suffer great or irreparable injury if the order is not issued before the matter can be heard on notice because

     (1) ☐   It may be inferred that there is a danger that the property sought to be attached will be

          (a) ☐   concealed.

          (b) ☐   substantially impaired in value.

          (c) ☐   made unavailable to levy by other than concealment or impairment in value.

     (2) ☐   defendant has failed to pay the debt underlying the requested attachment and is insolvent as defined in Code of Civil Procedure section 485.010, subdivision (b)(2).

     (3) ☐   a bulk sales notice was recorded and published pursuant to Division 6 of the Commercial Code with respect to a bulk transfer by the defendant.

     (4) ☐   an escrow has been opened under the provisions of Business and Professions Code section 24074 with respect to the sale by the defendant.

     (5) ☐   other circumstances *(specify)*:

   b.   The statements in item 13a are established by   ☐   the attached affidavit or declaration

        ☐   the following facts *(specify)*:

14.   ☐   Plaintiff requests the following relief by temporary protective order *(specify)*:

15.   Plaintiff

     a. ☐   has filed an undertaking in the amount of:   $

     b. ☑   has not filed an undertaking.

Date: June 26, 2008

Jonah D. Mitchell
............................................................
(TYPE OR PRINT NAME OF PLAINTIFF OR PLAINTIFF'S ATTORNEY)                ►              (SIGNATURE OF PLAINTIFF OR PLAINTIFF'S ATTORNEY)

---

**DECLARATION**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

............................................................
(TYPE OR PRINT NAME)                ►              (SIGNATURE OF DECLARANT)

16. Number of pages attached: _____

**APPLICATION FOR RIGHT TO ATTACH ORDER, TEMPORARY PROTECTIVE ORDER, ETC. (Attachment)**

 

AT-120

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Scott D. Baker (SBN 84923) ; Jonah D. Mitchell (SBN 203511)<br>REED SMITH LLP<br>Two Embarcadero Center, Suite 2000<br>San Francisco, CA 94111-3922<br>TELEPHONE NO.: (415) 543-8700    FAX NO.: (415) 391-8269<br>ATTORNEY FOR *(Name):* S.H. SILVER COMPANY, INC. | **RECEIVED**<br>JUN 2 6 2008<br>SUPERIOR COURT<br>CIVIL DIVISION |

**COPY**

NAME OF COURT: SAN MATEO COUNTY SUPERIOR COURT
STREET ADDRESS: 400 County Center, Second Floor
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

PLAINTIFF: S.H. SILVER COMPANY, INC.

DEFENDANT: DAVID MORRIS INTERNATIONAL LTD.

| | CASE NUMBER: |
|---|---|
| [✓] RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF<br>ATTACHMENT AFTER HEARING<br>[ ] ORDER FOR ISSUANCE OF ADDITIONAL WRIT OF ATTACHMENT AFTER<br>HEARING | CIV 473796 |

1. a. The application of plaintiff *(name):* S.H. SILVER COMPANY, INC.
   for [✓] a right to attach order and order for issuance of writ of attachment
       [ ] an order for issuance of additional writ of attachment
   against the property of defendant *(name):* DAVID MORRIS INTERNATIONAL LTD.
   came on for hearing as follows:
   (1) Judge *(name):*
   (2) Hearing date:            Time:            [ ] Dept.;       [ ] Div.:       [ ] Rm.:
   b. The following persons were present at the hearing:
      (1) [ ] Plaintiff *(name):* S.H. Silver Company, Inc   (3) [ ] Plaintiff's attorney *(name):*
      (2) [ ] Defendant *(name):* David Morris Int'l.        (4) [ ] Defendant's attorney *(name):*

**FINDINGS**

2. THE COURT FINDS
   a. Defendant *(specify name):* David Morris International Ltd. is a [ ] natural person [ ] partnership
      [ ] unincorporated association [ ] corporation [✓] other *(specify):* Foreign Business
   b. The claim upon which the application is based is one upon which an attachment may be issued.
   c. Plaintiff has established the probable validity of the claim upon which the attachment is based.
   d. The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
   e. The amount to be secured by the attachment is greater than zero.
   f. [✓] Defendant failed to prove that all the property described in plaintiff's application is exempt from attachment.
   g. [ ] The following property of defendant, described in plaintiff's application
      (1) [ ] is exempt from attachment *(specify):*

      (2) [ ] is not exempt from attachment *(specify):*

   h. [ ] The following property, not described in plaintiff's application, claimed by defendant to be exempt
      (1) [ ] is exempt from attachment *(specify):*

      (2) [ ] is not exempt from attachment *(specify):*

   i. [ ] An undertaking in the amount of: $                    is required before a writ shall issue, and plaintiff
         [ ] has [ ] has not   filed an undertaking in that amount.
   j. A Right to Attach Order was issued on *(date):*                              pursuant to
      [✓] Code of Civil Procedure section 484.090 (on hearing)   [ ] Code of Civil Procedure section 485.220 (ex parte)
   k. [ ] Other *(specify):*

*(Continued on reverse)*

| Form Approved for Optional Use<br>Judicial Council of California<br>AT-120 [Rev. January 1, 2000] | **RIGHT TO ATTACH ORDER AFTER HEARING AND ORDER<br>FOR ISSUANCE OF WRIT OF ATTACHMENT (Attachment)** | Code of Civil Procedure,<br>§§ 482.030, 484.090<br><br>American LegalNet, Inc.<br>www.USCourtForms.com |

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| S.H. Silver Company, Inc. v. David Morris International Ltd. | CIV 473796 |

**ORDER**

3. THE COURT ORDERS

a. ☐ Plaintiff has a right to attach property of defendant *(name)*: DAVID MORRIS INTERNATIONAL LTD.
in the amount of: $

b. ☐ The property described in items 2g(1) and 2h(1) of the findings is exempt and shall not be attached.

c. ☐ The clerk shall issue   ☑ a writ of attachment   ☐ an additional writ of attachment   in the amount stated in item 3a
☑ forthwith   ☐ upon the filing of an undertaking in the amount of: $

   (1) ☑ for any property of a defendant who is not a natural person for which a method of levy is provided.

   (2) ☐ for the property of a defendant who is a natural person that is subject to attachment under Code of Civil
Procedure section 487.010, described as follows *(specify)*:

   (3) ☐ for the property covered by a bulk sales notice with respect to a bulk transfer by defendant or the proceeds of sale
of such property, described as follows *(specify)*:

   (4) ☐ for plaintiff's pro rata share of proceeds from an escrow in which defendant's liquor license is sold. The license
number is *(specify)*:

d. ☐ Defendant shall transfer to the levying officer possession of

   (1) ☐ any documentary evidence in defendant's possession of title to any property described in item 3c;

   (2) ☐ any documentary evidence in defendant's possession of debt owed to defendant described in item 3c;

   (3) ☐ the following property in defendant's possession *(specify)*:

| **NOTICE TO DEFENDANT:  FAILURE TO COMPLY WITH THIS ORDER MAY SUBJECT YOU TO ARREST AND PUNISHMENT FOR CONTEMPT OF COURT.** |
|---|

e. ☐ Other *(specify)*:

f. Total number of boxes checked in item 3: _____

Date:

▶

................................................. (TYPE OR PRINT NAME)                    (SIGNATURE OF JUDGE OR COMMISSIONER)

AT-120 [Rev. January 1, 2000]    **RIGHT TO ATTACH ORDER AFTER HEARING AND ORDER
FOR ISSUANCE OF WRIT OF ATTACHMENT (Attachment)**    Page two

1  Scott D. Baker (SBN 84923)
   Email: sbaker@reedsmith.com
2  Jonah D. Mitchell (SBN 203511)
   Email: jmitchell@reedsmith.com
3  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
4  San Francisco, CA 94111-3922

5  **Mailing Address:**
   P.O. Box 7936
6  San Francisco, CA 94120-7936

7  Telephone:   +1 415 543 8700
   Facsimile:   +1 415 391 8269
8
   Attorneys for Plaintiff
9  S.H. Silver Company, Inc.

10

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA

12               FOR THE COUNTY OF SAN MATEO

13

14  S.H. SILVER COMPANY, INC.              No.: CIV 473796

15          Plaintiff,                     **MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF S.H.
16      vs.                                SILVER COMPANY, INC.'S
                                           APPLICATION FOR RIGHT TO ATTACH
17  DAVID MORRIS INTERNATIONAL LTD.,       ORDER AND WRIT OF ATTACHMENT**

18          Defendant.                     Date:        August 1, 2008
                                           Time:        9:00 a.m.
19                                         Place:       Dept. 2, Courtroom 8C
                                           Compl. Filed: June 17, 2008
20

21                                         Honorable Marie S. Weiner

22

23

24

25

26

27

28

No.: CIV 473796                                                    DOCSSFO-12511974.2-JMITCHELL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH
                    ORDER AND WRIT OF ATTACHMENT

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

III. LEGAL ANALYSIS ..... 6

    A.    S.H. Silver's Claim Against David Morris Is A Claim Upon Which An Attachment May Be Properly Issued ..... 7

    B.    S.H. Silver Has Established The Probable Validity Of Its Claim Against David Morris ..... 7

    C.    S.H. Silver Does Not Seek An Attachment For An Improper Purpose ..... 10

    D.    The Amount To Be Secured Is Greater Than Zero ..... 10

IV. CONCLUSION ..... 11

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: CIV 473796

DOCSSFO-12511974.2-JMITCHELL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

## TABLE OF AUTHORITIES

### CASES

*Loeb & Loeb v. Beverly Glen Music,* 156 Cal. App. 3d 1110 (1985) .................................6

*Lorber Industries v. Turbulence, Inc.,* 175 Cal. App. 3d 532 (1985) ...........................6

*Whitehouse v. Six Corporation, Inc.,* 40 Cal. App. 4th 527 (1995) .........................6

### STATUTES

Cal. Civ. Proc. Code § 481.190 .......................................................................7

Cal. Civ. Proc. Code § 483.010 .......................................................................7

Cal. Civ. Proc. Code §§ 484.050 .....................................................................7

Cal. Civ. Proc. Code. § 484.090(a)(1) ..............................................................7

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: CIV 473796

DOCSSFO-12511974.2-JMITCHELL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH
ORDER AND WRIT OF ATTACHMENT

# I. INTRODUCTION

Nearly a year ago, in July 2007, Defendant David Morris International Ltd. ("David Morris") bought a pair of Cartier Sapphire earrings from Plaintiff S.H. Silver Company, Inc. ("S.H. Silver") and took possession of the earrings. Pursuant to the agreement, David Morris was to pay the purchase price in two installments, as documented in an invoice delivered to David Morris. David Morris made the first payment and exercised ownership of the earrings by "re-cutting" the sapphire stones and permanently altering the composition of the sapphire stones in the process. Nonetheless, and despite S.H. Silver's repeated demands, David Morris steadfastly refuses to make the second payment to S.H. Silver.

S.H. Silver's claim falls squarely within the requirements for an attachment: (1) the claim, which arises out of an unequivocal agreement documented in an invoice, is one upon which an attachment may be based; (2) the claim is "probably valid" – indeed, as noted above, David Morris bought and took possession of the earrings, paid the first of two scheduled payments and exercised ownership over the earrings by re-cutting the sapphires and permanently altering their composition; (3) attachment is not sought for improper purpose – S.H. Silver is simply seeking to secure the recovery of amounts which are now over ten months late; and (4) the amount sought to be secured, $550,060.62, is greater than zero. Accordingly, an attachment should issue.

# II. FACTUAL BACKGROUND

S.H. Silver is a premier jewelry house in Menlo Park, California, offering vintage and modern jewelry. S.H. Silver enjoys a reputation as one of the industry's most trusted names in acquiring and placing some of the finest estate jewelry in the world. [Declaration of Stephen H. Silver ISO App. for Right to Attach Order and Writ of Attachment ("Silver Decl."), ¶ 2.] This attachment concerns a pair of Cartier Sapphire earrings that S.H. Silver sold to David Morris, a jewelry retailer with shops in London and Palm Beach, Florida, for $948,000. [Silver Decl., ¶ 2.]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware



1   The purchase was payable in two installments. David Morris made the first payment of $474,000,

2   but failed to make the second payment of $474,000 (due on August 16, 2007) despite repeated

3   inquiries. [Silver Decl., ¶ 2.] Inclusive of finance charges, as of May 31, 2008, David Morris owes

4   a total of $550,060.62 for its purchase of the Cartier Sapphire earrings. [Silver Decl., ¶ 2.] David

5   Morris' purchase of the Cartier Sapphire earrings is described in greater detail below.

6

7   In early June 2007, a third party broker introduced S.H. Silver's Chairman and CEO,

8   Stephen Silver, to David Morris and its principal, Jeremy Morris, and Sales Director, William

9   Holbech. Following the broker's introduction, the parties' representatives made arrangements for

10  the consignment of several jewelry pieces to David Morris and the delivery of the jewelry. [Silver

11  Decl., ¶ 3.] To that end, before delivering the jewelry, on June 22, 2007, S.H. Silver sent a

12  consignment for the jewelry pieces. Among others, the consignment identified a pair of Loose

13  Sugarloaf Cabochon Sapphires (the "Sapphires") and the accompanying Cartier Platinum and

14  Diamond Ear Clip semi mounts for the Earrings (collectively, the "Earrings"). [Silver Decl., ¶ 5,

15  Exs. A, B.]

16

17  Per the consignment arrangements, at the end of June 2007, S.H. Silver delivered the

18  Earrings to David Morris. Along with the Earrings, S.H. Silver provided a copy of the SSEF

19  certification that it held for the Sapphires. SSEF, a Gemological Laboratory, had certified the

20  Sapphires as being of Kashmir origin. [Silver Decl., ¶ 6, Ex. C.]

21

22  Shortly thereafter, around July 3, 2007, David Morris' principal Mr. Morris contacted

23  Mr. Silver and expressed an interest in purchasing the Earrings directly for David Morris, as opposed

24  to selling them on consignment to a third party. [Silver Decl., ¶ 7.] Mr. Silver met Mr. Morris at the

25  David Morris store that same day where they engaged in negotiations toward the purchase of the

26  Earrings. During the course of their discussions, Mr. Morris suggested that he was considering

27  cutting the Sapphires and remaking the Earrings and obtaining a certification from a different

28  Gemological Laboratory, Gubelin, and asked Mr. Silver's opinion on that approach. [Silver Decl., ¶

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH
ORDER AND WRIT OF ATTACHMENT

1   7.]  Mr. Silver told Mr. Morris that S.H. Silver had elected to keep the Sapphires in their original

2   form as a pair of original Cartier Kashmir Sapphire earrings, but that the beauty and value of the

3   Sapphires are in the eye of the beholder, and that, as the new owner, it would be up to David Morris

4   to do whatever it wanted with them.  Mr. Morris suggested that he would consult with his jewelry

5   cutter and Mr. Silver and Mr. Morris then turned their attention to negotiation of a price for the

6   Earrings.  [Silver Decl., ¶ 7.]  Mr. Silver and Mr. Morris soon finalized an agreement for the

7   purchase of the Earrings, settling on a price of $948,000 to be paid immediately by wire to S.H.

8   Silver's bank account (the "Agreement").  As a practical matter, David Morris already held the

9   Earrings and a copy of the SSEF certification per the consignment arrangement, but title/possession

10  was transferred contemporaneously with the Agreement, on or about July 3, 2007.  [Silver Decl., ¶

11  7.]

12

13       Shortly after the sale was completed, Mr. Morris contacted Mr. Silver and asked him

14  to adjust the payment terms of the Agreement by extending David Morris some credit.  [Silver Decl.,

15  ¶ 8.]  Mr. Morris mentioned again that he was planning on cutting the stones and would re-certify the

16  stones after they were finished, and therefore would need some time before he would be in a position

17  to sell the Earrings (in other words, to be able to recoup his investment).  [Silver Decl., ¶ 8.]  As a

18  courtesy and accommodation, Mr. Silver agreed that 50% of the purchase price, $474,000, could be

19  paid immediately and that the balance, $474,000, could be paid in 45 days, or by August 16, 2007.

20  [Silver Decl., ¶ 8.]  Mr. Morris agreed and these terms were documented in an invoice dated July 2,

21  2007.  [Silver Decl., ¶ 8, Ex. D.]

22

23       David Morris did not make the first payment immediately, as it was required to do

24  under the Agreement.  Instead, over two weeks passed, at which point Mr. Silver contacted David

25  Morris' offices to request that the delinquent payment be made.  [Silver Decl., ¶ 9.]  Mr. Silver

26  spoke with David Morris' Sales Director Mr. Holbech, who told Mr. Silver that he did not have

27  authority to wire the payment owed.  [Silver Decl., ¶ 9.]  Growing increasingly frustrated, Mr. Silver

28  asked Mr. Holbech to make arrangements to send the payment or simply return the Earrings.  [Silver

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: CIV 473796                                – 3 –                        DOCSSFO-42511874.2-JMITCHELL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH
ORDER AND WRIT OF ATTACHMENT



1   Decl., ¶ 9.] Mr. Holbech apologized for the delay and said he would talk with Mr. Morris and make

2   arrangements to wire the money. [Silver Decl., ¶ 9.]

3

4          Soon thereafter, Mr. Holbech contacted Mr. Silver and indicated he had spoken with

5   Mr. Morris and would send the entire amount owed for the Earrings, including the second payment

6   not yet due, to compensate for the delinquency on the first payment. [Silver Decl., ¶ 10.] Mr. Silver

7   told Mr. Holbech that it was not necessary to send the entire amount at that time and asked that

8   David Morris simply honor the terms of the Agreement and settle the second payment when it came

9   due. [Silver Decl., ¶ 10.] The next day, July 19, 2007, David Morris wired the first payment due

10  under the Agreement to S.H. Silver's bank account. [Silver Decl., ¶ 10.]

11

12         The remaining balance of $474,000 was due on August 16, 2007. In breach of the

13  Agreement, David Morris did not make payment by August 16, 2007, and has not made any

14  payment since that time despite repeated inquiries. [Silver Decl., ¶ 11.]

15

16         Approximately one month after the deadline for the second payment had passed, Mr.

17  Silver telephoned Mr. Morris to inquire about the status of the payment. During this telephone

18  conversation, Mr. Morris advised Mr. Silver that he had the Sapphires cut and had attempted to

19  obtain a new certification from Gubelin, another Gemological Laboratory, but that Gubelin would

20  not certify the Sapphires as being of Kashmir origin. [Silver Decl., ¶ 12.] Mr. Morris told Mr.

21  Silver that David Morris was not going to make payment until the certification was resolved,

22  although he assured Mr. Silver that he never questioned the Kashmir origin of the Sapphires and that

23  everything would get sorted out in short order. [Silver Decl., ¶ 12.]

24

25         Mr. Silver told Mr. Morris that he was violating the terms of the Agreement, and

26  reminded him that what he chose to do with the Sapphires after David Morris purchased them from

27  S.H. Silver was up to him, but that did not affect David Morris' payment obligations to S.H. Silver,

28  nor did David Morris' attempts to obtain a new certification. [Silver Decl., ¶ 12.] Accordingly, Mr.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Silver asked Mr. Morris to send the payment owed. Mr. Morris still refused to make payment,

2   stating words to the effect of "I'm not paying this payment until I'm ready" and hung-up. [Silver

3   Decl., ¶ 12.]

4

5   After another month passed with no payment from David Morris, S.H. Silver again

6   demanded payment on October 31, 2007. [Silver Decl., ¶ 13, Ex. E.] In response, David Morris

7   falsely claimed *for the first time* that the sale of the Earrings was *subject to* obtaining a Gubelin

8   certification. [Silver Decl., ¶ 14, Ex. F.] As set forth above, and discussed in more detail below,

9   there was never any such condition. [Silver Decl., ¶ 14.] Indeed, at no point before the Agreement

10  did David Morris ever mention or propose any such condition. And, in fact, there never was any

11  such condition. David Morris' post-default attempt to insert a certification condition into the

12  Agreement makes no sense and is belied by its own actions over the course of the transaction.

13

14  For instance, if the purchase was subject to David Morris obtaining a Gubelin

15  certification, it would have made no sense for David Morris to make *any* payment without obtaining

16  the certification. [Silver Decl., ¶ 16.] Nevertheless, as set forth above, David Morris made the first

17  payment under the Agreement (albeit late); in fact, David Morris committed to make the second

18  payment (in other words, the entire balance) early to compensate for its delay in making the first

19  payment.[1] [Silver Decl., ¶ 16.] And, David Morris did this even though, at that time, it had not

20  obtained a new certification. [Silver Decl., ¶ 16.] At no point did David Morris ever take the

21  position that it needed to obtain a new certification before it was obligated to pay S.H. Silver.

22  Instead, it simply proceeded to wire the first payment. [Silver Decl., ¶ 16.]

23

24  David Morris' post-default position also defies common business sense. As noted

25  above, after buying the Sapphires, David Morris elected to cut the Sapphires. [Silver Decl., ¶ 17.]

26

27  ---
[1] Ultimately, David Morris only sent the first installment, as opposed to the entire balance, after S.H. Silver told David Morris to simply honor the terms of the original agreement. [Silver Decl., ¶ 10.]

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH
ORDER AND WRIT OF ATTACHMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Naturally, this permanently altered the composition of the Sapphires. As part of that process, the

2    characteristics which allowed the Gemological Laboratory to identify the Sapphires as being of

3    Kashmir origin could have been compromised or destroyed. [Silver Decl., ¶ 17.] Of course, S.H.

4    Silver never would have – and, indeed, did not – assume the risks associated with David Morris'

5    cutting the Sapphires. [Silver Decl., ¶ 17.] The parties' deal was simple: David Morris bought the

6    Earrings outright, with the SSEF certification S.H. Silver had obtained for them, for $948,000.

7    [Silver Decl., ¶ 17.] Whatever David Morris elected to do with the Earrings after the purchase was

8    up to David Morris, as the new owner of the Earrings. That, however, had nothing to do with David

9    Morris' payment obligations to S.H. Silver under the Agreement. [Silver Decl., ¶ 17.]

10

11        Because David Morris has continued to refuse to pay the amounts owed to S.H.

12    Silver, S.H. Silver was forced to initiate this action. With finance charges, as of May 31, 2008,

13    David Morris owes S.H. Silver $550,060.62 for the Earrings. [Silver Decl., ¶ 19, Ex. G.] S.H.

14    Silver seeks to attach David Morris' assets for the sole purpose of securing recovery of the amounts

15    that David Morris owes under the Agreement.[2] [Silver Decl., ¶ 19.]

16

17                            III. LEGAL ANALYSIS

18

19        A writ of attachment "allows a plaintiff, in certain prescribed instances, to obtain a

20    pretrial seizure of the property of a defendant-debtor." *Whitehouse v. Six Corporation, Inc.*, 40

21    Cal.App.4th 527, 533 (1995); *see also Lorber Industries v. Turbulence, Inc.*, 175 Cal.App.3d 532,

22    535 (1985) (writ of attachment allows creditor who has established a prima facie claim to have

23    debtor's assets seized pending final adjudication). Thus, an attachment ensures that litigation is not

24    pursued in vain or that the ends of a successful suit are not frustrated. *See Loeb & Loeb v. Beverly

25    Glen Music*, 156 Cal.App.3d 1110 (1985).

26

27    [2] S.H. Silver will supplement its papers to update the amounts owed due to additional finance charges incurred in
      advance of the hearing.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH
ORDER AND WRIT OF ATTACHMENT

Under California Code of Civil Procedure 484.090(a), an attachment shall issue if: (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the plaintiff has established the probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based; and (4) the amount to be secured by the attachment is greater than zero.

**A.    S.H. Silver's Claim Against David Morris Is A Claim Upon Which An Attachment May Be Properly Issued**

As set forth above, the first requirement for an attachment order is that the claim is subject to an attachment. Cal. Civ. Proc. Code. § 484.090(a)(1). In turn, California Code of Civil Procedure Section 483.010 provides that a writ of attachment may issue upon an unsecured claim for money based on an express or implied contract for a "fixed or readily ascertainable amount" of at least $500. S.H. Silver's claim meets each of the elements under Section 483.010 and thereby also meets the first requirement for an attachment under Section 484.090(a). Indeed, the claim is based upon a contract – the Earring Agreement. And, the claim is for a "fixed or readily ascertainable amount" in excess of $500. Specifically, S.H. Silver seeks an attachment in the amount of $550,060.62, which is derived directly from the Invoice for the Earrings. [*See* Silver Decl., Exs. D, G.]

**B.    S.H. Silver Has Established The Probable Validity Of Its Claim Against David Morris**

In addition, S.H. Silver has met the second requirement for an attachment, as it has demonstrated that its claim is "probably valid". Cal. Civ. Proc. Code §§ 484.050; 484.090(a)(2). To demonstrate "probable validity," a plaintiff need only show it is "more likely than not" that it will obtain a judgment on the underlying claim. Cal. Civ. Proc. Code § 481.190. S.H. Silver far exceeds this threshold.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT



1    As set forth above, the parties' Agreement was simple.  David Morris bought the

2  Earrings from S.H. Silver for $948,000, payable in two installments, the first, immediately, and the

3  second a month and a half later, by August 16, 2007.  David Morris made the first payment of

4  $474,000 (albeit over two weeks late), but, in breach of the Agreement, failed to make the second

5  payment of $474,000.  Thus, S.H. Silver's claim is probably valid.

6

7    That should be the end of the story, but a month after it defaulted on its payment

8  obligation, David Morris cobbled together a transparent excuse for its non-payment.  S.H. Silver

9  anticipates that David Morris will attempt to rely upon this "excuse" here as well.  After its default,

10  David Morris claimed for the first time (and now continues to claim) that its Agreement to purchase

11  the Earrings was *conditional* upon David Morris obtaining a new certification from a gemological

12  laboratory.  David Morris' excuse is fundamentally flawed, however, and does not come close to

13  rebutting the probable validity of S.H. Silver's claim.  Indeed, David Morris' post-default excuse

14  does not square with (1) the parties' actual Agreement, (2) its own conduct following the Agreement

15  or (3) common business sense.

16

17    First, David Morris' post-default excuse is simply wrong because it is contrary to the

18  parties' Agreement.  David Morris never mentioned or proposed any such condition during the

19  parties' negotiations on July 3, 2007.  Instead, the Agreement was for the outright purchase of the

20  Earrings for $948,000, payable immediately.  The payment terms were later adjusted to allow for

21  two installment payments, one immediately and one forty-five days later, but no other terms of the

22  Agreement were altered.  The Agreement is thus reflected in the Invoice, which nowhere mentions

23  any certification condition.  In short, there was never any such condition.

24

25    Second, David Morris' excuse is belied by its own conduct before it defaulted on its

26  payment obligations.  David Morris did not propose any "condition" on payment or claim there was

27  any such "condition" at any point during the parties' interactions, before or after the Agreement was

28  consummated:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: CIV 473796                    — 8 —                    DOCSSFO-12511974.2-JMITCHELL



REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    (1) As noted above, David Morris did not mention or propose such a
condition when Mr. Silver and Mr. Morris negotiated the Agreement on July
2    3, 2007. Instead, the Agreement was for the outright purchase of the Earrings
for $948,000, payable immediately.
3

4    (2) David Morris did not mention, propose or claim there was such a
condition when Mr. Morris contacted Mr. Silver and asked to extend the
5    payment deadline later that day on July 3, 2007.

6    (3) David Morris did not mention, propose or claim there was such a
condition after receiving the Invoice for the Earrings from S.H. Silver
7    following the adjustment to the payment terms on July 3, 2007.

8    (4) David Morris did not mention, propose or claim there was such a
condition when Mr. Silver contacted David Morris after David Morris failed
9    to timely make the first payment. Instead, Mr. Holbech told Mr. Silver that he
would contact Mr. Morris and make arrangements for payment.

10    (5) David Morris did not mention, propose or claim there was such a
condition when Mr. Holbech told Mr. Silver and told Mr. Silver that,
11    following consultation with Mr. Morris, David Morris was prepared to send
the entire balance (i.e., both the first and second payments), even though the
12    second payment had not yet come due, to compensate for David Morris'
delinquency in making the first payment.
13

14    (6) David Morris did not mention, propose or claim there was such a
condition when it wired the first payment.
15

   (7) And David Morris did not mention, propose or claim there such a
16    condition at any other time before the second payment came due.

17        In other words, on multiple occasions, if David Morris had believed the payment

18   obligations under the Agreement was conditional upon obtaining a new certification, it could have

19   stated so. It did not, because there was no such condition.

20

21        In addition to never stating there was such a condition, David Morris never acted as if

22   there was such a condition. In particular, David Morris made its first payment due under the

23   Agreement without obtaining a new certification. Put differently, if payment was conditional upon a

24   new certification, as David Morris has suggested after it defaulted on the second payment, why did

25   David Morris make the first payment without obtaining a new certification.

26

27        Further, David Morris had the Sapphires re-cut without obtaining a new certification.

28   Again, if payment was conditional upon a new certification, why did David Morris proceed to re-cut

No.: CIV 473796            —9—            DOCSSFO-12511974.2-JMITCHELL

1  the Sapphires, a process which could permanently alter the characteristics of the Sapphires and

2  thereby preclude a certification of the Sapphires in the form that S.H. Silver delivered them to David

3  Morris.

4

5       Third, and finally, David Morris' position defies common business sense. As

6  previously noted, it would have made no sense for David Morris to cut the Sapphires if it believed

7  that payment was subject to a new certification because once the Sapphires were cut because the

8  baseline for the certification – the *original* Sapphires – would no longer be the same. By the same

9  token, S.H. Silver never would have – and, indeed, did not – assume the risks associated with David

10  Morris' cutting the Sapphires. In fact, over the course of S.H. Silver's twenty-five-plus years of

11  business and thousands of successful sales, not once has payment for the sale of jewelry ever been

12  conditioned upon obtaining a new certification following the cutting of the jewelry stones. This

13  would make absolutely no sense for the seller of the jewelry because of the risks associated with

14  cutting the stones. [Silver Decl., ¶ 18.]

15

16  **C.**    **S.H. Silver Does Not Seek An Attachment For An Improper Purpose**

17

18       S.H. Silver also meets the third requirement – that the attachment is not sought for an

19  improper purpose. The sole purpose for which S.H. Silver seeks the attachment is to secure recovery

20  of the amounts David Morris owes it pursuant to the Earring Agreement. [Silver Decl., ¶ 19.] David

21  Morris took possession of the Earrings on July 3, 2007, but has been withholding payment without

22  any legitimate justification for nearly a year, since August 2007. S.H. Silver is entitled to full

23  payment for the Earrings it delivered.

24

25  **D.**    **The Amount To Be Secured Is Greater Than Zero**

26

27       Lastly, S.H. Silver meets the fourth and final requirement that the amount to be

28  secured exceed zero. As previously detailed, S.H. Silver seeks an attachment in the amount of

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

No.: CIV 473796       – 10 –       DOCSSFO-12511974.2-JMITCHELL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH
ORDER AND WRIT OF ATTACHMENT



1   $550,060.62. Because S.H. Silver has met each of the requirements, an attachment should issue.

2

3                              IV.  CONCLUSION

4

5          Because S.H. Silver's claim meets each of the requirements for an attachment, an

6   attachment should issue.  David Morris bought a pair of Earrings outright from S.H. Silver, but now

7   refuses to pay for them.  After defaulting on its payment obligations, David Morris crafted an

8   "excuse" to try and avoid its obligations, but that excuse is of no moment.  The fact of the matter

9   remains:  David Morris bought the Earrings, took possession of them, made the first of two

10  payments, and exercised its ownership over the Earrings by cutting (and thereby permanently

11  altering) the stones in the Earrings.  In short, David Morris has no basis to avoid its obligation to

12  make the second payment.  Accordingly, an attachment in the amount of $550,060.62 should issue.

13

14         DATED this the 26th day of June, 2008.

15                                              Jonah D. Mitchell

16                                              REED SMITH LLP
                                                Attorneys for Plaintiff S.H. Silver Company, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: CIV 473796                              – 11 –                    DOCSSFO-12511974.2-JMITCHELL

COPY

1    Scott D. Baker (SBN 84923)
     Email: sbaker@reedsmith.com
2    Jonah D. Mitchell (SBN 203511)
     Email: jmitchell@reedsmith.com
3    REED SMITH LLP
     Two Embarcadero Center, Suite 2000
4    San Francisco, CA 94111-3922

5    **Mailing Address:**
     P.O. Box 7936
6    San Francisco, CA 94120-7936

7    Telephone:    +1 415 543 8700
     Facsimile:     +1 415 391 8269
8
     Attorneys for Plaintiff
9    S.H. Silver Company, Inc.



ENDORSED FILED
SAN MATEO COUNTY

JUN 26 2008

Clerk of the Superior Court
By   F. MORNEAU
DEPUTY CLERK

10

11         SUPERIOR COURT OF THE STATE OF CALIFORNIA

12            FOR THE COUNTY OF SAN MATEO

13

14    S.H. SILVER COMPANY, INC.         No.: CIV 473796

15          Plaintiff,           **DECLARATION OF STEPHEN H. SILVER
                                  IN SUPPORT OF S.H. SILVER COMPANY,**
16        vs.                 **INC.'S APPLICATION FOR A RIGHT TO
                                   ATTACH ORDER AND WRIT OF**
17    DAVID MORRIS INTERNATIONAL LTD.,    **ATTACHMENT**

18          Defendant.        Date:           August 1, 2008
19                                Time:          9:00 a.m.
                                    Place:        Dept. 2, Courtroom 8C
20                                Compl. Filed:   June 17, 2008

21                                Honorable Marie S. Weiner

22

23

24

25

26

27

28

No.: CIV 473796

DECLARATION OF STEPHEN H. SILVER

I, Stephen H. Silver, declare:

1.  I am the Chairman and CEO of S.H. Silver Company, Inc. ("S.H. Silver"). I make this Declaration in support of S.H. Silver's Application for a Right to Attach Order and Writ of Attachment. I have personal knowledge of the matters set forth in this Declaration. If called as a witness, I could and would competently testify to these matters.

2.  I founded S.H. Silver in 1980. Based in Menlo Park, California, S.H. Silver is a premier jewelry house, offering vintage and modern jewelry. S.H. Silver enjoys a reputation as one of the industry's most trusted names in acquiring and placing some of the finest estate jewelry in the world.

3.  This lawsuit concerns two transactions between S.H. Silver and David Morris International, Ltd. ("David Morris"), a jewelry retailer with shops in London and Palm Beach, Florida, among other locations. One of the transactions concerned a blue diamond and the other a pair of Cartier Sapphire earrings. This attachment solely concerns the Cartier Sapphire earrings, which David Morris purchased from S.H. Silver for $948,000, payable in two installments. David Morris made the first payment of $474,000, but failed to make the second payment of $474,000 (due on August 16, 2007) despite repeated inquiries. The amounts now owing are fixed and readily ascertainable. Inclusive of finance charges, the amounts owed as of May 31, 2008 total $550,060.62. S.H. Silver's claim for these amounts is not secured. S.H. Silver seeks to attach David Morris' assets for the sole purpose of securing recovery of the amounts that David Morris owes. David Morris' purchase of the Cartier Sapphire earrings is described in greater detail below.

4.  On or around June 8, 2007, a broker based in Dallas, Texas introduced me via an e-mail to David Morris and its principal, Jeremy Morris, and Sales Director, William Holbech. Following the broker's introduction, I had multiple telephone conversations with Mr. Holbech and at least one telephone conversation with Mr. Morris from S.H. Silver's Menlo Park offices for the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   purpose of making arrangements for the consignment of several jewelry pieces to David Morris and

2   a trip to London to deliver the jewelry.

3

4        5.      In addition, before departing for London, on June 22, 2007, at my direction, S.H.

5   Silver employee Emily Teeter faxed from S.H. Silver's offices in Menlo Park, California to David

6   Morris' office in London a consignment for the jewelry pieces that I was planning to bring with me

7   to London. The consignment contemplated that in event that "suit is instituted to collect this

8   merchandise or any portion thereof … jurisdiction shall be in California and venue in San Mateo.

9   County of that state." The consignment also provided that "receipt of the merchandise constitutes

10  your agreement to the foregoing terms which represent the entire contract with respect to the

11  merchandise or any contrary custom of the trade." Among others, the consignment identified a pair

12  of Loose Sugarloaf Cabochon Sapphires (the "Sapphires"), bearing SKU # 13087, and the

13  accompanying Cartier Platinum and Diamond Ear Clip semi mounts for the Earrings, bearing SKU

14  #12646 (collectively, the "Earrings"). A true and correct copy of the consignment is attached hereto

15  as Exhibit A. David Morris' Import/Export Manager Lynn Tabor acknowledged receipt of the

16  consignment in an e-mail sent to Ms. Teeter on June 22, 2007. A true and correct copy of Ms.

17  Tabor's e-mail to Ms. Teeter is attached hereto as Exhibit B.

18

19       6.      I arrived in London at the end of June 2007 and delivered the jewelry to David

20  Morris, including the Earrings, shortly thereafter per the consignment arrangements. Along with the

21  Earrings, I provided a copy of the SSEF certification that S.H. Silver held for the Sapphires. SSEF is

22  a Gemological Laboratory. SSEF had certified the Sapphires as being of Kashmir origin. A true and

23  correct copy of the SSEF certification is attached hereto as Exhibit C.

24

25       7.      On or about July 3, 2007, Mr. Morris telephoned me and expressed an interest in

26  purchasing the Earrings directly for David Morris, as opposed to selling them on consignment. I met

27  Mr. Morris at the David Morris store where we engaged in negotiations toward the purchase of the

28  Earrings. During the course of our discussions surrounding the negotiation, Mr. Morris indicated

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   that he was considering cutting the Sapphires and remaking the Earrings and obtaining a certification

2   from a different Gemological Laboratory, Gubelin, and asked my opinion. I told Mr. Morris that I

3   had elected to keep the stones in their original form as a pair of original Cartier Kashmir Sapphire

4   earrings, but that the beauty and value of the stones are in the eye of the beholder, and that, as the

5   new owner, it was up to him to do whatever he wanted with them. Mr. Morris indicated that he felt

6   the Kashmir sapphires would be more valuable and saleable as faceted stones and he would probably

7   proceed in that direction after consulting with his cutter. We then turned our attention to negotiation

8   of a price for the Earrings and soon finalized an agreement for the purchase of the Earrings. We

9   settled on a price of $948,000 to be paid immediately by wire to S.H. Silver's bank account in

10  Redwood City, California (the "Agreement"). As a practical matter, David Morris already held the

11  Earrings and a copy of the SSEF certification per the consignment arrangement, but title/possession

12  was transferred contemporaneously with the Agreement, on or about July 3, 2007.

13

14       8.     Shortly after the sale was completed, Mr. Morris telephoned me and asked me to

15  adjust the payment terms of the Agreement by extending him some credit. He mentioned again that

16  he was planning on cutting the stones and would need to re-certify the stones after they were

17  finished, and therefore would need some time before he would be in a position to sell the Earrings.

18  Mr. Morris asked if he could pay the amounts owed in sixty days. I told him I was not willing to do

19  that, but as a courtesy and accommodation, I agreed that 50% of the purchase price, $474,000, could

20  be paid immediately and that the balance, $474,000, could be paid in 45 days, or by August 16,

21  2007. Mr. Morris agreed and these terms were documented in an invoice dated July 2, 2007 and

22  bearing S.H. Silver's Menlo Park, California address (I believe that the invoice was mistakenly dated

23  July 2, as opposed to July 3, the date I believe the transaction was concluded). A true and correct

24  copy of Invoice No. 9644 that was delivered to David Morris is attached hereto as Exhibit D. My

25  office also sent the original SSEF certification for the Sapphires by Federal Express to David Morris.

26

27       9.     David Morris did not make the first payment immediately, as it was required to do

28  under the Agreement. Instead, over two weeks passed, at which point I contacted David Morris'

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   offices from S.H. Silver's offices in Menlo Park, California to request that the delinquent payment

2   be made. I spoke with David Morris' Sales Director William Holbech. Mr. Holbech advised me

3   that Mr. Morris was out of town and that he did not have authority to wire the payment owed.

4   Growing increasingly frustrated, I asked Mr. Holbech to make arrangements to send the payment or

5   simply return the Earrings. Mr. Holbech apologized for the delay and said he would talk with Mr.

6   Morris and make arrangements to wire the money.

7

8          10.      Soon thereafter, Mr. Holbech called me back on my cellular phone in Menlo Park,

9   California. Mr. Holbech said he had spoken with Mr. Morris and would send the entire amount

10  owed for the Earrings, including the second payment not yet due, to compensate for the delinquency

11  on the first payment. I told Mr. Holbech that it was not necessary to send the entire amount at that

12  time and asked that David Morris simply honor the terms of the Agreement and settle the invoice in

13  full on August 16, 2007. The next day, July 19, 2007, David Morris wired the first payment due

14  under the Agreement to S.H. Silver's bank account in Redwood City, California.

15

16         11.      The remaining balance of $474,000 was due on August 16, 2007. In breach of the

17  Agreement, David Morris did not make payment by August 16, 2007, and has not made any

18  payment since that time despite repeated inquiries.

19

20         12.      Approximately one month after the deadline for the second payment had passed, I

21  telephoned Mr. Morris from S.H. Silver's offices in Menlo Park, California to inquire about the

22  status of the payment. During our telephone conversation, Mr. Morris advised me that he had the

23  stones cut. He also told me that following cutting he attempted to obtain a new certification from

24  Gubelin, another Gemological Laboratory, but that Gubelin would not certify the stones as being of

25  Kashmir origin. He told me he was not going to make payment until the certification was resolved.

26  Mr. Morris told me not to worry, that he never questioned the sapphires as not being of Kashmir

27  origin, and that everything would get sorted out in short order. I told Mr. Morris that he was

28  violating the terms of the Agreement, and reminded him that what he chose to do with the stones

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   after David Morris purchased them from S.H. Silver was up to him, but that did not affect David

2   Morris' payment obligations to S.H. Silver, nor did his attempts to obtain a new certification.

3   Accordingly, I asked Mr. Morris to send the payment owed. Mr. Morris still refused to make

4   payment, stating words to the effect of "I'm not paying this payment until I'm ready" and hung-up.

5

6          13.     In a letter dated October 31, 2007, I wrote Mr. Morris regarding the past due balance

7   under Invoice No. 9644. My letter set forth that the outstanding balance now amounted to $492,249,

8   inclusive of finance charges. A copy of my October 31, 2007 letter (unsigned version) is attached

9   hereto as Exhibit E.

10

11         14.     In response, Mr. Morris sent me a letter dated November 5, 2007, a true and correct

12   copy of which is attached hereto as Exhibit F. Mr. Morris falsely claimed that the sale of the

13   Earrings was subject to obtaining a Gubelin certification. As set forth above, and discussed in more

14   detail below, there was never any such condition.

15

16         15.     As a result of Mr. Morris' refusal to honor the terms of the Agreement, S.H. Silver

17   was forced to retain counsel and initiate this action to seek recovery of the amounts owed to S.H.

18   Silver.

19

20         16.     In correspondence, David Morris has continued to take the position that the

21   Agreement was subject to David Morris obtaining a new Gubelin certification for the Earrings. At

22   no point prior to the Agreement did David Morris ever mention or propose any such condition. And,

23   in fact, there was never any such condition. David Morris' attempt to impose an after-the-fact

24   condition on the Agreement makes no sense and is belied by its own actions over the course of the

25   transaction. For instance, if the purchase was subject to David Morris obtaining a Gubelin

26   certification, it would have made no sense for David Morris to make any payment without obtaining

27   the certification. Nevertheless, as set forth above, David Morris made the first payment under the

28   Agreement (albeit late) and actually indicated it was prepared to pay the entire amounts owed under

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  the Agreement at that time even though it had not obtained the new certification (David Morris only

2  sent the first installment, as opposed to the entire balance, after I indicated that only the first

3  installment had come due).  At no point did David Morris take the position that it needed to obtain a

4  new certification *before* it was obligated to pay S.H. Silver.  Instead, it simply proceeded to wire the

5  first payment.

6

7      17.    David Morris' post-Agreement position also defies common business sense.  As

8  noted above, after buying the Earrings, David Morris elected to cut the Sapphires.  Naturally, this

9  permanently altered the composition of the Sapphires.  As part of that process, the characteristics

10  which allowed the Gemological Laboratory to identify the Sapphires as being of Kashmir origin

11  could have been compromised or destroyed.  Of course, S.H. Silver never would have – and, indeed,

12  did not – assume the risks associated with David Morris' cutting the Sapphires.  The deal was

13  simple:  David Morris bought the Earrings outright, with the SSEF certification S.H. Silver had

14  obtained for them, for $948,000.  Whatever David Morris elected to do with the Earrings after the

15  purchase was up to David Morris, as the new owner of the Earrings.  That, however, had nothing to

16  do with David Morris' payment obligations to S.H. Silver under the Agreement.

17

18      18.    I have been selling jewelry for S.H. Silver for over twenty-five years, with thousands

19  of sales successfully completed.  Not once has payment for the sale of jewelry ever been conditioned

20  upon obtaining a new certification following cutting of the jewelry stones.  This would make

21  absolutely no sense for the seller of the jewelry stones because of the risks associated with cutting

22  the stones.

23

24      19.    With finance charges, as of May 31, 2008, David Morris owed S.H. Silver

25  $550,060.62.  A true and correct copy of an Invoice documenting the amounts due, including finance

26  charges, is attached hereto as Exhibit G.  S.H. Silver seeks to attach David Morris' assets for the sole

27  purpose of securing recovery of the amounts that David Morris owes under the Agreement.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware



1    I declare under the penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct

3

4    DATED: June ___, 2008.

5

6

7                                                        Stephen H. Silver

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: CIV 473796                              — 7 —                              DOCSSFO-12811232.2-JMITCHELL
                                DECLARATION OF STEPHEN H. SILVER

**EXHIBIT "A"**

# S. H. Silver Company-Menlo Park
## MEMORANDUM

The goods described and valued below are delivered to you for examination and are the property of S.H. Silver Company. This merchandise is subject to the order of S.H. Silver Company and shall be returned to them on demand. Such merchandise, until returned to them and actually received, is at your risk from all hazards. No right or power is given to you to sell, hypothecate, modify, repair, remove or reset stones, or otherwise work on or dispose of this merchandise regardless of prior transactions. A sale of this merchandise can only be effected and title will pass only if, as, and when said S.H. Silver Company, Inc. shall agree to such sale and a bill of sale is rendered thereof. In case suit is instituted to collect this merchandise or any portion thereof, the customer promises to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit, and that jurisdiction shall be in California, and venue in San Mateo County of that sale. Service charge on accounts past due, agreed terms 1.5% per month, 18% annually. Receipt of the merchandise constitutes your agreement to the foregoing terms which represent the entire contract with respect to the merchandise or any contrary custom of the trade.

| From: | To: | | Date: 06/24/07 |
|---|---|---|---|
| S. H. Silver Company<br>800 El Camino Real<br>Suite 230<br>Menlo Park, CA 94025<br>Ph:650-325-9500<br>Fax:650-325-9519 | David Morris<br>180 New Bond Street<br>London W1S 4RL<br>020 7499 2200<br>FOR TEMPORARY IMPORT INTO U.K. | Total Items: 8<br><br>Total Dealer Cost:<br><br>SHS Memo C/V# 8243 | Memo Term: Short Term |

| | SKU# | Description | Dealer Price |
|---|---|---|---|
| | **EA** 12646 | Plat and dia ear clip semi mounts ~ 54 F/C dias ~ .61 ctw; 8 sq dias ~ .56 ctw<br>**SOLD ONLY WITH 13687 AS SET** | 25,000 |
| | **NE** 12857 | Plat, dia & green garnet necklace. 67 round green garnets ~ 50.02ctw; 101 F/C dias ~ 6.80ctw. | |
| | **RI** 9362 | Plat, dia & ruby ring. 1 oval cab. ruby ~ 11.11ct; 2 P/S dias ~ .57ctw; 82 F/C dias ~ .65ctw. | |
| | **RI** 10367 | loose blue diamond. 1 oval blue dia ~ 6.04ct<br>Plat & dia ring semi for blue dia . 266 F/C dias ~ 1.13ctw. | |
| | **RI** 13821 | Plat, dia & pink dia dome ring. 1 oval pink dia ~ .65ct; F/C pink dias ~ .52ctw; F/C dias ~ 2.52ctw. | |
| | **RI** 14097 | Plat, dia & sapp ring. 1 oval sapp ~ 11.00ct; 12 F/C dias ~ 3.12ctw. | |
| | **RI** 15885 | Plat, dia & sapp ring. 1 cush sapp ~ 11.3.7ct; 6 T/B dias ~ 1.22ctw. | |
| | **SA** 13687 | 2 loose cab. sugarloaf sapps ~ 18.23ctw (9.17 & 9.06)<br>**SOLD ONLY WITH 12646 AS SET** | 1,200,000 |

Purpose of shipment: On Loan                Shipping date: 06/24/07

Shipper: Emily                Shipped Via: Hand Delivered

Please remove your tags and return all unsold items with our inventory tags attached. Thank you.

**Please sign below and return a copy of this memorandum to our office.**

EXHIBIT "B"



Wednesday, April 2, 2008 3:55 PM

Subject: 2 page faxed received
Date: Friday, June 22, 2007 3:33 PM
From: Lynn Tabor <lynn@davidmorris.com>
To: <eteeter@shsilver.com>

Hi Emily

Just to confirm that we have received your 1-pages by fax (Invoice and cover sheet.

Many thanks
Lynn
Lynn Tabor
Import/Export Manager

# DAVID MORRIS

180 New Bond Street
London W1S 4RL

T: +44 207 399 4166
F: +44 207 499 3249
M: +44 (0) 7764 977870

EXHIBIT "C



**SSEF**

**Shape & Cut:**        antique cushion, high cabochon



Origin: Kashmir

EXHIBIT "D



**S.H. SILVER COMPANY, INC,**
800 EL CAMINO REAL, SUITE 230, MENLO PARK, CA 94025
TEL: 650-325-9500 • FAX: 650-325-9618
E-MAIL: info@shsilver.com

**INVOICE**

9644

SHIPPED TO:

David Morris
180 New Bond Street
London W154RL

| INVOICE DATE | DATE SHIPPED | OUR ORDER NO. | YOUR ORDER NO. | TERMS | F.O.B. | SALESPERSON | SHIPPED VIA |
|---|---|---|---|---|---|---|---|
| 7/2/07 | | | | | | | |
| | 13087  Plat, diamond & Kashmir Sapp | | | | | TOTAL | $948,0 |
| | earrings ($947,000—) | | | | | Tax | R/S |
| | 13646 Plat & diamond earring semis | | | | | | |
| | $1,000) | | | | | TOTAL | $948,0 |
| | | | | | | | |
| | Terms: $474,000 net cash, | | | | | | |
| | $474,000 45 days | | | | | | |

Due on receipt. A service charge of 1½% per month will be charged on past due accounts.

**THANK YOU**

EXHIBIT "E

October 31, 2007

Jeremy Morris
David Morris International Ltd.
180 New Bond Street
London W1S 4RL
United Kingdom

Reference: **PAST DUE BALANCE ON INVOICE NO. 9644**

Dear Mr. Morris,

The outstanding balance on the referenced invoice is $492,249, inclusive of finance charge. Despite sending your company numerous emails and initiating telephone communication directly with you to resolve this situation, your account remains overdue.

We mutually agreed on following sale amount and payment terms: the total invoice of $948,000, the first payment due on July 2, 2007, the second payment due on August 14, 2007. Your first payment of $474,000 was not remitted until July 19, 2007 and the second payment is still outstanding.

Jeremy, we feel we have given you ample time to remit payment and close the outstanding balance. If payment is not received within the next ten days, you leave us no choice but to turn this matter over to our attorneys. We sincerely hope you choose to avoid this very time consuming and expensive legal process and simply remit payment on the outstanding balance immediately.

Sincerely,


Stephen H. Silver
President

**EXHIBIT "F"**

# DAVID MORRIS

Mr Stephen H. Silver
800 El Camino Real, Suite 230
Menlo Park
CA 94025

5th November 2007

Dear Mr Silver

Thank you for your letter dated 31st October concerning the balance of invoice 9644, although I am very surprised by the tone of it as the sale was agreed subject to obtaining Gubelin certification.

As you are aware it has taken me since 19th June to acquire certificates for these stones and still I am unable to get Cashmere certification from Gubelin who are the most respected gem laboratory in the world and whose certification this sale was agreed. Without Gubelin certification I really feel that I am on the back foot trying to market these stones as any knowledgeable client could request Gubelin certificates and I would not be able to provide them and hence would lose the sale.

Having sought the views of top dealers of cashmere in the trade, the consensus of opinion is that failure to obtain a Gubelin certificate reduces the value of the stones.

There are two ways of finalising this issue, as set out below:

1.  We return the stones to you and you refund us $430,318, which is the $474,000 that we have paid less $43,682 that reflects the weight we took off (0.84cts) polishing them into faceted stones.

    I believe that this is advantageous to you as the value of the stones has been greatly increased by them being faceted as opposed to cabochon. Faceted stones always achieve a better price than cabochons.

2.  I will make you an offer of $750,000 in full and final settlement in respect of these stones and will send a wire transfer for the balance of $276,000 within 3 days of your acceptance.

Finally, a lengthy legal battle over this issue is not to the advantage of either of us and in the end the only winners in this process would be the lawyers.

I look forward to hearing from you but to avoid any ambiguity in our communications please continue all correspondence in writing.

Yours sincerely

Jeremy Morris
Managing Director

**EXHIBIT "G"**



# STATEMENT
## 0646

S.H. SILVER COMPANY
...AL, SUITE 230, MENLO PARK, CA 94025
(650) 325-9500

STATEMENT DATE: May 31, 2008

CUSTOMER ACCOUNT ID: DAVID-M

...d Morris International Ltd.
...New Bond Street
...don W1S 4RL

PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT.

AMOUNT
ENCLOSED: $ _____

| DATE | DATE DUE | DESCRIPTION | | | AMOUNT | BALANCE |
|------|----------|-------------|---|---|--------|---------|
| 7/02/07 | 7/02/07 | 9644 (50%) | | | $474,000.00 | $474,000.00 |
| 7/15/07 | | Payment | | | -474,000.00 | 0.00 |
| 7/03/07 to 7/19/07 | | Late Fee | | | 4,029.00 | 4,029.00 |
| 7/02/07 | 8/15/07 | 9644 (50%) | | | 474,000.00 | 478,029.00 |
| 8/16/07 to 5/31/08 | | Late Fee | | | 72,031.62 | 550,060.62 |

# PAST DUE

S.H. SILVER CO.

| | TOTAL | $550,060.62 |
|---|---|---|

| ... - 30 days | 31 - 60 days | 61 - 90 days | 91 - 120 days |
|---------------|--------------|--------------|---------------|
| 0.00 | 0.00 | 0.00 | $550,060.62 |

S. H. Silver Company, Inc.   David Morris Intl., Ltd.
San Mateo County Superior Court, Case No. CIV 473796

## PROOF OF SERVICE

I am a citizen of the United States and employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is One Market, Spear Street Tower, Thirty-Second Floor, San Francisco, California 94105.  On **July 24, 2008**, I caused to be served a copy of the within document(s):

1.      Notice to Adverse Party of Removal to Federal Court;

2.      Notice  of Removal of Action Under 28 U.S.C. § 1441(b) (Diversity);

[X]      by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

Jonah D. Mitchell
Reed Smith LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922
Tel.:     (415) 543-8700
Fax:      (415) 391-8269

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on **July 24, 2008**, at San Francisco, California.

_Susan Robinson_
_____
Susan Robinson

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PROOF OF SERVICE