1  SCHIFF HARDIN LLP
   Robert B. Mullen (CSB 136346)
2  Yakov P. Weigmann (CSB 245783)
   One Market, Spear Street Tower
3  Thirty-Second Floor
   San Francisco, CA  94105
4  Telephone:     (415) 901-8700
   Facsimile:      (415) 901-8701
5  rmullen@schiffhardin.com

6  Attorneys for Defendant
   DAVID MORRIS INTERNATIONAL LTD.

7

8              UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  S. H. SILVER COMPANY, INC.,              Case No.  08-3550 CRB

12              Plaintiff,                    **DEFENDANT DAVID MORRIS
                                              INTERNATIONAL LTD.'S NOTICE OF
13  v.                                        MOTION AND MOTION TO DISMISS
                                              COMPLAINT FOR LACK OF PERSONAL
14  DAVID MORRIS INTERNATIONAL                JURISDICTION PURSUANT TO F.R.C.P.
    LTD.,                                     RULE 12(b)(2), AND IN THE
15                                            ALTERNATIVE PURSUANT TO THE
                Defendant.                    DOCTRINE OF *FORUM NON
16                                            CONVENIENS*; BRIEF IN SUPPORT OF
                                              MOTION**
17
                                              Date:          September 5, 2008
18                                            Time:          10:00 a.m.
                                              Courtroom:  8
19
                                              Judge: Honorable Charles R. Breyer
20

21

22

23

24

25

26

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB

DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

# TABLE OF CONTENTS

NOTICE TO PLAINTIFF ............................................................................................... 1

SUMMARY OF ARGUMENT ....................................................................................... 1

BRIEF IN SUPPORT OF MOTION TO DISMISS ....................................................... 2

I.    STATEMENT OF FACTS ..................................................................................... 2

    A.    The Dispute ........................................................................................................ 2

    B.    Silver's False Contention There Is a Contractual Forum-Selection Provision ................... 3

    C.    DM Lacks Minimum Contacts With California ................................................. 4

    D.    The Alleged Transactions Took Place In London ............................................ 4

    E.    The Key Witnesses Except Mr. Silver Live in London ................................... 5

II.   LEGAL ARGUMENT ........................................................................................... 6

    A.    This Court Lacks Personal Jurisdiction Over DM ........................................... 6

        1.    DM does not have the necessary continuous contacts with California to support general jurisdiction ................................................................................ 7

        2.    The exercise of specific jurisdiction over DM is not warranted by the facts of this case .............................................................................................. 8

        3.    The Court must be especially careful in exercising jurisdiction over foreign corporations .......................................................................................... 10

        4.    The forum selection language contained in plaintiff's alleged "consignment agreement" does not subject DM to personal jurisdiction in California ............... 11

    B.    The Court Also Should Dismiss This Case Under The Doctrine Of *Forum Non Conveniens* ...................................................................................................... 12

        1.    Private interest factors call for a British forum ..................................... 12

        2.    Public interest factors call for a British forum ...................................... 14

III.  CONCLUSION ...................................................................................................... 15

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB                                        i                DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*American Tel. & Tel. Co. v. Companie Bruxelles Lambert*
94 F.3d 586 (9th Cir. 1996)................................................6, 7

*Bancroft & Masters, Inc. v. Augusta National, Inc.*
223 F.3d 1082 (9th Cir. 2000)................................................7

*Burger King Corp. v. Rudzewicz*
471 U.S. 462 (1985)................................................1, 6, 8

*Colombia, S.A. v. Hall*
466 U.S. 408 (1984)................................................7, 8

*Data Disc, Inc. v. Sys. Tech. Assoc's, Inc.*
557 F.2d 1280 (9th Cir. 1977)................................................8

*Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.*
18 F.3d 389 (7th Cir. 1994)................................................9

*Gray & Co. v. Firstenberg Machinery Co., Inc.*
913 F.2d 758 (9th Cir. 1990)................................................6

*Hunt v. Erie Ins. Group*
728 F.2d 1244 (9th Cir. 1984)................................................6

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*
817 F.2d 75 (9th Cir. 1987)................................................11

*International Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement*
326 U.S. 310 (1945)................................................6

*Lockman Found. v. Evangelical Alliance Mission*
930 F.2d 764 (9th Cir. 1991)................................................12

*Lueck v. Sundstrand Corp.*
236 F.3d 1137  (9th Cir. 2001)................................................2, 12

*Mattel, Inc. v. Greiner and Housser GmbH*
354 F.3d 857 (9th Cir. 2003)................................................6

*McGlinchy v. Shell Chemical Co.*
845 F.2d 802 (9th Cir. 1988)................................................8

*Nagrampa v. MailCoups, Inc.*
469 F.3d 1257 (9th Cir. 2006)................................................11

*Pacific Atlantic Trading Co., Inc. v. M/V Main Express*
758 F.2d 1325 (9th Cir. 1985)................................................8

*Piper Aircraft Co. v. Reyno*
454 U.S. 235 (1981)................................................15

*Reebok Intern. Ltd. v. McLaughlin*
49 F.3d 1387 n.7 (9th Cir. 1995)................................................6

*Roth v. Garcia Marquez*
942 F.2d 617 (9th Cir. 1991)................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

*Schwarzenegger v. Ford Motor Co.*
  374 F.3d 797 (9th Cir. 2004)...............................................................1, 7, 8

*Sinatra v. National Enquirer*
  854 F.2d 1191 (9th Cir. 1988).............................................................10, 11

*U.S. Vestor, LLC v. Biodata Info. Tech. AG*
  290 F.Supp.2d 1057 (N.D. Cal. 2003) ...........................................................8

*Ziegler v. Indian River County*
  64 F.3d 4703 (9th Cir. 1995)...........................................................................6

**STATE CASES**

*America Online, Inc. v. Super. Ct.*
  90 Cal.App.4th 1 (2001) ..............................................................................11

**STATE STATUTES**

California Code of Civil Procedure § 410.10...................................................6

California Civil Code § 1646 .........................................................................15

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(2) ...................................................1,16

1    TO PLAINTIFF S. H. SILVER, INC. AND ITS ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on September 5, 2008, at 10:00 a.m., defendant David

3    Morris International, Ltd. ("DM") will, and hereby does, move the Court to dismiss the complaint

4    without prejudice based on lack of personal jurisdiction pursuant to F.R.C.P. Rule 12(b)(2); and

5    in the alternative, to dismiss the complaint without prejudice pursuant to the doctrine of *forum*

6    *non conveniens.*

7    The motion will be heard before the Honorable Charles R. Breyer at the United States

8    District Court, 450 Golden Gate Avenue, Courtroom 8, 19th Floor, San Francisco, California.

9    This motion will be based upon this notice of motion and brief in support thereof, on the

10   declarations of Jeremy Morris and Lynn Tabor, on the request for judicial notice, on the pleadings

11   and records on file in this action and on such argument as may be presented at the hearing of the

12   motion.

13

14   ## SUMMARY OF ARGUMENT

15   Defendant David Morris International, Ltd. ("DM") moves for dismissal under Rule

16   12(b)(2) of the Federal Rules of Civil Procedure because this Court does not have personal

17   jurisdiction over DM, an English family-owned private company.  The declaration of DM's

18   managing director, Jeremy Morris, establishes DM lacks sufficient contacts with California, as

19   required by *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).  The Court may not exercise

20   general jurisdiction over DM because DM does not have "'continuous and systematic general

21   business contacts' that 'approximate physical presence'" in California.  *Schwarzenegger v. Ford*

22   *Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citations omitted).  The Court may not exercise

23   specific jurisdiction over DM because plaintiff's claim does not arise from acts or transactions by

24   DM in California in which DM purposefully availed itself of the privilege of conducting activities

25   here, and the exercise of jurisdiction over DM would not be reasonable. *Id.* at 802.  The alleged

26   contracts were negotiated, entered and performed in London; and the alleged fraudulent acts were

27   performed in London or France.  Plaintiff S. H. Silver, Inc. ("Silver") must, but cannot, meet its

28   burden of alleging and evidencing grounds for personal jurisdiction over DM.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB          - 1 -          DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

1    In the alternative, DM moves for dismissal under the doctrine of *forum non conveniens*

2    because London, England is the most convenient forum for this dispute. The "private interest

3    factors" and "public interest factors" set forth in *Lueck v. Sundstrand Corp.*, 236 F.3d 1137,

4    1145-47 (9th Cir. 2001) favor the English forum. The bulk of the evidence and witnesses

5    germane to this dispute are in London and Europe; and the laws of England will likely govern

6    most issues. The alleged business deals were conducted in London. The mere fact Silver is

7    located in Menlo Park does not justify suit here. California's courts and citizens have little

8    interest in this dispute, and should not shoulder the expense. It would not be fair to require DM to

9    incur the expense of litigation in this forum and to suffer unnecessary inconvenience and

10   disruption to its business.

11       Under both doctrines, this case should be dismissed without prejudice to refiling in the

12   appropriate forum.

13                              **BRIEF IN SUPPORT OF MOTION TO DISMISS**

14   **I.     STATEMENT OF FACTS**

15       **A.     The Dispute**

16       In June and July, 2007, plaintiff S. H. Silver, Inc.'s ("Silver") owner Stephen Silver, a

17   jeweler, went to London and sold a precious blue diamond and two Cabochon (uncut) sapphires

18   to defendant David Morris International Ltd. ("DM"), also a jeweler, through its managing

19   director Jeremy Morris. DM paid Silver approximately $5.5 million for the diamond and made

20   the first of two $474,000 payments for the sapphires. DM did not make the second payment

21   because gem labs would not certify the sapphires as being of Kashmir origin, as represented by

22   Silver.

23       In its complaint, Silver alleges that Silver and DM entered two oral agreements while

24   Mr. Silver was in London, one for purchase of the sapphires (Silver calls this the "Earring

25   Agreement") and the other for purchase of the diamond. Silver alleges DM has breached the

26   Earring Agreement by not making the second sapphire payment, and does not allege breach of the

27   diamond agreement because Mr. Silver received what he bargained for, the sum of $5.5 million.

28   Instead, Silver tries to fashion claims for fraud and breach of fiduciary duty relating to the

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB                    - 2 -                    DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

1   diamond, contending DM misled him as to the amount of money DM received for the diamond

2   from DM's customer in France. As discussed in the Declaration of Jeremy Morris ("Morris

3   Dec.") submitted with this brief, these allegations are false. See Morris Dec., ¶ 14.

4        **B.    Silver's False Contention There Is a Contractual Forum-Selection Provision**

5        Silver has tried to justify filing suit in California by alleging the existence of yet another

6   agreement, the so-called "Consignment Agreement." See Complaint, Request for Judicial Notice

7   1, at ¶¶ 5, 8 and 9. Silver alleges this document contains a provision "providing exclusive venue

8   in San Mateo County" (Complaint, ¶ 5). Silver does not allege DM breached the Consignment

9   Agreement. Silver does not even attach the Consignment Agreement to the complaint. However,

10  the alleged Consignment Agreement is attached as Exhibit A to the Declaration of Stephen Silver

11  filed in support of Silver's Application for Writ of Attachment and Right to Attach Order.

12  (Request for Judicial Notice 2.) An inspection of this one-page document (titled "S. H. Silver

13  Company-Menlo Park, Memorandum") reveals it is not an agreement at all, and does not contain

14  an applicable jurisdiction or venue clause.

15       The subject memorandum is not an agreement because, quite simply, DM did not agree to

16  it. There is a statement at the bottom of the memorandum that reads, "Please sign below and

17  return a copy of this memorandum to our office." However, no signature appears below the

18  statement or anywhere else, and indeed no one from DM agreed to or signed this memorandum.

19  See Jeremy Morris Dec., ¶ 18, and Declaration of Lynn Tabor, ¶¶ 3-5. Silver does not even

20  allege that the subject sales were made pursuant to the memorandum. Instead, Silver alleges

21  (1) that Mr. Silver "delivered the jewelry to David Morris ... per the Consignment Agreement"

22  (Complaint, ¶ 9), though Mr. Silver's declaration makes clear that this did not occur and instead

23  he carried the gems to London with him (Declaration of Stephen H. Silver, ¶ 6, RJN 2); (2) that

24  DM bought the blue diamond from Silver under "a new agreement" (Complaint, ¶ 10), which Mr.

25  Silver's declaration makes clear was entered while he was in London (Silver Dec., ¶¶ 6, 7); and

26  (3) that while he was in London, Mr. Silver negotiated the sale of the sapphires to DM pursuant to

27  the "Earring Agreement" (Complaint, ¶ 12). Elsewhere in the complaint, Silver alleges that the

28  memorandum (the so-called Consignment Agreement) gave rise to fiduciary duties by DM (see,

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB          - 3 -          DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

1  e.g., third and fourth causes of action) but Silver does not allege facts showing the memorandum

2  played any role in the subsequent London transactions upon which Silver sues DM.

3        Even if the memorandum were an enforceable agreement, the alleged venue provision on

4  its face does not apply to this lawsuit.  The provision is a sentence in the middle of a fine-print

5  paragraph, stating:

6             <u>In case suit is instituted to collect this merchandise or any portion</u>
             <u>thereof</u>, the customer promises to pay such additional sum as the
7             court may adjudge reasonable as attorney's fees in said suit, and
             that jurisdiction shall be in California and venue in San Mateo
8             County of that state.

9  (Underline added.)  However, Silver does not seek merchandise in this suit.  Silver seeks only

10  money damages.  Silver has never asked DM to return any of the gems.  Morris Dec., ¶ 18.  In

11  fact, DM offered to return the sapphires to Silver with compensation for weight removed from the

12  sapphires when DM cut and polished them, but Silver refused to take them.  Morris Dec., ¶ 17.

13        Finally, DM's evidence shows the alleged venue provision was not negotiated by the

14  parties, that DM was not aware of it, and that Silver never brought it to the attention of anyone at

15  DM or otherwise discussed the idea that Silver might sue DM in California or in San Mateo

16  County.  Morris Dec., ¶ 17; Lynn Tabor Dec., ¶ 6.

17        Therefore, DM has not submitted to the jurisdiction of California, and there is no forum-

18  selection clause applicable to this case.

19        **C.    DM Lacks Minimum Contacts With California.**

20        The Declaration of Jeremy Morris establishes that DM lacks "minimum contacts" with

21  California that are necessary for the Court to exercise "general" jurisdiction over DM.  DM is a

22  private family-owned company incorporated in England and Wales, and its owners and directors

23  are citizens of the United Kingdom and live in and around London, except for Mr. Morris'

24  parents who live in Monaco.  DM has no California presence, or any continuous or systematic

25  business relationship with California persons or entities.  Jeremy Morris Dec., ¶¶ 2-12.

26        **D.    The Alleged Transactions Took Place In London.**

27        Similarly, the facts of this dispute do not give rise to "specific" jurisdiction over DM

28  because the two relevant agreements are alleged to have been negotiated, entered and breached in

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB                - 4 -                DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

London; and the conduct by DM alleged to be fraudulent took place in London and/or France. No DM employee set foot in California. Jeremy Morris Dec., ¶ 13. No DM merchandise was shipped to California or sold in California. The most Silver can allege is that DM wired two payments to Silver's bank in Redwood City, and that a few phone calls and emails went between California and London. On the other hand, Mr. Silver acknowledges he traveled to England with the diamond and sapphires, and while in England, negotiated and completed sale of them to DM. Silver Dec., ¶¶ 6, 7; Complaint, ¶¶ 9-12. DM paid Silver for the diamond while Mr. Silver was still in London. Morris Dec., ¶ 14. These facts are woefully inadequate to extend California's long-arm jurisdiction to DM.

E.    **The Key Witnesses Except Mr. Silver Live in London.**

Key witnesses are located in London. Rami Okuniew, a diamond dealer, was present in the David Morris store in London when Messrs. Silver and Morris negotiated their sapphire agreement. Morris Dec., ¶ 15. Mr. Okuniew lives and works in London. *Id.* DM sales director William Holbech also was present during these discussions. *Id.* Messrs. Okuniew and Holbech will likely confirm that the sapphire purchase was conditioned on their certifiability as of Kashmir origin. Mr. Holbech also was at Jeremy Morris' side when he called Mr. Silver by telephone from France and negotiated the purchase of the blue diamond. Morris Dec., ¶ 14. Mr. Holbech will likely corroborate Mr. Morris' account that he simply asked Mr. Silver if he would sell DM the diamond for $5.5 million, not, as Silver alleges, that Mr. Morris promised that DM would make a 10% commission on the sale. (See Complaint, ¶ 10: Jeremy Morris Dec., ¶¶14, 15). Like Mr. Okuniew, Mr. Holbech lives and works in London. Morris Dec., ¶ 7.

As a separate matter, Jeremy Morris sent the sapphires to two Swiss gemological laboratories to attempt to have them certified as being of Kashmir origin, as Mr. Silver assured him they are. Morris Dec., ¶ 15-17. Mr. Morris had informed Mr. Silver he would seek certification from Gubelin Gem Lab, located in Lucerne, Switzerland. Morris Dec., ¶ 15. Gubelin refused to certify them. Morris Dec., ¶ 16. The other Swiss lab, SSEF, had previously certified the sapphires as Kashmir but subsequently would not certify one of them. Morris Dec., ¶ 17. Representatives of these labs are possible witnesses, to the extent they either cooperate or

1  can be compelled to attend deposition or trial.  The courts of the United States cannot compel
2  them to attend deposition or trial here.
3        In sum, nothing about this case suggests it should be tried in San Francisco.  It should be
4  tried in London.
5  **II.    LEGAL ARGUMENT**
6        **A.    This Court Lacks Personal Jurisdiction Over DM.**
7        It is the plaintiff's burden to prove that the forum state's long-arm statute confers personal
8  jurisdiction over a nonresident defendant and that this exercise of jurisdiction comports with
9  federal due process.  *American Tel. & Tel. Co. v. Companie Bruxelles Lambert*, 94 F.3d 586, 588
10  (9th Cir. 1996); *Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir.
11  1990).  Plaintiff in this case cannot meet its burden of demonstrating this Court has jurisdiction
12  over DM.
13        As there is no federal statute governing personal jurisdiction in this matter, the Court
14  looks to the state personal jurisdiction statute.  *Reebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387,
15  1393 n.7 (9th Cir. 1995); *see also Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1246 (9th Cir. 1984).
16  California's long-arm statute extends jurisdiction to the limits of due process incorporated in the
17  federal Constitution.  Cal. Code of Civ. Pro. § 410.10; *Mattel, Inc. v. Greiner and Housser*
18  *GmbH*, 354 F.3d 857, 863 (9th Cir. 2003).  Constitutional due process is satisfied when a
19  nonresident defendant has "certain minimum contacts with the forum such that the maintenance
20  of the suit does not offend traditional notions of fair play and substantial justice."  *International*
21  *Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement*, 326 U.S. 310, 316
22  (1945) (citation omitted).  Where a nonresident defendant purposefully avails himself of the
23  benefits of conducting significant activities within the forum state, it is presumatively reasonable
24  to require that he "submit to the burdens of litigation in that forum" when the lawsuit arises out of
25  or relates to those forum-related activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-
26  76 (1985).  Under this "minimum contacts" framework, a federal court may obtain either general
27  or specific jurisdiction over the defendant.  *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th
28  Cir. 1995).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB                    - 6 -                    DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

1.  **DM does not have the necessary continuous contacts with California to support general jurisdiction.**

If the defendant has continuous and systematic general business contacts that approximate a physical presence in the forum state, a federal court may exercise general jurisdiction, and the defendant may be subject to suit even on matters that do not arise out of or relate to his activities in the forum. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) and *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. Mere purchase of goods and/or services in the forum state, even on a regular basis, is not enough, nor is it sufficient that a defendant works with other businesses or individuals based in the forum. *Id.* The ownership of a subsidiary located in the forum does not suffice for personal jurisdiction. *American Tel. & Tel. Co.*, *supra*, 94 F.3d at 590-91.

In determining whether a defendant corporation has "continuous and systematic" business contacts with the forum state, courts consider a variety of factors such as whether the company maintains an office in the forum state, has employees in the forum state, uses bank accounts in the forum state, or markets or sells products in the forum state. *See, e.g., Helicopteros Nacionales, supra*, 466 U.S. at 414-15 (discussing *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952)).

Here, as set forth in Mr. Morris' declaration, DM cannot be said to "approximate a physical presence" in California. DM is not incorporated in, or qualified to do business in California. Morris Dec., ¶ 4. DM does not have a bank account or other assets in California. *Id.*, ¶ 8. DM has no employees in California, and DM does not market its services to California residents. *Id.*, ¶¶ 6, 9. Silver does not plead, and cannot evidence facts that justify the exercise of general jurisdiction.

**2.     The exercise of specific jurisdiction over DM is not warranted by the facts of this case.**

Where general jurisdiction is lacking, a court may exercise specific jurisdiction over a nonresident defendant if the suit arises out of or relates to his activities in the forum. The Ninth Circuit has established a three-part test for specific jurisdiction that incorporates the Supreme Court's analysis in *Burger King, supra. See Data Disc, Inc. v. Sys. Tech. Assoc's, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977); *Schwarzenegger*, 374 F.3d at 802.[1]  First, the nonresident defendant must do some act or consummate some transaction with the forum by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; second, the claim must arise out of or result from the defendant's forum-related activities; and third, the exercise of jurisdiction must be reasonable. *Data Disc*, 557 F.2d at 1287.

Purposeful availment requires something more than the mere foreseeability of a defendant being haled into court in the forum state. *Pacific Atlantic Trading Co., Inc. v. M/V Main Express*, 758 F.3d 1325, 1329 (9th Cir. 1985). The unilateral activity of the plaintiff or a third person is not enough to subject defendant to personal jurisdiction. *Helicopteros*, 466 U.S. at 416-17.

A mere business contact with the forum also is not sufficient. *See U.S. Vestor, LLC v. Biodata Info. Tech. AG*, 290 F.Supp.2d 1057, 1063-65 (N.D. Cal. 2003). In *U.S. Vesto*, for instance, the court held that a German corporation's acquisition of a California subsidiary, filing of suit in California, and a business trip to California undertaken by the corporation's officers did not support the exercise of California jurisdiction over the corporation. *Id.* Similarly, in *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir. 1988), the court held that the mere act of signing a contract in California did not subject a London-based company to California

---

[1] The Supreme Court has outlined another test for specific jurisdiction. If the forum is the focal point and the hub of the wrongful act and the harm suffered, jurisdiction may be proper "based on the effects of their [out-of-state] conduct in California." *Calder v. Jones*, 465 U.S. 783, 784-85 (1984) (citations omitted). However, as the Ninth Circuit has concluded, the reach of the "effects test" is limited. It generally applies only in the context of tort. *Schwarzenegger, supra*, 374 F.3d at 806. The Ninth Circuit has expressly rejected its application in a contract dispute. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 817 (9th Cir. 1988). In any event, the focal point and hub of the alleged fraud in this case is London, where Mr. Silver was when he negotiated and consummated the sale of the diamond he brought to London. Complaint, ¶¶ 10, 11; Silver Dec. ¶ 16; Morris Dec., ¶¶ 13, 14.

1   jurisdiction.  Finally, "[s]everal courts have held that making telephone calls and mailing

2   payments into the forum state alone is an insufficient foundation upon which to assert personal

3   jurisdiction."  *Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.*, 18 F.3d 389, 395

4   (7th Cir. 1994) (citations omitted) (holding that non-resident electric cooperative which had

5   bought insurance from resident insurer was not subject to forum state's jurisdiction, even though

6   cooperative acquired insurer's stock, sent premium payments to forum state, and communicated

7   with insurer's forum state office by phone and mail).

8          Silver does not allege that DM has done any act or conducted any transaction within

9   California that has given rise to this dispute, with the exception of two wire transfers DM sent to

10  Silver's bank in Redwood City, perhaps a couple of phone calls, and later, an offer of

11  compromise DM sent in writing to Silver.  These allegations do not come close to establishing

12  DM "availed itself the privilege of conducting activities" in California, let alone that this dispute

13  "arose out of" DM's forum-related activities.  Therefore, plaintiff cannot satisfy <u>either</u> of the first

14  two requirements for specific jurisdiction.

15         Nor can plaintiff meet the third requirement, that exercise of jurisdiction be reasonable.  In

16  determining whether the exercise of jurisdiction over a nonresident defendant is reasonable, the

17  Ninth Circuit has outlined seven non-exclusive factors:

18         1)      the extent of the defendants' purposeful interjection into the forum state's affairs;

19         2)      the burden on the defendant of defending in the forum;

20         3)      the extent of conflict with the sovereignty of the defendants' state;

21         4)      the forum state's interest in adjudicating the dispute;

22         5)      the most efficient judicial resolution of the controversy;

23         6)      the importance of the forum to the plaintiff's interest in convenient and effective

24  relief; and

25         7)      the existence of an alternative forum.); *Core-Vent Corp. v. Nobel Industries AB*, 11

26  F.3d 1482, 1487-88 (9th Cir. 1993).  No single factor is dispositive.  *Core*-Vent at 1488.  The

27  court should balance all of them, and some may be more significant than others in context.  *Id.* at

28  1487-88.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB          - 9 -          DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

1    Here, none of the seven "reasonable" factors supports jurisdiction over DM. These factors

2    are similar to factors governing DM's *forum non conveniens* argument, discussed in greater depth

3    below. Briefly, DM has not interjected itself into California's affairs; the burden on DM of

4    defending in California is substantial and unnecessary; England has a greater interest in

5    adjudicating this dispute than this Court; the most efficient judicial resolution of this controversy

6    is in London, where the bulk of witnesses reside; the only importance of this forum to Silver is

7    geographical convenience; and the courts of England provide a reasonable alternative forum.

8        **3.    The Court must be especially careful in exercising jurisdiction over**
         **foreign corporations.**

9

10    Both the United States Supreme Court and the Ninth Circuit have made clear that, when

11    the nonresident defendant is a corporation from another country, as DM is here, the district court

12    must be especially careful in its exercise of personal jurisdiction. *Asahi Metal Industry Co. v.*

13    *Superior Court*, 480 U.S. 102, 115 (1987); *Core-Vent v. Nobel*, 11 F.3d at 1488. In *Asahi*, the

14    question confronting the Supreme Court was whether a California state court may exercise

15    jurisdiction over a Taiwanese supplier in a tort action arising out of the sale of a component to a

16    Japanese manufacturer. 480 U.S. at 105-06. Though the subject accident took place in

17    California, the Court determined there were insufficient contacts between the supplier and the

18    forum, noting, "[T]he unique burdens placed upon one who must defend oneself in a foreign legal

19    system should have significant weight in assessing the reasonableness of stretching the long arm

20    of personal jurisdiction over national borders." *Id.* at 114. *See also Pacific Atlantic Trading*, 758

21    F.2d at 1330 ("The burden of defending in California appears considerable ... . The distance

22    between California and Malaysia is substantial, and potential witnesses to the execution of the

23    indemnity contract are most likely in Port Kelang.").

24    The Ninth Circuit has gone so far as to state that "litigation against an alien defendant

25    creates a higher jurisdictional barrier than litigation against a citizen from a sister state because

26    important sovereignty concerns exist." *Core-Vent, supra*, 11 F.3d at 1489, quoting *Sinatra v.*

27    *National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988). *Core-Vent* concerned libel and antitrust

28    claims arising from articles published in international medical journals. The court stated:

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB                    - 10 -                    DEFENDANT DAVID MORRIS
                                                                 INTERNATIONAL LTD.'S NOTICE OF
                                                                 MOTION AND MOTION TO DISMISS

Requiring the [defendants] to submit to the jurisdiction of the court would impose substantial burdens on them and would interfere with the sovereignty of a foreign nation. The Supreme Court in Asahi indicated that a plaintiff seeking to hale a foreign citizen before a court in the United States must meet a higher jurisdictional threshold than is required when the defendant is a United States citizen. Indeed, commentators have suggested that the international factors were determinative in *Asahi*.0.

This case raises similar concerns. It would not be reasonable to require DM to defend, in the United States, a case that allegedly stems from its activities in London. This Court should not exercise jurisdiction over DM.

> **4.   The forum selection language contained in plaintiff's alleged "consignment agreement" does not subject DM to personal jurisdiction in California.**

As discussed above in Part I.B., plaintiff may argue that jurisdiction and venue lie in California because of certain fine print in the "memorandum" faxed by plaintiff to DM before Mr. Silver went to London. Exh. A to Silver Dec., RJN 2. This fine print does not subject DM to personal jurisdiction in California for several reasons.

First, DM did not negotiate or agree to the memorandum or to the forum selection clause. Morris Dec., ¶ 18, Tabor Dec., ¶¶ 3-5. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1293 (9th Cir. 2006) (forum selection clause unenforceable where not entered into freely and voluntarily); *America Online, Inc. v. Super. Ct.*, 90 Cal.App.4th 1, 12 (2001) (the law favors forum selection agreement "only so long as they are procured freely and voluntarily").

Second, a plain reading of the memorandum indicates that the forum selection language only applies to suits seeking to "collect this merchandise or any portion thereof." In construing forum selection clauses, courts apply the general rule of contract interpretation that words are given their "common or normal meaning." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987). Moreover, where the language of a forum clause is ambivalent, courts construe it against the drafter of the contract. *Id.* at 78.

This suit does not involve collection of any merchandise; plaintiff has actually refused to take back the sapphires. Morris Dec., ¶ 18. Plaintiff seeks only monetary damages. Complaint, ¶¶ 12-13. Thus, even if it were enforceable, the alleged forum selection provision does not apply

1    to this lawsuit.

2    **B.**    **The Court Also Should Dismiss This Case Under The Doctrine Of**
     ***Forum Non Conveniens.***

3

4         "A party moving to dismiss on grounds of forum non conveniens must show two things:

5    1) the existence of an adequate alternative forum, and 2) that the balance of private and public

6    interest factors favors dismissal." *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d

7    764, 767 (9th Cir. 1991).

8         The private interest factors are:

9         1.     the residence of the parties and witnesses;

10        2.     the forum's convenience to the litigants;

11        3.     access to physical evidence and other sources of proof;

12        4.     whether unwilling witnesses can be compelled to testify;

13        5.     the cost of bringing witnesses to trial;

14        6.     the enforceability of the judgment; and

15        7.     all other practical problems that make trial of a case easy, expeditious, and

16   inexpensive.). The public interest factors are:

17        1.     the local interest of the lawsuit;

18        2.     the court's familiarity with governing law;

19        3.     the burden on local courts and juries;

20        4.     congestion in the courts; and

21        5.     the costs of resolving a dispute unrelated to the forum.

22   *Id.* at 1147.

23        Unquestionably there is an adequate alternative forum for this case:  London, where DM

24   and most witnesses are located.  Morris Dec., ¶¶ 4, 7, 14, 15.

25              **1.**     **Private interest factors call for a British forum.**

26        The first five private interest factors call for a British forum.  Private interest factors 6 and

27   7 appear to be neutral.

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB       - 12 -

DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

### a.    The residence of the parties and witnesses

This factor overwhelmingly favors England.  DM witnesses Jeremy Morris, William Holbech and Lynn Tabor reside in London.  Mr. Holbech is a witness to the negotiation of both alleged contracts, diamond and sapphires.  Rami Okuniew, a third party, also resides in London. He witnessed the negotiation of the sapphire purchase.  Third-party witnesses employed by SSEF Gemological Institute and Gubelin Laboratory reside in Switzerland.  To the extent DM's confidential customer who purchased the blue diamond is required to be disclosed and/or testify, that person resides in France.  The only party or witness that appears to reside in California is Mr. Silver.

### b.    The forum's convenience to the litigants

This California forum is extremely inconvenient to DM's management and its employee witnesses, all of whom live in or around London.  It would be time-consuming and expensive for them to travel to California and confer with lawyers and others to defend this lawsuit.  DM's witnesses outnumber those of Silver, so the inconvenience to DM of litigating in California outweighs the inconvenience to Mr. Silver of litigating in London.

### c.    Access to physical evidence and other sources of proof

Relevant documents and information likely are in the possession of SSEF and Gubelin, the Swiss gemological laboratories that have examined the subject sapphires and certified or declined to certify them as being of Kashmir origin.  Courts in the United States cannot compel foreign entities to produce documents or appear for deposition.  The courts of London are more likely to secure the cooperation of European entities.

### d.    Whether unwilling witnesses can be compelled to testify

Non-party witnesses include Rami Okuniew, who witnessed the negotiation between Messrs. Silver and Morris for the purchase of the two sapphires in the DM store in London. Mr. Okuniew lives and works in London.  He cannot be compelled to testify at deposition or trial in California.  Potential witnesses from SSEF and Gubelin similarly cannot be compelled to testify at deposition or trial in California.  Because of geographical proximity, they are more likely to cooperate by traveling to London than to California.

DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

1  ### e.    The cost of bringing witnesses to trial

2      It would be far more expensive for DM to bring its several company witnesses to trial in

3  San Francisco than it would be for Mr. Silver to travel to London for a trial.  Further, to the extent

4  DM is able to secure the cooperation of third-party witnesses including Mr. Okuniew (London)

5  and gem lab witnesses (Switzerland), the cost to bring them to San Francisco would far exceed

6  the cost to bring them to London for trial.

7  ### f.    The enforceability of the judgment

8      At this time, we are not aware of any relevant differences concerning enforceability of a

9  judgment.

10 ### g.    All other practical problems that make trial of a case easy,
                    expeditious, and inexpensive

11

12     At this time, we are not aware of any other practical problems, except those associated

13 with the problems discussed above, such as the expense of lodging foreign witnesses and the

14 imposition on their work schedules that would be caused by travel to California.

15 ## 2.    Public interest factors call for a British forum.

16     The public interest factors also clearly favor England over California.

17 ### a.    The local interest of the lawsuit

18     If any locality has an interest in this dispute, the interest of England is greater.  DM rarely

19 engages with any California person or entity.  See Morris Dec., ¶ 6.  As DM is regulated by the

20 English government and is located in London, England's regulatory interests logically include the

21 determination whether DM has committed the fraud and breaches of contract alleged by Silver.

22 California has less interest in adjudicating the claims of a company such as Silver which travels

23 abroad to engage foreign companies.

24 ### b.    The Court's familiarity with governing law

25     The laws of England will apply to this case, as the alleged contracts were entered and

26 performed in England and the alleged fraud and breach of fiduciary duty was allegedly committed

27 by DM in England and/or France.  California Civil Code section 1646 states:

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

1
2
3

> A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

4   All acts of performance of the alleged contracts were to occur in London, and did occur in

5   London.  Mr. Silver gave DM the gems while in London, and DM paid for them (or did not pay)

6   in London.  To the extent these oral agreements are deemed not to "indicate a place of

7   performance," then it is undisputed the agreements were made in London.  Complaint, ¶¶ 10, 12

8   (RJN 1); Silver Dec., ¶¶ 6, 7 (RJN 2); Morris Dec., ¶¶ 13-15.

9          The United States Supreme Court has said, "The doctrine of *forum non convenience*...is

10  designed in part to help courts avoid conducting complex exercises in comparative law...the

11  public interest factors point towards dismissal where the court would be required to 'untangle

12  problems in conflict of laws, and in law foreign to itself'." *Piper Aircraft Co. v. Ruyno*, 454 U.S.

13  235, 251, 102 Supreme Court 252, 263 (1981).  This Court need not entangle itself in choice of

14  law issues, nor interpret and apply the laws of England.

15                    c.        **Public interest factors 3, 4 and 5**

16         The burden on this Court and the local jury pool is not justified by plaintiff's dispute with

17  a London defendant that has no ties to California.  U.S. taxpayers should not pay the cost of

18  resolving a dispute which is fundamentally centered in London.

19  **III.    <u>CONCLUSION</u>**

20         For the foregoing reasons, defendant David Morris International Ltd. respectfully requests

21  the Court to dismiss this action without prejudice pursuant to F.R.C.P. 12(b)(2), and in the

22  alternative, pursuant to the *forum non conveniens* doctrine.

23  Dated: July 31 , 2008                    SCHIFF HARDIN LLP

24

25                                           By: _Robert B. Mull_____

26                                           Robert B. Mullen
                                             Attorneys for Defendant
27                                           DAVID MORRIS INTERNATIONAL
                                             LTD.

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB          - 15 -          DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S NOTICE OF
MOTION AND MOTION TO DISMISS

1  SCHIFF HARDIN LLP
   ROBERT B. MULLEN (CSB 136346)
2  YAKOV P. WIEGMANN (CSB 245783)
   One Market, Spear Street Tower
3  Thirty-Second Floor
   San Francisco, CA  94105
4  Telephone:    (415) 901-8700
   Facsimile:    (415) 901-8701
5  rmullen@schiffhardin.com

6  Attorneys for Defendant
   DAVID MORRIS INTERNATIONAL LTD.

7

8                  UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  S. H. SILVER COMPANY, INC.,              Case No.  08-03550 CRB

12                 Plaintiff,               **DECLARATION OF JEREMY MORRIS
                                            IN SUPPORT OF DEFENDANT DAVID
13  v.                                      MORRIS INTERNATION LTD.'S
                                            MOTION TO DISMISS FOR LACK OF
14  DAVID MORRIS INTERNATIONAL              PERSONAL JURISDICTION PURSUANT
    LTD.,                                   TO F.R.C.P. RULE 12 (b)(2), AND IN THE
15                                          ALTERNATIVE PURSUANT TO THE
                   Defendant.               DOCTRINE OF *FORUM NON
16                                          CONVENIENS***

17                                          Date:        September 5, 2008
                                            Time:        10:00 a.m.
18                                          Courtroom:   8

19                                          Judge:    Honorable Charles R. Breyer

20

21         I, Jeremy Morris, declare as follows:

22         1.    I am managing director of defendant David Morris International Ltd. ("David

23  Morris"), and have personal knowledge of all matters stated herein.

24         2.    David Morris is a family-owned limited liability company, incorporated in

25  England and Wales.  Its principal place of business is the David Morris store located at

26  180 New Bond Street, London, England.  It is engaged in the business of selling high quality

27  jewelry.

28         3.    David Morris is not authorized to transact business in California, is not

1   incorporated in California and has no physical presence in California. David Morris has no

2   California agent for service of process. David Morris jewelry is sold from additional stores

3   located in Palm Beach, Florida; Dubai, UAE; Moscow, Russia (a franchise); and Doha, Qatar

4   (a concession). David Morris does not have an affiliate, subsidiary, parent or related entity

5   that is authorized to transact business in California, or incorporated in California.

6        4.     The owners of David Morris are myself and my sister Claudia, through a

7   settlement trust; my father, David Morris; and my mother, Suzette Morris. All owners of

8   David Morris are citizens of the United Kingdom. My sister and I reside in London. David

9   and Suzette Morris reside in Monaco. None of the owners of David Morris resides in

10   California, or is a citizen of California. Neither David Morris nor any of the owners of David

11   Morris has any ongoing business relationship with a California-based person or entity.

12        5.     David Morris owns a subsidiary holding company named Elmtop, Ltd. Elmtop

13   is incorporated in England and Wales. Elmtop owns a subsidiary named David Morris

14   International Inc., which owns only our Palm Beach, Florida store and is incorporated in the

15   state of Florida.

16        6.     I have operated and managed David Morris for approximately the last five

17   years. In that time period, I recall doing business with just two California persons aside from

18   Mr. Silver. Last year, we sold two items of jewelry to a woman living in Beverly Hills, and

19   several years ago, our Florida store sold an item of jewelry to a gentleman living in Los

20   Angeles.

21        7.     David Morris' directors include myself; Wayne Pond, Finance Director, a

22   resident of Surrey, England and a citizen of the United Kingdom; William Holbech, Sales

23   Director, a resident of London, England and citizen of the United Kingdom; Cyril Freedman,

24   a non-executive director who resides in Wiltshire, England and is a citizen of the United

25   Kingdom; Suzette Morris, director; and David Morris, Chairman of the Board. Another

26   David Morris employee identified in the pleadings, import/export manager Lynn Tabor, also

27   resides in London and is a citizen of the United Kingdom. I am not aware of any David

28   Morris employee globally who is a citizen or resident of California.

8.      The settlement trust referred to above is a family trust of which I and my sister are beneficiaries.  To the best of my knowledge, the trustees are my mother, Mr. Freedman and a London attorney named Harold Paisner.

9.      David Morris does not have a bank account or any assets in California.  David Morris owns no tangible personal or real property in California.  None of the owners of David Morris has any California assets.

10.     David Morris does not direct any of its advertising toward California residents, and does not advertise in any California publication.  David Morris' advertising in the United States is relatively limited and directed primarily to the New York and Florida markets.

11.     David Morris does not sell or lease property outside of California for use within California.  David Morris has no warranty or service facilities within California through independent contractors.  David Morris performs no sales or marketing within California, and has no office within California.  David Morris has no telephone within California.  David Morris has made no loan applications within California.  David Morris does not hold meetings of its directors or owners within California, and does not attend trade shows or conventions within California.  David Morris does not make consignment shipments for purchase within California.  To the best of my knowledge, prior to this lawsuit, David Morris had never been engaged in a lawsuit against a California person or entity, and David Morris has never made use of a court system within California as a litigant.

12.     David Morris' website is www.davidmorris.com.  It is accessible to persons all over the world.  It is a passive, not interactive, website.

13.     No employee or representative of David Morris went to California in connection with the transactions alleged in this lawsuit.  Rather, Stephen Silver spoke with our sales director, William Holbech, and then arranged with me to travel to London to meet with me.  I understood the purpose of Mr. Silver's trip was to show me the subject blue diamond and try to sell it.  He also mentioned the subject sapphires and other items prior to traveling to London, but I did not agree before his trip to buy the sapphires or take them on consignment, only to consider them.  Mr. Silver came to London with the gems in late June,

1    2007, and stayed in London at least several days. With the exception of one day during Mr.

2    Silver's visit when I traveled to France, Mr. Silver met with me each day he was in London at

3    the David Morris store on New Bond Street.

4          14.      I traveled to France during Mr. Silver's visit to London for the purpose of

5    showing the blue diamond to a customer whose identity I have agreed to keep confidential. I

6    managed to sell the diamond together with other gems, and returned to London. Mr. Silver's

7    allegation that I defrauded him is incorrect. While I was with the customer in France, I

8    telephoned Mr. Silver in London to ask him if he would sell me the diamond for $5.5 million,

9    with the understanding I would earn an undisclosed profit from my sale to the customer. He

10    agreed. Mr. Holbech was with me and heard my end of the conversation. I did not, as

11    Mr. Silver alleges, tell Mr. Silver I was calling from the David Morris store in London. When

12    I returned to London, Mr. Silver appeared extremely pleased with the sale, for which he

13    received the bargained-for sum of $5.5 million less expenses of $9,000. We wired this

14    payment to his bank while he was still in London. At no time did Mr. Silver ask me how

15    much money I made from the diamond sale, or say anything to suggest he held a belief as to

16    the amount of money I received.

17          15.      Mr. Silver's allegation that I agreed to purchase the two Cabochon sapphires

18    without regard to a further gemological certification is incorrect. According to a report

19    Mr. Silver provided, in 2004 the two sapphires were certified as being of Kashmir origin by

20    SSEF Swiss Gemmological Institute, located in Basel, Switzerland. I reached agreement with

21    Mr. Silver to purchase the two sapphires (rather than take them on consignment, as he

22    originally proposed) in the David Morris store. The agreement was oral. During our

23    negotiation, I informed Mr. Silver I would send the sapphires to Gubelin Gem Lab, with

24    whom I customarily work, and which I believe has a better reputation internationally than

25    SSEF. I anticipated marketing the sapphires to my Asian clients, who expect a Gubelin

26    certificate. Mr. Holbech was present during my negotiation with Mr. Silver about the

27    sapphires, as was Rami Okuniew, a consultant of David Morris. Gubelin is located in

28    Lucerne, Switzerland. Mr. Holbech and Mr. Okuniew both reside and work in or around

1    London, and are citizens of the United Kingdom.  The name of Mr. Okuniew's business is

2    Okuniew Levy Diamonds, Ltd., known as OLD.  OLD is located in London.

3          16.    After Mr. Silver left London, I sent the two sapphires to Gubelin.  On or about

4    August 27, 2007, Gubelin reported to me that it could not certify the sapphires as being of

5    Kashmir origin.  Mr. Silver suggests that by cutting facets on the stones, I somehow made it

6    more difficult for them to be certified as Kashmiri.  That is incorrect.  I understand from

7    numerous discussions with reputable laboratories that cutting facets on a sapphire is unlikely

8    to change the properties of the stone relevant to their analysis.  Further, I estimate that only

9    approximately 7% of the subject sapphires were removed by cutting facets.

10          17.    After Gubelin gave its report, I sent the sapphires back to SSEF.  SSEF then

11   certified only one of the two sapphires as Kashmir.  After receiving the SSEF report, I sent

12   SSEF its original 2004 certificate in which SSEF found both stones to be of Kashmir origin.

13   SSEF then changed its latest analysis and re-certified both sapphires to be of Kashmir origin.

14   I then sent the sapphires to American Gemological Laboratories (AGL), located in New York

15   City.  Like Gubelin, AGL would not certify either stone as being of Kashmir origin.

16          18.    Plaintiff Silver's complaint alleges that the subject gems were originally

17   provided to David Morris pursuant to a consignment agreement which contained a provision

18   providing jurisdiction in California and venue in San Mateo County.  That is incorrect.  David

19   Morris did not enter the alleged consignment agreement (the attached document titled "SH

20   Silver Company – Menlo Park, Memorandum," Exhibit A to the Declaration of Stephen H.

21   Silver in support of S.H. Silver Company, Inc.'s Application for a Right to Attach Order and

22   Writ of Attachment), and David Morris did not agree to jurisdiction of any dispute in

23   California or to venue of any dispute in San Mateo County.  This memorandum is not an

24   agreement.  Neither I nor any David Morris representative signed this memorandum beneath

25   the statement which says, "Please sign below...."  None of the subject gems was sold pursuant

26   to this memorandum.  Further, the fine print containing the statement about jurisdiction and

27   venue does not refer to a dispute such as this one.  It states: "In case suit is instituted to

28   collect this merchandise or any portion thereof, the customer promises . . . and that

1  jurisdiction shall be in California and venue in San Mateo County of that state." In this

2  lawsuit, Silver does not seek to collect merchandise, and Mr. Silver has never asked me for

3  any of the gems. In fact, I offered to return the sapphires to him with compensation for the

4  weight removed from the sapphires when we cut and polished them. Mr. Silver has refused to

5  take them back. Finally, I had never before read the fine print in this memorandum before

6  reading the legal papers Silver delivered to us in this lawsuit. To my knowledge, neither Mr.

7  Silver nor anyone employed by him ever brought to the attention of David Morris, or

8  discussed with anyone at David Morris, the fine print here or the idea that Silver might sue

9  David Morris in California or in San Mateo County.

10      I declare under penalty of perjury under the laws of the United States of America that

11  the foregoing is true and correct. Executed this 31 day of July, 2008 at London, England.

12

13

14

15                                         _____
                                              Jeremy Morris
16  SF\9196754.1

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

# S. H. Silver Company-Menlo Park

## MEMORANDUM

The goods described and valued below are delivered to you for examination and are the property of S.H. Silver Company. This merchandise is subject to the order of S.H. Silver Company and shall be returned to them on demand. Such merchandise, until returned to them and actually received, is at your risk from all hazards. No right or power is given to you to sell, hypothecate, modify, repair, remove or reset stones, or otherwise work on or dispose of this merchandise regardless of prior transactions. A sale of this merchandise can only be effected and title will pass only if, as, and when said S.H. Silver Company, Inc. shall agree to such sale and a bill of sale is rendered thereof. In case suit is instituted to collect this merchandise or any portion thereof, the customer promises to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit, and that jurisdiction shall be in California and venue in San Mateo County of that state. Service charge on accounts past due, agreed terms 1.5% per month, 18% annually. Receipt of the merchandise constitutes your agreement to the foregoing terms which represent the entire contract with respect to the merchandise or any contrary custom of the trade.

Date: 06/24/07

| From: | To: | |
|---|---|---|
| S. H. Silver Company | David Morris | Total Items: 8 |
| 800 El Camino Real | 180 New Bond Street | |
| Suite 280 | London W1S 4RL | Total Dealer Cost: |
| Menlo Park, CA 94025 | 020 7499 2200 | |
| Ph:650-325-9500 | FOR TEMPORARY IMPORT INTO U.K. | SHS Memo C/V# 8243 |
| Fax:650-325-9518 | | Memo Term: Short term |

| | SKU# | Description | Dealer Price |
|---|---|---|---|
| | EA 12646 | Plat and dia ear clip semi mounts - 54 F/C dias ~ .51 ctw; 6 sq dias ~ .56 ctw SOLD ONLY WITH 13087 AS SET | 25,000 |
| | NE 12657 | Plat, dia & green garnet necklace. 67 round green garnets ~ 50.02ctw; 101 F/C dias ~ 6.90ctw. | |
| | RI 9962 | Plat, dia & ruby ring. 1 oval cab. ruby ~ 11.11ct; 2 P/S dias ~ .67ctw; 82 F/C dias ~ .65ctw. | |
| | RI 10367 | loose blue diamond. 1 oval blue dia ~ 6.04ct Plat & dia ring semi for blue dia . 266 F/C dias ~ 1.13ctw. | |
| | RI 13821 | Plat, dia & pink dia dome ring. 1 oval pink dia ~ .65ct; F/C pink dias ~ .52ctw; F/C dias ~ 2.52ctw. | |
| | RI 14097 | Plat, dia & sapp ring. 1 oval sapp ~ 11.00ct; 12 F/C dias ~ 3.12ctw. | |
| | RI 15865 | Plat, dia & sapp ring. 1 cush sapp ~ 11.3.7ct; 6 T/B dias ~ 1.22ctw. | |
| | SA 13087 | 2 loose cab. sugarloaf sapps ~ 18.23ctw (9.17 & 9.06) SOLD ONLY WITH 12646 AS SET | 1,200,000 |

Purpose of shipment: On Loan          Shipping date: 06/24/07

Shipper: Emily          Shipped Via: Hand Delivered

Please remove your tags and return all unsold items with our inventory tags attached. Thank you.

Please sign below and return a copy of this memorandum to our office.

1    SCHIFF HARDIN LLP
     Robert B. Mullen (CSB 136346)
2    Yakov P. Wiegmann (CSB 245783)
     One Market, Spear Street Tower
3    Thirty-Second Floor
     San Francisco, CA 94105
4    Telephone:    (415) 901-8700
     Facsimile:    (415) 901-8701
5    rmullen@schiffhardin.com

6    Attorneys for Defendant
     DAVID MORRIS INTERNATIONAL LTD.
7

8               UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    S. H. SILVER COMPANY, INC.,          Case No. 08-03550 CRB

12              Plaintiff,         **DECLARATION OF LYNN TABOR IN**
                                   **SUPPORT OF DEFENDANT DAVID**
13    v.                               **MORRIS INTERNATIONAL LTD.'S**
                                   **MOTION TO DISMISS FOR LACK OF**
14    DAVID MORRIS INTERNATIONAL        **PERSONAL JURISDICTION PURSUANT**
     LTD.,                                     **TO F.R.C.P. RULE 12 (b)(2), AND IN THE**
15                                         **ALTERNATIVE PURSUANT TO THE**
              Defendant.         **DOCTRINE OF** *FORUM NON*
16                                          ***CONVENIENS***

17                                    Date:        September 5, 2008
                                        Time:        10:00 a.m.
18                                    Courtroom: 8

19                                    Judge:       Honorable Charles R. Breyer

20        I, Lynn Tabor, declare as follows.

21          1.       I am import/export manager of defendant David Morris International Ltd.

22    ("David Morris"), and have personal knowledge of all matters stated herein.

23          2.       I reside in London, England and am a citizen of the United Kingdom. My

24    place of work is the David Morris store at 180 New Bond Street, London, England.

25          3.       I have been provided the attached Exhibits A and B for my review. Exhibit A

26    is a one-page document titled, "S. H. Silver Company – Menlo Park, Memorandum." Exhibit

27    B is a copy of an email I sent to Emily Teeter of S. H. Silver Company on June 22, 2007.

28          4.       I spoke to Stephen Silver on the phone on or about June 22, 2007. He asked

1    me to confirm our receipt of the one-page memorandum (Exhibit A).  This is the reason I

2    emailed confirmation to Ms. Teeter (Exhibit B).  I did not agree to a consignment with S. H.

3    Silver Company at that time, or at any time.  The memorandum states, "Please sign below and

4    return a copy of this memorandum to our office."  I did not sign the memorandum.

5         5.    I have been asked to review the following sentence contained in the fine print

6    at the top of the memorandum: "In case suit is instituted to collect this merchandise or any

7    portion thereof, the customer promises to pay such additional sum as the court may adjudge

8    reasonable as attorney's fees in said suit, and that jurisdiction shall be in California and venue

9    in San Mateo County of that state."  I do not recall reading this sentence, at any time.  Neither

10   Mr. Silver nor his employee Emily Teeter, with whom I also spoke over the phone, ever

11   brought this sentence to my attention or ever discussed with me the idea that the S. H. Silver

12   Company might sue David Morris in California or in San Mateo County.

13        I declare under the penalty of perjury under the laws of the United States of America

14   that the foregoing is true and correct.  Executed this _31st_ day of July, 2008 at London,

15   England.

16

17

18

19                                                      _____

                                                              Lynn Tabor

20   SF\9197917.1

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

# S. H. Silver Company-Menlo Park
## MEMORANDUM

The goods described and valued below are delivered to you for examination and are the property of S.H. Silver Company. This merchandise is subject to the order of S.H. Silver Company and shall be returned to you on demand. Such merchandise, until returned to them and actually received, is at your risk from all hazzards. No right or power is given to you to sell, hypothecate, modify, repair, remove or reset stones, or otherwise work on or dispose of this merchandise regardless of prior transactions. A sale of this merchandise can only be affected and title will pass only if, as, and when said S.H. Silver Company, Inc. shall agree to such sale and a bill of sale is rendered thereof. In case suit is instituted to collect this merchandise or any portion thereof, the customer promises to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit, and that jurisdiction shall be in California and venue in San Mateo County of that state. Service charge on accounts past due, agreed terms 1.5% per month, 18% annually. Receipt of the merchandise constitutes your agreement to the foregoing terms which represent the entire contract with respect to the merchandise or any contrary custom of the trade.

**From:**  S. H. Silver Company
800 El Camino Real
Suite 230
Menlo Park, CA 94025
Ph:650-325-9500
Fax:650-325-9519

**To:**
David Morris
180 New Bond Street
London W1S 4RL
020 7499 2200
FOR TEMPORARY IMPORT INTO U.K.

**Date:** 06/24/07

**Total Items: 8**

**Total Dealer Cost:**

**SHS Memo CV#**  8243

**Memo Term:**  Short Term

| | SKU# | Description | Dealer Price |
|---|---|---|---|
| 🕸 | EA 12646 | Plat and dia ear clip semi mounts ~ 54 F/C dias ~ .61 ctw; 6 sq dias ~ .56 ctw<br>**SOLD ONLY WITH 13087 AS SET** | 25,000 |
| | NE 12857 | Plat, dia & green garnet necklace. 67 round green garnets ~ 50.02ctw; 101 F/C dias ~ 6.80ctw. | |
| ⬤ | RI 9982 | Plat, dia & ruby ring. 1 oval cab. ruby ~ 11.11ct; 2 P/S dias ~ .57ctw; 82 F/C dias ~ .65ctw. | |
| ⬤ | RI 10367 | loose blue diamond. 1 oval blue dia ~ 6.04ct<br>Plat & dia ring semi for blue dia . 288 F/C dias ~ 1.13ctw. | |
| ⬤ | RI 13821 | Plat, dia & pink dia dome ring. 1 oval pink dia ~ .65ct; F/C pink dias ~ .52ctw; F/C dias ~ 2.52ctw. | |
| ⬤ | RI 14097 | Plat, dia & sapp ring. 1 oval sapp ~ 11.00ct; 12 F/C dias ~ 3.12ctw. | |
| ⬤ | RI 15885 | Plat, dia & sapp ring. 1 cush sapp ~ 11.3.7ct; 6 T/B dias ~ 1.22ctw. | |
| ⬤⬤ | SA 13087 | 2 loose cab. sugarloaf sapps ~ 18.23ctw (9.17 & 9.06)<br>**SOLD ONLY WITH 12646 AS SET** | 1,200,000 |

Purpose of shipment: __On Loan__

Shipper: __Emily__

Shipping date: __06/24/07__

Shipped Via: __Hand Delivered__

Please remove your tags and return all unsold items with our inventory tags attached. Thank you.

**Please sign below and return a copy of this memorandum to our office.**

**EXHIBIT "B"**

Wednesday, April 2, 2008 3:55 PM

**Subject: 2 page faxed received**
**Date: Friday, June 22, 2007 3:33 PM**
**From: Lynn Tabor <lynn@davidmorris.com>**
**To: <eteeter@shsilver.com>**

Hi Emily

Just to confirm that we have received your 1-pages by fax (invoice and cover sheet.

Many thanks
Lynn
Lynn Tabor
Import/Export Manager

# DAVID MORRIS

180 New Bond Street
London W1S 4RL

T: +44 207 399 4166
F: +44 207 499 3249
M: +44 (0) 7764 977870

SCHIFF HARDIN LLP
Robert B. Mullen (CSB 136346)
Yakov P. Weigmann (CSB 245783)
One Market, Spear Street Tower
Thirty-Second Floor
San Francisco, CA 94105
Telephone:     (415) 901-8700
Facsimile:      (415) 901-8701
rmullen@schiffhardin.com

Attorneys for Defendant
DAVID MORRIS INTERNATIONAL LTD.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S. H. SILVER COMPANY, INC., | Case No. 08-3550 CRB |
| Plaintiff, | **DEFENDANT DAVID MORRIS INTERNATIONAL LTD.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IN THE ALTERNATIVE PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS*** |
| v. | |
| DAVID MORRIS INTERNATIONAL LTD., | |
| Defendant. | |
| | Date:          September 5, 2008 |
| | Time:          10:00 a.m. |
| | Courtroom:  8 |
| | Judge:        Hon. Charles R. Breyer |

Pursuant to Rule 201 of the Federal Rules of Evidence, defendant David Morris International Ltd. hereby requests the Court to take judicial notice of the following matters filed by plaintiff S. H. Silver Company, Inc. in the Superior Court of California for the County of San Mateo, prior to defendant's removal of the action to this Court:

1.     Plaintiff S.H. Silver Company, Inc.'s Complaint for Damages, filed June 17, 2008; and

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 08-3550 CRB

DEFENDANT 'S REQUEST FOR JUDICIAL
NOTICE IN SUPPORT OF MOTION TO
DISMISS

1          2.          Declaration of Stephen H. Silver in Support of S.H. Silver Company, Inc.'s

2    Application for a Right to Attach Order and Writ of Attachment, filed June 26, 2008.

3    Dated: July _31_, 2008                    SCHIFF HARDIN LLP

4

5                                             By: _Robert B. Mullen_____

6                                                 Robert B. Mullen
                                                  Attorneys for Defendant
7                                                 DAVID MORRIS INTERNATIONAL
                                                  LTD.

8
     SF\9199301.1
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 08-3550 CRB                    - 2 -          DEFENDANT 'S REQUEST FOR JUDICIAL
                                                       NOTICE IN SUPPORT OF MOTION TO
                                                       DISMISS

Exhibit 1

Scott D. Baker (SBN 84923)
Email: sbaker@reedsmith.com
Jonah D. Mitchell (SBN 203511)
Email: jmitchell@reedsmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone:    +1 415 543 8700
Facsimile:    +1 415 391 8269

Attorneys for Plaintiff
S.H. Silver Company, Inc.

**FILED**
**SAN MATEO COUNTY**

JUN 17 2008

Clerk of the Superior Court

By _____
DEPUTY CLERK

*CHRM*

*JDM*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| S.H. SILVER COMPANY, INC. | No.: **CIV 473796** |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | |
| DAVID MORRIS INTERNATIONAL LTD., | |
| Defendant. | |

No.:

COMPLAINT

DOCSSFO-12511350.5-JMITCHELL

Plaintiff S.H. Silver Company, Inc. ("S.H. Silver"), for its Complaint, alleges as follows:

## GENERAL ALLEGATIONS

1.    S.H. Silver is a California corporation with its principal place of business in Menlo Park, California.

2.    S.H. Silver is informed and believes and thereon alleges that Defendant David Morris International, Ltd. ("David Morris") is a foreign business with its principal place of business in London.

3.    The true names and capacities of the Defendants named herein as Does 1 through 10, and each of them, are unknown to S.H. Silver, which therefore sues these Defendants by such fictitious names.  S.H. Silver is informed and believes and thereon alleges that such fictitiously named Doe Defendants, and each of them, are in some manner responsible and liable for the acts, omissions, and/or damages alleged in this Complaint.  S.H. Silver will seek leave to amend this Complaint to allege the Doe Defendants' true names and capacities when they have been ascertained.

4.    S.H. Silver is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.  S.H. Silver is further informed and believes and thereon alleges that each of the Defendants acted in concert with the others and gave consent to, ratified or authorized the acts of other Defendants and their employees.

5.    Venue is proper in the Superior Court of California, County of San Mateo, as the agreement which David Morris breached was to be performed in San Mateo County.  In addition, the jewelry which was the subject of the agreement was originally provided to David Morris pursuant to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  a consignment agreement which contained a provision providing exclusive venue in San Mateo

2  County. Further, David Morris' fraudulent and wrongful conduct also concerned other jewelry that

3  was identified in the consignment agreement providing for exclusive venue in San Mateo County

4  and subsequently purchased by David Morris.

5

6                                    **BACKGROUND**

7

8         6.      Founded in 1980, S.H. Silver is a premier jewelry house, offering vintage and modern

9  jewelry. S.H. Silver enjoys a reputation as one of the industry's most trusted names in acquiring and

10  placing some of the finest estate jewelry in the world.

11

12        7.      This lawsuit concerns two transactions between S.H. Silver and David Morris, a

13  jewelry retailer with shops in London and Palm Beach, Florida, among other locations. One of the

14  transactions concerned a blue diamond and the other a pair of Cartier Sapphire earrings.

15

16        8.      On or around June 8, 2007, via an e-mail, S.H. Silver was introduced to David Morris

17  and its principal Jeremy Morris and Sales Director William Holbech. Following the introduction,

18  S.H. Silver's Chairman and CEO Stephen H. Silver made arrangements with Mr. Morris for the

19  consignment of several jewelry pieces to David Morris and a trip to London to deliver the jewelry.

20  The terms of the consignment agreement were documented in a consignment faxed to David Morris

21  (the "Consignment Agreement"). Among other jewelry pieces, the Consignment Agreement

22  identified a blue diamond, bearing SKU #10367 (the "Blue Diamond"), and a pair of Loose

23  Cabochon Sugarloaf Sapphires (the "Sapphires"), bearing SKU # 13087, and the accompanying

24  Cartier Platinum and Diamond Ear Clip semi mounts for the Sapphires, bearing SKU #12646

25  (collectively, the "Earrings"). Pursuant to industry custom and practice for sales on consignment in

26  the jewelry trade, under the Consignment Agreement, David Morris would add on any profit David

27  Morris wished to make above the consignment price which S.H. Silver set, and, make a sale to its

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.:                              – 2 –
                              COMPLAINT

1  client accordingly.  From that sale, David Morris would owe S.H. Silver the consignment price and

2  would keep the amounts above the consignment price as its profit.

3

4       9.      S.H. Silver delivered the jewelry to David Morris, including the Blue Diamond and

5  the Earrings, near the end of June 2007 per the Consignment Agreement.  Along with the Earrings,

6  S.H. Silver also provided a copy of the certification from the SSEF Gemological Laboratory that

7  S.H. Silver held for the Sapphires.

8

9       10.     On June 28, 2007, Mr. Morris telephoned Mr. Silver to discuss the Blue Diamond.

10 Specifically, Mr. Morris told Mr. Silver that he had a client present at the store that had made an

11 offer at a set price for the Blue Diamond.  Mr. Morris indicated that David Morris wanted to proceed

12 with the sale to the client, but wanted to make a 10% commission against its client's offering, as

13 opposed to the consignment arrangement with S. H. Silver.  On behalf of S.H. Silver, Mr. Silver

14 agreed and a new agreement was reached with David Morris, whereby David Morris paid S.H. Silver

15 an amount equal to the price Mr. Morris indicated the client had offered less a 10% commission

16 against that price (as opposed to the higher consignment price S.H. Silver had set under the

17 Consignment Agreement).

18

19      11.     S.H. Silver is informed and believes and thereon alleges that Mr. Morris

20 misrepresented that he was present in the David Morris store with a client when he called Mr. Silver.

21 S.H. Silver is further informed and believes and thereon alleges that Mr. Morris failed to disclose

22 and instead concealed and suppressed (1) that Mr. Morris was not present with the client in the

23 David Morris store when he called Mr. Silver, (2) that Mr. Morris, or his agent, had taken the Blue

24 Diamond out of the David Morris store in London and brought it with him outside the United

25 Kingdom a few days prior to June 28, 2007, (3) that David Morris sold the Blue Diamond as just one

26 piece of multiple pieces of jewelry sold to a single buyer at the same time and (4) the allocation of

27 price of the Blue Diamond amongst the multiple pieces of jewelry that David Morris had sold as part

28 of the single transaction.  Had S.H. Silver known these facts, it would not have agreed to change the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    terms of the sale of the Blue Diamond and instead would have insisted on the original Consignment

2    Agreement and payment of the consignment price it had designated.

3

4         12.    Meanwhile, on or about July 3, 2007, Mr. Morris telephoned Mr. Silver and

5    expressed an interest in purchasing the Earrings directly for David Morris, as opposed to selling

6    them on consignment.  In turn, Mr. Silver came to the David Morris store, where he met Mr. Morris

7    and, negotiated a price to be paid immediately by wire to S.H. Silver's bank account in Redwood

8    City, California (the "Earring Agreement").  As a practical matter, David Morris already held the

9    Earrings per the Consignment Agreement, but title/possession was transferred contemporaneously

10   with the Earring Agreement, on or about July 3, 2007.

11

12        13.    Shortly after the sale pursuant to the Earring Agreement was completed, Mr. Morris

13   telephoned Mr. Silver and asked to adjust the payment terms of the Earring Agreement.  As a

14   courtesy and accommodation to David Morris, S.H. Silver agreed that David Morris could pay 50%

15   of the purchase price immediately and the balance in 45 days, or by August 16, 2007.  These terms

16   were documented in an invoice dated July 2, 2007 and bearing Invoice No. 9644.  A true and correct

17   copy of Invoice No. 9644 that was delivered to David Morris (with monetary values redacted) is

18   attached hereto as Exhibit A.

19

20        14.    David Morris did not make the first payment immediately, as it was required to do

21   under the Earring Agreement.  Instead, over two weeks passed, forcing S.H. Silver to contact David

22   Morris to request that the delinquent payment be made.  Mr. Silver spoke with Mr. Holbech, David

23   Morris' Sales Director and asked him to make arrangements to send payment or return the Earrings.

24   Thereafter, Mr. Holbech contacted Mr. Silver and indicated he had spoken with Mr. Morris and on

25   behalf of David Morris offered payment in full as a means to compensate for David Morris'

26   delinquency on the first payment.  Mr. Silver told Mr. Holbech it was not necessary to send the full

27   payment and asked David Morris to simply honor its original agreement and settle the invoice in full

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.:                                – 4 –                                DOCSSFO-12511350.5-JMITCHELL
                                 COMPLAINT

1   on August 16, 2007.  On July 19, 2007, David Morris finally wired the first payment due under the
2   Earring Agreement to S.H. Silver's bank account in Menlo Park, California.

3

4       15.    The remaining balance was due on August 16, 2007.  In breach of the Earring
5   Agreement, David Morris did not make payment by August 16, 2007, and has not made any
6   payment since that time despite repeated inquiries.

7

8                              **FIRST CAUSE OF ACTION**
9                          (Breach of Contract – Earring Agreement)

10

11      16.    S.H. Silver repeats and realleges each and every allegation in the foregoing
12  paragraphs as though fully set forth herein.

13

14      17.    S.H. Silver has performed all conditions, covenants and promises required to be
15  performed by it in accordance with the terms and conditions of the Earring Agreement, except as to
16  those conditions which have been excused.

17

18      18.    David Morris has breached the Earring Agreement by failing to pay amounts owed to
19  S.H. Silver under the Earring Agreement.

20

21      19.    As a direct and proximate result of David Morris breach of the Earring Agreement,
22  S.H. Silver has incurred damages in an amount in excess of the jurisdictional minimum.

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSSFO-12511350.5-JMITCHELL

WHEREFORE, S.H. Silver prays for relief as set forth below.

### SECOND CAUSE OF ACTION

(Account Stated)

20.    S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

21.    Within the last four years, an account was stated between S.H. Silver and David Morris, wherein it was stated that David Morris was indebted to S.H. Silver for goods sold and delivered for a fixed sum (plus interest), the amount of which will be provided upon entry of an appropriate protective order.

22.    David Morris has failed to pay S.H. Silver sums due.

23.    There is now due, owing and unpaid a fixed sum (plus interest) to be provided upon entry of an appropriate protective order.

WHEREFORE, S.H. Silver prays for relief as set forth below.

### THIRD CAUSE OF ACTION

(Breach of Fiduciary Duty)

24.    S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.:                                    – 6 –                                   DOCSSFO-12511350.5-JMITCHELL
                                    COMPLAINT

25.    Pursuant to the Consignment Agreement, David Morris acted as S.H. Silver's agent for the purpose of selling certain jewelry pieces, including the Blue Diamond, and owed a fiduciary duty to S.H. Silver.

26.    David Morris breached its fiduciary duties to S.H. Silver by, among other things, concealing material facts, failing to disclose all information that a reasonable person would consider relevant, failing to deal fairly, honestly and in good faith with S.H. Silver and engaging in other wrongful acts and omissions set forth herein.

27.    As a direct and proximate result of David Morris' breach of its fiduciary duties, S.H. Silver has incurred damages in an amount to be proven at the time of trial.

28.    S.H. Silver is informed and believes and thereon alleges that David Morris perpetrated the above acts in a knowing, oppressive, willful, malicious and fraudulent manner, with the intent and purpose of advancing its own gain at the expense of S.H. Silver's rights and interests. As a result, S.H. Silver is entitled to punitive and exemplary damages.

WHEREFORE, S.H. Silver prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
### (Constructive Fraud)

29.    S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

30.    Pursuant to the Consignment Agreement, David Morris acted as S.H. Silver's agent for the purpose of selling certain jewelry pieces, including the Blue Diamond, and owed a fiduciary duty to S.H. Silver.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

31.    Despite having voluntarily accepted the trust and confidence S.H. Silver reposed in it, David Morris breached its fiduciary duties to S.H. Silver by, among other things, concealing material facts, failing to disclose all information that a reasonable person would consider relevant, failing to deal fairly, honestly and in good faith with S.H. Silver and engaging in other wrongful acts and omissions set forth herein. In particular, after the Consignment Agreement was entered between David Morris and S.H. Silver, on June 28, 2007, Mr. Morris telephoned Mr. Silver and represented that he was at the David Morris store with a client interested in purchasing the Blue Diamond for a specific price. Mr. Morris indicated that he wanted to proceed with the sale at the client's offering price and make a 10% commission on the sale, as opposed to the consignment arrangement under the Consignment Agreement.

32.    S.H. Silver is informed and believes and thereon alleges that Mr. Morris misrepresented that he was present in the David Morris store with a client when he called Mr. Silver. S.H. Silver is further informed and believes and thereon alleges that Mr. Morris failed to disclose and instead concealed and suppressed (1) that Mr. Morris was not present in the David Morris store with a client when he called Mr. Silver, (2) that Mr. Morris, or his agent, had taken the Blue Diamond out of the David Morris store in London and brought it with him outside the United Kingdom a few days prior to June 28, 2007, (3) that David Morris sold the Blue Diamond as just one piece of multiple of pieces of jewelry sold to a single buyer at the same time and (4) the allocation of price of the Blue Diamond amongst the multiple pieces of jewelry that David Morris had sold as part of the single transaction.

33.    S.H. Silver is informed and believes and thereon alleges that David Morris engaged in the acts and omissions described herein with the intent to deceive and defraud S.H. Silver into terminating the Consignment Agreement for the Blue Diamond and to enter a new agreement for a commission sale. David Morris engaged in the acts and omissions described herein with the intent to induce reliance by S.H. Silver in the continuing fidelity of David Morris as an agent entrusted with the sale of S.H. Silver's jewelry pursuant to a consignment.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

34.    S.H. Silver reasonably relied upon David Morris in view of its fiduciary role as an agent for S.H. Silver.  Had S.H. Silver known the true facts, it would not have agreed to pay a 10% commission on the sale of the Blue Diamond and instead would have insisted on the original consignment arrangement.

35.    As a direct and proximate result of David Morris' fraudulent conduct, S.H. Silver has incurred damages in an amount to be proven at the time of trial.

36.    S.H. Silver is informed and believes and thereon alleges that David Morris perpetrated the above acts in a knowing, oppressive, willful, malicious and fraudulent manner, with the intent and purpose of advancing their own gain at the expense of S.H. Silver's rights and interests.  As a result, S.H. Silver is entitled to punitive and exemplary damages.

WHEREFORE, S.H. Silver prays for relief as set forth below.

### FIFTH CAUSE OF ACTION

(Fraud -- Suppression of Fact)

37.    S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

38.    After the Consignment Agreement was entered between David Morris and S.H. Silver, on June 28, 2007, Mr. Morris telephoned Mr. Silver and represented that he was at the David Morris store with a client who had made an offer to purchase the Blue Diamond for specific price. Mr. Morris indicated that he wanted to proceed with the sale, but instead of proceeding with the sale under the terms of the Consignment Agreement, he wanted a 10% commission against his client's offer.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.:                                       – 9 –
COMPLAINT

DOCSSFO-12511350.5-JMITCHELL

39.    S.H. Silver is informed and believes and thereon alleges that Mr. Morris failed to disclose and instead concealed and suppressed (1) that Mr. Morris was not present in the David Morris store with a client when he called Mr. Silver, (2) that Mr. Morris, or his agent, had taken the Blue Diamond out of the David Morris store in London and brought it with him outside the United Kingdom a few days prior to June 28, 2007, (3) that David Morris sold the Blue Diamond as just one piece of multiple pieces of jewelry sold to a single buyer at the same time and (4) the allocation of price of the Blue Diamond amongst the multiple pieces of jewelry that David Morris had sold as part of the single transaction.

40.    S.H. Silver is informed and believes and thereon alleges that David Morris engaged in the acts and omissions described herein with the intent to deceive and defraud S.H. Silver into terminating the Consignment Agreement for the Blue Diamond and to enter a new agreement for a commission sale.

41.    S.H. Silver, at the time of these failures to disclose and suppressions of fact, and at the time S.H. Silver took the actions herein alleged, was ignorant of the existence of the facts that David Morris failed to disclose.  Had S.H. Silver known the true facts, it would not have agreed to pay a 10% commission on the sale of the Blue Diamond and instead would have insisted on the original consignment arrangement.  S.H. Silver's reliance on David Morris' representations was justified because it could not, in the exercise of reasonable diligence, have discovered David Morris' suppressions of fact.

42.    As a direct and proximate result of David Morris' fraudulent conduct, S.H. Silver has incurred damages in an amount to be proven at the time of trial.

43.    As a proximate result of David Morris' fraudulent conduct, as alleged herein, and S.H. Silver's acts in reliance on or because of such fraudulent conduct, S.H. Silver has been damaged in an amount to be proven at the time of trial.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.:                                                 – 10 –
COMPLAINT

DOCSSFO-12511350.5-JMITCHELL

44.    S.H. Silver is informed and believes and thereon alleges that David Morris perpetrated the above acts in a knowing, oppressive, willful, malicious and fraudulent manner, with the intent and purpose of advancing their own gain at the expense of S.H. Silver's rights and interests.  As a result, S.H. Silver is entitled to punitive and exemplary damages.

WHEREFORE, S.H. Silver prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

(Unjust Enrichment)

45.    S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

46.    As a result of David Morris' actions, David Morris has been unjustly enriched in an amount to be determined at trial.  David Morris' unjust enrichment comes at the expense and to the detriment of S.H. Silver.

47.    It is unconscionable and unjust for David Morris to retain the money and profits it will receive at the expense and to the detriment of S.H. Silver.

48.    Accordingly, S.H. Silver is entitled to recover the amount by which David Morris was unjustly enriched at S.H. Silver's expense.

DOCSSFO-12511350.5-JMITCHELL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    WHEREFORE, S.H. Silver prays for relief as set forth below.

2

3                              **PRAYER FOR RELIEF**

4

5    WHEREFORE, S.H. Silver prays for relief as follows:

6

7         1.    That judgment be entered in favor of S.H. Silver and against David Morris on all

8    causes of action;

9

10        2.    For compensatory damages in an amount to be determined at trial;

11

12        3.    For all ill-gotten profits received by David Morris as a result of its breach of its

13   fiduciary duties;

14

15        4.    For the amounts by which David Morris has been unjustly enriched;

16

17        5.    For exemplary and punitive damages;

18

19        6.    For S.H. Silver's reasonable attorneys' fees and costs;

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

7.    For pre-judgment interest according to proof; and

8.    For such other relief as the Court deems just and proper.

DATED: June 1̲7̲, 2008.

                              REED SMITH LLP

                              By_____
                                 Scott D. Baker
                                 Jonah D. Mitchell
                                 Attorneys for Plaintiff
                                 S.H. Silver Company



## S.H. SILVER COMPANY, INC,
800 EL CAMINO REAL, SUITE 230, MENLO PARK, CA 94025
TEL: 650-325-9500 • FAX: 650-325-9518
E-MAIL: info@shsilver.com

**INVOICE**

9644

SHIPPED TO

David Morris
180 New Bond Street
London W54RL

| INVOICE DATE | DATE SHIPPED | OUR ORDER NO. | YOUR ORDER NO. | TERMS | F.O.B. | SALESPERSON | SHIPPED VIA |
|---|---|---|---|---|---|---|---|
| 7/2/07 | | | | | | | |

13087   Plat, diamond & Kashmir Sapp    TOTAL
earings    tax    P/S

(12646 Plat & diamond earing semis)    TOTAL

Terms:    net cash
t5 days

**REDACTED**

Due on receipt. A service charge of 1 1/2% per month will be charged on past due accounts.

**THANK YOU**

Exhibit 2

COPY

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Scott D. Baker (SBN 84923)
   Email: sbaker@reedsmith.com
2  Jonah D. Mitchell (SBN 203511)
   Email: jmitchell@reedsmith.com
3  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
4  San Francisco, CA  94111-3922

5  **Mailing Address:**
   P.O. Box 7936
6  San Francisco, CA  94120-7936

7  Telephone:    +1 415 543 8700
   Facsimile:    +1 415 391 8269
8
   Attorneys for Plaintiff
9  S.H. Silver Company, Inc.

10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                    FOR THE COUNTY OF SAN MATEO

13

14  S.H. SILVER COMPANY, INC.          No.: CIV 473796

15              Plaintiff,             **DECLARATION OF STEPHEN H. SILVER
                                       IN SUPPORT OF S.H. SILVER COMPANY,**
16       vs.                           **INC.'S APPLICATION FOR A RIGHT TO
                                       ATTACH ORDER AND WRIT OF**
17  DAVID MORRIS INTERNATIONAL LTD.,   **ATTACHMENT**

18              Defendant.             Date:        August 1, 2008
                                       Time:        9:00 a.m.
19                                     Place:       Dept. 2, Courtroom 8C
                                       Compl. Filed: June 17, 2008
20

21                                     Honorable Marie S. Weiner

22

23

24

25

26

27

28

No.: CIV 473796                                              DOCSSFO-12511352.2-JMITCHELL

DECLARATION OF STEPHEN H. SILVER

I, Stephen H. Silver, declare:

1.    I am the Chairman and CEO of S.H. Silver Company, Inc. ("S.H. Silver"). I make this Declaration in support of S.H. Silver's Application for a Right to Attach Order and Writ of Attachment. I have personal knowledge of the matters set forth in this Declaration. If called as a witness, I could and would competently testify to these matters.

2.    I founded S.H. Silver in 1980. Based in Menlo Park, California, S.H. Silver is a premier jewelry house, offering vintage and modern jewelry. S.H. Silver enjoys a reputation as one of the industry's most trusted names in acquiring and placing some of the finest estate jewelry in the world.

3.    This lawsuit concerns two transactions between S.H. Silver and David Morris International, Ltd. ("David Morris"), a jewelry retailer with shops in London and Palm Beach, Florida, among other locations. One of the transactions concerned a blue diamond and the other a pair of Cartier Sapphire earrings. This attachment solely concerns the Cartier Sapphire earrings, which David Morris purchased from S.H. Silver for $948,000, payable in two installments. David Morris made the first payment of $474,000, but failed to make the second payment of $474,000 (due on August 16, 2007) despite repeated inquiries. The amounts now owing are fixed and readily ascertainable. Inclusive of finance charges, the amounts owed as of May 31, 2008 total $550,060.62. S.H. Silver's claim for these amounts is not secured. S.H. Silver seeks to attach David Morris' assets for the sole purpose of securing recovery of the amounts that David Morris owes. David Morris' purchase of the Cartier Sapphire earrings is described in greater detail below.

4.    On or around June 8, 2007, a broker based in Dallas, Texas introduced me via an e-mail to David Morris and its principal, Jeremy Morris, and Sales Director, William Holbech. Following the broker's introduction, I had multiple telephone conversations with Mr. Holbech and at least one telephone conversation with Mr. Morris from S.H. Silver's Menlo Park offices for the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: CIV 473796                                    – 1 –                          DOCSSFO-12511352.2-JMITCHELL
DECLARATION OF STEPHEN H. SILVER

1  purpose of making arrangements for the consignment of several jewelry pieces to David Morris and

2  a trip to London to deliver the jewelry.

3

4      5.    In addition, before departing for London, on June 22, 2007, at my direction, S.H.

5  Silver employee Emily Teeter faxed from S.H. Silver's offices in Menlo Park, California to David

6  Morris' office in London a consignment for the jewelry pieces that I was planning to bring with me

7  to London. The consignment contemplated that in event that "suit is instituted to collect this

8  merchandise or any portion thereof ... jurisdiction shall be in California and venue in San Mateo

9  County of that state." The consignment also provided that "receipt of the merchandise constitutes

10  your agreement to the foregoing terms which represent the entire contract with respect to the

11  merchandise or any contrary custom of the trade." Among others, the consignment identified a pair

12  of Loose Sugarloaf Cabochon Sapphires (the "Sapphires"), bearing SKU # 13087, and the

13  accompanying Cartier Platinum and Diamond Ear Clip semi mounts for the Earrings, bearing SKU

14  #12646 (collectively, the "Earrings"). A true and correct copy of the consignment is attached hereto

15  as Exhibit A. David Morris' Import/Export Manager Lynn Tabor acknowledged receipt of the

16  consignment in an e-mail sent to Ms. Teeter on June 22, 2007. A true and correct copy of Ms.

17  Tabor's e-mail to Ms. Teeter is attached hereto as Exhibit B.

18

19      6.    I arrived in London at the end of June 2007 and delivered the jewelry to David

20  Morris, including the Earrings, shortly thereafter per the consignment arrangements. Along with the

21  Earrings, I provided a copy of the SSEF certification that S.H. Silver held for the Sapphires. SSEF is

22  a Gemological Laboratory. SSEF had certified the Sapphires as being of Kashmir origin. A true and

23  correct copy of the SSEF certification is attached hereto as Exhibit C.

24

25      7.    On or about July 3, 2007, Mr. Morris telephoned me and expressed an interest in

26  purchasing the Earrings directly for David Morris, as opposed to selling them on consignment. I met

27  Mr. Morris at the David Morris store where we engaged in negotiations toward the purchase of the

28  Earrings. During the course of our discussions surrounding the negotiation, Mr. Morris indicated

DECLARATION OF STEPHEN H. SILVER

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   that he was considering cutting the Sapphires and remaking the Earrings and obtaining a certification

2   from a different Gemological Laboratory, Gubelin, and asked my opinion. I told Mr. Morris that I

3   had elected to keep the stones in their original form as a pair of original Cartier Kashmir Sapphire

4   earrings, but that the beauty and value of the stones are in the eye of the beholder, and that, as the

5   new owner, it was up to him to do whatever he wanted with them. Mr. Morris indicated that he felt

6   the Kashmir sapphires would be more valuable and saleable as faceted stones and he would probably

7   proceed in that direction after consulting with his cutter. We then turned our attention to negotiation

8   of a price for the Earrings and soon finalized an agreement for the purchase of the Earrings. We

9   settled on a price of $948,000 to be paid immediately by wire to S.H. Silver's bank account in

10   Redwood City, California (the "Agreement"). As a practical matter, David Morris already held the

11   Earrings and a copy of the SSEF certification per the consignment arrangement, but title/possession

12   was transferred contemporaneously with the Agreement, on or about July 3, 2007.

13

14        8.     Shortly after the sale was completed, Mr. Morris telephoned me and asked me to

15   adjust the payment terms of the Agreement by extending him some credit. He mentioned again that

16   he was planning on cutting the stones and would need to re-certify the stones after they were

17   finished, and therefore would need some time before he would be in a position to sell the Earrings.

18   Mr. Morris asked if he could pay the amounts owed in sixty days. I told him I was not willing to do

19   that, but as a courtesy and accommodation, I agreed that 50% of the purchase price, $474,000, could

20   be paid immediately and that the balance, $474,000, could be paid in 45 days, or by August 16,

21   2007. Mr. Morris agreed and these terms were documented in an invoice dated July 2, 2007 and

22   bearing S.H. Silver's Menlo Park, California address (I believe that the invoice was mistakenly dated

23   July 2, as opposed to July 3, the date I believe the transaction was concluded). A true and correct

24   copy of Invoice No. 9644 that was delivered to David Morris is attached hereto as Exhibit D. My

25   office also sent the original SSEF certification for the Sapphires by Federal Express to David Morris.

26

27        9.     David Morris did not make the first payment immediately, as it was required to do

28   under the Agreement. Instead, over two weeks passed, at which point I contacted David Morris'

1   offices from S.H. Silver's offices in Menlo Park, California to request that the delinquent payment
2   be made. I spoke with David Morris' Sales Director William Holbech. Mr. Holbech advised me
3   that Mr. Morris was out of town and that he did not have authority to wire the payment owed.
4   Growing increasingly frustrated, I asked Mr. Holbech to make arrangements to send the payment or
5   simply return the Earrings. Mr. Holbech apologized for the delay and said he would talk with Mr.
6   Morris and make arrangements to wire the money.

8       10.     Soon thereafter, Mr. Holbech called me back on my cellular phone in Menlo Park,
9   California. Mr. Holbech said he had spoken with Mr. Morris and would send the entire amount
10  owed for the Earrings, including the second payment not yet due, to compensate for the delinquency
11  on the first payment. I told Mr. Holbech that it was not necessary to send the entire amount at that
12  time and asked that David Morris simply honor the terms of the Agreement and settle the invoice in
13  full on August 16, 2007. The next day, July 19, 2007, David Morris wired the first payment due
14  under the Agreement to S.H. Silver's bank account in Redwood City, California.

16      11.     The remaining balance of $474,000 was due on August 16, 2007. In breach of the
17  Agreement, David Morris did not make payment by August 16, 2007, and has not made any
18  payment since that time despite repeated inquiries.

20      12.     Approximately one month after the deadline for the second payment had passed, I
21  telephoned Mr. Morris from S.H. Silver's offices in Menlo Park, California to inquire about the
22  status of the payment. During our telephone conversation, Mr. Morris advised me that he had the
23  stones cut. He also told me that following cutting he attempted to obtain a new certification from
24  Gubelin, another Gemological Laboratory, but that Gubelin would not certify the stones as being of
25  Kashmir origin. He told me he was not going to make payment until the certification was resolved.
26  Mr. Morris told me not to worry, that he never questioned the sapphires as not being of Kashmir
27  origin, and that everything would get sorted out in short order. I told Mr. Morris that he was
28  violating the terms of the Agreement, and reminded him that what he chose to do with the stones

No.: CIV 473796          – 4 –          DOCSSFO-12511352.2-JMITCHELL
DECLARATION OF STEPHEN H. SILVER

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  after David Morris purchased them from S.H. Silver was up to him, but that did not affect David

2  Morris' payment obligations to S.H. Silver, nor did his attempts to obtain a new certification.

3  Accordingly, I asked Mr. Morris to send the payment owed. Mr. Morris still refused to make

4  payment, stating words to the effect of "I'm not paying this payment until I'm ready" and hung-up.

5

6      13.    In a letter dated October 31, 2007, I wrote Mr. Morris regarding the past due balance

7  under Invoice No. 9644. My letter set forth that the outstanding balance now amounted to $492,249,

8  inclusive of finance charges. A copy of my October 31, 2007 letter (unsigned version) is attached

9  hereto as Exhibit E.

10

11     14.    In response, Mr. Morris sent me a letter dated November 5, 2007, a true and correct

12  copy of which is attached hereto as Exhibit F. Mr. Morris falsely claimed that the sale of the

13  Earrings was subject to obtaining a Gubelin certification. As set forth above, and discussed in more

14  detail below, there was never any such condition.

15

16     15.    As a result of Mr. Morris' refusal to honor the terms of the Agreement, S.H. Silver

17  was forced to retain counsel and initiate this action to seek recovery of the amounts owed to S.H.

18  Silver.

19

20     16.    In correspondence, David Morris has continued to take the position that the

21  Agreement was subject to David Morris obtaining a new Gubelin certification for the Earrings. At

22  no point prior to the Agreement did David Morris ever mention or propose any such condition. And,

23  in fact, there was never any such condition. David Morris' attempt to impose an after-the-fact

24  condition on the Agreement makes no sense and is belied by its own actions over the course of the

25  transaction. For instance, if the purchase was subject to David Morris obtaining a Gubelin

26  certification, it would have made no sense for David Morris to make any payment without obtaining

27  the certification. Nevertheless, as set forth above, David Morris made the first payment under the

28  Agreement (albeit late) and actually indicated it was prepared to pay the entire amounts owed under

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  the Agreement at that time even though it had not obtained the new certification (David Morris only

2  sent the first installment, as opposed to the entire balance, after I indicated that only the first

3  installment had come due). At no point did David Morris take the position that it needed to obtain a

4  new certification *before* it was obligated to pay S.H. Silver. Instead, it simply proceeded to wire the

5  first payment.

6

7       17.    David Morris' post-Agreement position also defies common business sense. As

8  noted above, after buying the Earrings, David Morris elected to cut the Sapphires. Naturally, this

9  permanently altered the composition of the Sapphires. As part of that process, the characteristics

10  which allowed the Gemological Laboratory to identify the Sapphires as being of Kashmir origin

11  could have been compromised or destroyed. Of course, S.H. Silver never would have – and, indeed,

12  did not – assume the risks associated with David Morris' cutting the Sapphires. The deal was

13  simple: David Morris bought the Earrings outright, with the SSEF certification S.H. Silver had

14  obtained for them, for $948,000. Whatever David Morris elected to do with the Earrings after the

15  purchase was up to David Morris, as the new owner of the Earrings. That, however, had nothing to

16  do with David Morris' payment obligations to S.H. Silver under the Agreement.

17

18       18.    I have been selling jewelry for S.H. Silver for over twenty-five years, with thousands

19  of sales successfully completed. Not once has payment for the sale of jewelry ever been conditioned

20  upon obtaining a new certification following cutting of the jewelry stones. This would make

21  absolutely no sense for the seller of the jewelry stones because of the risks associated with cutting

22  the stones.

23

24       19.    With finance charges, as of May 31, 2008, David Morris owed S.H. Silver

25  $550,060.62. A true and correct copy of an Invoice documenting the amounts due, including finance

26  charges, is attached hereto as Exhibit G. S.H. Silver seeks to attach David Morris' assets for the sole

27  purpose of securing recovery of the amounts that David Morris owes under the Agreement.

28



1     I declare under the penalty of perjury under the laws of the State of California that the

2   foregoing is true and correct

3

4       DATED:  June ___, 2008.

5

6

7                                                        Stephen H. Silver

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: CIV 473796                          – 7 –
                        DECLARATION OF STEPHEN H. SILVER

**EXHIBIT "A"**

# S. H. Silver Company-Menlo Park
## MEMORANDUM

The goods described and valued below are delivered to you for examination and are the property of S.H. Silver Company. This merchandise is subject to the order of S.H. Silver Company and shall be returned to them on demand. Such merchandise, until returned to them and actually received, is at your risk from all hazards. No right or power is given to you to sell, hypothecate, modify, repair, remove or reset stones, or otherwise work on or dispose of this merchandise regardless of prior transactions. A sale of this merchandise can only be effected and title will pass only if, as, and when said S.H. Silver Company, Inc. shall agree to such sale and a bill of sale is rendered thereof. In case suit is instituted to collect this merchandise or any portion thereof, the customer promises to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit, and that jurisdiction shall be in California and venue in San Mateo County of that state. Service charge on accounts past due, agreed terms 1.5% per month, 18% annually. Receipt of the merchandise constitutes your agreement to the foregoing terms which represent the entire contract with respect to the merchandise or any contrary custom of the trade.

From: S. H. Silver Company
800 El Camino Real
Suite 280
Menlo Park, CA 94025
Ph:650-325-9500
Fax:650-325-9518

To: David Morris
180 New Bond Street
London W1S 4RL
020 7499 2200
FOR TEMPORARY IMPORT INTO U.K.

Date: 06/24/07
Total items: 8
Total Dealer Cost:
SHS Memo C/V# 8243
Memo Term: Short Term

| SKU# | Description | Dealer Price |
|---|---|---|
| EA 12646 | Plat and dia ear clip semi mounts - 54 F/C dias - .61 ctw; 6 sq dias - .56 ctw<br>SOLD ONLY WITH 13067 AS SET | 25,000 |
| NE 12857 | Plat, dia & green garnet necklace. 67 round green garnets - 50.02ctw; 101 F/C dias - 6.90ctw. | |
| RI 9982 | Plat, dia & ruby ring. 1 oval cab. ruby - 11.11ct; 2 P/S dias - .57ctw; 82 F/C dias - .85ctw. | |
| RI 10367 | loose blue diamond. 1 oval blue dia - 6.04ct<br>Plat & dia ring semi for blue dia . 268 F/C dias - 1.13ctw. | |
| RI 13821 | Plat, dia & pink dia dome ring. 1 oval pink dia - .65ct; F/C pink dias - .52ctw; F/C dias - 2.52ctw. | |
| RI 14097 | Plat, dia & sapp ring. 1 oval sapp - 11.00ct; 12 F/C dias - 3.12ctw. | |
| RI 15885 | Plat, dia & sapp ring. 1 cush sapp - 11.3.7ct; 6 T/B dias - 1.22ctw. | |
| SA 13067 | 2 loose cab. sugarloaf sapps - 16.23ctw (9.17 & 9.06)<br>SOLD ONLY WITH 12646 AS SET | 1,200,000 |

Purpose of shipment: On Loan
Shipper: Emily
Please remove your tags and return all unsold items with our inventory tags attached. Thank you.
Shipping date: 06/24/07
Shipped Via: Hand Delivered

Please sign below and return a copy of this memorandum to our office.

**EXHIBIT "B"**

Wednesday, April 2, 2008 3:55 PM

**Subject:** 2 page faxed received
**Date:** Friday, June 22, 2007 3:33 PM
**From:** Lynn Tabor <lynn@davidmorris.com>
**To:** <etester@shsilver.com>

Hi Emily

Just to confirm that we have received your 1-pages by fax (invoice and cover sheet.

Many thanks
Lynn
Lynn Tabor
Import/Export Manager

# DAVID MORRIS

180 New Bond Street
London W1S 4RL

T: +44 207 399 4166
F: +44 207 499 3249
M: +44 (0) 7764 977870

**EXHIBIT "C**



**Shape & Cut:**          antique cushion, high cabochon



Origin: Kashmir



EXHIBIT "D



**INVOICE**

## S.H. SILVER COMPANY, INC,
800 EL CAMINO REAL, SUITE 230, MENLO PARK, CA 94025
TEL: 650-325-9500 • FAX: 650-325-9618
E-MAIL: info@shsilver.com

9644

SHIPPED TO:

David Morris
180 New Bond Street
London W154RL

| INVOICE DATE | DATE SHIPPED | OUR ORDER NO. | YOUR ORDER NO. | TERMS | F.O.B. | SALESPERSON | SHIPPED VIA |
|---|---|---|---|---|---|---|---|
| 7/2/07 | | | | | | | |

| | | | |
|---|---|---|---|
| 13087 | Plat, diamond & Kashmir Sapp earrings ($947,000-) | TOTAL | $948.00 |
| | | Tax | P/S |
| 13646 | Plat & diamond earring semis ($1000) | | |
| | | TOTAL | $948.00 |
| | Terms: $474,000 net cash, | | |
| | $474,000 15 days | | |

Due on receipt. A service charge of 1½% per month will be charged on past due accounts.

**THANK YOU**

EXHIBIT "E

October 31, 2007

Jeremy Morris
David Morris International Ltd.
180 New Bond Street
London W1S 4RL
United Kingdom

Reference:  **PAST DUE BALANCE ON INVOICE NO. 9644**

Dear Mr. Morris,

The outstanding balance on the referenced invoice is $492,249, inclusive of finance charge.  Despite sending your company numerous emails and initiating telephone communication directly with you to resolve this situation, your account remains overdue.

We mutually agreed on following sale amount and payment terms: the total invoice of $948,000, the first payment due on July 2, 2007, the second payment due on August 14, 2007.   Your first payment of $474,000 was not remitted until July 19, 2007 and the second payment is still outstanding.

Jeremy, we feel we have given you ample time to remit payment and close the outstanding balance.  If payment is not received within the next ten days, you leave us no choice but to turn this matter over to our attorneys.  We sincerely hope you choose to avoid this very time consuming and expensive legal process and simply remit payment on the outstanding balance immediately.

Sincerely,


Stephen H. Silver
President

**EXHIBIT "F"**

# DAVID MORRIS

Mr Stephen H. Silver
800 El Camino Real, Suite 230
Menlo Park
CA 94025

5th November 2007

Dear Mr Silver

Thank you for your letter dated 31st October concerning the balance of invoice 9644, although I am very surprised by the tone of it as the sale was agreed subject to obtaining Gubelin sertification.

As you are aware it has taken me since 19th June to acquire certificates for these stones and still I am unable to get Cashmere certification from Gubelin who are the most respected gem laboratory in the world and whose certification this sale was agreed. Without Gubelin certification I really feel that I am on the back foot trying to market these stones as any knowledgeable client could request Gubelin certificates and I would not be able to provide them and hence would lose the sale.

Having sought the views of top dealers of cashmere in the trade, the consensus of opinion is that failure to obtain a Gubelin certificate reduces the value of the stones.

There are two ways of finalising this issue, as set out below:

1.  We return the stones to you and you refund us $430,318, which is the $474,000 that we have paid less $43,682 that reflects the weight we took off (0.84cts) polishing them into faceted stones.

    I believe that this is advantageous to you as the value of the stones has been greatly increased by them being faceted as opposed to cabochon. Faceted stones always achieve a better price than cabochons.

2.  I will make you an offer of $750,000 in full and final settlement in respect of these stones and will send a wire transfer for the balance of $276,000 within 3 days of your acceptance.

Finally, a lengthy legal battle over this issue is not to the advantage of either of us and in the end the only winners in this process would be the lawyers.

I look forward to hearing from you but to avoid any ambiguity in our communications please continue all correspondence in writing.

Yours sincerely

Jeremy Morris
Managing Director

**EXHIBIT "G"**



S.H. SILVER COMPANY
█████████████████, SUITE 230, MENLO PARK, CA 94025
(650) 325-9500

# STATEMENT
## 0646
STATEMENT DATE: May 31, 2008

CUSTOMER ACCOUNT ID: DAVID~M

████ Morris International Ltd.
███ New Bond Street
██████ W1S 4RL

PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT.

AMOUNT
ENCLOSED: $ _____

| DATE | DATE DUE | REFERENCE/DESCRIPTION | | DEBIT/AMOUNT | |
|------|----------|------------------------|---|------------|---|
| 7/02/07 | 7/02/07 | 9644 (50%) | | $474,000.00 | $474,000.00 |
| 7/19/07 | | Payment | | -474,000.00 | 0.00 |
| 7/03/07 to 7/19/07 | | Late Fee | | 4,029.00 | 4,029.00 |
| 7/02/07 | 8/15/07 | 9644 (50%) | | 474,000.00 | 478,029.00 |
| 8/16/07 to 5/31/08 | | Late Fee | | 72,031.62 | 550,060.62 |

# PAST DUE

S.H. SILVER CO.                                    $550,060.62

| 0 - 30 days | 31 - 60 days | 61 - 90 days | 91 - 120 days |
|-------------|--------------|--------------|----------------|
| 0.00 | 0.00 | 0.00 | $550,060.62 |

1    SCHIFF HARDIN LLP
     Robert B. Mullen (CSB 136346)
2    Yakov P. Wiegmann (CSB 245783)
     One Market, Spear Street Tower
3    Thirty-Second Floor
     San Francisco, CA  94105
4    Telephone:    (415) 901-8700
     Facsimile:    (415) 901-8701
5    rmullen@schiffhardin.com

6    Attorneys for Defendant
     DAVID MORRIS INTERNATIONAL LTD.
7

8               UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   S. H. SILVER COMPANY, INC.,      Case No.  08-03550 CRB

12            Plaintiff,      **[PROPOSED] ORDER**

13   v.

14   DAVID MORRIS INTERNATIONAL
     LTD.,
15
16            Defendant.

17

18        The motion of defendant David Morris International Ltd. ("David Morris") to dismiss the

19   complaint for lack of personal jurisdiction pursuant to F.R.C.P. Rule 12(b)(2), and in the

20   alternative pursuant to the doctrine of *forum non conveniens*, came on regularly for hearing in

21   Courtroom 8 of this Court on September 5, 2008.  Appearing for defendant David Morris was

22   Robert B. Mullen of the law firm Schiff Hardin LLP; appearing for plaintiff S. H. Silver

23   Company, Inc. ("Silver") was Jonah D. Mitchell of the law firm Reed Smith LLP.  Based on the

24   papers submitted in support, opposition and on reply to this motion, and on argument by counsel:

25        IT IS ORDERED that the complaint be dismissed without prejudice.  The Court grants

26   this motion on both grounds advanced by David Morris.

27        The motion is granted pursuant to F.R.C.P. Rule 12(b)(2) because this Court does not

28   have personal jurisdiction over David Morris, an English company.  The declaration of David

1   Morris' managing director Jeremy Morris establishes that David Morris lacks sufficient contacts

2   with California, as required by *Burger King v. Rudzewicz*, 471 U.S. 462 (985).  The Court may

3   not exercise general jurisdiction over David Morris because David Morris does not have

4   continuous and systematic general business contacts that approximate a physical presence in

5   California.  *Schwarzenegger v. Ford Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  The Court

6   may not exercise specific jurisdiction over David Morris because plaintiff's claims do not arise

7   from acts or transactions by David Morris in California in which David Morris purposefully

8   availed itself of the privilege of conducting activities in California, and the exercise of jurisdiction

9   over David Morris would not be reasonable.  *Id.* at 802.  Plaintiff Silver has not met its burden of

10  alleging or evidencing grounds for personal jurisdiction as to David Morris.

11      The Court separately grants this motion under the doctrine of *forum non conveniens*,

12  because England is the most convenient forum and is an adequate forum for this dispute.  The

13  "private interest factors" and "public interest factors" set forth in *Lueck v. Sundstrand Corp.*, 236

14  F.3d 1137, 1145-1147 (9th Cir. 2001) favor the English forum.  The bulk of the evidence and

15  witnesses germane to this dispute are in London, England; and the laws of England will likly

16  govern most or all issues.  The mere fact Silver is located in Menlo Park, California does not

17  justify suit here.  It would not be fair to require David Morris to incur the expense of litigation in

18  this forum and to suffer unnecessary inconvenience and disruption to its business.  Further,

19  California's courts and citizens have relatively little interest in this dispute involving transactions

20  carried out in a foreign country, and should not shoulder the expense.

21      IT IS SO ORDERED.

22

23  DATED: _____        _____

24                                          Honorable Charles R. Breyer
                                            United States District Court Judge
25  SF\9199143.1

26

27

28

Schiff Hardin LLP
Attorneys At Law
San Francisco

Case No. 08-03550 CRB                - 2 -                          [PROPOSED] ORDER