1  Scott D. Baker (SBN 84923)
   Email:  sbaker@reedsmith.com
2  Jonah D. Mitchell (SBN 203511)
   Email:  jmitchell@reedsmith.com
3  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
4  San Francisco, CA  94111-3922

5  **Mailing Address:**
   P.O. Box 7936
6  San Francisco, CA  94120-7936

7  Telephone:    +1 415 543 8700
   Facsimile:    +1 415 391 8269
8
   Attorneys for Plaintiff
9  S.H. Silver Company, Inc.

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12  S.H. SILVER COMPANY, INC.,              Case No. CV 08-03550 CRB

13                    Plaintiff,            **DECLARATION OF STEPHEN H. SILVER
                                            IN SUPPORT OF APPLICATION FOR
14        vs.                               RIGHT TO ATTACH ORDER AND WRIT
                                            OF ATTACHMENT**
15  DAVID MORRIS INTERNATIONAL LTD.,
                                            Date:        September 5, 2008
16                    Defendant.            Time:        10:00 a.m.
                                            Place:       Courtroom 8
17
                                            Honorable Charles R. Breyer
18

19

20

21

22

23

24

25

26

27

28

I, Stephen H. Silver, declare:

1.    I am the Chairman and CEO of S.H. Silver Company, Inc. ("S.H. Silver").  I make this Declaration in support of S.H. Silver's Application for a Right to Attach Order and Writ of Attachment.  I have personal knowledge of the matters set forth in this Declaration.  If called as a witness, I could and would competently testify to these matters.

2.    I founded S.H. Silver in 1980.  Based in Menlo Park, California, S.H. Silver is a premier jewelry house, offering vintage and modern jewelry.  S.H. Silver enjoys a reputation as one of the industry's most trusted names in acquiring and placing some of the finest estate jewelry in the world.

3.    This lawsuit concerns two transactions between S.H. Silver and David Morris International, Ltd. ("David Morris"), a jewelry retailer with shops in London and Palm Beach, Florida, among other locations.  One of the transactions concerned a blue diamond and the other a pair of Cartier Sapphire earrings.  This attachment solely concerns the Cartier Sapphire earrings, which David Morris purchased from S.H. Silver for $948,000, payable in two installments.  David Morris made the first payment of $474,000, but failed to make the second payment of $474,000 (due on August 16, 2007) despite repeated inquiries.  The amounts now owing are fixed and readily ascertainable.  Inclusive of finance charges, the amounts owed as of May 31, 2008 total $550,060.62.  S.H. Silver's claim for these amounts is not secured.  S.H. Silver seeks to attach David Morris' assets for the sole purpose of securing recovery of the amounts that David Morris owes.  David Morris' purchase of the Cartier Sapphire earrings is described in greater detail below.

4.    On or around June 8, 2007, a broker based in Dallas, Texas introduced me via an e-mail to David Morris and its principal, Jeremy Morris, and Sales Director, William Holbech.  Following the broker's introduction, I had multiple telephone conversations with Mr. Holbech and at least one telephone conversation with Mr. Morris from S.H. Silver's Menlo Park offices for the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  purpose of making arrangements for the consignment of several jewelry pieces to David Morris and

2  a trip to London to deliver the jewelry.

3

4        5.      In addition, before departing for London, on June 22, 2007, at my direction, S.H.

5  Silver employee Emily Teeter faxed from S.H. Silver's offices in Menlo Park, California to David

6  Morris' office in London a consignment for the jewelry pieces that I was planning to bring with me

7  to London.  The consignment contemplated that in event that "suit is instituted to collect this

8  merchandise or any portion thereof … jurisdiction shall be in California and venue in San Mateo

9  County of that state."  The consignment also provided that "receipt of the merchandise constitutes

10  your agreement to the foregoing terms which represent the entire contract with respect to the

11  merchandise or any contrary custom of the trade."  Among others, the consignment identified a pair

12  of Loose Sugarloaf Cabochon Sapphires (the "Sapphires"), bearing SKU # 13087, and the

13  accompanying Cartier Platinum and Diamond Ear Clip semi mounts for the Earrings, bearing SKU

14  #12646 (collectively, the "Earrings").  A true and correct copy of the consignment is attached hereto

15  as Exhibit A.  David Morris' Import/Export Manager Lynn Tabor acknowledged receipt of the

16  consignment in an e-mail sent to Ms. Teeter on June 22, 2007.  A true and correct copy of Ms.

17  Tabor's e-mail to Ms. Teeter is attached hereto as Exhibit B.

18

19        6.      I arrived in London at the end of June 2007 and delivered the jewelry to David

20  Morris, including the Earrings, shortly thereafter per the consignment arrangements.  Along with the

21  Earrings, I provided a copy of the SSEF certification that S.H. Silver held for the Sapphires.  SSEF is

22  a Gemological Laboratory.  SSEF had certified the Sapphires as being of Kashmir origin.  A true and

23  correct copy of the SSEF certification is attached hereto as Exhibit C.

24

25        7.      On or about July 3, 2007, Mr. Morris telephoned me and expressed an interest in

26  purchasing the Earrings directly for David Morris, as opposed to selling them on consignment.  I met

27  Mr. Morris at the David Morris store where we engaged in negotiations toward the purchase of the

28  Earrings.  During the course of our discussions surrounding the negotiation, Mr. Morris indicated

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    that he was considering cutting the Sapphires and remaking the Earrings and obtaining a certification

2    from a different Gemological Laboratory, Gubelin, and asked my opinion.  I told Mr. Morris that I

3    had elected to keep the stones in their original form as a pair of original Cartier Kashmir Sapphire

4    earrings, but that the beauty and value of the stones are in the eye of the beholder, and that, as the

5    new owner, it was up to him to do whatever he wanted with them.  Mr. Morris indicated that he felt

6    the Kashmir sapphires would be more valuable and saleable as faceted stones and he would probably

7    proceed in that direction after consulting with his cutter.  We then turned our attention to negotiation

8    of a price for the Earrings and soon finalized an agreement for the purchase of the Earrings.  We

9    settled on a price of $948,000 to be paid immediately by wire to S.H. Silver's bank account in

10   Redwood City, California (the "Agreement").  As a practical matter, David Morris already held the

11   Earrings and a copy of the SSEF certification per the consignment arrangement, but title/possession

12   was transferred contemporaneously with the Agreement, on or about July 3, 2007.

13

14        8.    Shortly after the sale was completed, Mr. Morris telephoned me and asked me to

15   adjust the payment terms of the Agreement by extending him some credit.  He mentioned again that

16   he was planning on cutting the stones and would need to re-certify the stones after they were

17   finished, and therefore would need some time before he would be in a position to sell the Earrings.

18   Mr. Morris asked if he could pay the amounts owed in sixty days.  I told him I was not willing to do

19   that, but as a courtesy and accommodation, I agreed that 50% of the purchase price, $474,000, could

20   be paid immediately and that the balance, $474,000, could be paid in 45 days, or by August 16,

21   2007.  Mr. Morris agreed and these terms were documented in an invoice dated July 2, 2007 and

22   bearing S.H. Silver's Menlo Park, California address (I believe that the invoice was mistakenly dated

23   July 2, as opposed to July 3, the date I believe the transaction was concluded).  A true and correct

24   copy of Invoice No. 9644 that was delivered to David Morris is attached hereto as Exhibit D.  My

25   office also sent the original SSEF certification for the Sapphires by Federal Express to David Morris.

26

27        9.    David Morris did not make the first payment immediately, as it was required to do

28   under the Agreement.  Instead, over two weeks passed, at which point I contacted David Morris'

1    offices from S.H. Silver's offices in Menlo Park, California to request that the delinquent payment

2    be made. I spoke with David Morris' Sales Director William Holbech. Mr. Holbech advised me

3    that Mr. Morris was out of town and that he did not have authority to wire the payment owed.

4    Growing increasingly frustrated, I asked Mr. Holbech to make arrangements to send the payment or

5    simply return the Earrings. Mr. Holbech apologized for the delay and said he would talk with Mr.

6    Morris and make arrangements to wire the money.

7

8        10.    Soon thereafter, Mr. Holbech called me back on my cellular phone in Menlo Park,

9    California. Mr. Holbech said he had spoken with Mr. Morris and would send the entire amount

10   owed for the Earrings, including the second payment not yet due, to compensate for the delinquency

11   on the first payment. I told Mr. Holbech that it was not necessary to send the entire amount at that

12   time and asked that David Morris simply honor the terms of the Agreement and settle the invoice in

13   full on August 16, 2007. The next day, July 19, 2007, David Morris wired the first payment due

14   under the Agreement to S.H. Silver's bank account in Redwood City, California.

15

16       11.    The remaining balance of $474,000 was due on August 16, 2007. In breach of the

17   Agreement, David Morris did not make payment by August 16, 2007, and has not made any

18   payment since that time despite repeated inquiries.

19

20       12.    Approximately one month after the deadline for the second payment had passed, I

21   telephoned Mr. Morris from S.H. Silver's offices in Menlo Park, California to inquire about the

22   status of the payment. During our telephone conversation, Mr. Morris advised me that he had the

23   stones cut. He also told me that following cutting he attempted to obtain a new certification from

24   Gubelin, another Gemological Laboratory, but that Gubelin would not certify the stones as being of

25   Kashmir origin. He told me he was not going to make payment until the certification was resolved.

26   Mr. Morris told me not to worry, that he never questioned the sapphires as not being of Kashmir

27   origin, and that everything would get sorted out in short order. I told Mr. Morris that he was

28   violating the terms of the Agreement, and reminded him that what he chose to do with the stones

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  after David Morris purchased them from S.H. Silver was up to him, but that did not affect David

2  Morris' payment obligations to S.H. Silver, nor did his attempts to obtain a new certification.

3  Accordingly, I asked Mr. Morris to send the payment owed.  Mr. Morris still refused to make

4  payment, stating words to the effect of "I'm not paying this payment until I'm ready" and hung-up.

5

6      13.    In a letter dated October 31, 2007, I wrote Mr. Morris regarding the past due balance

7  under Invoice No. 9644.  My letter set forth that the outstanding balance now amounted to $492,249,

8  inclusive of finance charges.  A copy of my October 31, 2007 letter (unsigned version) is attached

9  hereto as Exhibit E.

10

11     14.    In response, Mr. Morris sent me a letter dated November 5, 2007, a true and correct

12  copy of which is attached hereto as Exhibit F.  Mr. Morris falsely claimed that the sale of the

13  Earrings was subject to obtaining a Gubelin certification.  As set forth above, and discussed in more

14  detail below, there was never any such condition.

15

16     15.    As a result of Mr. Morris' refusal to honor the terms of the Agreement, S.H. Silver

17  was forced to retain counsel and initiate this action to seek recovery of the amounts owed to S.H.

18  Silver.

19

20     16.    In correspondence, David Morris has continued to take the position that the

21  Agreement was subject to David Morris obtaining a new Gubelin certification for the Earrings.  At

22  no point prior to the Agreement did David Morris ever mention or propose any such condition.  And,

23  in fact, there was never any such condition.  David Morris' attempt to impose an after-the-fact

24  condition on the Agreement makes no sense and is belied by its own actions over the course of the

25  transaction.  For instance, if the purchase was subject to David Morris obtaining a Gubelin

26  certification, it would have made no sense for David Morris to make any payment without obtaining

27  the certification.  Nevertheless, as set forth above, David Morris made the first payment under the

28  Agreement (albeit late) and actually indicated it was prepared to pay the entire amounts owed under

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  the Agreement at that time even though it had not obtained the new certification (David Morris only

2  sent the first installment, as opposed to the entire balance, after I indicated that only the first

3  installment had come due). At no point did David Morris take the position that it needed to obtain a

4  new certification *before* it was obligated to pay S.H. Silver. Instead, it simply proceeded to wire the

5  first payment.

6

7      17.    David Morris' post-Agreement position also defies common business sense. As

8  noted above, after buying the Earrings, David Morris elected to cut the Sapphires. Naturally, this

9  permanently altered the composition of the Sapphires. As part of that process, the characteristics

10  which allowed the Gemological Laboratory to identify the Sapphires as being of Kashmir origin

11  could have been compromised or destroyed. Of course, S.H. Silver never would have – and, indeed,

12  did not – assume the risks associated with David Morris' cutting the Sapphires. The deal was

13  simple: David Morris bought the Earrings outright, with the SSEF certification S.H. Silver had

14  obtained for them, for $948,000. Whatever David Morris elected to do with the Earrings after the

15  purchase was up to David Morris, as the new owner of the Earrings. That, however, had nothing to

16  do with David Morris' payment obligations to S.H. Silver under the Agreement.

17

18      18.    I have been selling jewelry for S.H. Silver for over twenty-five years, with thousands

19  of sales successfully completed. Not once has payment for the sale of jewelry ever been conditioned

20  upon obtaining a new certification following cutting of the jewelry stones. This would make

21  absolutely no sense for the seller of the jewelry stones because of the risks associated with cutting

22  the stones.

23

24      19.    With finance charges, as of July 31, 2008, David Morris owed S.H. Silver

25  $566,564.43. A true and correct copy of an Invoice documenting the amounts due, including finance

26  charges, is attached hereto as Exhibit G. S.H. Silver seeks to attach David Morris' assets for the sole

27  purpose of securing recovery of the amounts that David Morris owes under the Agreement.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

07/31/2008  15:18    16039218                                                      PAGE  02/02



1    I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct.

3

4    DATED: July 31, 2008.

5

6                                                                    Stephen H. Silver

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**EXHIBIT "A"**

## S. H. Silver Company-Menlo Park
### MEMORANDUM

The goods described and valued below are delivered to you for examination and are the property of S.H. Silver Company. This merchandise is subject to the order of S.H. Silver Company and shall be returned to them on demand. Such merchandise, until returned to them and actually received, is at your risk from all hazzards. No right or power is given to you to sell, hypothecate, modify, repair, remove or reset stones, or otherwise work on or dispose of this merchandise regardless of prior transactions. A sale of this merchandise can only be effected and title will pass only if, as, and when said S.H. Silver Company, Inc. shall agree to such sale and a bill of sale is rendered thereof. In case suit is instituted to collect this merchandise or any portion thereof, the customer promises to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit, and that jurisdiction shall be in California and venue in San Mateo County of that state. Service charge on accounts past due, agreed terms 1.5% per month, 18% annually. Receipt of the merchandise constitutes your agreement to the foregoing terms which represent the entire contract with respect to the merchandise or any contrary custom of the trade.

**Date: 06/24/07**

From: S. H. Silver Company  
800 El Camino Real  
Suite 230  
Menlo Park, CA 94025  
Ph:650-325-9500  
Fax:650-325-9518

To:  
David Morris  
180 New Bond Street  
London W1S 4RL  
020 7499 2200  
FOR TEMPORARY IMPORT INTO U.K.

**Total Items: 8**

**Total Dealer Cost:**

| SHS Memo C/V# | Memo Term: |
|---|---|
| 8243 | Short term |

| SKU# | Description | Dealer Price |
|---|---|---|
| EA 12646 | Plat and dia ear clip semi mounts - 54 F/C dias ~ .61 ctw; 8 sq dias ~ .56 ctw **SOLD ONLY WITH 13087 AS SET** | 25,000 |
| NE 12857 | Plat, dia & green garnet necklace. 67 round green garnets ~ 50.02ctw; 101 F/C dias ~ 6.80ctw. | |
| RI 9362 | Plat, dia & ruby ring. 1 oval cab. ruby ~ 11.11ct; 2 P/S dias ~ .67ctw; 82 F/C dias ~ .65ctw. | |
| RI 10367 | loose blue diamond. 1 oval blue dia ~ 6.04ct Plat & dia ring semi for blue dia . 268 F/C dias ~ 1.13ctw. | |
| RI 13821 | Plat, dia & pink dia dome ring. 1 oval pink dia ~ .65ct; F/C pink dias ~ .52ctw; F/C dias ~ 2.52ctw. | |
| RI 14097 | Plat, dia & sapp ring. 1 oval sapp ~ 11.00ct; 12 F/C dias ~ 3.12ctw. | |
| RI 15885 | Plat, dia & sapp ring. 1 cush sapp ~ 11.3.7ct; 6 T/B dias ~ 1.22ctw. | |
| SA 13087 | 2 loose cab. sugarloaf sapps ~ 18.23ctw (9.17 & 9.06) **SOLD ONLY WITH 12646 AS SET** | 1,200,000 |

Purpose of shipment: On Loan                Shipping date: 06/24/07  
Shipper: Emily                               Shipped Via: Hand Delivered  
Please remove your tags and return all unsold items with our inventory tags attached. Thank you.

**Please sign below and return a copy of this memorandum to our office.**

**EXHIBIT "B"**

**Subject: 2 page faxed received**
**Date:** Friday, June 22, 2007 3:33 PM
**From:** Lynn Tabor <lynn@davidmorris.com>
**To:** <eteeter@shsilver.com>

Hi Emily

Just to confirm that we have received your 1-pages by fax (invoice and cover sheet.

Many thanks
Lynn
Lynn Tabor
Import/Export Manager

# DAVID MORRIS

180 New Bond Street
London W1S 4RL

T: +44 207 399 4166
F: +44 207 499 3249
M: +44 (0) 7764 977870

**EXHIBIT "C**

SCHWEIZERISCHES GEMMOLOGISCHES INSTITUT

INSTITUT SUISSE DE GEMMOLOGIE

SWISS GEMMOLOGICAL INSTITUTE

**SSEF**

Falknerstrasse 9
CH-4001 Basel / Switzerland
Telephone  +41 061  262 0640
Telefax     +41 061  262 0641
e-mail       gemlab@ssef.ch
homepage  www.ssef.ch



## TEST REPORT No. 43408

on the authenticity of the following loose gemstones (A + B)

| | |
|---|---|
| Shape & Cut: | antique cushion, high cabochon |
| Indicated weight: | A: 9.17 ct<br>B: 9.06 ct |
| Measurements: | A: 11.49 x 10.57 x 8.42 mm<br>B: 11.50 x 10.55 x 8.37 mm |
| Colour: | blue of medium strong saturation |
| Identification: | two  S A P P H I R E S   (variety of natural corundum) |
| Comments: | The analysed properties confirm the authenticity<br>of these transparent sapphires.<br><br>No indications of heating. |
| Origin: | Kashmir |

Important note: The conclusions on this Test Report reflect our findings at the time it is issued. A gemstone can be modified and / or enhanced at any time. Therefore, the SSEF can reconfirm at any time that the stones are in accordance with the Test Report.
Please see comments on reverse side.

**SSEF - SWISS GEMMOLOGICAL INSTITUTE**
Gemstone Testing Division

Basel,  16 August 2004  ss

Dr. L. Kiefert, FGA

Prof. Dr. H.A. Hänni, FGA

**EXHIBIT "D**



**9644**



## S.H. SILVER COMPANY, INC,
800 EL CAMINO REAL, SUITE 230, MENLO PARK, CA 94025
TEL: 650-325-9500 • FAX: 650-325-9518
E-MAIL: info@shsilver.com

SHIPPED TO

David Morris
180 New Bond Street
London W54RL

| INVOICE DATE 7/2/07 | DATE SHIPPED | OUR ORDER NO. | YOUR ORDER NO. | TERMS | F.O.B. | SALESPERSON | SHIPPED VIA |
|---|---|---|---|---|---|---|---|

| | | | |
|---|---|---|---|
| 13087  Plat, diamond & Kashmir Sapp earrings ($947,000—) | | TOTAL | $948,0 |
| | | Tax | P/S |
| (12646 Plat & diamond earring semis $1,000 ) | | | |
| | | TOTAL | $948,0 |
| | | | |
| Terms: $474,000 net cash | | | |
| $474,000 15 days | | | |

Due on receipt. A service charge of 1 ½% per month will be charged on past due accounts.

**THANK YOU**

EXHIBIT "E

October 31, 2007


Jeremy Morris
David Morris International Ltd.
180 New Bond Street
London W1S 4RL
United Kingdom

Reference: **PAST DUE BALANCE ON INVOICE NO. 9644**

Dear Mr. Morris,

The outstanding balance on the referenced invoice is $492,249, inclusive of finance charge. Despite sending your company numerous emails and initiating telephone communication directly with you to resolve this situation, your account remains overdue.

We mutually agreed on following sale amount and payment terms: the total invoice of $948,000, the first payment due on July 2, 2007, the second payment due on August 14, 2007. Your first payment of $474,000 was not remitted until July 19, 2007 and the second payment is still outstanding.

Jeremy, we feel we have given you ample time to remit payment and close the outstanding balance. If payment is not received within the next ten days, you leave us no choice but to turn this matter over to our attorneys. We sincerely hope you choose to avoid this very time consuming and expensive legal process and simply remit payment on the outstanding balance immediately.


Sincerely,



Stephen H. Silver
President

**EXHIBIT "F"**

# DAVID MORRIS

Mr Stephen H. Silver
800 El Camino Real, Suite 230
Menlo Park
CA 94025

5th November 2007

Dear Mr Silver

Thank you for your letter dated 31st October concerning the balance of invoice 9644, although I am very surprised by the tone of it as the sale was agreed subject to obtaining Gubelin certification.

As you are aware it has taken me since 19th June to acquire certificates for these stones and still I am unable to get Cashmere certification from Gubelin who are the most respected gem laboratory in the world and whose certification this sale was agreed. Without Gubelin certification I really feel that I am on the back foot trying to market these stones as any knowledgeable client could request Gubelin certificates and I would not be able to provide them and hence would lose the sale.

Having sought the views of top dealers of cashmere in the trade, the consensus of opinion is that failure to obtain a Gubelin certificate reduces the value of the stones.

There are two ways of finalising this issue, as set out below:

1.  We return the stones to you and you refund us $430,318, which is the $474,000 that we have paid less $43,682 that reflects the weight we took off (0.84cts) polishing them into faceted stones.

    I believe that this is advantageous to you as the value of the stones has been greatly increased by them being faceted as opposed to cabochon. Faceted stones always achieve a better price than cabochons.

2.  I will make you an offer of $750,000 in full and final settlement in respect of these stones and will send a wire transfer for the balance of $276,000 within 3 days of your acceptance.

Finally, a lengthy legal battle over this issue is not to the advantage of either of us and in the end the only winners in this process would be the lawyers.

I look forward to hearing from you but to avoid any ambiguity in our communications please continue all correspondence in writing.

Yours sincerely

Jeremy Morris
Managing Director

**EXHIBIT "G"**



SILVER COMPANY
HEAL, SUITE 230, MENLO PARK, CA 94025
(650) 325-9500

# STATEMENT
## 0653
STATEMENT DATE: July 31, 2008

CUSTOMER ACCOUNT ID: DAVID-M

David Morris International Ltd.
New Bond Street
London W1S 4RL

PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT.

AMOUNT
ENCLOSED: $_____

| DATE | DATE DUE | REFERENCE | PAID | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|
| | 7/02/07 | 9644 (508) | | | $474,000.00 | $474,000.00 |
| | 7/19/07 | Payment | | | (474,000.00) | 0.00 |
| | 7/19/07 | Late Fee | | | 4,029.00 | 4,029.00 |
| | 8/15/07 | 9644 (508) | | | 474,000.00 | 478,029.00 |
| | 7/31/08 | Late Fee | | | 88,535.43 | 566,564.43 |

S H SILVER CO

| | TOTAL | $566,564.43 |
|---|---|---|

| 30 days | 31 - 60 days | 61 - 90 days | over 90 days |
|---|---|---|---|
| .00 | 0.00 | 0.00 | $566,564.43 |

H60

FORM 27111    REORDER FROM RAPIDFORMS, INC., 301 GROVE ROAD, THOROFARE, N.J. 08086-9498    CALL TOLL FREE 800-257-8334; FAX 800-451-8113    R019C

PAGE 02    S H SILVER CO    6590325518    07/31/2008 16:03