1   Scott D. Baker (SBN 84923)
    Email:  sbaker@reedsmith.com
2   Jonah D. Mitchell (SBN 203511)
    Email:  jmitchell@reedsmith.com
3   REED SMITH LLP
    Two Embarcadero Center, Suite 2000
4   San Francisco, CA  94111-3922

5   **Mailing Address:**
    P.O. Box 7936
6   San Francisco, CA  94120-7936

7   Telephone:   +1 415 543 8700
    Facsimile:    +1 415 391 8269
8
    Attorneys for Plaintiff
9   S.H. Silver Company, Inc.

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12  S.H. SILVER COMPANY, INC.,            Case No. CV 08-03550 CRB

13              Plaintiff,                **PLAINTIFF S.H. SILVER COMPANY,
                                          INC.'S OPPOSITION TO DAVID MORRIS
14       vs.                             INTERNATIONAL LTD.'S MOTION TO
                                          DISMISS COMPLAINT FOR LACK OF
15  DAVID MORRIS INTERNATIONAL LTD.,      PERSONAL JURISDICTION, AND IN THE
                                          ALTERNATIVE PURSUANT TO THE
16              Defendant.                DOCTRINE OF *FORUM NON
                                          CONVENIENS***

17                                        Date:          September 5, 2008
18                                        Time:          10:00 a.m.
                                          Place:         Courtroom 8
19
                                          Honorable Charles R. Breyer
20

21

22

23

24

25

26

27

28

Case No.: CV 08-03550 CRB                                    DOCSSFO-12524006.1

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................... 1

II. FACTUAL BACKGROUND ....................................................................................... 2

    A.    The Underlying Transactions ............................................................................ 2

    B.    DMI Fails to Honor The Earring Agreement .................................................... 5

III. LEGAL ARGUMENT ................................................................................................ 7

    A.    Defendant DMI Has the Minimum Contacts With California Necessary to Assert Personal Jurisdiction Over It .................................................................. 7

        1.    Applicable Legal Standards ................................................................... 7

        2.    Specific Jurisdiction Exists Over DMI ................................................... 8

            a.    DMI's California Contacts Constitute Purposeful Availment Under Both Tort-Based and Contract-Based Theories ................................................................................... 8

            b.    SHS' Claims Arise Out of DMI's California Contacts ............. 15

            c.    Exercising Jurisdiction Over DMI Is Reasonable .................... 16

    B.    Dismissal on Forum Non Conveniens Grounds is Inappropriate .................... 19

        1.    Private Interest Factors Do Not Support Dismissal .............................. 19

            a.    The Location of Parties and Witnesses ................................... 20

            b.    The Forum's Convenience to the Litigants / Cost of Bringing Witnesses to Trial ................................................... 21

            c.    Access to Physical Evidence and Other Sources of Proof / Whether Witnesses Can Be Compelled to Testify ................... 21

            d.    Enforceability of Judgment / Other Practical Problems .......... 22

        2.    Public Interest Factors Call for a California Forum .............................. 22

            a.    California Has a Local Interest in Remedying Harm to its Citizens .................................................................................. 23

            b.    The Court's Familiarity With Governing Law ........................ 23

            c.    Court and Jury Burden, Congestion and Costs of Resolving Unrelated Disputes ............................................... 24

IV. CONCLUSION .......................................................................................................... 24

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1

# TABLE OF AUTHORITIES

2

## CASES

3

Action Embroidery v. Atlantic Embroidery,
    368 F.3d 1174 (9th Cir. 2004) ..................................................................13

4

Ballard v. Savage,
    65 F.3d 1495 (9th Cir. 1995) ........................................................... passim

5

Bancroft & Masters, Inc. v. Augusta National, Inc.,
    223 F.3d 1082 (9th Cir. 2000) .....................................................................9

6

7

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985) ...................................................................9, 11, 16, 19

8

9

CE Distribution, LLC v. New Sensor Corporation,
    380 F.3d 1107 (9th Cir. 2004) ..................................................9, 10, 11, 13

10

Calder v. Jones,
    465 U.S. 783 (1984) .....................................................................................9

11

Core-Vent Corp. v. Nobel Industries, A.B.,
    11 F.3d 1482 (9th Cir. 1993) .....................................................................17

12

13

Decker Coal Co. v. Commonwealth Edison Co.,
    805 F.2d 834 (9th Cir. 1986) .....................................................................18

14

Deirmenjian v. Deutsche Bank, A.G.,
    2006 WL 4749756 (C.D. Cal., 2006) ...................................................19, 20

15

16

Dole Food Co., Inc. v. Watts,
    303 F.3d 1104 (9th Cir. 2002) ...................................................................23

17

Excel Plas, Inc. v. Sigmax Co., Ltd.,
    2007 WL 2853932 (S.D. Cal. 2007).......................................................19, 23

18

19

Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.,
    18 F.3d 389 (7th Cir. 1994)] ......................................................................14

20

Gates Learjet Corp. v. Jensen,
    743 F.2d 1325 (9th Cir. 1984) ...............................................................20, 23

21

22

Haisten v. Grass Valley Reimbursement Fund, Ltd.,
    784 F.2d 1392 (9th Cir. 1986) .....................................................8, 9, 10, 14

23

Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,
    328 F.3d 1122 (9th Cir. 2003) ............................................................. passim

24

25

Hirsh v. Blue  Cross, Blue Shield of Kansas City,
    800 F.2d 1474 (9th Cir. 1986) .............................................................8, 11, 16

26

International Shoe Co. v. Washington,
    326 U.S. 310 (1945).....................................................................................7

27

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Case No.: CV 08-03550 CRB    – ii –    DOCSSFO-12524006.1

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S  MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

Itel Fl, Inc. v. Container Land Associates,
    1997 WL. 229951 (N.D. Cal. 1997) ................................................................. 15

Klein v. Gardner,
    2007 WL. 128228 (N.D. Cal. 2007) ........................................................ passim

Krish v. Balasubramaniam,
    2007 WL. 1219281 (E.D. Cal. 2007) ............................................................. 22

Laub v. U.S. Dept. of Interior,
    342 F.3d 1080 (9th Cir. 2003) ........................................................................ 8

Lueck v. Sundstrand Corp.,
    236 F.3d 1137 (9th Cir. 2001) ...................................................................... 20

McGlinchy v. Shell Chemical Co.,
    845 F.2d 802 (9th Cir. 1988) ........................................................................ 15

Meyers v. Bennett Law Offices,
    238 F.3d 1068 (9th Cir. 2001) ...................................................................... 10

nMotion, Inc. v. Environmental Tectonics Corp.,
    196 F. Supp. 2d 1051 (D. Or. 2001) ............................................................... 7

Piper Aircraft Co v. Reyno,
    454 U.S. 235 (1981) ............................................................................... 19, 22

Ravelo Monegro v. Rosa,
    211 F.3d 509 (9th Cir. 2000) ........................................................................ 19

Tuazon v. R.J. Reynolds Tobacco Co.,
    433 F.3d 1163 (9th Cir. 2006) ...................................................................... 22

U.S. Vestor, LLC v. Biodata Info. Tech AG,
    290 F. Supp. 2d 1057 (N.D. Cal. 2003) .......................................................... 14

Walker & Zanger (West Coast) Ltd. v. Stone Design, S.A.,
    4. F. Supp. 2d 391 (C.D. Cal. 1997) .............................................................. 15

World-Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980) ................................................................................. 7, 13

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,
    433 F.3d 1199 (9th Cir. 2006) ........................................................................ 8

**STATUTES**

Cal. Civ. Code § 1646 .................................................................................. 23

**RULES**

Fed. R. Civ. P. 28(b)(3) ................................................................................ 22

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Armed with no defenses on the merits, Defendant David Morris International, Ltd. ("DMI") has turned to procedure in a desperate attempt to, at best, delay judgment day. DMI bought a pair of vintage sapphire earrings from Plaintiff S.H. Silver Company, Inc. ("SHS"), took possession of the earrings, "cut" the sapphires and thereby permanently altered the sapphires, and now refuses to pay the second of two installment payments for the earrings. After removing this case to federal court, DMI followed with its misguided motion to dismiss for lack of personal jurisdiction/forum non conveniens. DMI's motion is fundamentally flawed for at least the following reasons.

Initially, DMI misses the mark on the facts surrounding its purchase of the earrings from California-based SHS. It tries to characterize this dispute as being focused solely in London, the location of DMI's jewelry store, when its genesis actually traces to multiple negotiations over the phone and e-mail while SHS was at its Menlo Park, California headquarters. From the inception of the parties' dealings, it was always understood that in the event of a dispute, litigation would take place in California, as that is what the consignment agreement pursuant to which DMI took receipt of the jewelry explicitly provided. Execution of the transactions at issue also was connected with California, as DMI's performance obligations, installment payments for the jewelry, were tied directly to SHS' bank in California. As DMI began defaulting on its obligations, the connection with California only continued as the parties engaged in multiple telephone conversations with SHS participating from California.

DMI also ignores the "effects test," which further warrants jurisdiction based on DMI's fraudulent activity aimed at SHS. Indeed, the Ninth Circuit has repeatedly upheld the exercise of personal jurisdiction over non-resident defendants, even where the alleged tortious

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1    activity took place entirely outside the forum state, provided that the tortious activity was aimed at a

2    forum resident and the effects of the tort were felt in the forum.  Here, with knowledge of SHS'

3    California residence, DMI defrauded SHS in connection with a separate transaction concerning a

4    blue diamond.  Thus, personal jurisdiction is warranted under this alternate ground as well.

5

6        DMI's purposeful business activity in California and its tortious actions directed at

7    SHS, a California corporation, create a strong presumption that personal jurisdiction is reasonable

8    and appropriate.  Further, because there are no compelling reasons dictating a more efficient

9    alternative forum, DMI cannot carry its heavy burden of demonstrating that California jurisdiction is

10   unreasonable.  Thus, personal jurisdiction is warranted.

11

12       Finally, DMI fails to sustain the "heavy burden" required for dismissal on the basis of

13   forum non conveniens.  This dispute is between two private parties, one in California and one in

14   London, and centers principally upon the dealings between two individuals.  DMI can point to no

15   private or public interest factors which would militate towards disrupting SHS' choice of forum here

16   and compelling SHS to proceed in London.  Accordingly, DMI's motion to dismiss fails on all

17   grounds and should be denied.

18

19                    **II. FACTUAL BACKGROUND**

20

21   A.    **The Underlying Transactions**

22

23       Plaintiff SHS is a premier jewelry house in Menlo Park, California, offering vintage

24   and modern jewelry.  SHS enjoys a reputation as one of the industry's most trusted names in

25   acquiring and placing some of the finest estate jewelry in the world.  [Declaration of Jonah D.

26   Mitchell ("Mitchell Decl."), Ex. A (Declaration of Stephen H. Silver in Support of Application for

27   Right to Attach Order and Writ of Attachment ("Silver Decl."), ¶ 2)] Defendant DMI is a jewelry

28   retailer with locations around the globe, including London and Florida.  [Declaration of Jeremy

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S  MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Morris In Support of Defendant's Motion to Dismiss ("Morris Decl."), ¶ 3]  As part of its business,

2  DMI sells jewelry throughout the world, including the United States and California in particular.

3  [Morris Decl., ¶¶ 3, 6]  This lawsuit concerns two transactions between SHS and DMI.  One of the

4  transactions involved a blue diamond and the other a pair of Cartier Sapphire earrings.

5

6      The origins of both of these transactions trace to an introduction by a third party

7  broker based in Texas and multiple subsequent telephone conversations between SHS' Chairman

8  and CEO, Stephen Silver, based in California and DMI's principal, Jeremy Morris, and Sales

9  Director, William Holbech, based in London.  With Mr. Silver participating from California, over

10  the course of several telephone conversations, the parties made arrangements for SHS to consign

11  several jewelry pieces to DMI. [Silver Decl., ¶¶ 3, 4]

12

13      To that end, on June 22, 2007, SHS sent a Consignment Agreement (the

14  "Consignment Agreement") for the jewelry pieces from SHS' Menlo Park offices to DMI's office in

15  London. [Silver Decl. ¶ 5]  The Consignment Agreement bore prominently SHS' Menlo Park,

16  California address and phone number.  In addition, the Consignment Agreement specifically stated

17  that California courts would have jurisdiction over disputes between the parties and venue would lie

18  in San Mateo County:

19

20      In case suit is instituted to collect this merchandise or any portion thereof …
    jurisdiction shall be in California and venue in San Mateo County of that state. [Silver

21      Decl. ¶ 5, Ex. A]

22      The Consignment Agreement also specified that DMI's receipt of merchandise from

23  SHS established DMI's agreement to its terms: "receipt of the merchandise constitutes your

24  agreement to the foregoing terms which represent the entire contract with respect to the merchandise

25  or any contrary custom of the trade."  [Silver Decl. ¶ 5, Ex. A]  On the same day that SHS sent the

26  Consignment Agreement, DMI acknowledged receipt of the Consignment Agreement via an e-mail

27  directed to SHS' Menlo Park offices.  [Silver Decl., ¶ 5, Ex. B]

28

Among other items, the Consignment Agreement identified and set consignment prices for a blue diamond (the "Blue Diamond"), and a pair of Loose Sugarloaf Cabochon Sapphires (the "Sapphires") and accompanying Cartier Platinum and Diamond Ear Clip semi mounts (collectively, the "Earrings"). [Silver Decl., ¶ 5, Exs. A, B]  Pursuant to industry custom and practice, under the Consignment Agreement, DMI would add on any profit it wished to make above the consignment price and make a sale to a client accordingly.  From that sale, DMI would owe SHS the consignment price and would keep the amounts above the consignment price as its profit. [Mitchell Decl., Ex. B (Plaintiff's Complaint for Damages ("Compl."), ¶ 8)]

Per the consignment arrangements, at the end of June 2007, SHS delivered the Earrings and the Blue Diamond to DMI and DMI thereby assented to the terms of the Consignment Agreement.  [Silver Decl., ¶ 6, Ex. A]  Along with the Earrings, SHS provided a copy of the SSEF certification that it held for the Sapphires.  SSEF, a Gemological Laboratory, had certified the Sapphires as being of Kashmir origin.  [Silver Decl., ¶ 6, Ex. C]

On June 28, 2007, Mr. Morris telephoned Mr. Silver to discuss the Blue Diamond. [Compl., ¶ 10]  Specifically, Mr. Morris told Mr. Silver that he had a client present at his store that had made an offer at a set price for the Blue Diamond.  [Compl., ¶ 10]   Mr. Morris indicated that DMI wanted to proceed with the sale to the client, but wanted to make a 10% commission against its client's offering, as opposed to the original consignment arrangement with SHS.  [Compl., ¶ 10]  Mr. Silver agreed and the parties struck a new agreement with DMI, whereby DMI paid SHS- by way of wire to SHS' California bank account- an amount equal to the price DMI indicated the client had offered, less a 10% commission.  [Compl., ¶ 10, Morris Decl., ¶ 14]

As SHS would later learn, however, Mr. Morris' representations that he was with a client in the Morris store were false and instead Mr. Morris had taken the Blue Diamond outside the United Kingdom and concealed from SHS that the Blue Diamond was just one of multiple pieces of jewelry sold to a single buyer at one time.  [Compl., ¶ 11]  Mr. Morris also concealed from SHS the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  allocation of price to the Blue Diamond amongst the multiple pieces of jewelry DMI sold to the

2  buyer. [Compl., ¶ 11]   Had SHS known these facts, it would have insisted on the payment of the

3  original consignment price it had designated. [Compl., ¶ 11]

4

5       Meanwhile, around July 3, 2007, Mr. Morris contacted Mr. Silver and expressed an

6  interest in purchasing the Earrings directly for DMI, as opposed to selling them on consignment.

7  [Silver Decl., ¶ 7]   Mr. Silver and Mr. Morris then negotiated an agreement for DMI to purchase the

8  Earrings, settling on a price of $948,000 to be paid immediately by wire to SHS' bank account in

9  California (the "Earring Agreement").[1]  [Silver Decl., ¶ 7]

10

11       Shortly after the sale was completed, however, Mr. Morris contacted Mr. Silver and

12  asked him to adjust the payment terms of the Earring Agreement by extending DMI some credit.

13  [Silver Decl., ¶ 8]   As a courtesy and accommodation, Mr. Silver agreed that 50% of the purchase

14  price, $474,000, could be paid immediately and that the balance, $474,000, could be paid in 45 days,

15  or by August 16, 2007.  [Silver Decl., ¶ 8]   These terms were documented in an invoice dated July 2,

16  2007 which also bore prominently SHS' California address. [Silver Decl., ¶ 8, Ex. D]

17

18  **B.    DMI Fails to Honor The Earring Agreement**

19

20       DMI did not make the first payment immediately, as it was required to do under the

21  Earring Agreement.  Instead, over two weeks passed, at which point Mr. Silver telephoned DMI's

22  offices from SHS' offices in California to request that DMI make the delinquent payment. [Silver

23  Decl., ¶ 9]  Mr. Silver spoke with DMI's Sales Director Mr. Holbech, who told Mr. Silver that he did

---

1 During the course of their discussions, Mr. Morris suggested that he was considering cutting the Sapphires and remaking the Earrings and obtaining a certification from a different Gemological Laboratory, Gubelin. [Silver Decl., ¶ 7] Mr. Morris asked Mr. Silver's opinion on that approach. [Silver Decl., ¶ 7.] Mr. Silver told Mr. Morris that SHS had elected to keep the Sapphires in their original form as a pair of original Cartier Kashmir Sapphire earrings, but that the beauty and value of the Sapphires are in the eye of the beholder, and that, as the new owner, it would be up to DMI to do whatever it wanted with them. Mr. Morris suggested that he would consult with his jewelry cutter and Mr. Silver and Mr. Morris then turned their attention to negotiation of a price for the Earrings. [Silver Decl., ¶ 7]

1  not have authority to wire the payment owed but apologized for the delay and said he would talk

2  with Mr. Morris and make arrangements to wire the money.  [Silver Decl., ¶ 9]

3

4      Soon thereafter, Mr. Holbech telephoned Mr. Silver on Mr. Silver's cellular phone in

5  Menlo Park, California and confirmed that payment was forthcoming.  [Silver Decl., ¶ 10]  The next

6  day, July 19, 2007, DMI wired the first payment due under the Earring Agreement to SHS'

7  California bank account.  [Silver Decl., ¶ 10]

8

9      The remaining balance of $474,000 was due to be wired to SHS' California bank

10 account on August 16, 2007.  In breach of the Agreement, DMI did not make payment by August 16,

11 2007, and has not made any payment since that time despite repeated inquiries.  [Silver Decl., ¶ 11]

12

13     Approximately one month after the deadline for the second payment had passed, Mr.

14 Silver telephoned Mr. Morris from SHS' California offices to inquire about the status of the

15 payment.  Mr. Morris refused to make the payment but assured Mr. Silver that everything would get

16 sorted out in short order.  [Silver Decl., ¶ 12]

17

18     Over the next several months, SHS continued to pursue the amounts owed from DMI

19 to no avail. [Silver Decl., ¶¶ 13, 14]  As a result, SHS was forced to initiate this lawsuit, asserting

20 claims for Breach of Contract, Account Stated and Unjust Enrichment stemming from the Earring

21 Agreement and claims for Fraud, Constructive Fraud and Breach of Fiduciary Duty stemming from

22 the Blue Diamond transaction.  [Compl., ¶¶ 16-48]  After SHS initiated writ of attachment

23 proceedings in state court, with no leg to stand on, DMI removed the case and followed with its

24 motion to dismiss in a transparent effort to further delay having to pay SHS.

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# III. LEGAL ARGUMENT

**A.    Defendant DMI Has the Minimum Contacts With California Necessary to Assert Personal Jurisdiction Over It**

**1.    Applicable Legal Standards**

To defeat DMI's motion, SHS needs to simply make a prima facie showing of jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Thus, SHS need only demonstrate facts that, if true, would support the exercise of jurisdiction over DMI. *Id.* In determining whether SHS has satisfied this burden, the uncontraverted allegations of the Complaint must be taken as true, and any conflicting facts in the parties' affidavits must be construed in SHS' favor. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Likewise, all reasonable inferences are to be drawn in SHS' favor. *nMotion, Inc. v. Environmental Tectonics Corp.*, 196 F. Supp. 2d 1051, 1058-59 (D. Or. 2001).

Where, as here, there is no statute governing personal jurisdiction, the district court applies the law of the state in which it sits. *Harris Rutsky*, 328 F.3d at 1129. The pertinent California statute is co-extensive with the United States Constitution, and thus the sole inquiry is whether the exercise of personal jurisdiction meets the requirements of federal due process. *Id.* Under the federal scheme, due process requires that a nonresident defendant have minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The nonresident defendant's conduct and connection with the forum state must be such that defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### 2.   Specific Jurisdiction Exists Over DMI

One way to satisfy this due process requirement is through the exercise of specific jurisdiction.2 *Haisten v. Grass Valley Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986). In the Ninth Circuit, courts apply a three prong test to determine whether there is specific jurisdiction: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or a resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice, i.e., it must be reasonable. *Harris Rutsky*, 328 F.3d at 1129.

### a.   DMI's California Contacts Constitute Purposeful Availment Under Both Tort-Based and Contract-Based Theories

The first prong, "purposeful availment," is analyzed differently depending on whether the case sounds in contract or tort. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). In tort cases, the focus is on "purposeful direction," namely, whether a defendant purposefully directed its activities at the forum state. *Id.* In contract cases, the court asks whether the defendant "purposefully avails" itself of the privilege of conducting activities or consummates a transaction in the forum state. *Id.* The first prong may be satisfied upon a showing of contract-based purposeful availment, tort-based purposeful direction, or some combination of the two. *Id.* Importantly, a defendant does *not* need to be physically present within, or have physical contacts with, the forum to meet the "purposeful availment" prong. *Hirsh v. Blue*

---

2 SHS does not assert personal jurisdiction based on general jurisdiction, although DMI concedes that in addition to this transaction with SHS, it has engaged in other transactions with California residents. If the Court is inclined to grant DMI's motion to dismiss, SHS requests the opportunity to conduct jurisdictional discovery to explore the full extent of DMI's dealings with California and the statements by Mr. Morris in his Declaration. *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (finding that "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary").

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1   *Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986) (upholding personal

2   jurisdiction over out-of-state defendant that was not authorized to do business in and had no direct

3   contact with California, but entered into a contract with six individuals living there); *Burger King*

4   *Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (finding lack of physical presence alone does not

5   defeat jurisdiction in case alleging breach of franchise obligations and trademark agreement); *Calder*

6   *v. Jones*, 465 U.S. 783, 790 (1984) (recognizing, in a tort case, that defendants were not shielded

7   from liability simply by absence from forum state); *Haisten*, 784 F.2d at 1397 ("activity by the

8   defendant need not physically take place in the forum state so as to constitute sufficient contact

9   under the due process test").

10

11       Here, SHS' Complaint includes both tort and contract-based claims and under either

12   formulation DMI's forum-related contacts are sufficient to support jurisdiction. *See, e.g.*, *CE*

13   *Distribution, LLC v. New Sensor Corporation*, 380 F.3d 1107 (9th Cir. 2004) (applying purposeful

14   direction test to tort-based claim and purposeful availment test to contract claim, ultimately finding

15   jurisdiction as to all claims possible based on theory of pendent jurisdiction).

16

17       **(1)    DMI's Tortious Conduct Was Purposefully Directed at the Forum State**

18

19       Courts resolve the tort-based "purposeful direction" inquiry by applying the "effects

20   test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). This test is satisfied where (1) the defendant

21   commits an intentional act; (2) expressly aimed at the forum state; (3) causing harm in the forum

22   state that the defendant knew was likely to be suffered there. *CE Distribution, LLC*, 380 F.3d at

23   1111; *see also Harris Rutsky*, 328 F.3d at 1131; *Bancroft & Masters, Inc. v. Augusta National, Inc.*,

24   223 F.3d 1082, 1087 (9th Cir. 2000) (holding that effects test's "express aiming" requirement is met

25   when defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the

26   defendant knows to be a resident of the forum state").

27

28

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1      *Harris Rutsky*, 328 F.3d 1122 (9th Cir. 2003), is instructive. There, the defendant, a

2    London company, who was sued in California for tortious interference with plaintiffs' contractual

3    relations, challenged personal jurisdiction. *Id.* at 1131. Even though *all* of the defendant's tortious

4    conduct occurred in London, the Ninth Circuit held that jurisdiction was proper in California. *Id.*

5    In reaching its conclusion, the court first noted that defendants had committed intentional acts,

6    satisfying the effects test's "intentional act" requirement. *Id.* The court then emphasized that

7    defendants knew the plaintiff was a California resident, which alone was sufficient to satisfy the

8    effects test's "express aiming" requirement. *Id.* Further, the court stated that because the plaintiff

9    was a California corporation with its principal place of business in California, the effects test's

10   "harm" requirement was met. *Id.* Thus, the court concluded that these facts were "more than

11   sufficient" to satisfy the effects test. *Id.* Numerous other cases are in accord. *See, e.g., CE*

12   *Distribution, LLC*, 380 F.3d at 1111 (personal jurisdiction appropriate even if defendant's tortious

13   acts occurred entirely outside the forum state); *Haisten*, 784 F.2d at 1395, 1397-99 (upholding

14   California jurisdiction over Cayman Island insurance company, even though company's insurance

15   policies were solicited, issued, delivered and paid for in the Cayman Islands and governed by

16   Cayman Island law); *Meyers v. Bennett Law Offices*, 238 F.3d 1068, 1073-74 (9th Cir. 2001)

17   (upholding jurisdiction over non-resident defendant who improperly ordered plaintiffs' credit reports

18   knowing plaintiffs were forum residents).

19

20          The Ninth Circuit's reasoning in *Harris Rutsky* applies equally here.[3] As in *Harris*

21   *Rutsky*, SHS alleges that DMI committed intentional torts – here, fraud, constructive fraud and

22   breach of fiduciary duty – against SHS with knowledge that SHS' business was based in California.

23   Further, as a California corporation with its principal place of business in Menlo Park, that is

24   precisely where SHS suffered the harm resulting from DMI's tortious activities. [Compl., ¶ 1.]

25   ───────────────────────
     [3]   Indeed, the tortious conduct at issue here is more directly linked to the forum than the tortious conduct alleged in
26   *Harris Rutsky*. Here, DMI levied its fraudulent conduct *directly* against SHS, in the form of misrepresentations and
     suppression and concealment of information. The *Harris Rutsky* defendant, however, committed its torts indirectly,
27   by interfering with contracts between the plaintiff and third parties. If such indirect and attenuated conduct was
     sufficient to meet the effects test in *Harris Rutsky*, the more direct conduct at play here is certainly so.
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1    Undoubtedly cognizant that the outcome of the effects test severely undermines its

2    motion, DMI ignores this controlling authority and relegates its discussion of the effects test to a

3    footnote.  Moreover, even the limited discussion of the effects test it does offer misses the mark.  For

4    example, DMI argues that the effects test is confined to tort actions, but this case is a tort action,

5    with fraud and breach of fiduciary duty claims at issue.  Next, DMI argues that London is the proper

6    forum for this suit simply because Mr. Silver "negotiated and consummated" the diamond sale there.

7    [DMI's Motion to Dismiss ("Mtn."), at 8:fn 1]  As detailed above, however, the Ninth Circuit has

8    disavowed any such argument, finding that jurisdiction may be appropriate even if *all* of the

9    defendant's tortious conduct occurred in London.  *See Harris Rutsky*, 328 F.3d at 1131 (expressly

10   rejecting defendant's argument that purposeful availment was lacking because all tortious conduct

11   occurred in London); *see also CE Distribution, LLC*, 380 F.3d at 1111 (finding jurisdiction proper

12   where all of defendant's conduct occurred outside of forum, but defendant knew the effect would

13   resonate in the forum state).   Accordingly, SHS satisfies each prong of the effects test,

14   demonstrating that DMI's conduct was "purposefully directed" at California.

15

16        **(2)    DMI Likewise Purposefully Availed Itself of The Privilege of
           Conducting Business in California**

17

18        DMI's California contacts are also sufficient to establish jurisdiction under the

19   contract-based purposeful availment standard.  This standard is met where the defendant has taken

20   "deliberate action within the forum state" or has created "continuing obligations to forum residents."

21   *CE Distribution, LLC*, 380 F.3d at 1113, *citing Ballard*, 65 F.3d at 1495.  Importantly, even a single

22   act can support jurisdiction.  *Klein v. Gardner*, 2007 WL 128228, *2 (N.D. Cal. 2007) (Breyer, J.),

23   *citing Burger King*, 471 U.S. at 476 & n. 18.  Indeed, the Ninth Circuit routinely upholds the

24   exercise of specific jurisdiction based upon a non-resident defendant's contacts limited to business

25   communications such as mail, fax, telephone or wire.  *Ballard*, 65 F.3d at 1497-99 (finding specific

26   jurisdiction over foreign defendant whose U.S. contacts were "quite limited," but who had created

27   ongoing obligations by, among other things, regularly mailing account statements to customers);

28   *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d at 1478-80 (upholding jurisdiction over

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   insurance company with no physical ties to forum based on mailings between the company and its

2   insured in the forum state); *Klein*, 2007 WL 128228 at *2 (finding jurisdiction against nonresident

3   defendant and noting that Ninth Circuit often upholds jurisdiction where there are "business

4   communications by mail, fax, telephone or wire, and sometimes even when those contacts are

5   initiated by other parties").

6

7           DMI's undisputed California contacts related to its dealings with SHS are at least as

8   follows:

9

10      •   Multiple telephone conversations between Mr. Holbech and Mr. Morris and
            Stephen Silver at SHS's Menlo Park office to arrange for the consignment of
11          several jewelry pieces, including the jewelry pieces at issue here. [Silver
            Decl., ¶ 4]

12

13      •   The Consignment Agreement between the parties which identified California
            as having jurisdiction over disputes and San Mateo County, California as the
14          venue. [Silver Decl., ¶ 5, Ex. A]

15      •   A June 22, 2007 telephone conversation between Mr. Silver and DMI
            Import/Export Manager Lynn Tabor in which Mr. Silver asked Ms. Tabor to
16          confirm DMI's receipt of the Consignment. [Tabor Decl., ¶ 4]

17

18      •   The June 22, 2007 e-mail from Ms. Tabor acknowledging receipt of the
            Consignment Agreement. [Silver Decl., ¶ 4, Ex. B]

19

20      •   Payment for the Blue Diamond transaction, which DMI wired to SHS'
            California bank account.  [Morris Decl., ¶ 14]

21

22      •   The Earring Agreement itself, which contemplated payment to SHS'
            California bank account. [Silver Decl., ¶ 7]

23

24      •   The July 2, 2007 Invoice which documented the terms of the Earring
            Agreement and bore SHS' Menlo Park address. [Silver Decl., ¶ 8, Ex. D]

25

26      •   Telephone discussions between Mr. Holbech and Mr. Silver to discuss DMI's
            failure to pay the first installment payment for the Earrings.  One such
27          telephone conversation was initiated by Mr. Silver, and another by Mr.
            Holbech. [Silver Decl., ¶¶ 9-10]

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S  MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- The July 19, 2007 wire transmission of the first payment due under the Agreement, which was sent to SHS' bank account in Redwood City, California. [Silver Decl., ¶ 10]

- The telephone conversation between Mr. Silver and Mr. Morris following DMI's default on its second installment payment obligation. [Silver Decl., ¶ 12]

- The November 5, 2007 letter from DMI to SHS' Menlo Park offices in which DMI asserted that the sale of the Earrings was subject to obtaining a Gubelin certification. [Silver Decl., ¶ 14]

    In sum, the Earring Agreement was closely centered to California. The negotiations between the parties commenced with multiple discussions in which Mr. Silver participated from California. From there, the parties pursued a consignment relationship, the terms of which were documented in the Consignment Agreement which explicitly contemplated litigation in California.[4] As the parties ultimately agreed to a structure other than a consignment, the connection to California remained prevalent, with DMI's performance obligations – installment payments to SHS – directly linked to California. And, once DMI defaulted, the parties' dealings continued to focus upon California, with multiple telephone conversations in which Mr. Silver participated from California. These contacts are more than sufficient to establish purposeful availment.[5] *See, e.g., Klein*, 2007 WL 128228 at *3 (finding purposeful availment where defendants were partners in an "ongoing business enterprise receiving significant funding from California resident, where plaintiff conducted some of the business from his California home); *Ballard*, 65 F.3d 1495, 1499 (purposeful availment

---

[4] In its motion, DMI takes great pains attempting to disavow the Consignment Agreement's forum selection clause. Although the parties ultimately entered new agreements after the Consignment Agreement, the Consignment Agreement nonetheless unequivocally demonstrates that from the inception of the parties' dealings, DMI always understood that it could be haled into court in California should a dispute with SHS arise. *See World-Wide Volkswagen*, 444 U.S. at 297. Notably, DMI also does not contend that the parties reached a different understanding regarding a forum for disputes in connection with the Blue Diamond transaction and the Earring Agreement.

[5] It should also be noted that even if the Court decides that jurisdiction does not exist for either the contract-based claims or the tort-based claims, the doctrine of pendent personal jurisdiction would nonetheless support the exercise of jurisdiction over whichever claims did not have a jurisdictional basis. *See CE Distribution, LLC*, 380 F.3d at 1113. Pendent personal jurisdiction is appropriate when the claim lacking in personal jurisdiction arises from a common nucleus of fact as the claim over which personal jurisdiction exists. *Action Embroidery v. Atlantic Embroidery*, 368 F.3d 1174, 1180 (9th Cir. 2004) (establishing standard for pendent personal jurisdiction). Here, as the breach of contract and fraud-based claims arise from a common nucleus of fact, the exercise of pendent personal jurisdiction is proper.

1   satisfied by virtue of defendant's "intentionally doing business with California and U.S. residents);

2   *Haisten*, 784 F.2d 1388-89 (finding purposeful availment where defendant intentionally insured

3   California residents).

### (3)    DMI's Purposeful Availment Authority is Unavailing

6           In an effort to argue that purposeful availment does not exist, DMI argues that "a

7   mere business contact with the forum also is not sufficient." [Mtn. at 8:17]  This is directly at odds

8   with the controlling Ninth Circuit authority detailed above and the cases DMI relies upon are

9   factually distinguishable in any event.  For example, DMI cites *U.S. Vestor, LLC v. Biodata Info.*

10  *Tech AG*, 290 F.Supp.2d 1057 (N.D. Cal. 2003) for this broad proposition.  Yet this case fails to

11  account for the Ninth Circuit cases finding purposeful availment based on business relationships

12  with California and is distinguishable on its facts.  While *U.S. Vestor* did find the defendants'

13  contacts insufficient, it was in the context of rather peculiar facts and the court did not expressly

14  disavow a finding of purposeful availment based on the existence of a business relationship.

15  Contrary to Plaintiffs' assertions, it does not stand for the far-reaching proposition that business

16  contacts can never serve as the basis for purposeful availment.

18          Further, DMI cites a 1994 Seventh Circuit opinion to argue that telephone calls and

19  payments into the forum state alone are insufficient to support an exercise of personal jurisdiction.

20  [Mtn. at 9:1-4, *citing Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.*, 18 F.3d 389

21  (7th Cir. 1994)].  This too conflicts with more recent, and controlling, Ninth Circuit authority and the

22  decisions of this Court.  *See, e.g., Ballard*, 65 F.3d 1495, 1499 (finding of specific jurisdiction,

23  relying on cases in which business was conducted via mail and without any physical presence);

24  *Klein*, 2007 WL 128228, *2 (N.D. Cal. 2007) (Breyer, J) (upholding specific jurisdiction and

25  recognizing that Ninth Circuit has found jurisdiction in "numerous" cases where contacts are limited

26  to "communications by fax, telephone or wire, and sometimes even when these contacts are initiated

27  by other parties").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    DMI's reliance on *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir.

2    1988), is similarly misguided. In *McGlinchy*, the court recognized the distinction between the tort-

3    based "purposeful-direction" standard and the contract-based "purposeful availment" standard,

4    faulting the plaintiff for not alleging an act "purposefully directed at an effect California." *Id.* at

5    817. Here, however, SHS succeeds precisely where the *McGlinchy* plaintiff failed. SHS' fraud

6    claims allege that DMI committed intentional acts directed towards and ultimately causing harm in

7    California. Thus, *McGlinchy* is inapposite.

8

9    The *McGlinchy* court's contract-based analysis is also distinguishable. There, the

10    defendant's contractual obligations were to be carried out in countries other than the United States,

11    and the contract made no reference to California or to the plaintiff's residence there. *Id.* at 818.

12    Here, however, DMI's obligations were at all times connected to California- the required installment

13    payments were to be directed to SHS' California bank account. Further, unlike the contract in

14    *McGlinchy*, here, the initial Consignment Agreement, although not ultimately the governing

15    agreement at issue, nonetheless put DMI on notice that it could be haled into court in California in

16    the event of a dispute between the parties. In sum, none of the cases cited by DMI are persuasive.

17

18    **b.    SHS' Claims Arise Out of DMI's California Contacts**

19

20    Courts employ a "very relaxed" "but-for" test to determine whether a claim arises

21    from forum-related activities. *Itel Fl, Inc. v. Container Land Associates*, 1997 WL 229951, *4 (N.D.

22    Cal. 1997) (describing the "arising from" test as "very relaxed"); *see also Ballard*, 65 F.3d at 1500.

23    The relevant inquiry is simply whether SHS' claims in this suit would have arisen "but-for" DMI's

24    California-related conduct. *Ballard*, 65 F.3d at 1500. This entire lawsuit stems from DMI's

25    decision to enter into a business transaction with SHS, a California corporation, and the underlying

26    negotiations and discussions which took place both in London and California. Absent this business

27    relationship, the related negotiations and discussions, and DMI's ultimate breaches and

28    misrepresentations, none of SHS' claims would have arisen. *Walker & Zanger (West Coast) Ltd. v.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   *Stone Design, S.A.*, 4. F.Supp.2d 931, 939 (C.D. Cal. 1997) (finding that "but for the contractual

2   negotiations between plaintiff and defendant plaintiff would have had no action against defendant");

3   *Hirsch*, 800 F.2d at 1480-81 (holding that where a contract constitutes defendant's contacts with a

4   forum, breach of that contract satisfies the "arising out of" requirement). Accordingly, SHS readily

5   satisfies the "but-for" test.

6

7         c.     **Exercising Jurisdiction Over DMI Is Reasonable**

8

9        Once minimum contacts with the forum state are established, the exercise of specific

10  jurisdiction is presumptively reasonable. *Ballard*, 65 F.3d at 1500. To avoid jurisdiction, DMI

11  therefore bears the "heavy burden" of presenting a "compelling case that the presence of some other

12  considerations would render jurisdiction unreasonable." *Id.*, *citing Burger King*, 471 U.S. at 477.

13  DMI falls far short.

14

15       When assessing reasonableness, courts balance the following seven non-exclusive

16  factors: (1) the extent of defendant's purposeful interjection into the forum state; (2) the burden on

17  the defendant; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum

18  state's interest in adjudicating the dispute; (5) the most efficient forum for judicial resolution of the

19  dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief;

20  (7) the existence of an alternative forum. *Harris Rutsky*, 328 F.3d at 1132.

21

22       DMI does not discuss these factors and instead simply states that they are "similar" to

23  the factors governing its forum non conveniens argument and weigh against jurisdiction. [Mtn. at

24  10:1-2] When properly analyzed it is evident that each of these factors supports the exercise of

25  jurisdiction here.

26

27       As to the first factor, DMI's dealings with SHS, a California corporation, and Stephen

28  Silver, a California resident, constitute purposeful interjection sufficient to render jurisdiction

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    reasonable. *See Klein*, 2007 WL 128228 at *3 (finding jurisdiction reasonable where defendant's

2    contacts with California were minimal but its dealings with plaintiff, a California resident, were not).

3

4            As for the second factor, any burden on DMI is insufficient to overcome jurisdiction.

5    In its forum non conveniens argument, DMI asserts that litigating in California would be "extremely

6    inconvenient." Inconvenience, however, will not defeat jurisdiction unless it is "so great as to

7    constitute a deprivation of due process." *Ballard*, 65 F.3d at 1501. Further, courts often recognize

8    that "the advent of 'modern transportation' certainly has made the burden of defending in a foreign

9    forum more palatable." *Id.* at 1501. DMI does not and cannot allege that the inconvenience of

10   litigating in California amounts to a due process violation. As such, this factor weighs in SHS'

11   favor.

12

13           With respect to the third factor, DMI has identified no specific sovereignty concerns

14   generated by this lawsuit and there are none.[6] Thus, this factor favors SHS as well.

15

16            As to the fourth factor, the United States and its various forum states maintain an

17   interest in providing redress for their citizens. *Ballard*, 65 F.3d at 1501 ("[defendant] admits that the

18   United States and California have an interest in protecting their citizens against the type of

19   fraudulent conduct alleged in this case"); *Klein*, 2007 WL 128228 at *3 ("[m]oreover, California

20   clearly has an interest in providing relief to its citizens"). This is particularly true where the plaintiff

21   seeks relief in tort. *Core-Vent Corp. v. Nobel Industries, A.B.*, 11 F.3d 1482, 1489 (9th Cir. 1993)

22   (noting that California maintains a strong interest in providing redress for citizens who are tortiously

23   injured). Here, SHS is a California resident seeking in-state redress for his injuries based on claims

24   sounding in tort. Accordingly, this factor weighs in SHS' favor.

---

25   6 It should also be noted that when assessing this factor, courts consider the defendant's United States contacts as a
     whole rather than simply assessing contacts with the forum state. *Core-Vent Corp. v. Nobel Industries, A.B.*, 11 F.3d
26   1482, 1488 (9th Cir. 1993). Sovereignty concerns are more important where the defendant has no United States-based
     relationships. *Id.* Here, it is undisputed that DMI operates a store in the United States and deals with United States
27   customers.

28

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    At most, the fifth factor is neutral. Neither jurisdiction is a uniquely efficient judicial

2    forum, as this is not a document-heavy or witness-intensive case. The principal witnesses are Mr.

3    Silver, based in California, and Mr. Morris, based in London, and the majority of documents at issue

4    (a very small number) have already been made of record. DMI suggests there are a couple of

5    additional witnesses, but even accepting this characterization, it still does not make London a more

6    efficient forum.[7]

7

8    The sixth factor asks which forum provides the plaintiff with the most convenient and

9    effective relief. Litigating in its home state of California is certainly more convenient for SHS. As

10   such, this factor weighs in favor of jurisdiction.

11

12   In addressing the Seventh factor, DMI simply asserts that London is "unquestionably"

13   an adequate forum because DMI and most witnesses are there. [Mtn. at 12:23-24] As noted above,

14   the location of witnesses is essentially a non-issue in this case, which involves very few witnesses.

15   Further, this lone, conclusory statement is wholly insufficient to establish London's overall adequacy

16   as a forum. Finally, even assuming London is an adequate alternative forum, that alone cannot

17   overcome the other reasonableness factors, which overwhelmingly favor jurisdiction. Thus, this

18   factor is inapplicable. *See, e.g., Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841

19   (9th Cir. 1986) (finding resolution of this factor unnecessary where it would not overcome other

20   reasonableness factors).

21

22

---

23   [7] DMI also identifies gemological laboratories as potential witnesses, but this is a red herring. Although DMI argues
24   that the Earring Agreement was *subject* to obtaining a new certification, it fails to offer the facts to support this
     argument. Notably, Mr. Morris does not take any such position in his Declaration. Instead, for obvious reasons, Mr.
25   Morris tiptoes around the issue. Ultimately, he declares that during the parties' negotiations he told Mr. Silver that he
     "would send the sapphires to Gubelin Gem Lab," but that is entirely different than the agreement being subject to a new
26   certification from Gubelin. Indeed, Mr. Morris does not declare that because he cannot do so truthfully. Thus, anything
     the gemological laboratories have to say has nothing to do with the issues here. In other words, whatever these
27   gemological laboratories did or did not certify *after* DMI purchased the Earrings from SHS and cut the stones is entirely
     irrelevant.

28

1    Thus, five of the seven reasonableness factors tilt in SHS' favor, while one is neutral

2    and one is inapplicable. No factor weighs against exercising jurisdiction. And, even assuming DMI

3    has demonstrated that an alternative forum may be more reasonable (which, it has not), it certainly

4    has not met its burden of showing that it is "so gravely difficult and inconvenient that [they are]

5    unfairly at a severe disadvantage in comparison to [Plaintiff]." *See Burger King*, 471 U.S. at 478.

6    Accordingly, the exercise of jurisdiction is reasonable.

7

8    **B.    Dismissal on Forum Non Conveniens Grounds is Inappropriate**

9

10    Dismissal based on the doctrine of forum non conveniens is an "exceptional tool to be

11    employed sparingly." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). To that end, the

12    plaintiff's forum choice is entitled to deference and the plaintiff is not compelled "to choose the

13    optimal forum for [its] claim." *Id.* As a result, DMI bears the "heavy" burden of demonstrating that

14    "exceptional circumstances" warrant dismissal on forum non conveniens grounds. *Deirmenjian v.*

15    *Deutsche Bank, A.G.*, 2006 WL 4749756, *19 (C.D. Cal., 2006) (denying motion to dismiss on

16    forum non conveniens grounds); *Excel Plas, Inc. v. Sigmax Co., Ltd.*, 2007 WL 2853932, *12 (S.D.

17    Cal. 2007) (same). To obtain dismissal under this extraordinary remedy, DMI must overcome the

18    "strong presumption" in favor of SHS' forum choice and show that an adequate alternative forum

19    exists, and that private and public interest factors favor trial there. *Piper Aircraft Co v. Reyno*, 454

20    U.S. 235, 253-7 (1981).

21

22    **1.    Private Interest Factors Do Not Support Dismissal**

23

24    Unless the balance of private and public interest factors "strongly" favors trial in an

25    alternate jurisdiction, a plaintiff's forum choice will not be disturbed. *Excel Plas*, 2007 WL 2853932

26    at *12. The relevant private factors courts consider are: (1) the residence of parties and witnesses;

27    (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of

28    proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1    to trial; (6) the enforceability of the judgment and (7) all other practical problems that make trial of a

2    case easy, expeditious and inexpensive. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir.

3    2001). DMI examines only five of these seven factors, conceding that there are no issues regarding

4    judgment enforceability or other practical problems. Thus, from the outset at least two of the seven

5    factors militate towards preserving the "strong presumption" in favor of SHS' forum choice. Upon

6    proper analysis, the remaining five factors likewise support a California forum.

7

8            a.        **The Location of Parties and Witnesses**

9

10            In considering the residence of the parties and witnesses, "the crucial focus is not on

11   the 'number of witnesses or quantity of evidence in each locale,' but rather the materiality and

12   importance of the anticipated [evidence] and witness' testimony..." *Deirmenjian*, 2006 WL

13   4749756 at *13, *quoting Lueck*, 236 F.3d at 1146. When assessing a forum non conveniens motion,

14   it is improper to focus on the number of witnesses in each location rather than the materiality and

15   importance of their testimony. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir.

16   1984) (finding that importance of testimony is more important than the number of witnesses in each

17   location). Here, DMI argues repeatedly that a majority of witnesses live in London, France or

18   otherwise outside of California. The inquiry is not, however, how many witnesses live in each

19   potential forum, but what the substance of their testimony will be. Here, Mr. Silver's testimony will

20   be of obvious importance, as he is the principal of a party to this lawsuit. His residence in

21   California, coupled with the critical nature of his testimony, counsels against dismissal. Further, two

22   of the five witnesses identified by DMI are its own employees, William Holbech and Lynn Tabor.

23   Similarly, SHS employs individuals who were involved in the underlying transaction and may be

24   called as witnesses in this lawsuit. This would include, for example, Emily Teeter, who received

25   DMI's acknowledgement of the Consignment Agreement. In sum, the "majority of witnesses"

26   approach adopted by DMI is unavailing and, contrary to DMI's assertion, certainly does not

27   "overwhelmingly" favor jurisdiction.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

    **b.**    **The Forum's Convenience to the Litigants / Cost of Bringing Witnesses to Trial**

    The factors concerning convenience and cost are somewhat related, as both address the relative burdens imposed on a party forced to litigate in a foreign forum.  Citing no authority, DMI asserts that the inconvenience of litigating in California outweighs that of SHS litigating in London simply because its witnesses "outnumber those of Silver." [Mtn. at 13:13-14]  Similarly, DMI argues that it would be "far more expensive" for it to bring its "several company witnesses" to trial than it would be for Mr. Silver to travel to London. [Mtn. at 14:2-3]  Both contentions are misleading.  DMI has identified *only three* company witnesses – Jeremy Morris, William Holbech and Lynn Tabor.  SHS has identified two- Stephen Silver and Emily Teeter.  Thus, DMI's witnesses outnumber SHS' by just one.  Even accepting DMI's "majority of witnesses" argument (which, we do not), any increased inconvenience or cost for DMI is minimal.  It is hardly "far more expensive" to bring three witnesses to trial than to bring two.  This type of minimal inconvenience is insufficient to carry DMI beyond the "strong presumption" favoring SHS' forum choice.

    **c.**    **Access to Physical Evidence and Other Sources of Proof / Whether Witnesses Can Be Compelled to Testify**

    This dispute is not document intensive.  SHS' lawsuit relates to a business transaction between two private parties and the pertinent documents are few.  This is not, for example, a "large scale" litigation matter involving a cumbersome discovery process and mammoth document productions.  Further, most of the documents pertaining to this lawsuit have already been produced or exchanged between the parties.  This includes the Consignment Agreement, the SSEF certification, the June 2, 2007 invoice for the Earrings, the May 31, 2008 statement from SHS to DMI, and the various communications between the parties.  The *only* additional evidence DMI cites relates to certification documents from the gemological laboratories.  Presumably, this would include a handful of documents at most.

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

1    DMI also argues that the United States cannot compel foreign entities to produce

2    documents and cannot compel unwilling witnesses to testify.  [Mtn. at 13:19-20]  This argument

3    ignores Fed. Rule Civ. Proc. 28(b)(3), which provides that "depositions may be taken in a foreign

4    country... on notice before a person authorized to administer oaths in the place where the

5    examination is held, either by law thereof or by the law of the United States."  Fed. Rule Civ. Proc.

6    28(b)(3).  Thus, should it become necessary, both SHS and DMI can acquire necessary testimony

7    through depositions taken abroad.  *See, e.g., Krish v. Balasubramaniam*, 2007 WL 1219281 at *8

8    (E.D. Cal. 2007) (finding that Fed. Rule Civ. Proc. 28(b)(3)'s authorization of depositions abroad

9    weighs in favor of retaining domestic jurisdiction in forum non conveniens context).  Further, DMI

10    offers no evidence that, or reasons why, these gemological laboratory witnesses would be unwilling

11    to testify.  As such, its argument is unpersuasive.

12

13          **d.      Enforceability of Judgment / Other Practical Problems**

14

15    Morris does not address these final two private interest factors and, as such, has not

16    carried its heavy burden with respect to them.

17

18    In sum, none of the private interest factors "clearly" points towards trial in an

19    alternative forum.  *See Piper Aircraft*, 454 U.S. at 253-57.  Accordingly, dismissal on the basis of

20    forum non conveniens is unwarranted.

21

22          **2.      Public Interest Factors Call for a California Forum**

23

24    In addition to the above private interest factors, courts examine five public interest

25    factors in the forum non conveniens analysis.  Those factors are: (1) The local interest of the lawsuit;

26    (2) The court's familiarity with governing law; (3) the burden on local courts and juries; (4)

27    congestion in the court; and (5) the costs of resolving a dispute unrelated to a particular forum.

28    *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### a.    California Has a Local Interest in Remedying Harm to its Citizens

It is well-settled that a forum state maintains a local interest in remedying harm inflicted on its citizens. *See Gates Learjet Corp.*, 743 F.2d. at 1336-37; *see also  Excel Plas, Inc.*, 2007 WL 2853932 at *15. Here, SHS is a California corporation seeking redress for harm caused by DMI's fraudulent conduct and breach of the Earring Agreement.  The effects of this harm resonated in California, when SHS suffered monetary damages from DMI's conduct.  Accordingly, California has a local interest in adjudicating this dispute.

### b.    The Court's Familiarity With Governing Law

Citing no case law, DMI asserts that the laws of England will apply to all of SHS' claims. [Mtn. at 14:25-27]  When considering this public interest factor, however, the determination of applicable law requires a choice of law analysis under California's "governmental interest" approach. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1119 (9th Cir. 2002) (establishing that this public interest factor requires a "governmental interest" analysis).  Under that test, the law of the sovereign with the greater interest in having its law applied controls. *Id.*  DMI offers no such analysis in its motion to establish the application of British law.  Thus, contrary to DMI's unilateral assertion, it is unclear that the laws of England will apply here.  Further, as noted above, California has an interest in remedying tortious harm inflicted on its citizens.  DMI has identified *no* countervailing British interest with respect to this factor, let alone an interest greater than California's.  This factor thus weighs in SHS' favor.

DMI's reliance on California Civil Code Section 1646 here is also misplaced.  In its motion, DMI asserts that British law should apply because all acts of contract performance, including payment (and nonpayment) occurred in London. [Mtn. At 15:5-6]  This is simply false.  DMI's first installment payment under the Earring Agreement occurred on July 19, 2007 after Mr. Silver had returned to California. [Silver Decl., ¶ 10]  That payment was wired to SHS' California-

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  based bank account. [Silver, Decl., ¶ 10]  Further, the effects of DMI's failure to pay the second

2  payment (i.e., its non-performance) were felt in California when SHS failed to acquire the amount

3  owed under the Agreement.  Thus, DMI's assertion that "all acts" of performance occurred in

4  London is misleading.

5

6        Finally, even if British law governs, there is no indication that this Court cannot

7  adequately apply those laws.  This case involves rather "garden-variety" claims for fraud, breach of

8  contract and breach of fiduciary duty.  There is nothing particularly unique or difficult about this

9  case.  Thus, this factor does not weigh in favor of dismissal.

10

11        **c.**      **Court and Jury Burden, Congestion, and Costs of Resolving Unrelated Disputes**

12

13        DMI analyzes the final three public interest factors together, arguing that the "burden

14  on this Court and the local jury pool is not justified by this dispute." [Mtn. at 15:16-18].  This

15  conclusory statement is offered with no factual support or legal authority.  DMI's careless treatment

16  of three of the five public interest factors is wholly inadequate to satisfy its heavy burden.

17

18        In sum, Morris cannot establish that any of the public or private interest factors

19  warrant dismissal.  Its motion should therefore be denied.

20

21        **IV. CONCLUSION**

22

23        SHS has established (and certainly has set forth a sufficient prima facie showing) that

24  this Court may exercise specific jurisdiction over DMI.  This suit arises directly from DMI's

25  purposeful business activity in California and its harmful actions directed at SHS, a California

26  corporation.  As a result, a heavy presumption in favor of jurisdiction exists and DMI falls woefully

27  short in attempting to overcome this presumption.  Thus, DMI's motion to dismiss for lack of

28  personal jurisdiction should be denied.

1    Additionally, DMI fails to meet the "heavy burden" required to justify dismissal

2  under the extraordinary remedy of forum non conveniens.  Accordingly, its alternative motion to

3  dismiss on those grounds should also be denied.

4

5    DATED:  August 15, 2008.

6

7    REED SMITH LLP

8    By    /s/ Jonah D. Mitchell

9    Scott D. Baker

10   Jonah D. Mitchell
     Attorneys for Plaintiff
     S.H. Silver Company, Inc.

S.H. SILVER COMPANY, INC.'S OPPOSITION TO DAVID MORRIS INTERNATIONAL, LTD.'S  MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS