1  Scott D. Baker (SBN 84923)
   Email: sbaker@reedsmith.com
2  Jonah D. Mitchell (SBN 203511)
   Email: jmitchell@reedsmith.com
3  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
4  San Francisco, CA 94111-3922

5  **Mailing Address:**
   P.O. Box 7936
6  San Francisco, CA 94120-7936

7  Telephone:   +1 415 543 8700
   Facsimile:   +1 415 391 8269
8
   Attorneys for Plaintiff
9  S.H. Silver Company, Inc.

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12  S.H. SILVER COMPANY, INC.,              Case No. CV 08-03550 CRB

13              Plaintiff,                  **DECLARATION OF JONAH D.
                                            MITCHELL IN SUPPORT OF PLAINTIFF
14      vs.                                 S.H. SILVER COMPANY, INC'S
                                            OPPOSITION TO DAVID MORRIS
15  DAVID MORRIS INTERNATIONAL LTD.,        INTERNATIONAL, LTD.'S MOTION TO
                                            DISMISS FOR LACK OF PERSONAL
16              Defendant.                  JURISDICTION AND IN THE
                                            ALTERNATIVE, PURSUANT TO THE
17                                          DOCTRINE OF *FORUM NON
                                            CONVENIENS***
18
19                                          Date:       September 5, 2008
                                            Time:       10:00 a.m.
20                                          Place:      Courtroom 8

21                                          Honorable Charles R. Breyer
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

I, Jonah D. Mitchell, declare:

1.     I am an attorney at law licensed to practice before the Courts of the State of California and before this Court.  I am a partner with the firm of Reed Smith, LLP, attorneys of record for S.H. Silver Company, Inc. ("Plaintiff"), Plaintiff in the above-referenced action.  I make this Declaration in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss.  I have personal knowledge of the matters set forth in this Declaration, and if called as a witness, I could and would competently testify to these matters.

2.     Attached hereto as Exhibit A is a true and correct copy of the Declaration of Stephen H. Silver In Support of Application for Right to Attach Order and Writ of Attachment, filed on August 1, 2008.

3.     Attached hereto as Exhibit B is a true and correct copy of Plaintiff's Complaint for Damages, filed on June 17, 2008.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:        August 15, 2008

/s/ Jonah D. Mitchell
Jonah D. Mitchell
Attorneys of Record for Plaintiff S.H. Silver
Company, Inc.

# EXHIBIT A

1   Scott D. Baker (SBN 84923)
    Email: sbaker@reedsmith.com
2   Jonah D. Mitchell (SBN 203511)
    Email: jmitchell@reedsmith.com
3   REED SMITH LLP
    Two Embarcadero Center, Suite 2000
4   San Francisco, CA  94111-3922

5   **Mailing Address:**
    P.O. Box 7936
6   San Francisco, CA  94120-7936

7   Telephone:    +1 415 543 8700
    Facsimile:    +1 415 391 8269
8

9   Attorneys for Plaintiff
    S.H. Silver Company, Inc.

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12  S.H. SILVER COMPANY, INC.,            Case No. CV 08-03550 CRB

13              Plaintiff,               **DECLARATION OF STEPHEN H. SILVER
                                         IN SUPPORT OF APPLICATION FOR
14       vs.                             RIGHT TO ATTACH ORDER AND WRIT
                                         OF ATTACHMENT**
15  DAVID MORRIS INTERNATIONAL LTD.,
                                         Date:        September 5, 2008
16              Defendant.               Time:        10:00 a.m.
                                         Place:       Courtroom 8
17

18                                       Honorable Charles R. Breyer

19

20

21

22

23

24

25

26

27

28

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

I, Stephen H. Silver, declare:

1.     I am the Chairman and CEO of S.H. Silver Company, Inc. ("S.H. Silver"). I make this Declaration in support of S.H. Silver's Application for a Right to Attach Order and Writ of Attachment. I have personal knowledge of the matters set forth in this Declaration. If called as a witness, I could and would competently testify to these matters.

2.     I founded S.H. Silver in 1980. Based in Menlo Park, California, S.H. Silver is a premier jewelry house, offering vintage and modern jewelry. S.H. Silver enjoys a reputation as one of the industry's most trusted names in acquiring and placing some of the finest estate jewelry in the world.

3.     This lawsuit concerns two transactions between S.H. Silver and David Morris International, Ltd. ("David Morris"), a jewelry retailer with shops in London and Palm Beach, Florida, among other locations. One of the transactions concerned a blue diamond and the other a pair of Cartier Sapphire earrings. This attachment solely concerns the Cartier Sapphire earrings, which David Morris purchased from S.H. Silver for $948,000, payable in two installments. David Morris made the first payment of $474,000, but failed to make the second payment of $474,000 (due on August 16, 2007) despite repeated inquiries. The amounts now owing are fixed and readily ascertainable. Inclusive of finance charges, the amounts owed as of May 31, 2008 total $550,060.62. S.H. Silver's claim for these amounts is not secured. S.H. Silver seeks to attach David Morris' assets for the sole purpose of securing recovery of the amounts that David Morris owes. David Morris' purchase of the Cartier Sapphire earrings is described in greater detail below.

4.     On or around June 8, 2007, a broker based in Dallas, Texas introduced me via an e-mail to David Morris and its principal, Jeremy Morris, and Sales Director, William Holbech. Following the broker's introduction, I had multiple telephone conversations with Mr. Holbech and at least one telephone conversation with Mr. Morris from S.H. Silver's Menlo Park offices for the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  purpose of making arrangements for the consignment of several jewelry pieces to David Morris and

2  a trip to London to deliver the jewelry.

3

4         5.      In addition, before departing for London, on June 22, 2007, at my direction, S.H.

5  Silver employee Emily Teeter faxed from S.H. Silver's offices in Menlo Park, California to David

6  Morris' office in London a consignment for the jewelry pieces that I was planning to bring with me

7  to London. The consignment contemplated that in event that "suit is instituted to collect this

8  merchandise or any portion thereof … jurisdiction shall be in California and venue in San Mateo

9  County of that state." The consignment also provided that "receipt of the merchandise constitutes

10  your agreement to the foregoing terms which represent the entire contract with respect to the

11  merchandise or any contrary custom of the trade." Among others, the consignment identified a pair

12  of Loose Sugarloaf Cabochon Sapphires (the "Sapphires"), bearing SKU # 13087, and the

13  accompanying Cartier Platinum and Diamond Ear Clip semi mounts for the Earrings, bearing SKU

14  #12646 (collectively, the "Earrings"). A true and correct copy of the consignment is attached hereto

15  as Exhibit A. David Morris' Import/Export Manager Lynn Tabor acknowledged receipt of the

16  consignment in an e-mail sent to Ms. Teeter on June 22, 2007. A true and correct copy of Ms.

17  Tabor's e-mail to Ms. Teeter is attached hereto as Exhibit B.

18

19         6.      I arrived in London at the end of June 2007 and delivered the jewelry to David

20  Morris, including the Earrings, shortly thereafter per the consignment arrangements. Along with the

21  Earrings, I provided a copy of the SSEF certification that S.H. Silver held for the Sapphires. SSEF is

22  a Gemological Laboratory. SSEF had certified the Sapphires as being of Kashmir origin. A true and

23  correct copy of the SSEF certification is attached hereto as Exhibit C.

24

25         7.      On or about July 3, 2007, Mr. Morris telephoned me and expressed an interest in

26  purchasing the Earrings directly for David Morris, as opposed to selling them on consignment. I met

27  Mr. Morris at the David Morris store where we engaged in negotiations toward the purchase of the

28  Earrings. During the course of our discussions surrounding the negotiation, Mr. Morris indicated

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  that he was considering cutting the Sapphires and remaking the Earrings and obtaining a certification

2  from a different Gemological Laboratory, Gubelin, and asked my opinion. I told Mr. Morris that I

3  had elected to keep the stones in their original form as a pair of original Cartier Kashmir Sapphire

4  earrings, but that the beauty and value of the stones are in the eye of the beholder, and that, as the

5  new owner, it was up to him to do whatever he wanted with them. Mr. Morris indicated that he felt

6  the Kashmir sapphires would be more valuable and saleable as faceted stones and he would probably

7  proceed in that direction after consulting with his cutter. We then turned our attention to negotiation

8  of a price for the Earrings and soon finalized an agreement for the purchase of the Earrings. We

9  settled on a price of $948,000 to be paid immediately by wire to S.H. Silver's bank account in

10  Redwood City, California (the "Agreement"). As a practical matter, David Morris already held the

11  Earrings and a copy of the SSEF certification per the consignment arrangement, but title/possession

12  was transferred contemporaneously with the Agreement, on or about July 3, 2007.

13

14       8.       Shortly after the sale was completed, Mr. Morris telephoned me and asked me to

15  adjust the payment terms of the Agreement by extending him some credit. He mentioned again that

16  he was planning on cutting the stones and would need to re-certify the stones after they were

17  finished, and therefore would need some time before he would be in a position to sell the Earrings.

18  Mr. Morris asked if he could pay the amounts owed in sixty days. I told him I was not willing to do

19  that, but as a courtesy and accommodation, I agreed that 50% of the purchase price, $474,000, could

20  be paid immediately and that the balance, $474,000, could be paid in 45 days, or by August 16,

21  2007. Mr. Morris agreed and these terms were documented in an invoice dated July 2, 2007 and

22  bearing S.H. Silver's Menlo Park, California address (I believe that the invoice was mistakenly dated

23  July 2, as opposed to July 3, the date I believe the transaction was concluded). A true and correct

24  copy of Invoice No. 9644 that was delivered to David Morris is attached hereto as Exhibit D. My

25  office also sent the original SSEF certification for the Sapphires by Federal Express to David Morris.

26

27       9.       David Morris did not make the first payment immediately, as it was required to do

28  under the Agreement. Instead, over two weeks passed, at which point I contacted David Morris'

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  offices from S.H. Silver's offices in Menlo Park, California to request that the delinquent payment

2  be made. I spoke with David Morris' Sales Director William Holbech. Mr. Holbech advised me

3  that Mr. Morris was out of town and that he did not have authority to wire the payment owed.

4  Growing increasingly frustrated, I asked Mr. Holbech to make arrangements to send the payment or

5  simply return the Earrings. Mr. Holbech apologized for the delay and said he would talk with Mr.

6  Morris and make arrangements to wire the money.

7

8       10.     Soon thereafter, Mr. Holbech called me back on my cellular phone in Menlo Park,

9  California. Mr. Holbech said he had spoken with Mr. Morris and would send the entire amount

10  owed for the Earrings, including the second payment not yet due, to compensate for the delinquency

11  on the first payment. I told Mr. Holbech that it was not necessary to send the entire amount at that

12  time and asked that David Morris simply honor the terms of the Agreement and settle the invoice in

13  full on August 16, 2007. The next day, July 19, 2007, David Morris wired the first payment due

14  under the Agreement to S.H. Silver's bank account in Redwood City, California.

15

16       11.     The remaining balance of $474,000 was due on August 16, 2007. In breach of the

17  Agreement, David Morris did not make payment by August 16, 2007, and has not made any

18  payment since that time despite repeated inquiries.

19

20       12.     Approximately one month after the deadline for the second payment had passed, I

21  telephoned Mr. Morris from S.H. Silver's offices in Menlo Park, California to inquire about the

22  status of the payment. During our telephone conversation, Mr. Morris advised me that he had the

23  stones cut. He also told me that following cutting he attempted to obtain a new certification from

24  Gubelin, another Gemological Laboratory, but that Gubelin would not certify the stones as being of

25  Kashmir origin. He told me he was not going to make payment until the certification was resolved.

26  Mr. Morris told me not to worry, that he never questioned the sapphires as not being of Kashmir

27  origin, and that everything would get sorted out in short order. I told Mr. Morris that he was

28  violating the terms of the Agreement, and reminded him that what he chose to do with the stones

DECLARATION OF STEPHEN H. SILVER

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    after David Morris purchased them from S.H. Silver was up to him, but that did not affect David

2    Morris' payment obligations to S.H. Silver, nor did his attempts to obtain a new certification.

3    Accordingly, I asked Mr. Morris to send the payment owed.  Mr. Morris still refused to make

4    payment, stating words to the effect of "I'm not paying this payment until I'm ready" and hung-up.

5

6        13.    In a letter dated October 31, 2007, I wrote Mr. Morris regarding the past due balance

7    under Invoice No. 9644.  My letter set forth that the outstanding balance now amounted to $492,249,

8    inclusive of finance charges.  A copy of my October 31, 2007 letter (unsigned version) is attached

9    hereto as Exhibit E.

10

11       14.    In response, Mr. Morris sent me a letter dated November 5, 2007, a true and correct

12   copy of which is attached hereto as Exhibit F.  Mr. Morris falsely claimed that the sale of the

13   Earrings was subject to obtaining a Gubelin certification.  As set forth above, and discussed in more

14   detail below, there was never any such condition.

15

16       15.    As a result of Mr. Morris' refusal to honor the terms of the Agreement, S.H. Silver

17   was forced to retain counsel and initiate this action to seek recovery of the amounts owed to S.H.

18   Silver.

19

20       16.    In correspondence, David Morris has continued to take the position that the

21   Agreement was subject to David Morris obtaining a new Gubelin certification for the Earrings.  At

22   no point prior to the Agreement did David Morris ever mention or propose any such condition.  And,

23   in fact, there was never any such condition.  David Morris' attempt to impose an after-the-fact

24   condition on the Agreement makes no sense and is belied by its own actions over the course of the

25   transaction.  For instance, if the purchase was subject to David Morris obtaining a Gubelin

26   certification, it would have made no sense for David Morris to make any payment without obtaining

27   the certification.  Nevertheless, as set forth above, David Morris made the first payment under the

28   Agreement (albeit late) and actually indicated it was prepared to pay the entire amounts owed under

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  the Agreement at that time even though it had not obtained the new certification (David Morris only

2  sent the first installment, as opposed to the entire balance, after I indicated that only the first

3  installment had come due). At no point did David Morris take the position that it needed to obtain a

4  new certification *before* it was obligated to pay S.H. Silver. Instead, it simply proceeded to wire the

5  first payment.

6

7      17.    David Morris' post-Agreement position also defies common business sense. As

8  noted above, after buying the Earrings, David Morris elected to cut the Sapphires. Naturally, this

9  permanently altered the composition of the Sapphires. As part of that process, the characteristics

10  which allowed the Gemological Laboratory to identify the Sapphires as being of Kashmir origin

11  could have been compromised or destroyed. Of course, S.H. Silver never would have – and, indeed,

12  did not – assume the risks associated with David Morris' cutting the Sapphires. The deal was

13  simple: David Morris bought the Earrings outright, with the SSEF certification S.H. Silver had

14  obtained for them, for $948,000. Whatever David Morris elected to do with the Earrings after the

15  purchase was up to David Morris, as the new owner of the Earrings. That, however, had nothing to

16  do with David Morris' payment obligations to S.H. Silver under the Agreement.

17

18      18.    I have been selling jewelry for S.H. Silver for over twenty-five years, with thousands

19  of sales successfully completed. Not once has payment for the sale of jewelry ever been conditioned

20  upon obtaining a new certification following cutting of the jewelry stones. This would make

21  absolutely no sense for the seller of the jewelry stones because of the risks associated with cutting

22  the stones.

23

24      19.    With finance charges, as of July 31, 2008, David Morris owed S.H. Silver

25  $566,564.43. A true and correct copy of an Invoice documenting the amounts due, including finance

26  charges, is attached hereto as Exhibit G. S.H. Silver seeks to attach David Morris' assets for the sole

27  purpose of securing recovery of the amounts that David Morris owes under the Agreement.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

07/31/2008  15:18    16039218                                    PAGE  02/02

1     I declare under penalty of perjury under the laws of the United States of America that the

2     foregoing is true and correct.

3

4     DATED: July 3/, 2008.

5

6

7                    Stephen H. Silver

8

9

10

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

11

12

13

14

15

16

17

18

19

20

21

22

26

27

28

Case No. CV 08-03550 CRB      -7-      DECLARATION OF STEPHEN H. SILVER

EXHIBIT "A"

 

## S. H. Silver Company-Menlo Park
### MEMORANDUM

The goods described and valued below are delivered to you for examination and are the property of S.H. Silver Company. This merchandise is subject to the order of S.H. Silver Company and shall be returned to them on demand. Such merchandise, until returned to them and actually received, is at your risk from all hazzards. No right or power is given to you to sell, hypothecate, modify, repair, remove or reset stones, or otherwise work on or dispose of this merchandise regardless of prior transactions. A sale of this merchandise can only be effected and title will pass only if, as, and when said S.H. Silver Company, Inc. shall agree to such sale and a bill of sale is rendered thereof. In case suit is instituted to collect this merchandise or any portion thereof, the customer promises to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit, and that jurisdiction shall be in California and venue in San Mateo County of that state. Service charge on accounts past due, agreed items 1.5% per month, 18% annually. Receipt of the merchandise constitutes your agreement to the foregoing terms which represent the entire contract with respect to the merchandise or any contrary custom of the trade.

**Date:  06/24/07**

From:
S. H. Silver Company
800 El Camino Real
Suite 230
Menlo Park, CA  94025
Ph:650-325-9500
Fax:650-325-9518

To:
David Morris
180 New Bond Street
London W1S 4RL
020 7499 2200
FOR TEMPORARY IMPORT INTO U.K.

**Total Items:  8**

**Total Dealer Cost:**

SHS Memo C/V#
8243

Memo Term:
Short term

| | SKU# | Description | Dealer Price |
|---|---|---|---|
| | EA 12846 | Plat and dia ear clip semi mounts - 54 F/C dias ~ .81 ctw;  8 sq dias ~ .58 ctw<br>**SOLD ONLY WITH 13087 AS SET** | 25,000 |
| | NE 12857 | Plat, dia & green garnet necklace.  67 round green garnets ~ 50.02ctw;  101 F/C dias ~ 6.80ctw. | |
| | RI 9362 | Plat, dia & ruby ring.  1 oval cab. ruby ~ 11.11ct;  2 P/S dias ~ .57ctw;  82 F/C dias ~ .65ctw. | |
| | RI 10367 | loose blue diamond.  1 oval blue dia ~ 6.04ct<br>Plat & dia ring semi for blue dia .  288 F/C dias ~1.13ctw. | |
| | RI 13821 | Plat, dia & pink dia dome ring.  1 oval pink dia ~ .65ct;  F/C pink dias ~ .52ctw;  F/C dias ~ 2.52ctw. | |
| | RI 14097 | Plat, dia & sapp ring.  1 oval sapp ~11.00ct;  12 F/C dias ~ 9.12ctw. | |
| | RI 15885 | Plat, dia & sapp ring.  1 cush sapp ~ 11.3.7ct;  6 T/B dias ~ 1.22ctw. | |
| | SA 13087 | 2 loose cab. sugarloaf sapps ~ 18.23ctw (9.17 & 9.06)<br>**SOLD ONLY WITH 12846 AS SET** | 1,200,000 |

Purpose of shipment: On Loan

Shipping date: 06/24/07

Shipper: Emily

Shipped Via: Hand  Delivered

Please remove your tags and return all unsold items with our inventory tags attached. Thank you.

**Please sign below and return a copy of this memorandum to our office.**

# EXHIBIT "B"

 

Wednesday, April 2, 2008 3:55 PM

**Subject: 2 page faxed received**
**Date: Friday, June 22, 2007 3:33 PM**
**From: Lynn Tabor <lynn@davidmorris.com>**
**To: <eteeter@shsilver.com>**

Hi Emily

Just to confirm that we have received your 1-pages by fax (invoice and cover sheet.

Many thanks
Lynn
Lynn Tabor
Import/Export Manager

# DAVID MORRIS

180 New Bond Street
London W1S 4RL

T: +44 207 399 4166
F: +44 207 499 3249
M: +44 (0) 7764 977870

**EXHIBIT "C**



SCHWEIZERISCHES GEMMOLOGISCHES INSTITUT

INSTITUT SUISSE DE GEMMOLOGIE

SWISS GEMMOLOGICAL INSTITUTE

Falknerstrasse 9
CH-4001 Basel / Switzerland
Telephone  +41 061 262 06 40
Telefax    +41 061 262 06 41
e-mail     gemlab@ssef.ch
homepage: www.ssef.ch

SSEF

**TEST REPORT No. 43408**

on the authenticity of the following loose gemstones (A + B)

| | |
|---|---|
| Shape & Cut: | antique cushion, high cabochon |
| Indicated weight: | A: 9.17 ct<br>B: 9.05 ct |
| Measurements: | A: 11.49 x 10.57 x 8.42 mm<br>B: 11.50 x 10.55 x 8.37 mm |
| Colour: | blue of medium strong saturation |
| Identification: | two  S A P P H I R E S   (variety of natural corundum) |
| Comments: | The analysed properties confirm the authenticity<br>of these transparent sapphires.<br><br>No indications of heating. |
| Origin: | Kashmir |

Important note: The conclusions on this Test Report reflect the findings at the time it is issued. A gemstone can be modified. If an enhancement is applied at any time thereafter the SSEF cannot warrant at any time that the stones are in accordance with the Test Report.

Please see comments on reverse side.

SSEF  SWISS GEMMOLOGICAL INSTITUTE
Gemstone Testing Division

Basel, 16 August 2004  ss

Dr. L. Kiefert, FGA                    Prof. Dr. H.A. Hänni, FGA

**EXHIBIT "D**



# INVOICE

## S.H. SILVER COMPANY, INC,
600 EL CAMINO REAL, SUITE 230, MENLO PARK, CA 94025
TEL: 650-325-9500 • FAX: 650-325-9518
E-MAIL: info@shsilver.com

**9644**

SHIPPED TO:

David Morris
180 New Bond Street
London W1S4RL

| INVOICE DATE | DATE SHIPPED | OUR ORDER NO. | YOUR ORDER NO. | TERMS | F.O.B. | SALESPERSON | SHIPPED VIA |
|---|---|---|---|---|---|---|---|
| 7/2/07 | | | | | | | |

| | | | |
|---|---|---|---|
| 13087 Plat, diamond & Kashmir Sapp earrings ($947,000—) | | TOTAL | $948,00 |
| | | Tax | P/S |
| (12646 Plat & diamond earring semis $1,000") | | TOTAL | $948,00 |
| | | | |
| | | | |
| Terms: $474,000 net cash, $474,000 45 days | | | |

Due on receipt. A service charge of 1 ½% per month will be charged on past due accounts.

**THANK YOU**

EXHIBIT "E

October 31, 2007

Jeremy Morris
David Morris International Ltd.
180 New Bond Street
London W1S 4RL
United Kingdom

Reference: **PAST DUE BALANCE ON INVOICE NO. 9644**

Dear Mr. Morris,

The outstanding balance on the referenced invoice is $492,249, inclusive of finance charge. Despite sending your company numerous emails and initiating telephone communication directly with you to resolve this situation, your account remains overdue.

We mutually agreed on following sale amount and payment terms: the total invoice of $948,000, the first payment due on July 2, 2007, the second payment due on August 14, 2007. Your first payment of $474,000 was not remitted until July 19, 2007 and the second payment is still outstanding.

Jeremy, we feel we have given you ample time to remit payment and close the outstanding balance. If payment is not received within the next ten days, you leave us no choice but to turn this matter over to our attorneys. We sincerely hope you choose to avoid this very time consuming and expensive legal process and simply remit payment on the outstanding balance immediately.

Sincerely,


Stephen H. Silver
President

**EXHIBIT "F"**

# DAVID MORRIS

Mr Stephen H. Silver
800 El Camino Real, Suite 230
Menlo Park
CA 94025

5th November 2007

Dear Mr Silver

Thank you for your letter dated 31st October concerning the balance of invoice 9644, although I am very surprised by the tone of it as the sale was agreed subject to obtaining Gubelin certification.

As you are aware it has taken me since 19th June to acquire certificates for these stones and still I am unable to get Cashmere certification from Gubelin who are the most respected gem laboratory in the world and whose certification this sale was agreed. Without Gubelin certification I really feel that I am on the back foot trying to market these stones as any knowledgeable client could request Gubelin certificates and I would not be able to provide them and hence would lose the sale.

Having sought the views of top dealers of cashmere in the trade, the consensus of opinion is that failure to obtain a Gubelin certificate reduces the value of the stones.

There are two ways of finalising this issue, as set out below:

1.  We return the stones to you and you refund us $430,318, which is the $474,000 that we have paid less $43,682 that reflects the weight we took off (0.84cts) polishing them into faceted stones.

    I believe that this is advantageous to you as the value of the stones has been greatly increased by them being faceted as opposed to cabochon. Faceted stones always achieve a better price than cabochons.

2.  I will make you an offer of $750,000 in full and final settlement in respect of these stones and will send a wire transfer for the balance of $276,000 within 3 days of your acceptance.

Finally, a lengthy legal battle over this issue is not to the advantage of either of us and in the end the only winners in this process would be the lawyers.

I look forward to hearing from you but to avoid any ambiguity in our communications please continue all correspondence in writing.

Yours sincerely

Jeremy Morris
Managing Director

**EXHIBIT "G"**



# STATEMENT
## 0653
STATEMENT DATE: July 31, 2008

CUSTOMER ACCOUNT ID: DAVID-M

SILVER COMPANY
REAL, SUITE 230, MENLO PARK, CA 94025
(650) 325-9500



David Morris International Ltd.
New Bond Street
London W1S 4RL

PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT.

AMOUNT
ENCLOSED: $_____

| DATE | DATE DUE | REFERENCE | PAID | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|
| | 7/02/07 | 9644 (50%) | | | $474,000.00 | $474,000.00 |
| | 7/19/07 | Payment | | | (474,000.00) | 0.00 |
| | 7/19/07 | Late Fee | | | 4,029.00 | 4,029.00 |
| | 8/15/07 | 9644 (50%) | | | 474,000.00 | 478,029.00 |
| | 7/31/08 | Late Fee | | | 88,535.43 | 566,564.43 |

S H SILVER CO

| | | TOTAL | $566,564.43 |
|---|---|---|---|

| 30 days | 31 - 60 days | 61 - 90 days | over 90 days |
|---|---|---|---|
| 0.00 | 0.00 | 0.00 | $566,564.43 |

H60

FORM 27111    REORDER FROM RAPIDFORMS, INC., 301 GROVE ROAD, THOROFARE, N.J. 08086-9499    CALL TOLL FREE 800-257-8334; FAX 800-451-8113    A019C

PAGE 02                    S H SILVER CO        6508325951B        07/31/2008 16:03

# EXHIBIT B

1   Scott D. Baker (SBN 84923)
    Email:  sbaker@reedsmith.com
2   Jonah D. Mitchell (SBN 203511)
    Email:  jmitchell@reedsmith.com
3   REED SMITH LLP
    Two Embarcadero Center, Suite 2000
4   San Francisco, CA  94111-3922

5   **Mailing Address:**
    P.O. Box 7936
6   San Francisco, CA  94120-7936

7   Telephone:   +1 415 543 8700
    Facsimile:    +1 415 391 8269
8
    Attorneys for Plaintiff
9   S.H. Silver Company, Inc.

10

**FILED**
SAN MATEO COUNTY

JUN 1 7 2008

Clerk of the Superior Court
By _____
        DEPUTY CLERK

C H R M

J D M

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                   FOR THE COUNTY OF SAN MATEO

13

14   S.H. SILVER COMPANY, INC.,          No.:  **CV 4 7 3 7 9 6**

15                Plaintiff,              **COMPLAINT FOR DAMAGES**

16        vs.

17   DAVID MORRIS INTERNATIONAL LTD.,

18                Defendant.

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: _____

COMPLAINT

DOCSSFO-12511350.5-JMITCHELL

Plaintiff S.H. Silver Company, Inc. ("S.H. Silver"), for its Complaint, alleges as follows:

## GENERAL ALLEGATIONS

1.     S.H. Silver is a California corporation with its principal place of business in Menlo Park, California.

2.     S.H. Silver is informed and believes and thereon alleges that Defendant David Morris International, Ltd. ("David Morris") is a foreign business with its principal place of business in London.

3.     The true names and capacities of the Defendants named herein as Does 1 through 10, and each of them, are unknown to S.H. Silver, which therefore sues these Defendants by such fictitious names. S.H. Silver is informed and believes and thereon alleges that such fictitiously named Doe Defendants, and each of them, are in some manner responsible and liable for the acts, omissions, and/or damages alleged in this Complaint. S.H. Silver will seek leave to amend this Complaint to allege the Doe Defendants' true names and capacities when they have been ascertained.

4.     S.H. Silver is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment. S.H. Silver is further informed and believes and thereon alleges that each of the Defendants acted in concert with the others and gave consent to, ratified or authorized the acts of other Defendants and their employees.

5.     Venue is proper in the Superior Court of California, County of San Mateo, as the agreement which David Morris breached was to be performed in San Mateo County. In addition, the jewelry which was the subject of the agreement was originally provided to David Morris pursuant to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  a consignment agreement which contained a provision providing exclusive venue in San Mateo

2  County. Further, David Morris' fraudulent and wrongful conduct also concerned other jewelry that

3  was identified in the consignment agreement providing for exclusive venue in San Mateo County

4  and subsequently purchased by David Morris.

5

6  **BACKGROUND**

7

8      6.    Founded in 1980, S.H. Silver is a premier jewelry house, offering vintage and modern

9  jewelry. S.H. Silver enjoys a reputation as one of the industry's most trusted names in acquiring and

10  placing some of the finest estate jewelry in the world.

11

12      7.    This lawsuit concerns two transactions between S.H. Silver and David Morris, a

13  jewelry retailer with shops in London and Palm Beach, Florida, among other locations. One of the

14  transactions concerned a blue diamond and the other a pair of Cartier Sapphire earrings.

15

16      8.    On or around June 8, 2007, via an e-mail, S.H. Silver was introduced to David Morris

17  and its principal Jeremy Morris and Sales Director William Holbech. Following the introduction,

18  S.H. Silver's Chairman and CEO Stephen H. Silver made arrangements with Mr. Morris for the

19  consignment of several jewelry pieces to David Morris and a trip to London to deliver the jewelry.

20  The terms of the consignment agreement were documented in a consignment faxed to David Morris

21  (the "Consignment Agreement"). Among other jewelry pieces, the Consignment Agreement

22  identified a blue diamond, bearing SKU #10367 (the "Blue Diamond"), and a pair of Loose

23  Cabochon Sugarloaf Sapphires (the "Sapphires"), bearing SKU # 13087, and the accompanying

24  Cartier Platinum and Diamond Ear Clip semi mounts for the Sapphires, bearing SKU #12646

25  (collectively, the "Earrings"). Pursuant to industry custom and practice for sales on consignment in

26  the jewelry trade, under the Consignment Agreement, David Morris would add on any profit David

27  Morris wished to make above the consignment price which S.H. Silver set, and, make a sale to its

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: _____

– 2 –

COMPLAINT

DOCSSFO-12511350.5-JMITCHELL

1   client accordingly.  From that sale, David Morris would owe S.H. Silver the consignment price and

2   would keep the amounts above the consignment price as its profit.

3

4        9.    S.H. Silver delivered the jewelry to David Morris, including the Blue Diamond and

5   the Earrings, near the end of June 2007 per the Consignment Agreement.  Along with the Earrings,

6   S.H. Silver also provided a copy of the certification from the SSEF Gemological Laboratory that

7   S.H. Silver held for the Sapphires.

8

9        10.   On June 28, 2007, Mr. Morris telephoned Mr. Silver to discuss the Blue Diamond.

10  Specifically, Mr. Morris told Mr. Silver that he had a client present at the store that had made an

11  offer at a set price for the Blue Diamond.  Mr. Morris indicated that David Morris wanted to proceed

12  with the sale to the client, but wanted to make a 10% commission against its client's offering, as

13  opposed to the consignment arrangement with S. H. Silver.  On behalf of S.H. Silver, Mr. Silver

14  agreed and a new agreement was reached with David Morris, whereby David Morris paid S.H. Silver

15  an amount equal to the price Mr. Morris indicated the client had offered less a 10% commission

16  against that price (as opposed to the higher consignment price S.H. Silver had set under the

17  Consignment Agreement).

18

19       11.   S.H. Silver is informed and believes and thereon alleges that Mr. Morris

20  misrepresented that he was present in the David Morris store with a client when he called Mr. Silver.

21  S.H. Silver is further informed and believes and thereon alleges that Mr. Morris failed to disclose

22  and instead concealed and suppressed (1) that Mr. Morris was not present with the client in the

23  David Morris store when he called Mr. Silver, (2) that Mr. Morris, or his agent, had taken the Blue

24  Diamond out of the David Morris store in London and brought it with him outside the United

25  Kingdom a few days prior to June 28, 2007, (3) that David Morris sold the Blue Diamond as just one

26  piece of multiple pieces of jewelry sold to a single buyer at the same time and (4) the allocation of

27  price of the Blue Diamond amongst the multiple pieces of jewelry that David Morris had sold as part

28  of the single transaction. Had S.H. Silver known these facts, it would not have agreed to change the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  terms of the sale of the Blue Diamond and instead would have insisted on the original Consignment

2  Agreement and payment of the consignment price it had designated.

3

4       12.    Meanwhile, on or about July 3, 2007, Mr. Morris telephoned Mr. Silver and

5  expressed an interest in purchasing the Earrings directly for David Morris, as opposed to selling

6  them on consignment.  In turn, Mr. Silver came to the David Morris store, where he met Mr. Morris

7  and, negotiated a price to be paid immediately by wire to S.H. Silver's bank account in Redwood

8  City, California (the "Earring Agreement").  As a practical matter, David Morris already held the

9  Earrings per the Consignment Agreement, but title/possession was transferred contemporaneously

10  with the Earring Agreement, on or about July 3, 2007.

11

12       13.    Shortly after the sale pursuant to the Earring Agreement was completed, Mr. Morris

13  telephoned Mr. Silver and asked to adjust the payment terms of the Earring Agreement.  As a

14  courtesy and accommodation to David Morris, S.H. Silver agreed that David Morris could pay 50%

15  of the purchase price immediately and the balance in 45 days, or by August 16, 2007.  These terms

16  were documented in an invoice dated July 2, 2007 and bearing Invoice No. 9644.  A true and correct

17  copy of Invoice No. 9644 that was delivered to David Morris (with monetary values redacted) is

18  attached hereto as Exhibit A.

19

20       14.    David Morris did not make the first payment immediately, as it was required to do

21  under the Earring Agreement.  Instead, over two weeks passed, forcing S.H. Silver to contact David

22  Morris to request that the delinquent payment be made.  Mr. Silver spoke with Mr. Holbech, David

23  Morris' Sales Director and asked him to make arrangements to send payment or return the Earrings.

24  Thereafter, Mr. Holbech contacted Mr. Silver and indicated he had spoken with Mr. Morris and on

25  behalf of David Morris offered payment in full as a means to compensate for David Morris'

26  delinquency on the first payment.  Mr. Silver told Mr. Holbech it was not necessary to send the full

27  payment and asked David Morris to simply honor its original agreement and settle the invoice in full

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   on August 16, 2007.  On July 19, 2007, David Morris finally wired the first payment due under the

2   Earring Agreement to S.H. Silver's bank account in Menlo Park, California.

3

4        15.    The remaining balance was due on August 16, 2007.  In breach of the Earring

5   Agreement, David Morris did not make payment by August 16, 2007, and has not made any

6   payment since that time despite repeated inquiries.

7

8                              **FIRST CAUSE OF ACTION**

9                          (Breach of Contract – Earring Agreement)

10

11       16.    S.H. Silver repeats and realleges each and every allegation in the foregoing

12  paragraphs as though fully set forth herein.

13

14       17.    S.H. Silver has performed all conditions, covenants and promises required to be

15  performed by it in accordance with the terms and conditions of the Earring Agreement, except as to

16  those conditions which have been excused.

17

18       18.    David Morris has breached the Earring Agreement by failing to pay amounts owed to

19  S.H. Silver under the Earring Agreement.

20

21       19.    As a direct and proximate result of David Morris breach of the Earring Agreement,

22  S.H. Silver has incurred damages in an amount in excess of the jurisdictional minimum.

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSSFO-12511350.5-JMITCHELL

1    WHEREFORE, S.H. Silver prays for relief as set forth below.

2

3                    **SECOND CAUSE OF ACTION**

4                        (Account Stated)

5

6        20.    S.H. Silver repeats and realleges each and every allegation in the foregoing

7    paragraphs as though fully set forth herein.

8

9        21.    Within the last four years, an account was stated between S.H. Silver and David

10   Morris, wherein it was stated that David Morris was indebted to S.H. Silver for goods sold and

11   delivered for a fixed sum (plus interest), the amount of which will be provided upon entry of an

12   appropriate protective order.

13

14       22.    David Morris has failed to pay S.H. Silver sums due.

15

16       23.    There is now due, owing and unpaid a fixed sum (plus interest) to be provided upon

17   entry of an appropriate protective order.

18

19       WHEREFORE, S.H. Silver prays for relief as set forth below.

20

21                    **THIRD CAUSE OF ACTION**

22                    (Breach of Fiduciary Duty)

23

24       24.    S.H. Silver repeats and realleges each and every allegation in the foregoing

25   paragraphs as though fully set forth herein.

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

25. Pursuant to the Consignment Agreement, David Morris acted as S.H. Silver's agent for the purpose of selling certain jewelry pieces, including the Blue Diamond, and owed a fiduciary duty to S.H. Silver.

26. David Morris breached its fiduciary duties to S.H. Silver by, among other things, concealing material facts, failing to disclose all information that a reasonable person would consider relevant, failing to deal fairly, honestly and in good faith with S.H. Silver and engaging in other wrongful acts and omissions set forth herein.

27. As a direct and proximate result of David Morris' breach of its fiduciary duties, S.H. Silver has incurred damages in an amount to be proven at the time of trial.

28. S.H. Silver is informed and believes and thereon alleges that David Morris perpetrated the above acts in a knowing, oppressive, willful, malicious and fraudulent manner, with the intent and purpose of advancing its own gain at the expense of S.H. Silver's rights and interests. As a result, S.H. Silver is entitled to punitive and exemplary damages.

WHEREFORE, S.H. Silver prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

(Constructive Fraud)

29. S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

30. Pursuant to the Consignment Agreement, David Morris acted as S.H. Silver's agent for the purpose of selling certain jewelry pieces, including the Blue Diamond, and owed a fiduciary duty to S.H. Silver.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    31.    Despite having voluntarily accepted the trust and confidence S.H. Silver reposed in it,

2    David Morris breached its fiduciary duties to S.H. Silver by, among other things, concealing material

3    facts, failing to disclose all information that a reasonable person would consider relevant, failing to

4    deal fairly, honestly and in good faith with S.H. Silver and engaging in other wrongful acts and

5    omissions set forth herein.  In particular, after the Consignment Agreement was entered between

6    David Morris and S.H. Silver, on June 28, 2007, Mr. Morris telephoned Mr. Silver and represented

7    that he was at the David Morris store with a client interested in purchasing the Blue Diamond for a

8    specific price.  Mr. Morris indicated that he wanted to proceed with the sale at the client's offering

9    price and make a 10% commission on the sale, as opposed to the consignment arrangement under

10    the Consignment Agreement.

11

12    32.    S.H. Silver is informed and believes and thereon alleges that Mr. Morris

13    misrepresented that he was present in the David Morris store with a client when he called Mr. Silver.

14    S.H. Silver is further informed and believes and thereon alleges that Mr. Morris failed to disclose

15    and instead concealed and suppressed (1) that Mr. Morris was not present in the David Morris store

16    with a client when he called Mr. Silver, (2) that Mr. Morris, or his agent, had taken the Blue

17    Diamond out of the David Morris store in London and brought it with him outside the United

18    Kingdom a few days prior to June 28, 2007, (3) that David Morris sold the Blue Diamond as just one

19    piece of multiple of pieces of jewelry sold to a single buyer at the same time and (4) the allocation of

20    price of the Blue Diamond amongst the multiple pieces of jewelry that David Morris had sold as part

21    of the single transaction.

22

23    33.    S.H. Silver is informed and believes and thereon alleges that David Morris engaged in

24    the acts and omissions described herein with the intent to deceive and defraud S.H. Silver into

25    terminating the Consignment Agreement for the Blue Diamond and to enter a new agreement for a

26    commission sale.  David Morris engaged in the acts and omissions described herein with the intent

27    to induce reliance by S.H. Silver in the continuing fidelity of David Morris as an agent entrusted

28    with the sale of S.H. Silver's jewelry pursuant to a consignment.

No.:                                — 8 —                                DOCSSFO-12511350.5-JMITCHELL
COMPLAINT

1     34.    S.H. Silver reasonably relied upon David Morris in view of its fiduciary role as an

2  agent for S.H. Silver. Had S.H. Silver known the true facts, it would not have agreed to pay a 10%

3  commission on the sale of the Blue Diamond and instead would have insisted on the original

4  consignment arrangement.

5

6     35.    As a direct and proximate result of David Morris' fraudulent conduct, S.H. Silver has

7  incurred damages in an amount to be proven at the time of trial.

8

9     36.    S.H. Silver is informed and believes and thereon alleges that David Morris

10  perpetrated the above acts in a knowing, oppressive, willful, malicious and fraudulent manner, with

11  the intent and purpose of advancing their own gain at the expense of S.H. Silver's rights and

12  interests. As a result, S.H. Silver is entitled to punitive and exemplary damages.

13

14     WHEREFORE, S.H. Silver prays for relief as set forth below.

15

16             **FIFTH CAUSE OF ACTION**

17              (Fraud -- Suppression of Fact)

18

19     37.    S.H. Silver repeats and realleges each and every allegation in the foregoing

20  paragraphs as though fully set forth herein.

21

22     38.    After the Consignment Agreement was entered between David Morris and S.H.

23  Silver, on June 28, 2007, Mr. Morris telephoned Mr. Silver and represented that he was at the David

24  Morris store with a client who had made an offer to purchase the Blue Diamond for specific price.

25  Mr. Morris indicated that he wanted to proceed with the sale, but instead of proceeding with the sale

26  under the terms of the Consignment Agreement, he wanted a 10% commission against his client's

27  offer.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.:                    – 9 –              DOCSSFO-12511350.5-JMITCHELL

39.    S.H. Silver is informed and believes and thereon alleges that Mr. Morris failed to disclose and instead concealed and suppressed (1) that Mr. Morris was not present in the David Morris store with a client when he called Mr. Silver, (2) that Mr. Morris, or his agent, had taken the Blue Diamond out of the David Morris store in London and brought it with him outside the United Kingdom a few days prior to June 28, 2007, (3) that David Morris sold the Blue Diamond as just one piece of multiple pieces of jewelry sold to a single buyer at the same time and (4) the allocation of price of the Blue Diamond amongst the multiple pieces of jewelry that David Morris had sold as part of the single transaction.

40.    S.H. Silver is informed and believes and thereon alleges that David Morris engaged in the acts and omissions described herein with the intent to deceive and defraud S.H. Silver into terminating the Consignment Agreement for the Blue Diamond and to enter a new agreement for a commission sale.

41.    S.H. Silver, at the time of these failures to disclose and suppressions of fact, and at the time S.H. Silver took the actions herein alleged, was ignorant of the existence of the facts that David Morris failed to disclose. Had S.H. Silver known the true facts, it would not have agreed to pay a 10% commission on the sale of the Blue Diamond and instead would have insisted on the original consignment arrangement. S.H. Silver's reliance on David Morris' representations was justified because it could not, in the exercise of reasonable diligence, have discovered David Morris' suppressions of fact.

42.    As a direct and proximate result of David Morris' fraudulent conduct, S.H. Silver has incurred damages in an amount to be proven at the time of trial.

43.    As a proximate result of David Morris' fraudulent conduct, as alleged herein, and S.H. Silver's acts in reliance on or because of such fraudulent conduct, S.H. Silver has been damaged in an amount to be proven at the time of trial.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

44.    S.H. Silver is informed and believes and thereon alleges that David Morris perpetrated the above acts in a knowing, oppressive, willful, malicious and fraudulent manner, with the intent and purpose of advancing their own gain at the expense of S.H. Silver's rights and interests. As a result, S.H. Silver is entitled to punitive and exemplary damages.

WHEREFORE, S.H. Silver prays for relief as set forth below.

### SIXTH CAUSE OF ACTION

(Unjust Enrichment)

45.    S.H. Silver repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

46.    As a result of David Morris' actions, David Morris has been unjustly enriched in an amount to be determined at trial. David Morris' unjust enrichment comes at the expense and to the detriment of S.H. Silver.

47.    It is unconscionable and unjust for David Morris to retain the money and profits it will receive at the expense and to the detriment of S.H. Silver.

48.    Accordingly, S.H. Silver is entitled to recover the amount by which David Morris was unjustly enriched at S.H. Silver's expense.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.:

DOCSSFO-12611350.5-JMITCHELL

WHEREFORE, S.H. Silver prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, S.H. Silver prays for relief as follows:

1.    That judgment be entered in favor of S.H. Silver and against David Morris on all causes of action;

2.    For compensatory damages in an amount to be determined at trial;

3.    For all ill-gotten profits received by David Morris as a result of its breach of its fiduciary duties;

4.    For the amounts by which David Morris has been unjustly enriched;

5.    For exemplary and punitive damages;

6.    For S.H. Silver's reasonable attorneys' fees and costs;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

7.     For pre-judgment interest according to proof; and

8.     For such other relief as the Court deems just and proper.

DATED: June 17, 2008.

REED SMITH LLP

By _____
     Scott D. Baker
     Jonah D. Mitchell
     Attorneys for Plaintiff
     S.H. Silver Company

DOCSSFO-12511350.5-JMITCHELL



## INVOICE

**S.H. SILVER COMPANY, INC,**
800 EL CAMINO REAL, SUITE 230, MENLO PARK, CA 94025
TEL: 650-325-9500 • FAX: 650-325-9516
E-MAIL: info@shsilver.com

9644

David Morris
180 New Bond Street
London W154RL

| INVOICE DATE | DATE SHIPPED | OUR ORDER NO. | YOUR ORDER NO. | TERMS | F.O.B. | SALESPERSON | SHIPPED VIA |
|---|---|---|---|---|---|---|---|
| 7/2/07 | | | | | | | |

13087  Plat, diamond & Kashmir Sapp    TOTAL

earrings    Tax    P/S

(12646 Plat & diamond earring semis

TOTAL

Terms:    net cash
75 days

**REDACTED**

Due on receipt, A service charge of 1 1/2% per month will be charged on past due accounts.

**THANK YOU**