1
2
3
4
5
6
7
8

SCHIFF HARDIN LLP
Robert B. Mullen (CSB 136346)
Yakov Wiegmann (CSB 245783)
One Market, Spear Street Tower
Thirty-Second Floor
San Francisco, CA  94105
Telephone:     (415) 901-8700
Facsimile:      (415) 901-8701
rmullen@schiffhardin.com
ywiegman@schiffhardin.com


Attorneys for Defendant
DAVID MORRIS INTERNATIONAL LTD.

9
10
11

### UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21

| | |
|---|---|
| S. H. SILVER COMPANY, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DAVID MORRIS INTERNATIONAL LTD.,<br><br>　　　　Defendant. | Case No.  CV-08-03550 CRB<br><br>**REPLY BRIEF OF DEFENDANT DAVID MORRIS INTERNATIONAL LTD. IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO F.R.C.P. RULE 12(B)(2), AND IN THE ALTERNATIVE PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS***<br><br>Date:　　　　　September 5, 2008<br>Time:　　　　　10:00 AM<br>Courtroom:　　8<br><br>Honorable Charles R. Breyer |

22
23
24
25
26
27
28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB

REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 2

II.    ARGUMENT .............................................................................................. 2

       A.     The Relevant Jurisdictional Facts Are Not In Dispute.............................. 2

       B.     The Authorities Cited by Silver Do Not Support a Finding of Specific
              Jurisdiction ........................................................................................ 4

              1.     The Defendant Must Purposefully Avail Itself of the Benefits and
                     Privileges of California ................................................................ 5

              2.     The Claim Must Arise Out of Defendant's Forum-Related
                     Activities ................................................................................... 6

              3.     The Exercise of Jurisdiction Must Be Reasonable............................ 7

              4.     This Court's Decision in *Klein v. Gardner* ................................... 9

       C.     Silver's *Forum Non Conveniens* Arguments Do Not Overcome the Pull of
              London ............................................................................................. 11

              1.     Private Interest Factor 1:  The Residence of the Parties and
                     Witnesses .................................................................................. 12

              2.     Private Interest Factor 2:  The Forum's Convenience to the
                     Litigants ................................................................................... 13

              3.     Private Interest Factor 3:  Whether Unwilling Witnesses Can Be
                     Compelled to Testify ................................................................... 13

              4.     Private Interest Factor 4:  Access to Physical Evidence and Other
                     Sources of Proof ........................................................................ 13

              5.     Private Interest Factor 5:  The Enforceability of Judgment ............... 13

              6.     Private Interest Factor 6:  All Other Practical Problems ................... 14

              7.     Public Interest Factor 1:  The Local Interest of the Lawsuit ............. 14

              8.     Public Interest Factor 2:  The Court's Familiarity with Governing
                     Law .......................................................................................... 14

III.   CONCLUSION .......................................................................................... 15

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

NOTICE OF REMOVAL OF CIVIL ACTION
UNDER 28 U.S.C. SECTION 1441(B)
(DIVERSITY)

# FEDERAL CASES

*Asahi Metal Industry Co. v. Superior Ct.*
   480 U.S. 102 (1987) ............................................................................................ 11

*Ballard v. Savage*
   65 F.3d 1495 (9th Cir. 1995) ............................................................................. 10

*Burger King Corp. v. Rudzewicz*
   471 U.S. 462, 476 ............................................................................................... 10

*C.E. Distribution, LLC v. New Sensor Corp.*
   380 F.3d 1107 (9th Cir. 2004) ............................................................................. 6

*Contact Lumber Co. v. P.T. Moges Shipping Co.*
   918 F.2d 1446 (9th Cir. 1990) ........................................................................... 12

*Core-Vent Corp. v. Nobel Industries AB*
   11 F.3d 1482 (9th Cir. 1993) ............................................................................. 11

*Creative Technology, Ltd. V. Aztech System PTE, Ltd.*
   61 F.3d 696 (9th Cir. 1995) ............................................................................... 12

*Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*
   784 F.2d 1392 (1986) ...................................................................................... 6, 11

*Harris Rutsky & Co. Inc. Svcs., Inc. v. Bell & Clements Ltd.*
   328 F.3d 1122 (9th Cir. 2003) ................................................................... passim

*Hirsch v. Blue Cross, Blue Shield of Kansas City*
   800 F.2d 1474 (9th Cir. 1986) ........................................................................... 10

*Itel FL., Inc. v. Container Land Associates*
   1997 WL 229951 (N.D. Cal. 1997) ...................................................................... 7

*Klein v. Gardner*
   2007 WL 128228 (N.D.Cal. 2007) .................................................................. 9, 10

*Leetsch v. Freedman*
   260 F.3d 1100 (9th Cir. 2001) ...................................................................... 12, 13

*Lockman Foundation v. Evangelical Alliance Mission*
   930 F.2d 764 (9th Cir. 1991) ............................................................................. 12

*Lueck v. Sundstrand Corp.*
   236 F.3d 1137 (9th Cir. 2001) ........................................................................... 11

*McGlinchy v. Shell Chemical Co.*
   845 F.2d 802 (9th Cir. 1988) ............................................................................. 11

*Piper Aircraft Co. v. Reyno*
   454 U.S. 235 n. 23 (1981) ............................................................................ 12, 15

*Ravelo Monegro v. Rosa*
   211 F.3d 509 (9th Cir. 2000) ............................................................................. 11

*Walker & Zanger (West Coast) Ltd. v. Stone Design S.A.*
   4 F. Supp. 2d 931 (C.D. Cal. 1997) ..................................................................... 7

*World-Wide Volkswagen Corporation v. Woodson*
   444 U.S. 286 (1980) ........................................................................................... 11

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB

REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

STATE CASES

*Washington Mutual Bank v. Superior Ct.*
  24 Cal.4th 906 (2001) ........................................................................................... 14

STATE STATUTES

California Civil Code § 1646 ...................................................................................... 14

FEDERAL RULES

F.R.C.P. 12(b)(2) ......................................................................................................... 15

F.R.C.P. 28(b)(3) ......................................................................................................... 13

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB                    2                    REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

I. **INTRODUCTION**

Plaintiff S.H. Silver Company, Inc. ("Silver") does not dispute David Morris International Ltd.'s ("DM") evidence showing that DM does not have sufficient contacts with California to exercise general jurisdiction over DM. Silver's argument is limited to asserting the Court has "specific jurisdiction" over DM based solely on the facts of this case. But the facts before the Court fall far short. Since it is Mr. Silver who went to London, hawked his wares to DM in London and made the subject deals in London, no amount of spin can transform a few peripheral phone calls, an email, and two wire payments into the required basis for specific jurisdiction over DM in California: (1) that DM purposefully availed itself of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws; (2) that Silver's claim arises out of or results from DM's California-related activities; and (3) that the exercise of jurisdiction over DM is reasonable. Similarly, under a *forum non conveniens* analysis, there is nothing Silver can do to make litigating in California fair for a British company which does no business here and whose witnesses reside in London and Europe. This case clearly should be dismissed without prejudice on both grounds.

II. **ARGUMENT**

A.    **The Relevant Jurisdictional Facts Are Not In Dispute.**

It is correct that for purposes of this motion, uncontroverted jurisdictional allegations in the complaint must be taken as true, and any conflicting facts in the parties' affidavits must be construed in Silver's favor. However, the declarations of Jeremy Morris and Lynn Tabor controvert several allegations in the complaint (such as the allegation that a "Consignment Agreement" provides for venue in California), and none of the other jurisdictional facts raised in either the Declaration of Stephen Silver or the Declarations of Morris and Tabor, is in dispute. Silver's opposition to this motion does not dispute DM's evidence that:

- DM did not agree to the one-page memorandum (Ex. A to the Silver Dec., creatively referred to as "the Consignment Agreement") Mr. Silver faxed to DM before he came to London and never discussed forum-selection with Silver (Morris Dec., ¶ 18; Tabor Dec., ¶¶ 3,4);

- Silver never discussed forum-selection with DM (Morris and Tabor Decs.);

- The alleged "Consignment Agreement" did not, in any event, "ultimately govern the agreements at issue" (conceded in Opposition Brief at 15:14-15);

- Silver traveled to London to show Mr. Morris the blue diamond (Morris Dec., ¶ 13);

- No negotiation or agreement regarding the blue diamond occurred before Mr. Silver went to London (Morris Dec., ¶ 13);

- Mr. Morris and Mr. Silver negotiated the sale of the blue diamond over the phone while Mr. Silver was in London, and while Mr. Morris was in France with DM Sales Director William Holbech and their customer (the only dispute is that Mr. Silver says Morris told him he was calling from his London store, not France) (Morris Dec., ¶ 14);

- DM wired Mr. Silver $5.5 million in payment for the diamond while Mr. Silver was in London, with the wire going to Silver's bank in Redwood City (Morris Dec., ¶ 14);

- Mr. Silver asked Mr. Morris to also consider buying the subject sapphires (Morris Dec., ¶ 13);

- No negotiation or agreement regarding the sapphires took place before Mr. Silver brought them to London (Morris Dec., ¶ 13);

- Mr. Morris and Mr. Silver negotiated the sale of the two sapphires in the DM London store, with William Holbech and Rami Okuniew, both London residents, present (Morris Dec., ¶ 15) and;

- Mr. Morris sent the sapphires to Gubelin Gem Lab in Switzerland, thereafter to SSEF Swiss Gemological in Basil, Switzerland and then to American Gemological Laboratories in New York (Morris Dec., ¶ 16).

Likewise, DM does not dispute the following facts argued by Silver:

- Mr. Silver phoned William Holbech and Jeremy Morris of DM from Mr. Silver's Menlo Park office to discuss the diamond and arrange his trip to London (Silver Dec., ¶ 14);

- Silver faxed the one-page memo (the alleged "Consignment Agreement") to DM, Mr. Silver called DM's Lynn Tabor to request confirmation of receipt, and Tabor then confirmed receipt of the fax by email (Silver Dec., ¶ 5; Tabor Dec.);

- While he was in London, Mr. Silver gave DM an invoice dated 7/2/07 for the sapphires which had Silver's California address on it as well as DM's London address (Silver Dec., ¶ 8 and Ex. D thereto);

- After Mr. Silver came back to California, he phoned DM's William Holbech to demand immediate payment for the sapphires, and Mr. Holbech returned his call (Silver Dec., ¶¶ 9,10);

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB          - 3 -          REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

- • DM then made the first of two $474,000 payments for the sapphires by wire to Silver's bank (Silver Dec., ¶ 10);

- • Mr. Silver phoned Mr. Morris to discuss the second sapphire payment (Silver Dec., ¶ 12); and

- • Mr. Silver sent Mr. Morris a demand letter dated October 31, 2007, to which Mr. Morris responded by letter dated November 5, 2007 (Silver Dec., ¶¶ 13,14 and Exs. E and F thereto).

This is the sum total of facts presented to the Court regarding "specific jurisdiction." It is simply not true, as Silver argues, that the dispute "traces to multiple negotiations over the phone and e-mail while SHS was at its Menlo Park, California headquarters." (Opp. Brief at 1:15-17.) Nor is it true that "from the inception of the parties' dealings, it was always understood that in the event of a dispute, litigation would take place in California." (Opp. Brief at 1:17-19.) Only by mischaracterizing the undisputed evidence can Silver purport to link California to the alleged disputes.

**B.    The Authorities Cited by Silver Do Not Support a Finding of Specific Jurisdiction.**

Silver holds out *Harris Rutsky & Co. Inc. Svcs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003), also a case against a British defendant, as "instructive." *Harris Rutsky* therefore bears close analysis. In *Harris Rutsky*, a California insurance brokerage sued a London insurance agency with whom it had a five-year contractual relationship to act an as intermediary to British surplus lines insurers, particularly London insurer Zurich. The defendant drafted the three-way contract under which it served as intermediary between the plaintiff and Zurich. The contract entitled the defendant to 5% commissions on premiums paid by the plaintiff, required all communications between the plaintiff and Zurich to go through the defendant, and the contract contained a "service of suit" clause requiring the plaintiff to "submit to the jurisdiction of a court of competent jurisdiction within the United States" at the request of an insured, and a California law firm was designated as the service of suit nominee. 328 F.3d at 1127-28. Over the five-year period, the plaintiff paid approximately $45 million in insurance premiums to the defendant from insureds, the majority of which were Californian. The plaintiff and the defendant communicated

with each other frequently during this time period, via fax, phone and mail. Further, London employees of the defendant visited California approximately eight times per year and developed new lines of business for the defendant with other California-licensed brokers. *Id.* at 1128. Approximately 20% of the defendant's overall business came from California. *Id.*

## 1. The Defendant Must Purposefully Avail Itself of the Benefits and Privileges of California.

The dispute in *Harris Rutsky* arose when the defendant urged Zurich and other London insurers to cease doing business with the plaintiff, which they did. *Id.* As the alleged acts of interference occurred in London, the defendant argued California did not have specific jurisdiction. The Ninth Circuit disagreed, finding the defendant "had sufficiently extensive contacts with California" to support a finding that it "purposely availed itself of the benefit and privilege of conducting activities in California." 328 F.3d at 1130-31. The court reasoned that the defendant "has numerous ongoing obligations to [California] residents," that the defendant "specifically sought to...acquire [the plaintiff's] business and it had numerous contacts with the plaintiff during the [five-year] period," the defendant "drafted an agreement which called for performance, and was consummated in, California," and the defendant accepted approximately $45 million in checks from the plaintiff. *Id.*

By contrast, here DM did not draft any contract; the alleged oral contracts of sale were negotiated and consummated in London in a matter of several days; DM accepted no payment from California or otherwise availed itself of the protections of California law; and the several communications DM made to Silver in California were peripheral to the alleged dispute. *Compare, McGlinchy v. Shell Chemical, infra,* 845 F.2d at 816 (contract execution and termination by international mail does not constitute purposeful availment of the laws of California). DM simply had no business relationship with Silver before, or after, Mr. Silver came to London to show DM his gems.

Silver makes much of the tort-based "effects" test for "purposeful availment," saying DM has relegated it to a footnote. The *Harris Rutsky* court went on to address the "effects" test, finding the defendant expressly aimed its tortious activity at the California brokerage, so the brunt

1    of harm was felt in California. 328 F.3d at 1131. This analysis makes sense under the facts of

2    *Harris Rutsky*, where the California plaintiff did business from California with the defendant and

3    the London insurers, and for the relevant period of years was literally present in California along

4    with its customers, the insureds. In *Harris Rutsky*, it therefore may be said that the defendant's

5    intentional acts were "expressly aimed at the foreign state." *Id.* Here, however, the alleged

6    diamond deal giving rise to Silver's tort claim took place in London while Mr. Silver was there.

7    His "effects" argument rests solely on the notion that his company and bank are located in

8    California. This is not sufficient. The fact that DM wired the diamond payment to Silver's

9    Redwood City bank does not constitute tortious conduct "aimed at" California because Silver

10   does not complain of the $5.5 million payment itself, and the payment did not injure Silver. As a

11   separate matter, if DM had handed Mr. Silver a cashier's check in London instead of paying by

12   wire, should the jurisdictional analysis change? Personal jurisdiction is not a "gotcha" doctrine

13   but depends on the practical impact of the defendant's tort toward the forum state. None of the

14   cases Silver cites suggests otherwise. *See, e.g., C.E. Distribution, LLC v. New Sensor Corp.*, 380

15   F.3d 1107 (9th Cir. 2004). (New York company intentionally interfered with the business of the

16   sole United States distributor of Jensen Speakers located in Arizona by contracting with

17   distributors of Jensen Speakers outside of the United States, knowing it would impair CE's

18   distribution rights in the forum under CE's agreement with the manufacturer); *Haisten v. Grass*

19   *Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392 (1986) (malpractice insurance company

20   that tried to appear to be doing business in the Cayman Islands in reality insured the doctors in a

21   particular California hospital and was found to be an organization whose very purpose was to

22   reap ongoing benefits of doing business in California without being subject to California law).

23        **2.    The Claim Must Arise Out of Defendant's Forum-Related Activities.**

24        Similarly, the *Harris Rutsky* court found the claims "arise out of the defendant's

25   California-related activities" because they flowed from the defendant's long-term relationship

26   with the California plaintiff. 328 F.3d at 1131-32. There is no analogue in this case to the *Harris*

27   *Rutsky* five-year contractual relationship performed in London and California. While in *Harris*

28   *Rutsky* only the defendant's tortious acts of interference were carried out exclusively in London,

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB          - 6 -          REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

1   here the alleged contracts were negotiated and performed in London, the alleged breach occurred

2   in London and the alleged fraud occurred in France and/or London. This case simply does not

3   concern "California-related" activity by DM. Mr. Silver could have flown in from Timbuktu, as

4   far as DM was concerned.[1]

### 3.   The Exercise of Jurisdiction Must Be Reasonable.

6        Having found the defendant's conduct met the first two tests for specific jurisdiction, the

7   *Harris Rutsky* court tackled the third requirement that the exercise of jurisdiction be reasonable

8   under the seven-factor test. The court decided the first factor, "the extent of the defendant's

9   purposeful interjection into the forum state's affairs," against the defendant for the following

10  reasons:

> Twenty percent of its business is conducted in California, and that
> business is a lucrative one. Contact with [the plaintiff] during that
> time was frequent. Furthermore, [the defendant] drafted the
> contract at the heart of this dispute, and that contract was
> consummated and for the most part performed in California.

15  328 F.3d at 1132. Similar statements cannot be made about DM in this case. DM has not, by any

16  stretch, purposefully interjected itself into California's affairs.

17       Next, the *Harris Rutsky* court considered factor (2), "the burden on the defendant of

18  defending in the forum." Despite finding that the defendant's associates frequently traveled to

19  California on business, the court nonetheless decided this factor in favor of the defendant. *Id.* at

___

[1] Silver relies on the unreported decision in *Itel FL., Inc. v. Container Land Associates,* 1997 WL 229951 (N.D. Cal. 1997) for the proposition that the test to determine whether a claim arises from forum-related activities is "very relaxed." Opp. at 15. *Itel* involved a nonresident defendant who flew to California to meet with, and allegedly defraud, the resident plaintiff. 1997 WL 229951 at *4. Under these circumstances, the court found that "[b]ut for the fraudulent misrepresentations allegedly made by the defendant *in California*, no contract would have been entered into, and no liability would have arisen." *Id.* (emphasis added). Here, on the other hand, Mr. Silver flew to London and conducted the alleged transactions in London. Thus, *Itel* is inapposite.

Silver's reliance on *Walker & Zanger (West Coast) Ltd. v. Stone Design S.A.,* 4 F. Supp. 2d 931 (C.D. Cal. 1997) is similarly misplaced. In *Walker,* the defendant was a French corporation which had shipped its limestone products to the plaintiff in California, and accepted payment from the plaintiff on numerous occasions over the course of an eight-year business relationship. *Id.* at 933, 939. For this reason, the court found that California's exercise of jurisdiction over the defendant was proper, in part because "but for the contractual negotiations *and performance* between plaintiff and defendant, plaintiff would have had no action against defendant." *Id.* at 939. (Silver misquotes this passage by omitting the key word "performance;" *see* Opp. at 16:2.) Here, on the other hand, there was no long-standing business relationship between DM and Silver. Nor did DM ship any products to, or receive any payment from California.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB          - 7 -          REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

1   1132-33.  By contrast, here DM and its employees do not customarily travel to California.  Factor

2   (2) weighs in DM's favor.

3       The *Harris Rutsky* court dealt with factor (3), "the extent of conflict with the sovereignty

4   of the defendant's state," as follows:

5           While [the defendant] has presented no evidence of the United
            Kingdom's particular interest in adjudicating this suit, we may
6           presume for present purposes that there is such an interest.  The
            disputed conduct took place in London, and a London-based
7           Lloyd's-affiliated brokerage firm and its British corporate parent
            are named defendants.  Furthermore, employees of Zurich, based in
8           London, are potential witnesses.  This factor therefore weighs in
            favor of [the defendant].

9

10  *Id.* at 1133.  For similar reasons, factor (3) weighs in favor of DM in this case.  Silver's

11  suggestion that DM's Florida store defeats the sovereignty concern makes no sense, since this

12  case relates to the London headquarters of a British company.

13      The *Harris Rutsky* court found that factors (4) (the forum state's interest in adjudicating

14  the dispute) and (6) (the importance of the forum to the plaintiff's interest in convenient and

15  effective relief) were in the plaintiffs' favor, but decided that factor (5) (the most efficient judicial

16  resolution of the controversy) was in the defendant's favor because of the location of the evidence

17  and witnesses.  *Id.*  Finally, the court decided factor (7) (the existence of an alternative forum) in

18  the defendant's favor, stating,

19          The plaintiff bears the burden of proving the unavailability of an
20          alternative forum, *Core-Vent*, 11 F.3d at 1490, and [the plaintiff]
            has not met that burden here.  British courts provide an obvious
21          alternative forum. . .

22  *Id.* at 1133-34.  Here, too, Silver has not even attempted to prove the unavailability of an

23  alternative forum, and British courts provide an obvious alternative forum.

24      After considering all seven factors, the *Harris Rutsky* court determined "the balance is

25  essentially a wash" and stated, "Given the quantity and quality of the contacts with the forum

26  state, it is not unreasonable for a court in California to exercise personal jurisdiction over [the

27  defendant]."  328 F.3d at 1134.

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB          - 8 -          REPLY BRIEF BY DEFENDANT DAVID
                                                 MORRIS INTERNATIONAL LTD. IN
                                                 SUPPORT OF MOTION TO DISMISS

1    Here, by contrast, the balance of the seven "reasonableness" factors is not a wash. DM

2    has had very few contacts with the forum state, and the "quality" of them is that they are

3    peripheral to the alleged dispute and in the nature of brief phone calls or an email. At most,

4    Silver can claim only two of the seven reasonableness factors (assuming California has an interest

5    in adjudicating this dispute, not a compelling factor), so the exercise of jurisdiction over DM

6    would be unreasonable.

7    In the end, *Harris Rutsky* "instructs" this Court to find that Silver satisfies <u>none</u> of the

8    three requirements for specific jurisdiction over DM.

9        **4.     This Court's Decision in *Klein v. Gardner***

10    Silver also cites *Klein v. Gardner*, 2007 WL 128228 (N.D.Cal. 2007), decided last year by

11    this Court and argued by Silver's counsel Reed Smith. *Klein* is nothing like this case. In *Klein*,

12    the Court found that it could exercise specific jurisdiction over out-of-state defendants in a family

13    partnership dispute involving a California resident. Mr. Klein had died and his son, the

14    Californian, sued other family members who lived in Illinois and Arizona. These other family

15    members filed suit first in Oregon, so this Court ruled that California is not a suitable venue for

16    the case, based primarily on the first-to-file rule. Before reaching that outcome, the Court held

17    there was specific jurisdiction over the defendants based on evidence including the following:

18    Mr. Klein had been the general partner of the family business known as Olympic Partners, and he

19    had conducted some of the partnership's business from his California home; Olympic Partners

20    was a California company from 1980 until 1998, when the family agreed to register the business

21    as a limited partnership in Oregon; the defendants accepted nearly $2 million in loans from Mr.

22    Klein to finance Olympic Partners, and consummated relevant transactions within California; and,

23    in general, the defendants had an ongoing financial relationship with Mr. Klein. *Id.*, pp. 1-3. The

24    Court found these facts sufficient to conclude the defendants availed themselves of the privilege

25    of conducting business in California, that the claim arose out of the defendant's forum-related

26    activities, and that the exercise of jurisdiction is reasonable. Addressing the seven

27    "reasonableness" factors, the Court noted, "There is no danger here of offending the

28    'sovereignty' of Oregon state," that "there is no reason to think that a federal district court in

REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

1    Oregon could resolve this dispute with any more efficiency that a federal district court in

2    California," and that none of the individuals involved in the case even lived in Oregon. 2007 WL

3    128228 at 3. The manifold differences between *Klein* and this case are apparent.

4        Curiously, Silver cites *Klein* for the proposition that "Importantly, even a single act can

5    support jurisdiction." (Opposition Brief at 11:21-22.) This is a mis-quote. The full quote in

6    *Klein* reads:

7            Thus, "even a single act can support jurisdiction" where the
        defendant deliberately has engaged in significant activities within a

8            State, or is created continuing obligations between himself and
        residents of the forum. (citing *Burger King Corp. v. Rudzewicz*,

9            471 U.S. 462, 476 and note 18.)

10    *Klein,* at p.2. Because Silver fails to evidence significant activities within California by DM or

11    continuing obligations between DM and residents of California, Silver's "single act" argument

12    fails.

13        Silver also tries to cite *Klein* for the proposition that phone calls Mr. Silver had with DM

14    and the so-called Consignment Agreement (nothing more than an unsigned memorandum sent by

15    Mr. Silver, not DM, which is not alleged to form the basis of either deal Mr. Silver struck) "are

16    more than sufficient to establish purposeful availment." (Opp. Mem. At 13:9-20.) Nothing in

17    *Klein* supports that argument. The closest this Court came in *Klein* to addressing facts such as

18    those in this case was its citation to several decisions where non-resident defendants had only

19    limited contacts with the forum state involving mail, fax, telephone, or wire. Critical here, these

20    decisions involved banks and insurance companies with obligations to residents of the forum that

21    were central to those disputes. *See Ballard v. Savage*, 65 F.3d 1495, 1497-99 (9th Cir. 1995)

22    (class action against an Austrian bank with numerous customers in the United States, based on the

23    bank's participation in a Ponzi scheme in which American investors were defrauded); *Hirsch v.*

24    *Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478-79 (9th Cir. 1986) (where a Missouri

25    insurance company had ongoing policy obligations to the California plaintiff whose key witnesses

26    were located in California, the court said, "As courts have observed, plaintiffs would be severely

27    disadvantaged if forced to follow the insurance company to a distant state in order to hold it

28    legally accountable ..."); and *Haisten v. Grass Valley Med. Reimbursement Fund, supra*, 784 F.2d

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB    - 10 -    REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

1   1392, 1397-99 (insurance company that tried to appear to be doing business in the Cayman

2   Islands in fact insured the California doctors).[2]

3       We are not aware of any California or Ninth Circuit authority which finds specific

4   jurisdiction based on such limited California activity by the defendant as DM had here.  To the

5   contrary, courts find there is no specific jurisdiction in cases with such weak jurisdictional facts.

6   *See, e.g. McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 815-817 (9th Cir. 1988) (California

7   company entered contract with British company in California).  The facts before the Court do not

8   come close to meeting the high jurisdictional barrier accorded to alien defendants such as DM.

9   *Asahi Metal Industry Co. v. Superior Ct.,* 480 U.S. 102, 115 (1987); *Core-Vent Corp. v. Nobel*

10  *Industries AB,* 11 F.3d 1482, 1489 (9th Cir. 1993).

11  **C.    Silver's *Forum Non Conveniens* Arguments Do Not Overcome the Pull of London.**

12

13      Silver misstates the standard to be applied by this Court under *forum non conveniens,*

14  pointing to rhetoric in a small number of cases suggesting *forum non conveniens* "is an

15  exceptional tool."[3]  Ninth Circuit authority establishes that the moving party in a *forum non*

16  *conveniens* motion simply must show that an adequate alternative forum exists, and that the

17  balance of private and public interest factors favors dismissal.  *See Lueck v. Sundstrand Corp.,*

18  236 F.3d 1137, 1142 (9th Cir. 2001), citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 n. 23

---

19  [2] Silver also cites *World-Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286 (1980) to support an argument
20  that the fine-print forum language in the alleged memo from Silver somehow demonstrates that DM "understood that
    it could be haled into court in California should a dispute with SHS arise."  Opp. Brief at 13, n.4.  *World-Wide*
21  *Volkswagen* did not involve a forum selection clause and in fact, stands for the opposite proposition: that
    "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process
22  Clause."  444 U.S. at 295.  Thus, the Supreme Court in *World-Wide Volkswagen* held that an Oklahoma court could
    not exercise personal jurisdiction over a nonresident car retailer and distributor, where the defendants' only
23  connection with Oklahoma was the fact that a car bought in New York became involved in an accident in Oklahoma.
    *Id.* at 299.  Here, the parties never discussed or considered forum for a lawsuit (Morris Dec., ¶ 18, Tabor Dec., ¶¶ 3,
24  4.) and the fine-print forum-selection language in the memo that Mr. Silver faxed relates only to suits for collection
    of merchandise.  "Foreseeability" of suit in California does not figure into this motion.
25  [3] The case of *Ravelo Monegro v. Rosa,* 211 F.3d 509 (9th Cir. 2000) cited by Silver for this proposition is itself an
    exceptional case in which thirteen young baseball players from the Dominican Republic sued the San Francisco
26  Giants and its Latin American scout in the Northern District of California, alleging the scout conditioned their minor
    league contracts on submitting to his sexual advances and that the scout appropriated their earnings and signing
27  bonuses for his own use.  The Ninth Circuit reversed the district court's granting of the defendants' motion under
    FNC, noting suit was brought in the defendants' home forum, there were no other parties who could not be made to
28  appear in the Northern District of California, and defendants made no showing that access to proof would be easier in
    the Dominican Republic.  *Id* at 513-514.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB        - 11 -        REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

1   (1981) ("[I]f the balance of conveniences suggests that trial in the chosen forum would be

2   unnecessarily burdensome for the defendant or the court, dismissal is proper."); *Leetsch v.*

3   *Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001); *Creative Technology, Ltd. V. Aztech System PTE,*

4   *Ltd.,* 61 F.3d 696, 699 (9th Cir. 1995); *Lockman Foundation v. Evangelical Alliance Mission,* 930

5   F.2d 764, 767 (9th Cir. 1991); and *Contact Lumber Co. v. P.T. Moges Shipping Co.,* 918 F.2d

6   1446, 1449 (9th Cir. 1990)  ("The cases demonstrate that defendants frequently rise to the

7   challenge of showing an alternative forum is the more convenient one.").

8          Plainly, London is an adequate alternative forum.  *Harris Rutsky*, *supra*, 328 F.3d at 1133.

9   Silver does not argue that it is not.

10         **1.     Private Interest Factor 1:  The Residence of the Parties and Witnesses**

11         Silver ignores Rami Okuniew and the gem lab witnesses, and includes Mr. Silver's

12   assistant Emily Teeter, whose only involvement seems to be that DM's Lynn Tabor e-mailed her

13   confirmation of receipt of Mr. Silver's fax.  Eliminating Teeter and Tabor from consideration,

14   three key witnesses reside in London (Messrs. Morris, Holbech and Okuniew, each of whom

15   conducted or witnessed the alleged negotiations with Mr. Silver), at least two reside in

16   Switzerland (gem lab witnesses) and one resides in California (Mr. Silver).  Silver's argument

17   that the gem lab witnesses are irrelevant suggests Silver intends to argue that Mr. Silver did not

18   hold out the sapphires as being of Kashmir origin, an outrageous position given the statement in

19   his declaration that he provided an SSEF certification of Kashmir origin to Mr. Morris. (Silver

20   Dec., ¶ 6.)  Regardless, Mr. Silver acknowledges he <u>believed</u> the sapphires were of Kashmir

21   origin (Silver Dec., ¶ 7), so likely contract defenses based on mutual mistake of fact and/or

22   fraudulent inducement will render the testimony of gem lab witnesses relevant.  (Silver could

23   diminish the relevance of these witnesses by stipulating the sapphires are not of Kashmir origin.

24   Will he?)  Whether the score is 3 witnesses to 1, or 5 witnesses to 1, the important consideration

25   of witness location strongly favors London.

26

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB          - 12 -

REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

2.     **Private Interest Factor 2:  The Forum's Convenience to the Litigants**

Silver argues that it is not more expensive for DM to bring three company witnesses to California than it is for Silver to bring two (really one) to London.  Even if this were true, the Court should consider the comparative disruption to work schedules, the litigation events other than trial which may require travel, and the expense and inconvenience of intercontinental communication between lawyer and client.  It should be noted that Silver's counsel Reed Smith has two London offices housing 300 lawyers, which would facilitate Silver litigating this matter in London.

3.     **Private Interest Factor 3:  Whether Unwilling Witnesses Can Be Compelled to Testify**

Silver argues that depositions may be taken in a foreign country under F.R.C.P. 28(b)(3).  Silver misses the point.  This Court cannot compel a foreign witness to appear for deposition, or come to trial in the U.S.  DM has a better chance of securing cooperation of third-party witnesses in Switzerland if the case is in London than in San Francisco.  This also applies to Mr. Okuniew, a third-party who witnessed negotiations of the sapphire purchase.  Silver also overlooks the cost of securing testimony from the third-party witnesses, and the burden and expense to DM of bringing these witnesses to California or of DM's San Francisco counsel arranging and taking their depositions abroad.

4.     **Private Interest Factor 4:  Access to Physical Evidence and Other Sources of Proof**

Silver acknowledges "a handful of documents" may be need to be obtained from the European gem labs.  As this Court cannot compel their production, venue in London can only improve the likelihood of access to this evidence.

5.     **Private Interest Factor 5:  The Enforceability of Judgment**

Like DM, Silver makes no argument under this factor.  Silver's assertion that such uncontested factors weigh against dismissal is wrong, and not supported by any authority.  The cases addressing *forum non conveniens* deem neutral factors not to weigh in either party's favor. *See, e.g., Leetsch v. Freedman, supra,* 260 F.3d at 1104-05.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB          - 13 -          REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 6.    Private Interest Factor 6:  All Other Practical Problems

Silver makes no argument under this factor.  Therefore none of the private interest factors weighs in favor of Silver, and several of them weigh strongly in favor of DM.

### 7.    Public Interest Factor 1:  The Local Interest of the Lawsuit

We do not dispute that every forum has an interest in protecting its citizens.  If DM must litigate this case on the merits, then England will have an equal interest in vindicating DM's rights to rescind the contract or seek damages based on Mr. Silver coming to London and passing off his sapphires as Kashmiri.

### 8.    Public Interest Factor 2:  The Court's Familiarity with Governing Law

It is true, as Silver argues, that California's "governmental interest" test governs choice of law determinations.  See *Washington Mutual Bank v. Superior Ct.,* 24 Cal.4th 906, 1919-920 (2001).  However, this test is more complicated than Silver asserts.  The Court will first determine whether the applicable English and California laws conflict.  If so, the Court will then determine the comparative interest of the respective governments in having their laws applied to this case. If the Court finds that both governments have such an interest, the Court will then select the law of the government whose interests would be more impaired if its law were not applied.  In making this comparative impairment analysis, the Court will consider the relative commitment of the respective governments to the laws involved, the history and current status of the laws and the function and purpose of those laws. *Id* at 920.

Courts in both countries would likely apply British law to the alleged breach of contract, since the contract was allegedly negotiated, entered and consummated in London, except for the fact that payment was made by wire from London to a California bank.  (Again, should payment by other means make any difference?)  California Civil Code § 1646 probably will not conflict with British choice-of-law, as it calls for the application of British contract law based on place of intended performance, and failing that, where the contract was entered.

REPLY BRIEF BY DEFENDANT DAVID MORRIS INTERNATIONAL LTD. IN SUPPORT OF MOTION TO DISMISS

1    Both courts also would likely conclude that Silver's fraud allegations are governed by

2  British law since they arise out of a separate contract which was negotiated, entered and

3  consummated in London, and all relevant acts of which occurred in London or France.

4    At bottom, this Court would necessarily be involved in the type of choice-of-law inquiries

5  which *forum non conveniens* is intended to avoid. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 251

6  (1981). After concluding the inquiries, this Court probably would decide that British law governs

7  all substantive aspects of this case.

8  **III.    CONCLUSION**

9    For the foregoing reasons and the other reasons stated in the moving papers filed by

10  defendant David Morris International Ltd., defendant David Morris respectfully requests the

11  Court to dismiss this action without prejudice pursuant to the F.R.C.P. 12(b)(2), and in the

12  alternative, pursuant to the *forum non conveniens* doctrine.

13

14  Dated: August  2 2 , 2008            SCHIFF HARDIN LLP

15

16                        By: _____

17                           Robert B. Mullen
                              Attorneys for Defendant
18                           DAVID MORRIS INTERNATIONAL
                              LTD.

19

20

21

22

23

24

25

26

27

28

REPLY BRIEF BY DEFENDANT DAVID
MORRIS INTERNATIONAL LTD. IN
SUPPORT OF MOTION TO DISMISS

Case 3:08-cv-03550-CRB   Document 20   Filed 08/22/2008   Page 19 of 19
S.H. Silver Company, Inc. v. David Morris Int'l, Ltd.
U.S.D.C. N.D. Cal., Case No. 08-03550 CRB

## PROOF OF SERVICE

I am a citizen of the United States and employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is One Market, Spear Street Tower, Thirty-Second Floor, San Francisco, California 94105.  On **August 22, 2008** I caused to be served a copy of the within document(s):

1. **REPLY BRIEF OF DEFENDANT DAVID MORRIS INTERNATIONAL LTD. IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO F.R.C.P. RULE 12(B)(2), AND IN THE ALTERNATIVE PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS***

2. **DEFENDANT DAVID MORRIS INTERNATIONAL LTD.'S OBJECTIONS TO PLAINTIFF S.H. SILVER COMPANY INC.'S EVIDENCE ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO F.R.C.P. RULE 12(b)(2), AND IN THE ALTERNATIVE PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS***

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

Scott D. Baker
Jonah D. Mitchell
Reed Smith LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922
Tel.:    (415) 543-8700
Fax:    (415) 391-8269

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on **August 22, 2008**, at San Francisco, California.

Vivena Cuyugan

SF\9195635.1

1  SCHIFF HARDIN LLP
   Robert B. Mullen (CSB 136546)
2  Yakov Wiegmann (CSB 245783)
   One Market, Spear Street Tower
3  Thirty-Second Floor
   San Francisco, CA  94105
4  Telephone:    (415) 901-8700
   Facsimile:    (415) 901-8701
5  rmullen@schiffhardin.com
   ywiegman@schiffhardin.com
6

7  Attorneys for Defendant
   DAVID MORRIS INTERNATIONAL LTD.
8

9                  UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  S. H. SILVER COMPANY, INC.,            Case No.  CV-08-03550 CRB

13                  Plaintiff,              **DEFENDANT DAVID MORRIS
                                            INTERNATIONAL LTD.'S OBJECTIONS
14       v.                                 TO PLAINTIFF S.H. SILVER COMPANY
                                            INC.'S EVIDENCE ON MOTION TO
15  DAVID MORRIS INTERNATIONAL              DISMISS FOR LACK OF PERSONAL
    LTD.,                                   JURISDICTION PURSUANT TO F.R.C.P.
16                                          RULE 12(b)(2), AND IN THE
                  Defendant.                ALTERNATIVE PURSUANT TO THE
17                                          DOCTRINE OF *FORUM NON
                                            CONVENIENS***
18
                                            Date:      September 5, 2008
19                                          Time:      10:00 a.m.
                                            Courtroom: 8
20
                                            Honorable Charles R. Breyer
21

22       Defendant David Morris International Ltd. hereby objects to the Declaration of

23  Stephen H. Silver in Support of Application for Right to Attach Order and Writ of Attachment

24  (Exhibit A to Declaration of Jonah D. Mitchell), as follows:

25       1.    David Morris objects to Paragraphs 17 and 18 of Mr. Silver's declaration on the

26  grounds they lack foundation, are speculative, are argumentative, and they contain unqualified

27  expert opinion.  Mr. Silver is not a gemologist, and his declaration contains no indication that he

28  has the scientific, technical, or specialized training or knowledge that might qualify him to render

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-03550 CRB          DEFENDANT DAVID MORRIS
                                  INTERNATIONAL LTD.'S OBJECTIONS TO
                                  PLAINTIFF'S EVIDENCE ON MOTION

1  opinions about the effect, if any, of cutting sapphires on their certifiability as being of Kashmir

2  origin.  Fed. Rule of Evid. 701, 702.  Yet Mr. Silver purports to opine that cutting the subject

3  sapphires "altered [their] composition," "could have" "compromised or destroyed"

4  "characteristics which allowed the Gemological Laboratory to identify the sapphires as being of

5  Kashmir origin," and that there are "risks associated with cutting the stones."  Paragraphs 17 and

6  18 should be stricken in their entirety.

7

8  Dated: August 2 2, 2008                    SCHIFF HARDIN LLP

9

10                                          By:  _Robert B. Mullen_
                                                Robert B. Mullen
11                                              Attorneys for Defendant
                                                DAVID MORRIS INTERNATIONAL
12                                              LTD.

13  SF\9210594.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CV-08-3550 CRB          - 2 -          DEFENDANT DAVID MORRIS
INTERNATIONAL LTD.'S OBJECTIONS TO
PLAINTIFF'S EVIDENCE ON MOTION