United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.H. SILVER COMPANY INC,<br><br>   Plaintiff,<br><br> v.<br><br>DAVID MORRIS INTERNATIONAL,<br><br>   Defendant.         / | No. C 08-03550 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

  Diamonds are a girl's best friend, but personal jurisdiction remains a plaintiff's nagging responsibility. See Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007) ("When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant."). Because exercising personal jurisdiction over the defendant would violate established due process norms, the motion to dismiss for lack of jurisdiction is GRANTED.

## BACKGROUND

  California-based jeweler S.H. Silver Company might "have a friend in the diamond business,"[1] but apparently it is not the defendant David Morris International, a London-based jewelry retailer. See Silver Decl. ¶ 3. According to Silver's complaint, Morris agreed to purchase jewels from Silver but has failed to remit complete payment.

  A broker in Texas introduced Stephen Silver, Chairman and CEO of S.H. Silver Co.,

---
[1] See Shane Company, Advertisement (2008).

to David Morris' principal Jeremy Morris in June of 2007 via email. Id. ¶ 4.  Silver then engaged in numerous telephone calls from California with Defendant's Sales Director, William Holbech, for the purpose of making arrangements for the consignment of several jewelry pieces to David Morris.  Id.

Silver traveled to London in late June of 2007, and delivered several pieces of jewelry – including a pair of sapphire earrings and a blue diamond – to the defendant.  See id. ¶ 6; Complaint ¶ 8.  During Silver's visit, Jeremy Morris took the blue diamond to a customer in France to offer for sale.  See Morris Decl. ¶ 14.  Morris telephoned Silver from France, asking whether Silver would sell the diamond to Morris outright for $5.5 million, rather than on consignment.  See id.  Silver apparently agreed, and Morris wired the sum to Silver's bank account in California.  See id.

While Silver was in London, he also negotiated the sale to Morris of the sapphire earrings.  See Silver Decl. ¶ 7.  The parties settled on a price of $948,000 to be paid immediately by wire to Silver's California account.  See id.  Shortly after the sale was completed, Jeremy Morris asked to adjust the payment terms and Silver agreed to accept half of the purchase price – $474,000 – immediately, and half in 45 days (August 16, 2007).  Id. ¶ 8.  Although Morris took possession of the earrings and elected to cut the sapphires, Morris refused to transmit the second payment, contending that the sale was contingent on obtaining certification from Gubelin – a Gemological Laboratory – that the sapphires were of Kashmiri origin.  See Silver Decl. Exh. F.  Because Gubelin refused to certify the sapphires as Kashmiri, Morris offered to either return the earrings for a refund or pay an additional $276,000 – for a total of $750,000 – for the stones.  See id.

Silver refused to accept Morris' offer on the ground that the deal was not conditioned upon certification of the earrings.  See Silver Decl. ¶ 18.  Silver filed a complaint against Morris in California state court on June 17, 2008, alleging breach of contract, breach of fiduciary duty, constructive fraud, fraud, unjust enrichment, and a common count for account stated.  Defendant removed on the basis of diversity jurisdiction and now moves to dismiss for lack of personal jurisdiction and pursuant to the doctrine of forum non conveniens.

2

## STANDARD OF REVIEW

A defendant may move prior to trial to dismiss the complaint for lack of jurisdiction. See Fed. R. Civ. P. 12(b)(2). It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant. Cubbage v. Merchent, 744 F.2d 665, 667 (9th Cir. 1984). A court may decide whether personal jurisdiction exists on the basis of affidavits and documentary evidence submitted by the parties, or hold an evidentiary hearing regarding the matter. See Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). In this case, the pleadings, declarations and documentary evidence submitted by the parties provide an adequate basis for evaluating jurisdiction. Accordingly, no evidentiary hearing is necessary.

When no evidentiary hearing is held, the plaintiff need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss. See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). Where not directly controverted, the court must accept Plaintiff's version of the facts as true. See AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). Likewise, conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. Id.

## DISCUSSION

Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies. See Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1484 (9th Cir.1993). California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution. See Cal. Code Civ. Pro. § 410.10. Accordingly, the Court "need only determine whether personal jurisdiction in this case would meet the requirements of due process." Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257, 1258 (9th Cir. 1989).

Due process requires "that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A defendant whose contacts with the forum state are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contacts with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 n.9 (1984). However, Silver does not contend that the Court possesses general jurisdiction over Morris. Rather, the plaintiff argues that the defendant is subject to specific jurisdiction because the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum. See Hanson v. Denckla, 357 U.S. 235, 251 (1958).

Courts within the Ninth Circuit employ a three-prong test for evaluating whether specific personal jurisdiction is consistent with due process: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or a resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). The plaintiff bears the burden on the first two prongs. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff fails to satisfy either of these prongs, the motion to dismiss must be granted. If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

**A. Purposeful Availment**

Part one of the three-prong test is typically analyzed under the "purposeful availment" standard where the plaintiff's action sounds primarily in contract, as Silver's does. See

4

Boschetto v. Hansing, 2008 WL 3852676, *3 (9th Cir. Aug. 20, 2008).[2] The purposeful availment prong requires a qualitative evaluation of the defendant's contact with the forum state to determine whether the defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate being haled into court there. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The purposeful availment requirement is met if the defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990). The Ninth Circuit has held that the purposeful availment requirement satisfied if the defendant has taken deliberate action with the forum state or created continuing obligations to forum residents. See Ballard v. Savage, 65 F.3d 1495, 1498-99 (9th Cir. 1995).

The evidence proffered by the parties establishes that Morris did not solicit Silver's business, that Morris entered into the relevant contracts in London, and that the contracts were to be performed in Europe. The most closely analogous case is McGlinchy v. Shell Chemical Co., 845 F.2d 802 (9th Cir. 1988), in which a foreign company negotiated a contract in England, but executed the contract in California. Id. at 816. The court held that because the contract was negotiated in England, the contract made no reference to California, and no authorized agents of the defendant were alleged to have performed or executed any portion of the contract in California, the alleged contacts were insufficient to satisfy the purposeful availment prong. Id.

Silver argues that McGlinchy is distinguishable because Silver faxed Morris a Consignment Agreement with a California forum selection clause. However, as Silver concedes, Morris bought the sapphires and diamond outright – not on consignment – and the consignment agreement does not govern the agreements at issue. See Opp. at 15. Silver also contends that unlike in McGlinchy, Morris' contractual obligations were "connected" to

---

[2] That Silver has pled tort causes of action does not alter the fact that his action sounds primarily in contract. See Boschetto v. Hansing, 2008 WL 3852676, *3 (9th Cir. Aug. 20, 2008) (applying purposeful availment standard where plaintiff accused internet seller of goods of breach of contract, misrepresentation, and fraud).

5

1  California because Morris paid for the jewels by wiring money to Silver's California bank
2  accounts. However, "wire transfers or similar contacts" are generally insufficient, by
3  themselves, to create personal jurisdiction. Resolution Trust Corp. v. First of Am. Bank, 796
4  F. Supp. 1333, 1336-37 (C.D. Cal.1992); see also T.J. Raney & Sons, Inc. v. Security
5  Savings & Loan Ass'n, 749 F.2d 523, 525 (8th Cir. 1984) (holding that the use of interstate
6  mail, telephone or banking facilities, standing alone, is insufficient to satisfy the
7  requirements of due process); United Fin. Mortgage Corp. v. Bayshores Funding Corp., 245
8  F. Supp. 2d 884, 894 (N.D. Ill. 2002) (transactions such as wire transfers that are "fortuitous"
9  are insufficient). Even when considered in conjunction with the handful of phone calls
10 between Morris and Silver, the wire transfers are not sufficient to establish minimum
11 contacts with the forum state. See Far West Capital, Inc. v. Towne, 46 F.3d 1071 (10th Cir.
12 1995) (finding ten-to-twenty phone calls and faxes to forum state insufficient to justify
13 exercise of personal jurisdiction).
14     Business communications from foreign locations, such as telephone calls and wire
15 transfers, can support personal jurisdiction where the defendant's contact is continuous or the
16 volume of communications suggests purposefulness. Thus, the Ninth Circuit found specific
17 jurisdiction over a foreign bank whose "physical contacts with the United States and
18 California [were] quite limited," because the bank "created numerous ongoing obligations to
19 U.S. residents ... [by] regularly mail[ing] account statements to its U.S. customers, and ...
20 occasionally solicit[ing] new business from them." Ballard v. Savage, 65 F.3d 1495, 1498
21 (9th Cir. 1995). Similarly, the Ninth Circuit found jurisdiction over an insurance company
22 headquartered in the Cayman Islands that issued malpractice insurance to 22 California
23 physicians – even though the policies were solicited, issued, delivered, and paid for in the
24 Cayman Islands – because "[a]n insurance contract creates continuing obligations between
25 the insurer and the insured." Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,
26 784 F.2d 1392, 1399 (9th Cir. 1986). By contrast, the communications between Morris and
27 Silver were neither numerous nor part of a continuous and ongoing business relationship.
28 Rather, Morris' handful of calls and two wire transfers were part of a "one-shot affair."

6

Boschetto v. Hansing, 2008 WL 3852676, *4 (9th Cir. Aug. 20, 2008) (quotation omitted). Under the circumstances, Morris could not have reasonably anticipated being haled into court in California.

### B. "But For" Test

The second prong requires Silver to establish that the claims made against Morris arise out of their California-related activities. In determining whether the plaintiff's claims arise out of the defendant's local conduct, the Ninth Circuit uses the "but for" test. See Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Hence, Silver must show that they would not have suffered an injury "but for" Morris' forum related conduct. See Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001).

Silver has satisfied the "but for" test because they have established a direct nexus between their the causes of action and the defendant's contacts with the forum state. See Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives, 103 F.3d 888, 894 (9th Cir. 1996). Morris' communications to Silver in California attracted Silver to travel to London to negotiate the jewelry contracts. Because Morris' contacts with California put the parties in "striking distance" with one another, the but-for test is satisfied. See Shute v. Carnival Cruise Lines, 897 F.2d 377, 386 (9th Cir. 1990), overruled on other grounds by Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991).

### C. Reasonableness

Once it has been decided that a defendant purposefully established minimum contacts with a forum, "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" in order to defeat personal jurisdiction. Burger King v. Rudzewicz, 471 U.S. 462, 477 (1985). The Court must balance seven factors in weighing reasonableness, none of which are dispositive: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the

plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

First, "[e]ven if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong]." Ins. Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1271 (9th Cir. 1981). "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." Id. For the reasons set forth in Part A, Morris' interjection into California was minimal. Because the contacts were not even sufficient to support a finding of purposeful availment, this factor supports Morris.

Second, the burden on Morris to defend suit in California appears great, given that it is an English company that owns no property in the forum and has no employees authorized to act on its behalf there. See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1125-26 (9th Cir. 2002). "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Asahi Metal Ind. v. Superior Court, 480 U.S. 102, 114 (1987). Thus, the second factor weighs heavily in Morris' favor.

Third, "[w]here, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc., 1 F.3d 848, 852 (9th Cir. 1993). The Supreme Court has cautioned that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Asahi, 480 U.S. at 115 (quotation omitted). Factor three therefore supports Morris.

The Court must next consider the extent of California's interest in adjudicating the suit. "California maintains a strong interest in providing an effective means of redress for its residents [who are] tortiously injured." Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1133 (9th Cir. 2003) (quotation omitted). Because Silver is a

California corporation whose principal place of business is in California, the fourth factor counsels in favor of exercising jurisdiction.

Fifth, the Court must consider the forum that could most efficiently resolve this dispute in light of the location of evidence and witnesses. See Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 129 (9th Cir. 1995). Morris persuasively argues that almost all of the evidence and the potential witnesses reside in Europe, and therefore that London would provide a more efficient forum. Other than Stephen Silver, all of the material witnesses privy to the contract negotiations and jewelry sales are either in London or other European countries. The fifth factor favors Morris, however this factor is "no longer weighed heavily given the modern advances in communication and transportation." Panavision Int'l v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998).

The sixth factor considers the convenience and effectiveness of relief available to the plaintiff. "[N]o doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference." Roth v. Garcia Marquez, 942 F.2d 617, 624 (9th Cir. 1991). Hence, although this factor supports Silver, it "is not of paramount importance." Harris Rutsky, 328 F.3d at 1133.

Finally, the Court must determine whether an adequate alternative forum exists. The plaintiff bears the burden of proving the unavailability of an alternative forum, Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1490 (9th Cir.1993), and Silver has not met that burden here. "British courts provide an obvious alternative forum. . . ." Harris Rutsky, 328 F.3d at 1134.

On balance, the clear majority of factors support the conclusion that Morris has presented a compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice and would thus be unreasonable. While mindful that California has a strong interest in providing a forum to its injured citizens, "that interest must give way" where the defendant is a foreign-based corporation that lacks connections to California and whose purposeful interjection into the forum state has been very limited. Core-Vent, 11 F.3d at 1490. Accordingly, even if the plaintiff were able to satisfy the purposeful availment

1 prong – which it cannot – the Court would still dismiss for lack of jurisdiction because
2 exercising specific personal jurisdiction over Morris would be unreasonable under the
3 circumstances.

4     Diamonds are forever, but this case is through because the motion to dismiss is
5 GRANTED. **IT IS SO ORDERED.**

Dated: August 28, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California